UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **Taste of Belgium LLC, Individually and On Behalf of All Others Similarly Situated** | : : : | Case No. |
| **Plaintiff,** | : : | Judge: |
| v. | : : | **CLASS ACTION COMPLAINT** |
| **The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company, and Cincinnati Financial Corporation** | : : : : : | and **JURY DEMAND** |
| **Defendants.** | : : | |

Plaintiff Taste of Belgium LLC, by and through its attorneys, brings this action against The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company, and Cincinnati Financial Corporation ("Defendants"). All allegations made in this Class Action Complaint are based upon information and belief except those allegations that pertain to Plaintiff, which are based on personal knowledge. Each allegation in this Class Action Complaint either has evidentiary support or, alternatively, pursuant to Rule 11(b)(3) of the *Federal Rules of Civil Procedure*, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

## NATURE OF THE ACTION

1. Plaintiff brings this action on its own behalf and on behalf of others nationwide similarly situated against Defendants for their failure to pay Business Income, Extended Business Income, and Extra Expense coverage benefits pursuant to the terms of its property insurance policies for claims related to the COVID-19 pandemic.

2. Plaintiff owns and operates a chain of local restaurants in Southern and Central Ohio. It purchased Policy No. ECP0557779 (the "Policy")[1] from Defendants to protect its business in the event that it had to suspend operations for reasons outside of Plaintiff's control. The Policy's effective dates are from November 4, 2019 to November 4, 2020.

3. The Policy contains coverage extensions for Business Income, Extended Business Income, and Extra Expense. These coverages provide for the payment of business income losses and extra expenses incurred by Plaintiff during a period of restoration. The Policy also contains a Civil Authority provision, which compensates the insured for lost business income and extra expenses caused by an action of a civil authority prohibiting access to the property.

4. On March 15, 2020, in direct response to the COVID-19 pandemic, Dr. Amy Acton, the Director of Ohio's Department of Health, issued an Order pursuant to Ohio Revised Code §3701.13 declaring that "Food and beverage sales are restricted to carry-out and delivery only, no on-site consumption is permitted."[2] This Order states that "Multiple areas of the United States are experiencing "community spread" of the virus that causes COVID-19. Community spread, defined as the transmission of an illness for which the source is unknown, means that isolation of known areas of infection is no longer enough to control spread."[3]

5. One week later, on March 22, 2010, Gov. Mike DeWine announced that the Ohio Department of Health was issuing a Stay at Home order pursuant to Ohio Rev. Code § 3701.13 in response to the COVID-19 pandemic.[4] The order required all non-essential business and operations to cease in Ohio. The order also prohibited all non-essential travel.

---

[1] A copy of the Policy is attached as Exhibit A.
[2] A copy of this Order is attached as Exhibit B.
[3] *Id.*
[4] A copy of this Order is attached as Exhibit C.

6. Because of these Orders issued by the Ohio Department of Health, Plaintiff was forced to suspend its eat in business at all of its restaurants. Although Plaintiff was able to offer limited carry out and delivery services at certain locations, other locations were, and remain, fully closed.

7. Plaintiff provided Defendants timely notice of its claim under the Policy but has not received the benefits owed. Upon information and belief, Defendants uniformly refuse to pay their insureds for losses suffered due to mandatory business closures required by executive orders issued by civil authorities in response to the COVID-19 pandemic.

8. As a result of Defendants' wrongful conduct, Plaintiff and similarly situated policyholders nationwide are entitled to damages, as well as declaratory and injunctive relief.

**PARTIES**

9. Plaintiff Taste of Belgium LLC is an Ohio limited liability company and a citizen of Ohio.

10. Defendant The Cincinnati Insurance Company is an Ohio corporation with its headquarters and principal place of business in Fairfield, Ohio. Upon information and belief, The Cincinnati Insurance Company is a subsidiary of The Cincinnati Financial Corporation.

11. Defendant The Cincinnati Casualty Company is an Ohio corporation with its headquarters and principal place of business in Fairfield, Ohio. Upon information and belief, The Cincinnati Casualty Company is a subsidiary of The Cincinnati Insurance Company.

12. Defendant The Cincinnati Indemnity Company is an Ohio corporation with its headquarters and principal place of business in Fairfield, Ohio. Upon information and belief, The Cincinnati Indemnity Company is a wholly-owned subsidiary of The Cincinnati Insurance Company.

13. Defendant Cincinnati Financial Corporation is an Ohio corporation with its headquarters and principal place of business in Fairfield, Ohio. On information and belief, Cincinnati Financial Corporation is the parent of The Cincinnati Insurance Company.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed classes are in excess of $5,000,000.00, exclusive of interest and costs, and there are a substantial number of proposed class members that are citizens of states different from the state of the Defendants. The Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

15. The Court has general personal jurisdiction over Defendants because Defendants' principal place of business and corporate headquarters are located in this District. Further, Defendants conduct significant, continuous, regular, and systematic business in this District.

16. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants transact significant business throughout this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

17. Civil authorities throughout the country have issued closure orders ("Closure Orders") that require all non-essential businesses to suspend activities in order to prevent the spread of the coronavirus known as COVID-19. COVID-19 has caused a global pandemic that has killed more than 252,000 people worldwide, including more than 69,000 in the U.S. and more than 1,050 in Ohio. Ohio's closure order has been extended until at least May 29, 2020.[5]

---

[5] https://coronavirus.ohio.gov/static/publicorders/Directors-Stay-Safe-Ohio-Order.pdf

4

18. Because Plaintiff's restaurants are not considered "essential," Plaintiff has been prevented by law from offering eat in service at its restaurants. This has substantially limited Plaintiff's ability to conduct business and use the premises for their intended purpose.

19. Under the Policy's "Building and Personal Property Coverage Form," Form FM 101 05 16, the Policy covers "direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss."

20. The Policy defines "loss" as "accidental physical loss or accidental physical damage" and "premises" as "the Locations and Buildings described in the Declarations."

21. The Policy provides business income coverage in two separate provisions – the "Building and Personal Property Coverage Form," Form FM 101 05 16, and the "Business Income (and Extra Expense) Coverage Form," Form FA 213 05 16 – but both forms contain substantially identical provisions stating that "[w]e will pay for the actual loss of 'Business Income'. . . you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'" as long as the "loss" is "caused by or result from" a Covered Cause of Loss.

22. The Policy (Form FM 101 05 16) also provides coverage for business income losses caused by an act of civil authority: "[w]hen a Covered Cause of Loss causes damage to property other than Covered Property at a 'premises', we will pay for the actual loss of 'Business Income' and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the 'premises'. . . ."

23. The Policy does not contain any exclusion for losses caused by a virus or by governmental orders issued to prevent the spread of a virus.

24. Plaintiff experienced a "Covered Cause of Loss" by virtue of the March 15th and March 22nd Orders issued by the Director of Ohio's Department of Health, which denied Plaintiff

the full access to and use of the premises by suspending Plaintiff's operations during a period of restoration. These Orders effectively prohibited access to Plaintiff's business locations such that employees and customers could not enter and operate the business for its intended purpose.

25. Nearly every state across the nation issued similar orders.

26. This Covered Cause of Loss triggered coverage pursuant to the Business Income, Extended Business Income, Extra Expense, and Civil Authority provisions of the policy.

    a. Under the Business Income coverage provisions within the "Building and Personal Property Coverage Form," Form FM 101 05 16, and "Business Income (and Extra Expense) Coverage Form," Form FA 213 05 16, Defendants are contractually obligated to "pay for the actual loss of 'Business Income'. . . you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"

    b. The Policy's Extended Business Income provision provides, "[f]or 'Business Income' Other Than 'Rental Value', if the necessary 'suspension' of your 'operations' produces a 'Business Income' or Extra Expense 'loss' payable under this Coverage Part, we will pay for the actual loss of 'Business Income' you sustain and Extra Expense you incur. . . ."

    c. The Policy's Extra Expense provision provides, "[w]e will pay Extra Expense you sustain during the 'period of restoration.'"

    d. The Policy's Civil Authority coverage extension in FM 101 05 16 provides, "[w]hen a Covered Cause of Loss causes damage to property other than Covered Property at a 'premises', we will pay for the actual loss of 'Business

6

Income' and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the 'premises'. . ."

27. In exchange for the payment of premiums, Defendants issued the Policy providing these coverages for the seven restaurant locations listed on the Policy's Schedule of Locations. Plaintiff has performed all of its obligations under Policy but Defendants have refused to pay Plaintiff the Policy benefits owed.

## CLASS ACTION ALLEGATIONS

28. Plaintiff incorporates by reference all of the preceding allegations.

29. Upon information and belief, thousands of policyholders nationwide paid premiums pursuant to policies substantially identical to the Policy issued by Defendants to Plaintiff.

30. Upon information and belief, thousands of Class members nationwide have been and continue to be wrongfully denied benefits under their policies.

31. Plaintiff seeks to represent the following two nationwide Classes and Ohio Sub-Class:

"**Declaratory Judgment Class**" -- All persons and entities nationwide with Business Income, Extended Business Income, Extra Expense, and/or Civil Authority coverage under an insurance policy issued by Defendants that suffered a suspension of some or all business at the premises covered by the policy due to an order similar to those issued by the Director of Ohio's Department of Health in response to the COVID-19 pandemic.[6]

"**Damages Class**" -- All persons and entities nationwide that: (a) had Business Income, Extended Business Income, Extra Expense, and/or Civil Authority coverage under an insurance

---

[6] Plaintiff specifically reserves the right to amend this definition.

policy issued by Defendants; (b) suffered a suspension of some or all business at the premises covered by the insurance policy related to an order similar to those issued by the Director of Ohio's Department of Health; (c) made a claim under their insurance policy; and (d) Defendants refused to pay all policy benefits owed.[7]

**"Ohio DTPA Sub-Class"** -- All persons and entities in the state of Ohio that: (a) had Business Income, Extended Business Income, Extra Expense, and/or Civil Authority coverage under an insurance policy issued by Defendants; (b) suffered a suspension of some or all business at the premises covered by the insurance policy related to an order issued by the Director of Ohio's Department of Health; (c) made a claim under their insurance policy; and (d) Defendants refused to pay all policy benefits owed.[8]

32. Excluded from the Class definitions are (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns, and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

33. The Class Members are so numerous that joinder of all members is impracticable as there are believed to be thousands of Class Members nationwide.

34. There are numerous questions of law or fact common to the Classes and the Sub-Class including, but not limited to, the following:

    a. whether the relevant terms of their policies are identical or substantially similar;

    b. whether the Class Members suffered a covered loss;

---

[7] Plaintiff specifically reserves the right to amend this definition.
[8] Plaintiff specifically reserves the right to amend this definition.

    c. whether Defendants' Business Income coverage applies to a suspension of business caused by orders similar to those issued by the Director of Ohio's Department of Health;

    d. whether Defendants' Extended Business Income coverage applies to a suspension of business caused by orders similar to those issued by the Director of Ohio's Department of Health;

    e. whether Defendants' Extra Expense coverage applies to a suspension of business caused by orders similar to those issued by the Director of Ohio's Department of Health;

    f. whether Defendants' Civil Authority coverage applies to a loss of Business Income caused by orders similar to those issued by the Director of Ohio's Department of Health;

    g. whether Defendants breached the contracts with Plaintiff and Class Members by wrongfully denying or failing to pay claims based on the improper application of one or more policy provision or exclusion;

    h. whether Plaintiff is entitled to an award of reasonable attorneys' fees, expenses, interest, and costs.

35. Plaintiff is a member of the Classes and Sub-Class described above.

36. Plaintiff's claims are typical of the claims of the Class Members.

37. Plaintiff will fairly and adequately protect the interest of the Classes and has engaged counsel experienced in litigating class actions and experienced in litigating insurance coverage class actions.

38. The prosecution of separate actions by or against individual Class Members will create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which could establish incompatible standards of conduct for the Defendants.

39. Defendants have acted and are refusing to act on grounds generally applicable to the Declaratory Judgment Class as a whole, thereby making final injunctive and declaratory relief with respect to the Declaratory Judgment Class as a whole appropriate.

40. Questions of law and fact common to the Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41. To that end, (1) upon information and belief, individual Class Members' interest in controlling and litigating separate actions would be low for a number of reasons including the difficulty of retaining and paying counsel to litigate their claims especially in light of the economic hardships created by the COVID-19 pandemic; (2) given the recent nature of this controversy, the extent and nature of any litigation previously commenced has been rare to date and is likely to only be pursued by a handful of policyholders; (3) it is highly desirable to concentrate this litigation in this particular forum so as to ensure that every member of this vulnerable population receives the policy benefits for which they paid and to which they are entitled in a timely manner; and (4) there likely would be little, if any, difficulties encountered in the management of this case as a class action.

## CLAIMS

### COUNT I

### Declaratory Relief under the Declaratory Judgment Act (28 U.S.C. §2201, *et seq*.)

### Declaratory Judgment Class

42. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

43. Plaintiff brings this claim for relief on behalf of itself and the members of the nationwide Declaratory Judgment Class. An actual controversy has arisen and now exists between Plaintiff and the members of the Declaratory Judgment Class, on the one hand, and Defendants, on the other hand, concerning their respective rights and duties under the policies with regard to losses incurred as the result of orders issued nationwide similar to those issued by the Director of Ohio's Department of Health.

44. Defendants have refused to pay claims related to orders similar to those issued by the Director of Ohio's Department of Health on a uniform and class-wide basis, such that the Court can render declaratory judgment irrespective of whether members of the Declaratory Judgment Class have filed a claim for coverage.

45. A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiff, the members of the Declaratory Judgment Class, and Defendants may ascertain their respective rights and duties with respect to Defendants' obligations to pay claims.

### COUNT II

### Breach of Contract

### Damages Class

11

46. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

47. Plaintiff brings this claim individually and on behalf of the nationwide Damages Class defined above.

48. Plaintiff and the Damages Class entered into similar contracts with Defendants whereby they purchased policies from Defendants and paid premiums in exchange for coverage.

49. In the policies, Defendants provided Business Income, Extended Business Income, Extra Expense, and Civil Authority coverage.

50. Defendants agreed to pay for their insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

51. Under the policies, a "suspension" is defined as "the slowdown or cessation of your business activities" and "a part or all of the 'premises' is rendered untenantable."

52. Pursuant to the business income coverage provisions within the "Building and Personal Property Coverage Form," Form FM 101 05 16, and "Business Income (and Extra Expense) Coverage Form," Form FA 213 05 16, Defendants promised that they would "pay for the actual loss of 'Business Income'. . . you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration.'"

53. Pursuant to the form's extended business income provision, Defendants promised that "[f]or 'Business Income' Other Than 'Rental Value'", if the necessary 'suspension' of your 'operations' produces a 'Business Income' or Extra Expense 'loss' payable under this Coverage Part, we will pay for the actual loss of 'Business Income' you sustain and Extra Expense you incur. . ."

54. Pursuant to the form's Extra Expense provision, Defendants promised that "[w]e will pay Extra Expense you sustain during the 'period of restoration.'"

55. The orders issued by the Director of Ohio's Department of Health, and those similar to those issued by the Director of Ohio's Department of Health, caused direct physical loss and damage to Plaintiff and the other Damages Class Members' Scheduled Premises, requiring suspension of operations at the Scheduled Premises. These losses triggered the Business Income, Extended Business Income, and Extra Expense provisions of Plaintiff's and the other Damages Class Members' policies.

56. The orders issued by the Director of Ohio's Department of Health, and those issued by other states similar to those issued by the Director of Ohio's Department of Health, also caused direct physical loss and damage to property other than Plaintiff and the other Damages Class members' Covered Property at the premises, resulting in a prohibition of access to the premises. These losses triggered the civil authority provision of Plaintiff's and the other Damages Class Members' policies.

57. Plaintiff and the other Damages Class Members have complied with all applicable provisions of their policies and/or those provisions have been waived by Defendants, or Defendants are estopped from asserting them.

58. By denying coverage and/or refusing to pay policy benefits owned to Plaintiff and the other Damages Class Members, Defendants have breached the policies.

59. As a result, Plaintiff and the other Damages Class Members have sustained substantial damages in an amount to be established at trial.

## COUNT III

### Ohio Deceptive Trade Practices Act

### Ohio DTPA Sub-Class

60. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

61. Defendants, Plaintiff, and the members of the Ohio DTPA Sub-Class are all "persons," as defined by Ohio Rev. Code § 4165.01(D).

62. Defendants' conduct as alleged herein violated the following provisions of Ohio's Deceptive Trade Practices Act, Ohio Rev. Code § 4165.02:

   a. Passing off goods or services as those of another, in violation of Ohio Rev. Code § 4165.02(A)(1);

   b. Representing that its goods and services have characteristics, uses, benefits, or qualities that they do not have, in violation of Ohio Rev. Code § 4165.02(A)(7);

   c. Representing that its goods and services are of a particular standard or quality when they are of another, in violation of Ohio Rev. Code § 4165.02(A)(9); and

   d. Advertising its goods and services with intent not to sell them as advertise, in violation of Ohio Rev. Code § 4165.02(A)(11).

63. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers.

64. Defendants intended to mislead Plaintiff and Ohio DTPA Sub-Class members and induce them to rely on their misrepresentations and omissions.

65. Plaintiff and the Ohio DTPA Sub-Class have been injured as a direct and proximate result of Defendants' violation of Ohio Rev. Code § 4165.02, and were damaged in an amount that will be proven at trial.

66. Plaintiff and Ohio DTPA Sub-Class members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, actual damages, attorneys' fees, and any other relief that is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the proposed nationwide Classes and Ohio Sub-Class, respectfully requests: (a) an order certifying the proposed nationwide Classes and Ohio Sub-Class and appointing Plaintiff and its undersigned counsel to represent the proposed nationwide Classes and Ohio Sub-Class; (b) a declaratory judgment declaring the acts and practices complained of herein to constitute a breach of contract; (c) injunctive relief; (d) an award of actual damages for Plaintiff and members of the nationwide Damages Class and Ohio DTPA Sub-Class in excess of $5,000,000; (e) for costs and expenses; (f) for both pre- and post-judgment interest on any amounts awarded; (g) for payment of reasonable attorneys' fees; (h) for punitive damages; and (i) for such other relief as the Court may deem proper.

Respectfully submitted,

/s/ *Christian A. Jenkins*
Christian A. Jenkins (0070674)
MINNILLO & JENKINS CO., LPA
2712 Observatory Avenue
Cincinnati, Ohio 45208
Tel: (513) 723-1600
Fax: (513) 448-0735
dgast@minnillojenkins.com
cjenkins@minnillojenkins.com

        Jeffrey S. Goldenberg (0063771)
        Todd B. Naylor (0068388)
        GOLDENBERG SCHNEIDER, LPA
        4445 Lake Forest Drive, Suite 490
        Cincinnati, Ohio 45242
        Tel: (513) 345-8291
        Fax: (513) 345-8294
        jgoldenberg@gs-legal.com
        tnaylor@gs-legal.com

        Attorneys for Plaintiff

## JURY DEMAND

With the filing of this Complaint, Plaintiff hereby demands a trial by jury.

        /s/*Christian A. Jenkins*