**EXHIBIT A**

| | |
|---|---|
| __x__ **THE CINCINNATI INSURANCE COMPANY 0244-10677** | **KEEP THIS CARD** |
| _____ **THE CINCINNATI CASUALTY COMPANY 0244-28665** | **IN YOUR MOTOR VEHICLE** |
| _____ **THE CINCINNATI INDEMNITY COMPANY 0244-23280** | **WHILE IN OPERATION** |

AUTOMOBILE LIABILITY I.D. CARD

State — Date Processed
OH — 11-12-2019

Policy No. — Effective Date — Expiration Date
EBA 055 77 79 — 11-04-2019 — 11-04-2020

Insured: TASTE OF BELGIUM LLC

911 E MCMILLAN ST
CINCINNATI, OH 45206-2007

MOTOR VEHICLE INSURED

Year — Make
2017 — FORD TRANSIT CONNECT
Vehicle Identification No.
NM0LS7E78H1318375
**Signature** _____

---

**IN CASE YOU HAVE AN ACCIDENT...**

**CALL YOUR AGENT...**

DRIEHAUS INSURANCE GROUP LLC 34-395

30 GARFIELD PL STE 620
CINCINNATI, OH 45202-4365

513-977-6860

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**P.O. Box 145496, Cincinnati, OH, 45250-5496**
**(513) 870-2000**          AA 4122  09/01

---

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**SERVICE TO YOU IS OUR MAIN CONCERN**

|   | THE CINCINNATI INSURANCE COMPANY 0244-10677 |
|---|---|
| x | THE CINCINNATI CASUALTY COMPANY 0244-28665 |
|   | THE CINCINNATI INDEMNITY COMPANY 0244-23280 |

### AUTOMOBILE LIABILITY I.D. CARD

State                    Date Processed
OH                       11-12-2019

Policy No.          Effective Date          Expiration Date
EBA 055 77 79       11-04-2019              11-04-2020

Insured: TASTE OF BELGIUM LLC

911 E MCMILLAN ST
CINCINNATI, OH 45206-2007

MOTOR VEHICLE INSURED

Year      Make
2012      MINI MINI COOPER
Vehicle Identification No.
WMWZG3C5XCTY37849

**Signature** _____

### IN CASE YOU HAVE AN ACCIDENT. . .
### CALL YOUR AGENT. . .

DRIEHAUS INSURANCE GROUP LLC 34-395

30 GARFIELD PL STE 620
CINCINNATI, OH 45202-4365

513-977-6860

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**P.O. Box 145496, Cincinnati, OH, 45250-5496**
**(513) 870-2000**                    AA 4122  09/01

---

### KEEP THIS CARD
### IN YOUR MOTOR VEHICLE
### WHILE IN OPERATION

We can serve you better if you...

1. Report all claims immediately to the police and to your agent.

2. Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

3. Get the names, addresses, and telephone numbers of any witnesses.

4. Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

### SUPPLEMENTARY PAYMENTS

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy.  The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

### SERVICE TO YOU IS OUR MAIN CONCERN

| | |
|---|---|
| **x** THE CINCINNATI INSURANCE COMPANY 0244-10677<br>_____ THE CINCINNATI CASUALTY COMPANY 0244-28665<br>_____ THE CINCINNATI INDEMNITY COMPANY 0244-23280 | **KEEP THIS CARD**<br>**IN YOUR MOTOR VEHICLE**<br>**WHILE IN OPERATION** |

AUTOMOBILE LIABILITY I.D. CARD

State         Date Processed
OH            11-12-2019

Policy No.       Effective Date     Expiration Date
EBA 055 77 79   11-04-2019    11-04-2020

Insured: TASTE OF BELGIUM LLC


911 E MCMILLAN ST
CINCINNATI, OH 45206-2007



MOTOR VEHICLE INSURED

Year    Make
2016    FORD TRANSIT
Vehicle Identification No.
1FTYR1ZM9GKA70423
**Signature** _____

**We can serve you better if you...**

**1.** Report all claims immediately to the police and to your agent.

**2.** Get the names, addresses, and telephone numbers of all drivers, owners, and occupants of the other cars involved.

**3.** Get the names, addresses, and telephone numbers of any witnesses.

**4.** Do not accept responsibility or discuss the accident with anyone except a police officer or a representative of this Company.

**SUPPLEMENTARY PAYMENTS**

This Company agrees, through its Representative or otherwise, to pay premiums or costs on bonds to release attachments, also, the premium on or cost of bail bonds not to exceed the limit per bail bond listed in "supplementary payments" in the policy. The Company has no obligation to apply for or furnish any such bonds.

CONSULT YOUR POLICY FOR ACTUAL COVERAGE IN FORCE ON SPECIFIC VEHICLES.

**IN CASE YOU HAVE AN ACCIDENT. . .**

**CALL YOUR AGENT. . .**

DRIEHAUS INSURANCE GROUP LLC 34-395

30 GARFIELD PL STE 620
CINCINNATI, OH 45202-4365


513-977-6860


**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**


**P.O. Box 145496, Cincinnati, OH, 45250-5496**
**(513) 870-2000**             AA 4122 09/01

**SERVICE TO YOU IS OUR MAIN CONCERN**



**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

**Policy Number:** ECP 055 77 79

**Effective Date:** 11-04-2019

**Named Insured:** TASTE OF BELGIUM LLC

For professional advice and policy questions or changes, please contact your local independent agency:

DRIEHAUS INSURANCE GROUP LLC
30 GARFIELD PL STE 620
CINCINNATI, OH 45202-4365

513-977-6860

Dear Policyholder:

**Thank you**
Thank you for trusting The Cincinnati Insurance Companies with your commercial insurance coverage. We recognize that locally based independent agents have the working knowledge to help you choose the right insurance company for your needs. Together with your local independent insurance agency, we are committed to providing you with the highest level of service.

Please review your enclosed policy information to verify your coverage details, as well as deductibles and coverage amounts. Should your needs change, your agent is available to review and update your policy.

**Please promptly report claims**
If you experience a policy-related loss, you may report it by contacting your local professional independent agency representing The Cincinnati Insurance Companies or by directly calling us toll-free at **877-242-2544** and providing your policy number and claim-related information.

Sincerely,

Sean M. Givler
Senior Vice President - Commercial Lines

**IA 4443 04 14**



THE CINCINNATI INSURANCE COMPANIES

The Cincinnati Insurance Company ■ The Cincinnati Indemnity Company
The Cincinnati Casualty Company

Today's Date:   **11-12-2019**

To:  **TASTE OF BELGIUM LLC**

Policy Number:   **ECP 055 77 79**
Expiration Date:   **11-04-2020**
Agency:   **DRIEHAUS INSURANCE GROUP LLC 34-395**

### Data breach and identity recovery support and resources included with your insurance policy

Dear Policyholder:

Your policy includes Cincinnati Data Defender™ coverage for an additional premium, helping to safeguard your business against the rising costs of a data breach and offering services to assist you in the event of identity theft. Please save this information so you can access all the tools and resources that come with your cyber protection coverage. Refer to Cincinnati Data Defender Coverage Form, HC102, for a complete statement of coverages, exclusions and limits of insurance.

### Policyholder tools and resources
*Data breach portal* - You gain access to *www.eriskhub.com/cic*, a website that provides you with the comprehensive, on-demand resources you need to:
- Prepare in advance:
    - Access online resources when you need them
    - Create your breach response plan from the template
    - Learn about breach laws that apply to your business
- Review risk management resources:
    - Use the compliance reference guide and notification letter examples
    - Locate credit bureau and government agency notification information
    - Learn how to contact data risk management experts for more help
- Manage your breach response:
    - Call the help line for breach information and assistance
    - Arrange assistance with notification letters
    - Access public relations resources to help you respond to the media

The first time you visit this website, please complete new user registration using this information:

### Access code = 12116-868

*Identity theft services* – You also receive case management services and reimbursement for covered expenses if you, as a business owner, become the victim of identity theft or account takeover. If you suspect that you may be an identity theft victim or you have questions, please call our Identity Recovery Help Line, 866-219-9831.

**IA4463 (01/16)**

Page 2 of 2

**Claims services**

If you suspect or know that a data breach may have exposed or compromised your organization's private, customer or personal data, a swift response is critical for your protection. Please note that the Web portal and help line provide advice and information, and using them does not satisfy any notice of claim requirement. The only way to report a claim is to contact your independent agent or call us directly, 877-242-2544. Your agent and Cincinnati Insurance will work with you to preserve your company's goodwill, prevent regulatory sanctions or fines, avoid civil litigation and safeguard your business reputation.

Please contact your agent representing Cincinnati with questions about this valuable coverage.

Thank you for trusting your agent and Cincinnati to protect your business.

Sincerely,

**COMMERCIAL LINES DEPARTMENT**

Commercial Lines

**IA4463 (01/16)**

# NOTICE TO POLICYHOLDERS
# DIRECT BILL ACCOUNT CREDIT PROCEDURE

This is a notice of how an account credit will be applied to your policy or to all of the policies being billed as single account.

**Account Credits**

**A.** If your account is comprised of **a single policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied to that policy. If your account does not have a future installment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account. If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

**B.** If your account is comprised of **more than one policy** and an endorsement or premium audit results in a credit (return premium), the credit is applied in the following manner:

• Payments previously applied to your account are deferred.

• The credit that results from the endorsement or audit is applied to the policy generating the credit.

• The payments that were deferred are then reapplied to the account in order to satisfy the amount due.

• Any excess payment that results from the credit is applied proportionately to your policies with a future payment or installment due.

• If you do not wish for credits to be automatically applied to future unpaid installments, please contact us to request a refund. Please note that the amount of the refund may vary based upon the date you contact us and your billing schedule.

• If your account does not have a future installment or payment due at the time the endorsement or audit is processed, the credit is refunded to the payor listed for your account.

(Does not apply to audit return premium for payors located in New York; Does not apply to premiums due more than 30 days from the date of processing for payors located in New Hampshire. These credits are automatically refunded to the payor)

To request a refund, contact us at:

| Mailing Address | Toll free phone number | Electronic mail |
|---|---|---|
| The Cincinnati Insurance Company<br>PO Box 14529<br>Cincinnati, OH 45250-0529 | 877-942-2455 | CinciBill@cinfin.com |

**IA 4407 03 13**

# DISCLOSURE OF DIRECT BILL FEES AND CHARGES

NO COVERAGE IS PROVIDED BY THIS DISCLOSURE, nor can it be construed to replace any provision of your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE CAREFULLY for complete information on the coverages provided.

Your insurance premium is being paid directly to us rather than to your insurance agency. We appreciate your prompt payment of the premium. Please note that these fees apply only in the event your payment is late, is returned to us for insufficient funds, or if your policy was previously canceled for nonpayment of premium and has been reinstated at either your or your agents request. We are not required to reinstate a policy once cancellation for nonpayment of premium has become effective. The decision to reinstate coverage is solely at the discretion of the company.

Not all fees are applicable in all states. The types of fees are listed below. Following the description of each fee, we list the states where the fee applies and the amount of the fee. Fees are not levied in KY, MD, MT and NC.

**Non-Sufficient Funds (NSF) Charge:** The first time a premium payment is returned due to Non-Sufficient Funds (NSF), the premium due is the installment amount. For each succeeding return of payment while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, NJ, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI, WV and WY.

**Reinstatement Charge:** The first time your account is reinstated for nonpayment of premium, the premium due is the installment amount. For each succeeding reinstatement due to nonpayment of premium while continuously insured with The Cincinnati Insurance Companies, a charge is added to your next account statement. The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, RI, and SC;

$15 MA;

$20 NY; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA and WY.

**Late Charge:** A charge is added to your next account statement each time your payment is received and processed after the due date as shown on the account statement. This fee will not apply to Electronic Funds Transfer (EFT). The amount of the charge is determined by the fees filed with and approved by the state where the payor of your account is located.

$10 AK, FL, RI, and SC;

$15 MA; and

$25 AL, AZ, AR, CA, CO, CT, DE, DC, GA, HI, ID, IL, IN, IA, KS, LA, ME, MI, MN, MS, MO, NE, NV, NH, NM, ND, OH, OK, OR, PA, SD, TN, TX, UT, VT, VA, WA, WI and WY.

**IA 4421 03 13**



# The Cincinnati Insurance Company
### A Stock Insurance Company

**Headquarters**: 6200 S. Gilmore Road, Fairfield, OH 45014-5141
**Mailing address**: P.O. Box 145496, Cincinnati, OH 45250-5496
*www.cinfin.com* ■ 513-870-2000

NEW
Previous Policy Number

## CinciPak™
# FOR RESTAURANTS
# COMMON POLICY DECLARATIONS

Billing Method: **DIRECT BILL**

POLICY NUMBER    **ECP 055 77 79 / EBA 055 77 79**

**NAMED INSURED**    TASTE OF BELGIUM LLC
                     REFER TO IA905
**ADDRESS**          911 E MCMILLAN ST
(Number & Street,    CINCINNATI, OH 45206-2007
Town, County,
State & Zip Code)

**Policy Period:**    At 12:01 A.M., STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE

**All coverages except Automobile and / or Garage**
    Policy number:  **ECP 055 77 79**          FROM: **11-04-2019**    TO: **11-04-2020**

**Automobile and / or Garage**
    Policy number:  **EBA 055 77 79**          FROM: **11-04-2019**    TO: **11-04-2020**

Agency    **DRIEHAUS INSURANCE GROUP LLC 34-395**
City      **CINCINNATI, OH**

**Legal Entity / Business Description**

**LIMITED LIABILITY COMPANY**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
| | | |
|---|---|---|
| IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| ICP101 | 05/11 | CINCIPAK™ SUMMARY OF PREMIUMS CHARGED |
| IA904 | 04/04 | SCHEDULE OF LOCATIONS |
| IA905 | 02/98 | NAMED INSURED SCHEDULE |
| IA4236 | 01/15 | POLICYHOLDER NOTICE TERRORISM INSURANCE COVERAGE |
| IP446 | 08/01 | NOTICE TO POLICYHOLDERS |
| IA4006 | 07/10 | SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT |
| IA4121OH | 01/16 | OHIO CHANGES - CANCELLATION AND NONRENEWAL |
| IA4238 | 01/15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |
| IA4338 | 05/11 | SIGNATURE ENDORSEMENT |
| IL0021 | 11/85 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| FM502 | 07/08 | COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS |
| GA532 | 07/08 | COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS |
| GA536OH | 03/10 | OHIO EMPLOYERS LIABILITY DEFENSE EXPENSES COVERAGE PART DECLARATIONS |
| GA539 | 07/08 | LIQUOR LIABILITY COVERAGE PART DECLARATIONS |
| MA573 | 06/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS |
| CA516 | 03/09 | CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL ENTITIES) |

ICP 517 07 11

FORMS APPLICABLE TO ALL COVERAGE PARTS:
AA505    03/06  BUSINESS AUTO COVERAGE PART DECLARATIONS
USC513   05/10  COMMERCIAL UMBRELLA LIABILITY COVERAGE PART DECLARATIONS
HC502    01/18  CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

---

11-12-2019 09:19

Countersigned _____    By _____
                        (Date)                          (Authorized Representative)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections and Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer of Your Rights and Duties Under this Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

# CinciPak™
# SUMMARY OF PREMIUMS CHARGED

Attached to and forming part of
POLICY NUMBER:  **ECP 055 77 79 / EBA 055 77 79**          Effective Date: **11-04-2019**

Named Insured:  **TASTE OF BELGIUM LLC**

## THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE
## PARTS FOR WHICH A PREMIUM CHARGE IS INDICATED

| Coverage Part | | Premium | |
|---|---|---|---|
| Commercial Property Coverage Part   **W/EBC** | | $ 10,788 | STR |
| Commercial General Liability Coverage Part | | $ 9,137 | |
| Commercial Crime Coverage Part | | $ 1,191 | |
| Electronic Data Processing Equipment Coverage Part | | $ INCL | STR |
| Commercial Auto Coverage Part | | $ 6,093 | |
| Commercial Umbrella / Excess Liability Coverage Part | | $ 5,211 | |
| **DATA DEFENDER COVERAGE PART** | | $ 143 | |
| **EMPLOYERS LIABILITY DEFENSE EXPENSES - OH** | | $ 1,310 | |
| **LIQUOR LIABILITY** | | $ 2,857 | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| | | $ | |
| Terrorism Coverage | | $ 243 | |
| Installment Charge | | $ | |
| **ANNUAL TOTAL** | | $ 36,973 | |

**PAYMENTS**

| | First Installment | Remaining Installment(s) |
|---|---|---|
| **MONTHLY** | * | * |

**\*SEE BILLING STATEMENT MAILED SEPARATELY**

Automobile Coverages, Employers Liability, Employment Practices Liability Coverage, Professional Liability Coverage, Terrorism Coverage and / or Wrongful Acts Coverage, if included in the policy, are subject to Annual Adjustment of rates and premium on each anniversary of the policy.

Commercial Umbrella and Excess Liability, if included in the policy, may be subject to Annual Adjustment of premium on each anniversary. Refer to the Commercial Umbrella or Excess Liability Coverage Part Declarations form to see if this is applicable.

## ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

**ICP 101 05 11**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SCHEDULE OF LOCATIONS

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 911 E MCMILLAN ST | CINCINNATI, OH 45206-2007 | | |
| 2 | 1133 VINE ST | CINCINNATI, OH 45202-7226 | | |
| 3 | 2845 SHORT VINE ST | CINCINNATI, OH 45219-2020 | | |
| 4 | 3825 EDWARDS RD | CINCINNATI, OH 45209-1287 | | |
| 5 | 16 W FREEDOM WAY | CINCINNATI, OH 45202-3513 | | |
| 6 | 1801 RACE ST | CINCINNATI, OH 45202-5932 | | |
| 7 | 59 SPRUCE ST | COLUMBUS, OH 43215-1622 | | |
| 8 | 2700 O'VARSITY WAY | CINCINNATI, OH 45206 | | |

**IA 904 04 04**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NAMED INSURED SCHEDULE

This Schedule supplements the Declarations.

**SCHEDULE**

Named Insured:

```
TASTE OF BELGIUM LLC, TASTE OF BELGIUM FINDLAY LLC, TASTE OF BELGIUM
NORTH MARKET LLC, TASTE OF BELGIUM AT THE BANKS LLC, TASTE OF BEGIUM
PEO LLC, TASTE OF BELGIUM WWHQ LLC, TASTE OF BELGIUM EVENTS LLC,
TASTE OF BELGIUM OVER THE RHINE LLC, TASTE OF BELGIUM SHORT VINE LLC,
TASTE OF BELGIUM ROOKWOOD LLC, JEAN FRANCOIS FLECHET
```

**IA 905 02 98**

# POLICYHOLDER NOTICE
# TERRORISM INSURANCE COVERAGE

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

Your policy may contain coverage for certain losses caused by terrorism.

## Premium:

In accordance with the federal Terrorism Risk Insurance Act, we are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

- Refer to the SUMMARY OF PREMIUMS CHARGED or DECLARATIONS PAGE for the portion of your premium that is attributable to coverage for terrorist acts certified under the Act.

## Federal Participation:

The Act also requires us to provide disclosure of federal participation in payment of terrorism losses.

- Under your policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States Government, Department of Treasury, under a formula established by federal law. Under this formula, the federal share equals a percentage, as specified in the Schedule below, of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

- **Schedule:**

| Federal Share of Terrorism Losses | |
|---|---|
| **Percentage** | **Calendar Year** |
| 85% | 2015 |
| 84% | 2016 |
| 83% | 2017 |
| 82% | 2018 |
| 81% | 2019 |
| 80% | 2020 |

## Cap on Insurer Participation:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**NOTE:  IF YOUR POLICY IS A RENEWAL POLICY, THIS NOTICE IS PROVIDED TO SATISFY THE REQUIREMENTS UNDER THE TERRORISM RISK INSURANCE ACT FOR POLICYHOLDER DISCLOSURE: (1) AT THE TIME OF OUR OFFER TO RENEW THE POLICY AND (2) AT THE TIME THE RENEWAL IS COMPLETED.**

**IA 4236 01 15**

# THE CINCINNATI INSURANCE COMPANY
# THE CINCINNATI CASUALTY COMPANY
# THE CINCINNATI INDEMNITY COMPANY

## NOTICE TO POLICYHOLDERS

Please be advised that in your application for insurance you disclosed information to The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company.  The information disclosed in the application and all information subsequently collected by any of these companies may be shared among all three.

**IP 446 08 01**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL PER OCCURRENCE DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**CRIME AND FIDELITY COVERAGE PART**

**A. Special Per Occurrence Deductible**

1. If an "occurrence" happens to Covered Property under the Commercial Property Coverage Part and to Covered Property under at least one of the following:

   **a.** The Commercial Inland Marine Coverage Part, and

   **b.** The Crime and Fidelity Coverage Part;

   the most we will deduct from any loss or damage in any one "occurrence" is the deductible indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS.**

2. This endorsement does not apply to any of the forms listed in Paragraphs **a.** and **b.:**

   **a.** * Electronic Data Processing Coverage Form, Section III, 2. Deductible, a.(2) Specified Losses Deductible

   * Water Backup from Sewers, Drains, Septic Systems or Sump Pumps Endorsement

   Windstorm or Hail Percentage Deductible Form

   Earthquake and Volcanic Eruption Endorsement

   Earthquake and Volcanic Eruption Endorsement (Sub-Limit Form)

   Flood Coverage Endorsement

   Equipment Breakdown Coverage (Including Production Equipment)

   Equipment Breakdown Coverage (Excluding Production Equipment)

   * Temperature Change Coverage Form

   Commercial Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft, 2. Forgery or Alteration, 6. Computer Fraud and 7. Funds Transfer Fraud

   Crime Expanded Coverage (XC®) Coverage or Expanded Coverage Plus Forms, A. Insuring Agreements, 1. Employee Theft and 2. Forgery or Alteration

   Government Crime Coverage Form, A. Insuring Agreements, 1. Employee Theft - Per Loss Coverage, 2. Employee Theft - Per Employee Coverage, 3. Forgery or Alteration, 7. Computer Fraud and 8. Funds Transfer Fraud

   **\*** Or such coverage as provided in the CinciPlus® Commercial Property or Commercial Property Power Expanded Coverage or Expanded Coverage Plus Forms

   **b.** ☐ Other

---

**IA 4006 07 10**                                                      **Page 1 of 2**

**B. Definition**

For the purpose of this endorsement only, any definition of "occurrence" is deleted in its entirety and the following definition is added to:

1. **COMMERCIAL PROPERTY CONDITIONS,**
2. **COMMERCIAL INLAND MARINE CONDITIONS,**
3. **COMMERCIAL CRIME COVERAGE FORM,**
4. **CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM, and**
5. **GOVERNMENT CRIME COVERAGE FORM:**

**"Occurrence"** means all loss, damage, or a sequence of loss or damage, casualties or disasters arising from a single happening or event.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
CHEMICAL DRIFT LIMITED LIABILITY COVERAGE PART - CLAIMS-MADE
CINCINNATI CYBER DEFENSE™ COVERAGE PART
CINCINNATI DATA DEFENDER™ COVERAGE PART
CINCINNATI NETWORK DEFENDER™ COVERAGE PART
CLAIMS - MADE EXCESS LIABILITY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME AND FIDELITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
COMMERCIAL UMBRELLA LIABILITY COVERAGE PART
CONTRACTOR'S ERRORS AND OMISSIONS COVERAGE FORM CLAIMS-MADE
CONTRACTOR'S LIMITED POLLUTION LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE FORM
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART
EMPLOYEE BENEFIT LIABILITY COVERAGE PART
EXCESS LIABILITY COVERAGE PART
EXCESS WORKERS COMPENSATION AND EMPLOYERS LIABILITY COVERAGE FORM
FARM COVERAGE PART
GOLF COURSE CHEMICAL APPLICATION LIMITED LIABILITY COVERAGE PART
HOLE-IN-ONE COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MACHINERY AND EQUIPMENT COVERAGE PART
MANUFACTURER'S ERRORS AND OMISSIONS COVERAGE FORM - CLAIMS-MADE
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART
PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE

**A.** With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, or is a policy for medical malpractice professional liability, the **Cancellation** Common Policy Condition is replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy only for one or more of the following reasons, except as provided in Paragraph **6.** below:

   a. Nonpayment of premium;

   b. Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

   c. Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

   d. The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

   e. Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

**f.** Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

**g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

**3.** We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

**4.** We will mail the notice of cancellation at least:

    **a.** 10 days from the effective date of cancellation, if we cancel for nonpayment of premium; or

    **b.** 30 days from the effective date of cancellation, if we cancel for a reason stated in the **2.b.** through **2.g.** above; or

    **c.** 60 days from the effective date of cancellation, if we cancel for a reason stated in **2.b.** through **2.g.** above, applicable to medical malpractice professional liability coverage.

**5. a.** The notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    **b.** The notice will also contain the date of the notice and the policy number, and will state the reason for cancellation.

**6.** Policies written for a term of more than one year may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation or upon 60 days' written notice of cancellation applicable to medical malpractice professional liability coverage.

**7.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we or the first Named Insured cancels, the refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

**B.** The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

**NONRENEWAL**

**1.** If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy. We will state the reason for nonrenewal for medical malpractice professional liability coverage.

**2.** We will mail the notice of nonrenewal at least 30 days before:

    **a.** The expiration date of the policy; or

    **b.** The anniversary date of this policy, if the policy is written for a term of more than one year.

**3.** We will mail the notice of nonrenewal at least 60 days before:

    **a.** The expiration date of the policy; or

    **b.** The anniversary date of this policy, if the policy is written for a term of more than one year,

for medical malpractice professional liability.

**4.** Proof of mailing will be sufficient proof of notice.

**C. 1.** Paragraph **A.2.a.** of the **Businessowners** Common Policy Conditions is deleted.

**2.** Paragraph **E.2.** of the **Cancellation** Common Policy Condition in the **Standard Property Policy** is deleted. Paragraph **E.2.** is deleted in its entirety and is replaced by the following (unless Item **A.** of this endorsement applies):

We may cancel this policy by mailing or delivering to the first Named Insured, and agent if any, written notice of cancellation at least:

    **a.** 10 days before the effective date of the cancellation, if we cancel for nonpayment of premium; or

    **b.** 30 days before the effective date, if we cancel for any other reason.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**All Commercial Lines Coverage Parts, Coverage Forms, Policies and Endorsements subject to the federal Terrorism Risk Insurance Act and any amendments and extensions thereto**

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B. Cap On Losses from Certified Acts of Terrorism**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that ex-

ceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**C. Application of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability, omission or absence of a terrorism exclusion, does not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part, Coverage Form, Policy or Endorsement such as losses excluded by:

**1.** Exclusions that address war, warlike action, insurrection, rebellion, revolution, military action, nuclear hazard, nuclear materials, nuclear reaction, radiation, or radioactive contamination;

**2.** Exclusions that address pollutants, contamination, deterioration, fungi or bacteria; or

**3.** Any other exclusion,

regardless if the "certified act of terrorism" contributes concurrently or in any sequence to the loss.

**D. Sunset Clause**

If the federal Terrorism Risk Insurance Act expires or is repealed, then this endorsement is null and void for any act of terrorism that takes place after the expiration or repeal of the Act.

Includes copyrighted material of ISO Properties, Inc. and American Association of Insurance Services, with their permission.

**IA 4238 01 15**

# SIGNATURE ENDORSEMENT

IN WITNESS WHEREOF, this policy has been signed by our President and Secretary in the City of Fairfield, Ohio, but this policy shall not be binding upon us unless countersigned by an authorized representative of ours. The failure to countersign does not void coverage in Arizona, Virginia and Wisconsin.

Secretary

President

The signature on any form, endorsement, policy, declarations, jacket or application other than the signature of the President or Secretary named above is deleted and replaced by the above signatures.

**IA 4338 05 11**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following;

> **BUSINESSOWNERS POLICY**
> **COMMERCIAL AUTO COVERAGE PART**
> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
> **FARM COVERAGE PART**
> **PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**
> **LIQUOR LIABILITY COVERAGE PART**
> **POLLUTION LIABILITY COVERAGE PART**
> **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
> **RAILROAD PROTECTIVE LIABILITY COVERAGE PART**
> **SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION**

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured;" or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" include radioactive, toxic or explosive properties;

   "Nuclear material," means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

   "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

   "Nuclear facility" means:

      (a) Any "nuclear reactor;"

      (b) Any equipment or device designed or used for (1) separating the iso-

topes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams or uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;"

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

# THE **CINCINNATI INSURANCE COMPANY**

### A Stock Insurance Company

## COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER:  **ECP 055 77 79**

Named Insured is the same as it appears on the Common Policy Declarations unless otherwise stated here.

**Loc.**  **(address)**
PER STATEMENT OF VALUES ON FILE
REFER TO IA904

| | | | | | OPTIONAL COVERAGES Applicable only when an entry is made | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **COVERAGE PROVIDED** | | | Coin-surance | Covered Cause Of Loss | | | | | Business Income Indemnity | | |
| Item | Coverage | Limits | | | Inflation Guard (%) | Replace-ment Cost (x) | Replace-ment Cost Incl. Stock (x) | Agreed Value (x) | Monthly Limit (fraction) | Maximum Period (X) | Extended Period (Days) |
| | BLANKET BUSINESS PERSONAL PROPERTY INCLUDING IMPROVEMENTS AND BETTERMENTS | 6,734,740 | 100% | SPECIAL | 4% | X | | | | | |
| 1 | BUSINESS INCOME W/EXTRA EXPENSE (a) | 12 MONTHS ALS | | SPECIAL | | | | | | | 90 |
| 2 | BUSINESS INCOME W/EXTRA EXPENSE (a) | 12 MONTHS ALS | | SPECIAL | | | | | | | 90 |
| 3 | BUSINESS INCOME W/EXTRA EXPENSE (a) | 12 MONTHS ALS | | SPECIAL | | | | | | | 90 |
| 4 | BUSINESS INCOME W/EXTRA EXPENSE (a) | 12 MONTHS ALS | | SPECIAL | | | | | | | 90 |
| 5 | BUSINESS INCOME W/EXTRA EXPENSE (a) | 12 MONTHS ALS | | SPECIAL | | | | | | | 90 |
| 6 | BUSINESS INCOME W/EXTRA EXPENSE (a) | 12 MONTHS ALS | | SPECIAL | | | | | | | 90 |
| 7 | BUSINESS INCOME W/EXTRA EXPENSE (a) | 12 MONTHS ALS | | SPECIAL | | | | | | | 90 |
| 8 | BUSINESS INCOME W/EXTRA EXPENSE (a) | 12 MONTHS ALS | | SPECIAL | | | | | | | 90 |

DEDUCTIBLE: $500.00 unless otherwise stated $    2,500

MORTGAGE HOLDER

| Item | Name and Address |
|---|---|

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:
FM101    05/16 BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)

FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

| | | |
|---|---|---|
| FCP401 | 05/16 | CINCIPLUS® CINCIPAK™ PROPERTY XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS |
| FCP201 | 05/16 | CINCIPAK™ COMMERCIAL PROPERTY AMENDATORY ENDORSEMENT |
| FCP202 | 05/16 | CINCIPAK™ BUSINESS INCOME (AND EXTRA EXPENSE) AMENDATORY ENDORSEMENT |
| FCP203 | 05/16 | CINCIPAK™ ACTUAL LOSS SUSTAINED BUSINESS INCOME ENDORSEMENT |
| FCP204 | 05/16 | CINCIPLUS® CINCIPAK™ PROPERTY XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |
| FCP227 | 05/16 | CINCIPAK™ EATING ESTABLISHMENT FOOD CONTAMINATION BUSINESS INTERRUPTION ENDORSEMENT |
| CP9993 | 10/90 | TENTATIVE RATE |
| FA4078OH | 05/17 | OHIO CHANGES - COMMERCIAL PROPERTY |
| FA450 | 05/16 | COMMERCIAL PROPERTY CONDITIONS |
| FA480 | 02/16 | LOSS PAYABLE PROVISIONS |
| FA244 | 05/11 | EQUIPMENT BREAKDOWN COVERAGE (EXCLUDING PRODUCTION MACHINERY) |
| FA202 | 05/16 | TEMPERATURE CHANGE LOSS FORM |
| FA213 | 05/16 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM (INCLUDING SPECIAL CAUSES OF LOSS)

## TABLE OF CONTENTS

Begins on Page

SECTION A. COVERAGE .................................................................................3
  1. **Covered Property** ...........................................................................3
    a.  **Building** .................................................................................3
    b.  **Outdoor Signs** .....................................................................3
    c.  **Outdoor Fences** ..................................................................3
    d.  **Business Personal Property** ..............................................3
  2. **Property Not Covered** ....................................................................4
    a.  **Accounts, Deeds, Money or Securities** ..........................4
    b.  **Animals** .................................................................................4
    c.  **Automobiles** .........................................................................4
    d.  **Contraband** ..........................................................................4
    e.  **Electronic Data** ....................................................................4
    f.  **Excavations, Grading & Backfilling** .................................4
    g.  **Foundations** .........................................................................4
    h.  **Land, Water or Growing Crops** ..........................................4
    i.  **Paved Surfaces** ...................................................................4
    j.  **Property While Airborne or Waterborne** ...........................4
    k.  **Pilings or Piers** ....................................................................4
    l.  **Property More Specifically Insured** ..................................4
    m.  **Retaining Walls** ...................................................................4
    n.  **Underground Pipes, Flues or Drains** ................................4
    o.  **Valuable Papers & Records and Cost to Research** ........5
    p.  **Vehicles or Self-Propelled Machines** ...............................5
    q.  **Property While Outside of Buildings** ................................5
  3. **Covered Causes of Loss** ...............................................................5
    a.  **Covered Causes of Loss** ...................................................5
    b.  **Exclusions** ...........................................................................5
    c.  **Limitations** .........................................................................11
  4. **Additional Coverages** .................................................................13
    a.  **Change in Temperature or Humidity** ..............................13
    b.  **Debris Removal** .................................................................13
    c.  **Fire Department Service Charge** .....................................14
    d.  **Fire Protection Equipment Recharge** .............................14
    e.  **Inventory or Appraisal** .....................................................14
    f.  **Key and Lock Expense** .....................................................15
    g.  **Ordinance or Law** .............................................................15
    h.  **Pollutant Clean Up and Removal** ...................................16
    i.  **Preservation of Property** .................................................16
    j.  **Rewards** .............................................................................16

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

## TABLE OF CONTENTS (CONT'D)

**Begins on Page**

  5.  **Coverage Extensions** ......................................................................................16
      a.  **Accounts Receivable**................................................................................17
      b.  **Business Income and Extra Expense**.......................................................18
      c.  **Collapse** ..................................................................................................21
      d.  **Electronic Data**.......................................................................................22
      e.  **Exhibitions, Fairs or Trade Shows**..........................................................23
      f.  **Fences** ...................................................................................................23
      g.  **Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**...................23
      h.  **Glass** .....................................................................................................24
      i.  **Newly Purchased, Leased or Constructed Property**................................25
      j.  **Nonowned Building Damage**....................................................................26
      k.  **Outdoor Property**...................................................................................26
      l.  **Personal Effects**.....................................................................................26
      m.  **Property Off Premises**.............................................................................27
      n.  **Signs**......................................................................................................27
      o.  **Trailers (Nonowned Detached)**................................................................27
      p.  **Transportation** .......................................................................................27
      q.  **Utility Services** ......................................................................................27
      r.  **Valuable Papers and Records** ................................................................28
      s.  **Water Damage, Other Liquids, Powder or Molten Material Damage** ...........29
**SECTION B. LIMITS OF INSURANCE**..................................................................29
**SECTION C. DEDUCTIBLE**..................................................................................29
  1.  **Deductible Examples**................................................................................30
  2.  **Glass Deductible**.....................................................................................30
**SECTION D. LOSS CONDITIONS**.......................................................................30
  1.  **Abandonment**..........................................................................................30
  2.  **Appraisal**................................................................................................30
  3.  **Duties in the Event of Loss or Damage** ..................................................30
  4.  **Loss Payment**.........................................................................................31
  5.  **Recovered Property**................................................................................34
  6.  **Vacancy**.................................................................................................34
      a.  **Description of Terms**................................................................................34
      b.  **Vacancy Provisions**.................................................................................34
  7.  **Valuation**................................................................................................34
**SECTION E. ADDITIONAL CONDITIONS**............................................................35
  1.  **Coinsurance**............................................................................................35
  2.  **Mortgage Holders** ..................................................................................36
**SECTION F. OPTIONAL COVERAGES**................................................................36
  1.  **Agreed Value**..........................................................................................37
  2.  **Inflation Guard** .......................................................................................37
  3.  **Replacement Cost**...................................................................................37
**SECTION G. DEFINITIONS**..................................................................................38

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM
# (INCLUDING SPECIAL CAUSES OF LOSS)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION G. DEFINITIONS.**

## SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations:

#### a. Building

Building, means the building or structure described in the Declarations, including:

**(1)** Completed additions;

**(2)** Fixtures, including outdoor fixtures;

**(3)** Permanently installed:

    **(a)** Machinery and equipment;

    **(b)** Building glass, including any lettering and ornamentation;

    **(c)** Signs attached to a building or structure that is Covered Property;

    **(d)** Awnings and canopies;

**(4)** Personal property owned by you that is used to maintain or service a covered building or its "premises", including:

    **(a)** Fire extinguishing equipment;

    **(b)** Outdoor furniture;

    **(c)** Floor coverings; and

    **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

**(5)** If not covered by other insurance:

    **(a)** Additions under construction, alterations and repairs to a covered building;

    **(b)** Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "premises", used for making additions, alterations or repairs to a covered building.

#### b. Outdoor Signs

Your outdoor signs permanently installed and not attached to a covered building, and located within 1,000 feet of the "premises".

#### c. Outdoor Fences

Your outdoor fences.

#### d. Business Personal Property

Your Business Personal Property consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater. Your Business Personal Property consists of the following unless otherwise specified in the Declarations or on the **BUSINESS PERSONAL PROPERTY - SEPARATION OF COVERAGE ENDORSEMENT.**

**(1)** Furniture;

**(2)** Machinery and equipment;

**(3)** "Stock";

**(4)** All other personal property owned by you and used in your business;

**(5)** The cost of labor, materials or services furnished or arranged by you on personal property of others;

**(6)** Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

    **(a)** Made a part of the building or structure you occupy but do not own; and

    **(b)** You acquired or made at your expense but cannot legally remove;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(7)** Leased personal property used in your business for which you have a contractual responsibility to insure. Such leased property is not considered personal property of others in your care, custody or control;

**(8)** Personal Property of Others that is in your care, custody or control or for which you are legally liable.

    **(a)** This does not include personal effects owned by you, your officers, your partners, or if you are a limited liability company, your members or your managers, or your employees (including leased and temporary workers), except as provided in **5. Coverage Extensions, l. Personal Effects**;

    **(b)** This does not include property of others for which you are legally liable as:

      **1)** A carrier for hire; or

      **2)** An arranger of transportation, including car loaders, consolidators, brokers, freight forwarders, or shipping associations; and

**(9)** Sales samples.

**2.** <u>Property Not Covered</u>

Covered Property does not include:

**a.** <u>Accounts, Deeds, Money or Securities</u>

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable,** Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

**b.** <u>Animals</u>

Animals, unless

**(1)** Owned by others and boarded by you; or

**(2)** Owned by you and covered as "stock" while inside of buildings;

and then only as provided in **3. Covered Causes of Loss, c. Limitations**.

**c.** <u>Automobiles</u>

Automobiles held for sale;

**d.** <u>Contraband</u>

Contraband, or property in the course of illegal transportation or trade;

**e.** <u>Electronic Data</u>

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data,** "Electronic data". This Paragraph **e.** does not apply to your "stock" of prepackaged software or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**f.** <u>Excavations, Grading & Backfilling</u>

The cost of excavations, grading, backfilling or filling;

**g.** <u>Foundations</u>

Foundations of buildings, structures, machinery or boilers, if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground, if there is no basement.

**h.** <u>Land, Water or Growing Crops</u>

Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetative roof);

**i.** <u>Paved Surfaces</u>

Bridges, roadways, walks, patios or other paved surfaces;

**j.** <u>Property While Airborne or Waterborne</u>

Personal property while airborne or waterborne;

**k.** <u>Pilings or Piers</u>

Pilings, piers, bulkheads, wharves or docks;

**l.** <u>Property More Specifically Insured</u>

Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except as provided in **G. Other Insurance** of the **COMMERCIAL PROPERTY CONDITIONS**;

**m.** <u>Retaining Walls</u>

Retaining walls that are not part of any building described in the Declarations;

**n.** <u>Underground Pipes, Flues or Drains</u>

Underground pipes, flues or drains;

**o.** **Valuable Papers & Records and Cost to Research**

Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records,** the cost to research, replace or restore the information on "valuable papers and records", including those which exist as "electronic data".

This does not apply to "valuable papers and records" held for sale by you.

**p.** **Vehicles or Self-Propelled Machines**

Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the "premises".

This paragraph does not apply to:

**(1)** Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

**(2)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(3)** Rowboats or canoes out of water and located at the "premises"; or

**(4)** Trailers, but only as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, o. Trailers (Nonowned Detached).**

**q.** **Property While Outside of Buildings**

The following property while outside of buildings (except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions**):

**(1)** Grain, hay, straw or other crops;

**(2)** Signs, except:

**(a)** Signs attached to a covered building or structure;

**(b)** Signs for which a Limit of Insurance is shown in the Declarations.

**(3)** Outdoor fences, except outdoor fences for which a Limit of Insurance is shown in the Declarations;

**(4)** Radio antennas, television antennas or satellite dishes; including their lead-in wiring, masts, and towers; and

**(5)** Trees, shrubs or plants (other than trees, shrubs or plants that are "stock" or part of a vegetative roof).

**3.** **Covered Causes of Loss**

**a.** **Covered Causes of Loss**

Covered Causes of Loss means direct "loss" unless the "loss" is excluded or limited in this Coverage Part.

**b.** **Exclusions**

**(1)** We will not pay for "loss" caused directly or indirectly by any of the following, unless otherwise provided. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(a)** **Ordinance or Law**

Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**, the enforcement of or compliance with any ordinance or law:

**1)** Regulating the construction, use or repair of any building or structure; or

**2)** Requiring the tearing down of any building or structure, including the cost of removing its debris.

This exclusion applies whether "loss" results from:

**1)** An ordinance or law that is enforced even if the building or structure has not been damaged; or

**2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of any building or structure, or removal of its debris, following a direct "loss" to that building or structure.

**(b)** **Earth Movement**

**1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**2)** Landslide, including any earth sinking, rising or shifting related to such event;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**4)** Earth sinking (other than "sinkhole collapse"), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **(b)1)** through **4)** above, results in fire or explosion, we will pay for the "loss" caused by that fire or explosion.

**5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the "loss" caused by that fire, building glass breakage or volcanic action.

Volcanic action means direct "loss" resulting from the eruption of a volcano when the "loss" is caused by:

**a)** Airborne volcanic blast or airborne shock waves;

**b)** Ash, dust or particulate matter; or

**c)** Lava flow.

With respect to coverage for Volcanic Action, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct "loss" to the described property.

This Earth Movement exclusion applies regardless of whether any of the above, in paragraphs **1)** through **5)**, is caused by an act of nature or is otherwise caused.

**(c)** **Governmental Action**

Seizure or destruction of property by order of governmental authority. However, we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**(d)** **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

**(e)** **Utility Services**

**1)** Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, q. Utility Services**, the failure of power, communication, water or other utility services supplied to the "premises", however caused, if the failure:

**a)** Originates away from the "premises"; or

**b)** Originates at the "premises", but only if such failure involves equipment used to supply the utility service to the "premises" from a source away from the "premises".

Failure of any utility service includes lack of sufficient capacity and reduction in supply. "Loss" caused by a surge of power is also excluded if the surge would not have occurred but for an event causing the failure of power.

However, if the failure or surge of power, or the failure of communication, water, wastewater removal or other utility service results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss.

Communication services include but are not limited to

service relating to Internet access or access to any electronic, cellular or satellite network.

**(f) War and Military Action**

1) War, including undeclared or civil war;

2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**(g) Water**

1) Flood, meaning the partial or complete inundation of normally dry land areas due to:

   a) The unusual or rapid accumulation or runoff of rain or surface waters from any source; or

   b) Waves, tidal waters, tidal waves (including tsunami); or

   c) Water from rivers, ponds, lakes, streams, or any other body of water that rises above, overflows from, or is not contained within its natural or man-made boundary;

   and all whether driven by wind or not, including storm surge.

2) Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **(g)1** above. Mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current;

3) Water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

4) Water under the ground surface pressing on, or flowing or seeping through:

   a) Foundations, walls, floors or paved surfaces;

   b) Basements, whether paved or not; or

   c) Doors, windows or other openings.

5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraphs **(g)1), 3)** or **4),** or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2).**

This exclusion applies regardless of whether any of the above in Paragraphs **(g)1)** through **(g)5)** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

However, if any of the above, as described in Paragraphs **(g)1)** through **(g)5),** results in fire, explosion or sprinkler leakage, we will pay for that portion of "loss" caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**(h) "Fungi", Wet Rot, Dry Rot, and Bacteria**

1) Presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria. But if "fungi", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

**2)** This exclusion does not apply:

**a)** When "fungi", wet or dry rot or bacteria results from fire or lightning; or

**b)** To the extent that coverage is provided in **SECTION A. COVERAGE, 5. Coverage Extensions, g. "Fungi", Wet Rot, Dry Rot and Bacteria - Limited Coverage** with respect to "loss" from a cause of loss other than fire or lightning.

Exclusions **b.(1)(a)** through **b.(1)(h)** apply whether or not the "loss" event results in widespread damage or affects a substantial area.

**(2)** We will not pay for "loss" caused by or resulting from any of the following:

**(a) Electrical Current**

Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**1)** Electrical or electronic wire, device, appliance, system or network; or

**2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**1)** Electrical current, including arcing;

**2)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**3)** Pulse of electromagnetic energy; or

**4)** Electromagnetic waves or microwaves.

However, if fire results, we will pay for "loss" caused by that fire.

**(b) Delay or Loss of Use**

Delay, loss of use or loss of market.

**(c) Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

**(d) Miscellaneous Causes of Loss**

**1)** Wear and tear;

**2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**3)** Smog;

**4)** Settling, cracking, shrinking or expansion;

**5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. However, if mechanical breakdown results in elevator collision, we will pay for that portion of "loss" caused by that elevator collision; or

**7)** The following causes of loss to personal property:

**a)** Marring or scratching;

**b)** Except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, a. Change in Temperature or Humidity** and **5. Coverage Extensions, q. Utility Services;**

**i)** Dampness or dryness of atmosphere; and

**ii)** Changes in or extremes of temperature.

However, if an excluded cause of loss listed in **(2)(d)1** through **7)** results in a "specified cause of "loss" or building glass breakage, we will pay for that portion of "loss" caused by that "specified cause of loss" or building glass breakage.

**FM 101 05 16**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 8 of 40**

**(e) Explosion of Steam Apparatus**

Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. However, if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for that portion of "loss" caused by that fire or combustion explosion. We will also pay for "loss" caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(f) Water Seepage**

Continuous or repeated seepage or leakage of water or the presence or condensation of humidity, moisture, or vapor that occurs over a period of 14 days or more.

**(g) Freezing of Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protection systems) caused by or resulting from freezing, unless:

**1)** You did your best to maintain heat in the building or structure; or

**2)** You drained the equipment and shut off the supply if the heat was not maintained.

**(h) Dishonest or Criminal Acts**

Dishonest or criminal acts (including theft) by you, any of your partners, members (if a limited liability company), officers, managers, employees (including leased workers or temporary employees) directors, trustees, or authorized representatives; whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion applies whether or not an act occurs during the hours of operation.

This **Dishonest or Criminal Acts** exclusion does not apply to acts of destruction by your employees (including leased workers or temporary employees) or by authorized representatives; except theft by employees (including leased workers or temporary employees) is not covered.

**(i) Voluntary Parting Under False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(j) Exposure to Weather**

Rain, snow, ice or sleet to personal property in the open.

**(k) Collapse**

Collapse, including any of the following conditions of property or any part of the property:

**1)** An abrupt falling down or caving in;

**2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to Paragraph **(k)1)** or **2)** above.

But if collapse results in a Covered Cause of Loss at the "premises", we will pay for "loss" caused by that Covered Cause of Loss.

This exclusion **Collapse** does not apply:

**1)** To the extent that coverage is provided under the **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse**; or

**2)** To collapse caused by one or more of the following:

**a)** The "specified causes of loss";

**b)** Breakage of building glass;

**c)** Weight of rain that collects on a roof; or

**d)** Weight of people or personal property.

**(l) Pollutants**

Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

This exclusion does not apply to "loss" to glass caused by chemicals applied to the glass.

**m) Loss or Damage to Product**

We will not pay for "loss" to Covered Property consisting of merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for "loss" caused by that Covered Cause of Loss.

**(n) Neglect**

Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of "loss".

**(3)** We will not pay for "loss" caused by or resulting from any of the following in Paragraphs **(3)(a)** through **(3)(c).** However, if an excluded cause of loss that is listed in Paragraphs **(3)(a)** through **(3)(c)** results in a Covered Cause of Loss, we will pay for that portion of "loss" caused by that Covered Cause of Loss:

**(a) Weather Conditions**

Weather conditions, but this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions, (1)(a)** through **(1)(h)** to produce the "loss".

**(b) Acts or Decisions**

Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**(c) Defects, Errors, and Omissions**

**1)** An act, error, or omission (negligent or not) relating to:

**a)** Land use;

**b)** Design, specifications, construction, workmanship;

**c)** Planning, zoning, development, surveying, siting, grading, compaction; or

**d)** Maintenance, installation, renovation, repair, or remodeling

of part or all of any property on or off the "premises";

**2)** A defect, weakness, inadequacy, fault, or unsoundness in materials used in construction or repair of part or all of any property on or off the "premises"; or

**3)** The cost to make good any error in design.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(4) Special Exclusions**

The Special Exclusions apply only to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**; and if attached to this policy, the following coverage forms: **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM,** and **EXTRA EXPENSE COVERAGE FORM.**

We will not pay for:

**(a)** Any "loss" caused by or resulting from:

**1)** Damage or destruction of "finished stock"; or

**2)** The time required to reproduce "finished stock".

This Exclusion **(4)(a)** does not apply to Extra Expense.

**(b)** Any "loss" caused by or resulting from damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(c)** Any increase of "loss" caused by or resulting from:

**1)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**2)** Suspension, lapse or cancellation of any license, lease or contract. However, if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such "loss" that affects your "Business Income" during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period of Indemnity Optional Coverage or any variation of these.

**(d)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(e)** Any other indirect "loss".

**c.** <u>Limitations</u>

The following limitations apply to all policy forms and endorsements shown on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS**, unless otherwise stated:

**(1) Limitations - Various Types of Property**

We will not pay for "loss" to property as described and limited in this section. In addition, we will not pay for any "loss" that is a consequence of "loss" as described and limited in this section.

**(a) Steam Apparatus**

Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for "loss" to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**(b) Hot Water Boilers**

Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

**(c) Building Interiors**

The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**2)** The "loss" is caused by or results from thawing of

snow, sleet or ice on the building or structure.

**(d) Theft of Building Materials**

Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

However, this limitation does not apply to:

**1)** Building materials and supplies held for sale by you; or

**2)** "Business Income" coverage or Extra Expense coverage.

**(e) Missing Property**

Property that is missing, where the only evidence of the "loss" is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**(f) Transferred Property**

Property that has been transferred to a person or to a place outside the "premises" on the basis of unauthorized instructions.

**(g) Vegetative Roofs**

Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

**1)** Dampness or dryness of atmosphere or of soil supporting the vegetation;

**2)** Changes in or extremes of temperature;

**3)** Disease;

**4)** Frost or hail; or

**5)** Rain, snow, ice or sleet.

**(2) Limitations - Various Property for Specified Causes**

We will not pay for "loss" to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

**(a)** Animals, and then only if they are killed or their destruction is deemed necessary.

**(b)** Contractors equipment, machinery and tools owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

**1)** If the property is located on or within 1,000 feet of the "premises"; or

**2)** To Business Income coverage or to Extra Expense coverage.

**(3) Limitation - Personal Property Theft**

This Limitation does not apply to "Business Income" coverage or to Extra Expense coverage. For each category described in Paragraph **c.(3)(a)** through **(3)(d)** below, the most we will pay for "loss" in any one occurrence of theft to all property in that category, regardless of the types or number of articles for that category that are lost or damaged in that occurrence, are the following special limits:

**(a)** $2,500 for Furs, fur garments and garments trimmed with fur.

**(b)** $2,500 for Jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limitation does not apply to jewelry and watches worth $100 or less per item.

**(c)** $2,500 for Patterns, dies, molds and forms.

**(d)** $250 for Stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are not additional Limits of Insurance.

**(4) Limitation - System or Appliance Defects**

**(a)** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes; and

**(b)** We will not pay to replace the substance that escapes as described in Paragraph **c.(4)(a)** above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage results in discharge of any substance from an automatic fire protection system, or is directly caused by freezing.

However, this Limitation **c.(4)(a)** does not apply to "Business Income" Coverage or to Extra Expense Coverage.

4. Additional Coverages

Unless stated otherwise, **SECTION C. DEDUCTIBLE** does not apply to Paragraph **4. Additional Coverages.**

Unless stated otherwise, these Paragraph **4. Additional Coverages** apply on a per location basis.

a. Change in Temperature or Humidity

We will pay for direct "loss" to your covered Business Personal Property caused by a change in temperature or humidity or contamination by refrigerant resulting from damage by a Covered Cause of Loss to equipment used for refrigerating, cooling, humidifying, dehumidifying, air conditioning, heating, generating or converting power (including their connections and supply or transmission lines and pipes) when located on the "premises".

This Coverage is included within the Limits of Insurance shown in the Declarations.

b. Debris Removal

(1) Subject to Paragraphs **b.(2)**, **(3)** and **(4)** of this Additional Coverage, we will pay your expense to remove debris of Covered Property and other debris that is on the "premises", when such debris is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct "loss".

(2) Debris Removal does not apply to costs to:

(a) Extract "pollutants" from land or water;

(b) Remove, restore or replace polluted land or water;

(c) Remove debris of property of yours that is not insured under this Coverage Part, or property in your possession that is not Covered Property;

(d) Remove debris of property owned by or leased to the landlord of the building where your "premises" are located, unless you have a contractual responsibility to insure such property and it is insured under this Coverage Part;

(e) Remove any property that is Property Not Covered, including property addressed under **5. Coverage Extensions, k. Outdoor Property**.

(f) Remove property of others of a type that would not be Covered Property under this Coverage Part;

(g) Remove deposits of mud or earth from the grounds of the "premises".

(3) Subject to the exceptions in Paragraph **b.(4)** below, the following provisions apply:

(a) The most we will pay for the total of direct "loss" plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained "loss".

(b) Subject to Paragraph **b.(3)(a)**, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

(4) We will pay up to an additional $10,000 for debris removal expense for each "premises", in any one occurrence of direct "loss" to Covered Property, if one or both of the following circumstances apply:

(a) The total of the actual debris removal expense plus the amount we pay for direct "loss" exceeds the Limit of Insurance on the Covered Property that has sustained "loss".

(b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct "loss" to the Covered Property that has sustained "loss".

Therefore, if Paragraph **b.(4)(a)** and/or **(4)(b)** apply, our total payment for direct

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

"loss" and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained "loss", plus $10,000.

**(5) Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $50,000 |
| Amount of "Loss" Payable ($50,000 - $500) | $49,500 |
| Debris Removal Expense | $10,000 |
| Debris Removal Expense Payable ($10,000 is 20% of $50,000) | $10,000 |

The debris removal expense is less than 25% of the sum of the "loss" payable plus the deductible. The sum of the "loss" payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3).**

**Example #2**

| | |
|---|---|
| Limit of Insurance | $90,000 |
| Amount of Deductible | $500 |
| Amount of "Loss" | $80,000 |
| Amount of "Loss" Payable ($80,000 - $500) | $79,500 |
| Debris Removal Expense | $30,000 |
| Debris Removal Expense Payable | |
| Basic Amount | $10,500 |
| Additional Amount | $10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the "loss" payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4),** because the debris removal expense ($30,000) exceeds 25% of the "loss" payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the "loss" payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4).** Thus the total payable for debris removal ex-

pense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**c.** **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $5,000 in any one occurrence for your liability, which is determined prior to the direct "loss", for fire department service charges:

**(1)** Assumed by contract or agreement; or

**(2)** Required by local ordinance.

Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**d.** **Fire Protection Equipment Recharge**

**(1)** We will pay for the expenses you incur to recharge your automatic fire suppression system or portable fire extinguishers when the equipment is discharged:

**(a)** To combat a covered fire to which this insurance applies;

**(b)** As a result of another covered Cause of Loss other than fire; or

**(c)** As a result of an accidental discharge.

**(2)** We will not pay your expenses to recharge fire protection equipment as a result of a discharge during testing or installation.

**(3)** If it is less expensive to do so, we will pay your costs to replace your automatic fire suppression system or portable fire extinguishers rather than recharge that equipment.

The most we will pay in any one occurrence under this Additional Coverage is $25,000. This Coverage is in addition to the Limits of Insurance shown in the Declarations.

**e.** **Inventory or Appraisal**

**(1)** We will pay the necessary expenses you incur to prepare claim information as required by this Coverage Part. Expenses must result from:

**(a)** Taking inventories;

**(b)** Making appraisals; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(c)** Preparing a statement of loss and other supporting exhibits.

**(2)** We will not pay for any expenses:

**(a)** Incurred to prove that "loss" is covered;

**(b)** Incurred under **SECTION D. LOSS CONDITIONS, 2. Appraisal;**

**(c)** Incurred for examinations under oath;

**(d)** Billed by and payable to independent or public adjusters; or

**(e)** To prepare claims not covered by this Coverage Part.

The most we will pay for any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the shown in the Declarations.

**f. Key and Lock Expense**

**(1)** If a key or master key is lost, stolen, or damaged, we will pay for:

**(a)** The actual expense of the new keys; and

**(b)** The adjustment of locks to accept new keys; or

**(c)** If required, new locks, including the expense of their installation;

but only for locks at buildings or structures covered by this Coverage Part.

**(2)** This Coverage does not apply to keys that were given to former employees.

The most we will pay in any one occurrence under this Additional Coverage is Limit of Insurance $1,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**g. Ordinance or Law**

**(1)** If a covered building or structure sustains direct "loss" from a Covered Cause of Loss, resulting in the enforcement of or compliance with an ordinance or law that is in force at the time of "loss" and regulates the demolition, construction or repair of buildings or structures, or establishes zoning or land use requirements at the "premises", then subject to **SECTION D, LOSS CONDITIONS, 4. Loss Payment,** we will pay:

**(a) Loss of Use of Undamaged Parts of Buildings**

The costs you incur to rebuild at the same "premises" any undamaged portion of your building or structure caused by enforcement of or compliance with an ordinance or law requiring demolition of undamaged parts of the same building or structure. We will only pay the costs to satisfy the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered.

**(b) Demolition Costs**

The costs you incur to demolish and clear the site of undamaged parts of the same building or structure as a result of Paragraph **g.(1)(a)** above.

**(c) Increased Costs of Construction**

**1)** For buildings or structures to which **SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies, the increased costs to comply with the minimum standards of an ordinance or law to:

**a)** Repair or reconstruct damaged portions of that building or structure; and

**b)** Reconstruct or remodel undamaged portions of that building or structure whether or not demolition is required;

However, this increased cost of construction applies only if the building or structure is repaired, reconstructed or remodeled and is intended for occupancy similar to the building or structure it replaces, unless such occupancy is not permitted by zoning or land use ordinance or law.

**2)** For this Paragraph **g.(1)(c)** only, the increased costs to repair or reconstruct the following:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a)** The cost of excavations, grading, backfilling and filling;

**b)** Foundation of the building;

**c)** Pilings;

**d)** Underground pipes, flues and drains.

The items listed in Paragraphs **g.2)a)** through **g.2)d)** above are deleted from **SECTION A. COVERAGE, 2. Property Not Covered**;

**(2)** We will not pay for:

**(a)** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot or bacteria; or

**(b)** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungi", wet or dry rot or bacteria.

**(3)** We will not pay for "loss" due to any ordinance or law that:

**(a)** You were required to comply with before the "loss", even if the building or structure was undamaged; and

**(b)** With which you failed to comply.

**(4)** The terms of this Additional Coverage apply separately to each building or structure covered by this Coverage Part.

The most we will pay under this Additional Coverage is $10,000 per building. This is in addition to the Limit of Insurance shown in the Declarations for the building suffering "loss".

**h.** **Pollutant Clean Up and Removal**

We will pay your expenses to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the "coverage term". The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each "premises" is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term". This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**i.** **Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from imminent "loss" by a Covered Cause of Loss, we will pay for any direct "loss" to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the "loss" occurs within 60 days after the property is first moved.

This Coverage is included within Limit of Insurance shown in the Declarations for such Covered Property.

**j.** **Rewards**

We will pay to provide a reward for information that leads to a conviction for arson, theft, vandalism, or burglary. The conviction must involve a covered "loss" caused by arson, theft, vandalism, or burglary.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is $10,000. This Coverage is in addition to the Limit of Insurance shown in the Declarations.

**5.** **Coverage Extensions**

Unless amended within a particular Coverage Extension, each Extension applies to property located in or on the building described in the Declarations or in the open (or in a vehicle or portable storage unit) within 1,000 feet of the "premises".

The limits applicable to the Coverage Extensions are in addition to the Limit of Insurance shown in the Property Declarations. Limits of Insurance specified in these Extensions apply per location unless stated otherwise.

**SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, does not apply to these Coverage Extensions.

**a.** **Accounts Receivable**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

(1) When you sustain direct "loss" to your accounts receivable records caused by a Covered Cause of Loss, we will pay:

(a) All amounts due from your customers that you are unable to collect;

(b) Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

(c) Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

(d) Other reasonable expenses that you incur to re-establish your records of accounts receivable.

(2) Coverage does not apply to:

(a) Records of accounts receivable in storage away from the "premises"; or

(b) Contraband, or property in the course of illegal transportation or trade.

(3) We will extend coverage to include:

(a) Removal

If you give us written notice within 30 days of removal of your records of accounts receivable because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limit of Insurance applicable to this Coverage Extension.

(b) Away From Your Premises

The most we will pay in any one occurrence is $5,000, regardless of the number of locations, for "loss" caused by a Covered Cause of Loss to Accounts Receivable while they are away from your "premises".

This Away From Premises Limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

(4) **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

(a) **Exclusion (1)(c) Governmental Action;**

(b) **Exclusion (1)(d) Nuclear Hazard;**

(c) **Exclusion (1)(f) War and Military Action.**

(5) In addition to Paragraph **a.(4)** of this Coverage Extension, we will not pay for "loss" resulting from any of the following:

(a) Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **a.(5)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **a.(5)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

(b) Alteration, falsification, concealment or destruction of records of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

accounts receivable done to conceal the wrongful giving, taking or withholding of "money", "securities" or other property.

This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**(c)** Bookkeeping, accounting or billing errors or omissions.

**(d)** Electrical or magnetic injury, disturbance or erasure of "electronic data" that is caused by or results from:

**1)** Programming errors or faulty machine instructions;

**2)** Faulty installation or maintenance of data processing equipment or component parts;

**3)** An occurrence that took place more than 100 feet from your "premises"; or

**4)** Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

But we will pay for direct "loss" caused by lightning.

**(e)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**(f)** A "loss" that requires any audit of records or any inventory computation to prove its factual existence.

**(6) Determination of Receivables:**

**(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of direct "loss", the following method will be used:

**1)** Determine the total of the average monthly amounts of accounts receivable for the 12 months immediately preceding the month in which the direct "loss" occurs; and

**2)** Adjust that total for any normal fluctuations in the amount of accounts receiv-

able for the month in which the direct "loss" occurred or for any demonstrated variance from the average for that month.

**(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

**1)** The amount of the accounts for which there is no direct "loss"; and

**2)** The amount of the accounts that you are able to re-establish or collect; and

**3)** An amount to allow for probable bad debts that you are normally unable to collect; and

**4)** All unearned interest and service charges.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**b.** <u>**Business Income and Extra Expense**</u>

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1) Business Income**

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at a "premises" caused by or resulting from any Covered Cause of Loss. With respect to "loss" to personal property in the open or personal property in a vehicle or portable storage unit, the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

With respect to the requirements of the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purpose of this Coverage Extension only, your "premises" is the portion of the building that you rent, lease or occupy, including:

**(a)** Any area within the building or on the site at which the "premises" are located if that area ser-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

vices or is used to gain access to the "premises"; and

**(b)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever is greater.

**(2) Extra Expense**

**(a)** We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain (as described in Paragraphs **(2)(b), (c)** and **(d)**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**(b)** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **(2)(c)**) to:

**1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**a)** At the "premises"; or

**b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**2)** Minimize the "suspension" of business if you cannot continue "operations".

**(c)** We will also pay expenses to:

**1)** Repair or replace property; or

**2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal

"operations", the amount we will pay under this Coverage will be reduced by the salvage value of that property.

**(d)** Extra Expense does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

**(3) Civil Authority**

When a Covered Cause of Loss causes damage to property other than Covered Property at a "premises", we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

This Civil Authority coverage for "Business Income" will begin immediately after the time of that action and will apply for a period of up to 30 days from the date of that action.

This Civil Authority coverage for Extra Expense will begin immediately after the time of that action and will end:

**1)** 30 consecutive days after the time of that action; or

**2)** When your "Business Income" coverage ends;

whichever is later.

**(4) Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss to:

**(a)** New buildings or structures, whether complete or under construction;

**(b)** Alterations or additions to existing buildings or structures; and

**(c)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

**1)** Used in the construction, alterations or additions; or

**2)** Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" Coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**(5) Newly Purchased or Leased Locations**

We will pay the actual loss of "Business Income" you sustain and Extra Expense you incur due to direct "loss" to Covered Property at any location you purchase or lease caused by or resulting from a Covered Cause of Loss. This coverage for the Newly Purchased or Leased Locations will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** You report values to us;

**(c)** 90 days pass from the date you acquire or begin to construct the Covered Property.

**(6) Extended Business Income**

**(a)** For "Business Income" Other Than "Rental Value", if the necessary "suspension" of your "operations" produces a "Business Income" or Extra Expense "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur during the period that:

**1)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**2)** Ends on the earlier of:

**a)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct "loss" had occurred; or

**b)** 60 consecutive days after the date determined in **b.(6)(a)1** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained or Extra Expense incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(b)** For "Rental Value", if the necessary "suspension" of your "operations" produces a "Rental Value" "loss" payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you incur during the period that:

**1)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**2)** Ends on the earlier of:

**a)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

**b)** 60 consecutive days after the date determined in **b.(6)(b)1** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(7) Interruption of Computer Operations**

(a) Subject to all provisions of this Coverage Extension, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data.**

(b) Paragraph **b.(7)(a)** does not apply to "loss" sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **b.(7)(c)** has not been exhausted.

(c) The most we will pay under Paragraph **b.(7)** of this Coverage Extension is $2,500 for all "loss" sustained and expense incurred in the "coverage term", regardless of the number of interruptions or the number of "premises" or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not carry over to the next "coverage term". With respect to an interruption that begins in a "coverage term" and continues or results in additional "loss" or expense in a subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

This $2,500 coverage for Interruption of Computer Operations does not increase the Limit of Insurance provided in this Coverage Extension.

The most we will pay for "loss" in any one occurrence under this "Business Income" and Extra Expense Coverage Extension is $25,000.

c. **Collapse**

The coverage provided under this Coverage Extension applies only to an abrupt collapse as described and limited in Paragraphs **c.(1)** through **c.(7)** below.

(1) For the purpose of this Coverage Extension only, abrupt collapse means an abrupt falling down or caving in of a building or structure or any part of a building or structure with the result that the building or structure or part of the building or structure cannot be occupied for its intended purpose.

(2) We will pay for direct "loss" to Covered Property, caused by abrupt collapse of a building or structure or any part of a building or structure insured under this Coverage Part, or that contains Covered property insured under this Coverage Part, if such collapse is caused by one or more of the following:

(a) Building or structure decay that is hidden from view, unless the presence of such decay is known or should reasonably have been known to an insured prior to collapse;

(b) Insect or vermin damage that is hidden from view, unless the presence of such damage is known or should reasonably have been known to an insured prior to collapse;

(c) Use of defective material or methods in construction, remodeling, or renovation if the abrupt collapse occurs during the course of the construction, remodeling, or renovation.

(d) Use of defective materials or methods in construction, remodeling, or renovation if the abrupt collapse occurs after construction, remodeling, or renovation is complete but only if the collapse is caused in part by:

1) A cause of loss listed in Paragraph **c.(2)(a)** or **c.(2)(b)** of this Coverage Extension;

2) One or more of the "specified causes of loss";

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**3)** Breakage of building glass;

**4)** Weight of people or personal property; or

**5)** Weight of rain that collects on a roof.

**(3)** This Coverage Extension does not apply to:

**(a)** A building or structure or any part of a building or structure that is in danger of falling down or caving in;

**(b)** A part of a building or structure that is standing, even if it has separated from another part of the building or structure; or

**(c)** A building or structure that is standing or any part of a building or structure that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(4)** With respect to the following property:

**(a)** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**(b)** Awnings, gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Fences;

**(f)** Piers, wharves and docks;

**(g)** Beach or diving platforms; including their appurtenances;

**(h)** Retaining walls; and

**(i)** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in Paragraph **c.(2)(a)** through **c.(2)(d)**, we will pay for "loss" to that property only if:

**(a)** Such "loss" is a direct result of the abrupt collapse of a building or structure insured under this Coverage Part; and

**(b)** The property is Covered Property under this Coverage Part.

**(5)** If personal property abruptly falls down or caves in and such collapse

is **not** the result of abrupt collapse of a building or structure, we will pay for direct "loss" to Covered Property caused by such collapse of personal property only if:

**(a)** The collapse of personal property was caused by a Cause of Loss listed in **c.(2)(a)** through **c.(2)(d)** of this Coverage Extension;

**(b)** The personal property that collapses is inside a building; and

**(c)** The property that collapses is not of a kind listed in Paragraph **c.(4)** above of this Coverage Extension, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **c.(5)** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**(6)** This Coverage Extension does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**(7)** This Coverage Extension shall not increase the Limit of Insurance provided in this Coverage Part.

**(8)** The term Covered Cause of Loss includes Collapse as described and limited in Paragraphs **c.(1)** through **c.(7)**.

**d.** <u>Electronic Data</u>

**(1)** This Coverage Extension does not apply to your "stock" of prepackaged software, or to "electronic data" which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** We will pay for the cost to replace or restore "electronic data" which has been destroyed or corrupted by a Covered Cause of Loss that applies to **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property.** To the extent that "electronic data" is not replaced or restored, the "loss" will be valued at the cost of replacement of the me-

dia on which the "electronic data" was stored with blank media of substantially identical type.

**(3)** For the purposes of this Coverage Extension only, Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, that is designed to damage or destroy any part of the system or disrupt its normal operation. However, there is no coverage for "loss" caused by or resulting from manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system or "electronic data".

**(4)** The most we will pay for all direct "loss" under this Coverage Extension, regardless of the number of "premises" or computer systems involved, is $2,500. This limit is the most we will pay for the total of all direct "loss" arising out of all occurrences that take place in the "coverage term". If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent "loss" sustained in the "coverage term". A balance remaining in a "coverage term" does not carry over to the next "coverage term". With respect to an occurrence which begins in the "coverage term" and continues or results in additional "loss" in a subsequent "coverage term", all "loss" is deemed to be sustained in the "coverage term" in which the occurrence began.

**e. Exhibitions, Fairs or Trade Shows**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered property of others, while it is located at exhibitions, fairs or trade shows. This Coverage Extension does not apply while Covered Property is in transit to or from the exhibition, fair or trade show.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided under this Coverage Extension does not apply per location.

**f. Fences**

We will pay for direct "loss" caused by a Covered Cause of Loss to your outdoor fences that are located within 1,000 feet of the "premises" and not otherwise insured as Covered Property in this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**g. Fungi, Wet Rot, Dry Rot, and Bacteria - Limited Coverage**

**(1)** The coverage described in Paragraphs **g.(2)** and **g.(3)** of this Coverage Extension only apply when the "fungi", wet or dry rot or bacteria is the result of a Covered Cause of Loss that occurs during the "coverage term" and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

**(2)** We will pay for "loss" by "fungi", wet or dry rot or bacteria. As used in this Coverage Extension, the term "loss" means:

**(a)** Direct "loss" to Covered Property caused by "fungi", wet or dry rot or bacteria, including the cost of removal of the "fungi", wet or dry rot or bacteria;

**(b)** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot or bacteria; and

**(c)** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungi", wet or dry rot or bacteria are present.

**(3)** For the coverage described under Paragraph **g.(2)** of this Coverage Extension, the most we will pay for "loss", regardless of the number of claims, is $15,000. This limit is the most we will pay for the total of all "loss" arising out of all occurrences that take place in the "coverage term". With respect to a particular occurrence of "loss" which results in "fungi", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungi", wet or dry rot or bacteria continues to be pre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

sent or active, or recurs, in a subsequent "coverage term".

**(4)** The coverage provided under this Coverage Extension does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in "loss" by "fungi", wet or dry rot or bacteria, and other "loss", we will not pay more, for the total of all "loss" than the applicable Limit of Insurance on the affected Covered Property.

If there is covered "loss" to Covered Property, not caused by "fungi", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Coverage Extension, except to the extent that "fungi", wet or dry rot or bacteria causes an increase in the "loss". Any such increase in the "loss" will be subject to the terms of this Coverage Extension.

**(5)** The terms of this Coverage Extension do not increase or reduce the coverage provided under:

**(a)** **SECTION A. COVERAGE, 5. Coverage Extensions, c. Collapse;**

**(b)** **SECTION A. COVERAGE, 5. Coverage Extensions, s. Water, Other Liquids, Powder or Molten Material Damage**

**(6)** The following **(6)(a)** or **(6)(b)** apply only if "Business Income", "Rental Value", or Extra Expense Coverage applies to the "premises" and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable "Business Income", "Rental Value", or Extra Expense Coverage.

**(a)** If the "loss" which resulted in "fungi", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to "loss" to property caused by "fungi", wet or dry rot or bacteria, then our payment under "Business Income" and/or Extra Expense is limited to the amount of "loss" and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

**(b)** If a covered "suspension" of "operations" was caused by "loss" other than "fungi", wet or dry rot or bacteria but remedia-

tion of "fungi", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for "loss" and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**(7)** This Coverage Extension does not apply to lawns, trees, plants or shrubs that are part of any vegetative roof.

**h.** **Glass**

**(1)** If a Covered Cause of Loss occurs to building glass that is Covered Property, we will also pay necessary expenses you incur to:

**(a)** Put up temporary plates or board up openings if repair or replacement of damaged glass is delayed;

**(b)** Repair or replace encasing frames;

**(c)** Remove or replace obstructions (except expenses to remove or replace window displays); and

**(d)** Repair or replace alarm tapes.

**(2)** If you are a tenant at a covered "premises" and:

**(a)** The building you occupy is not Covered Property; and

**(b)** You are legally liable for direct "loss" to the building glass in that building;

such building glass, for the purposes of this Paragraph **h.(2)**, is Covered Property. The most we will pay for "loss" in any one occurrence is $5,000. This building glass is subject to the building deductible as described in **SECTION C. DEDUCTIBLE.**

**(3)** For the purposes of this Coverage Extension only, **SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

**(a)** **Exclusion (1)(b) Earth Movement;**

**(b)** **Exclusion (1)(c) Governmental Action;**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(c)** Exclusion **(1)(d) Nuclear Hazard;**

**(d)** Exclusion **(1)(f) War and Military Action;**

**(e)** Exclusion **(2)(d)1)** Wear and tear; and

**(f)** As listed in **Exclusion (2)(d)2)**: Rust or other corrosion, hidden or latent defect or any quality in property that causes it to damage or destroy itself.

**i.** <u>Newly Purchased, Leased or Constructed Property</u>

**(1) Buildings**

If buildings are Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to:

**(a)** Your new buildings or additions while being built on the "premises";

**(b)** Buildings you newly purchase or become newly required to insure by written contract that are:

**1)** Intended for use by you as a warehouse; or

**2)** Similarly used by you as buildings insured under this Coverage Part.

The most we will pay for "loss" in any one occurrence to a building under this Coverage Extension is 1,000,000 for each building.

**(2) Business Personal Property**

**(a)** If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to business personal property you newly purchase or are required to insure by written contract:

**1)** While located at buildings described in Paragraph **a.(1)** of this Coverage Extension; or

**2)** While located in a leased building or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

**(b)** Paragraph **a.(2)(a)** of this Coverage Extension does not apply to:

**1)** Any business personal property covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs, or Trade Shows** or **m. Property Off Premises;**

**2)** Any business personal property that is covered under **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, p. Transportation** or is otherwise considered to be in-transit to or from a "premises".

**3)** Business personal property of others that is temporarily in your possession in the course of installing or performing work on such property, or temporarily in your possession in the course of your manufacturing or wholesaling activities.

The most we will pay for "loss" in any one occurrence to your Business Personal Property under this Coverage Extension is $500,000 at each building.

**(3) Period of Coverage**

Coverage provided under this Coverage Extension will end when any of the following first occurs:

**(a)** This policy expires,

**(b)** For buildings described in Paragraph **(1)(a)** of this Coverage Extension, 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(c)** For business property described in Paragraph **(1)(b)** and Paragraph **(2)(a)1),** 90 days after your purchase or lease;

**(d)** For business personal property described in Paragraph **(2)(a)2),** 90 days from the effective date

of the lease of the building space in the building; or

**(e)** You report values to us.

We will charge you additional premium for values reported from the date you lease or purchase the property, or begin construction on that part of the building that would qualify as Covered Property.

**j. Nonowned Building Damage**

If you are a tenant at a covered "premises" and:

**(1)** The building you occupy is not Covered Property; and

**(2)** You are legally liable for direct "loss" to that building;

We will pay for direct "loss" to that building caused by burglary, robbery, theft or attempted theft.

This Coverage Extension does not apply to:

**(1)** Glass, including lettering and ornamentation, and also necessary:

    **(a)** Repair or replacement of encasing frames or alarm tapes; and

    **(b)** Expenses incurred to board up openings or remove or replace obstruction.

**(2)** Building materials and equipment removed from the "premises".

This Coverage Extension does not apply if you have purchased other insurance in your name on the building you occupy as required by the lease.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

**k. Outdoor Property**

We will pay for direct "loss" caused by a Covered Cause of Loss to the following types of your Covered Property:

**(1)** Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers);

**(2)** Trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or part of a vegetative roof), including debris removal ; and

**(3)** If you are a tenant, to your awnings that are attached to a building you occupy;

but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion;

**(5)** Aircraft; or

**(6)** Falling objects.

We will pay for the debris removal expenses of the above type property that are not your Covered Property if such debris is on your "premises" due to the Covered Causes of Loss described in this Coverage Extension. If you are a tenant, we do not pay debris removal expenses for trees, plants or shrubs owned by the landlord or owner of the building you occupy.

No other coverage for debris removal expenses provided in this Coverage Part applies to this Outdoor Property Coverage Extension.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000, but not more than $1,000 for any one tree, shrub or plant.

**l. Personal Effects**

If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to personal effects owned by:

**(1)** You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

**(2)** Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business. However, employee tools are not covered for theft.

This Coverage Extension does not apply to "money" or "securities".

If theft is included as a Covered Cause of Loss under this Coverage Part, then this Coverage Extension has a $500 per occurrence limitation for direct "loss" by theft.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

**m.** **Property Off Premises**

(1) We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others, while it is away from the "premises", if it is:

(a) Temporarily at a location you do not own, lease or operate; or

(b) In storage at a location you lease, provided the lease was executed for the first time after the beginning of the current "coverage term".

(2) This Coverage Extension does not apply to Covered Property at exhibitions, fairs, trade show, or in transit.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**n.** **Signs**

We will pay for direct "loss" caused by a Covered Cause of Loss, including debris removal expense, to signs not otherwise insured by this Coverage Part.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**o.** **Trailers (Nonowned Detached)**

(1) If business personal property is Covered Property in this Coverage Part, we will pay for direct "loss" caused by a Covered Cause of Loss to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is temporarily in your care, custody or control at the "premises"; and

(c) You have a contractual responsibility to pay for "loss" to the trailer.

(2) We will not pay for any direct "loss" that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) This insurance is excess over the amount due, whether you can collect on it or not, from any other insurance covering such property.

(4) This Coverage Extension does not apply to any property inside or on the trailer.

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $5,000.

**p.** **Transportation**

We will pay for direct "loss" caused by a Covered Cause of Loss to your Covered Property, including covered personal property of others while it is in or on a vehicle, including loading and unloading of the property.

The most we will pay for "loss" in any one occurrence is $10,000.

The Limit of Insurance provided by this Coverage Extension does not apply per location.

**q.** **Utility Services**

We will pay for:

(1) Direct "loss" to Covered Property at your "premises" except for direct "loss" resulting from the partial or complete failure of Wastewater Removal Services; and

(2) Loss of "Business Income" you sustain and Extra Expenses you incur as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense;**

caused by or resulting from the partial or complete failure of utility services to the "premises".

The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

(1) Power Supply Property, meaning the following types of property supplying

electricity, steam or natural gas to the "premises":

   **(a)** Utility generating plants;

   **(b)** Switching stations;

   **(c)** Substations;

   **(d)** Transformers; and

   **(e)** Transmission, distribution, service, or similar lines, excluding all such overhead lines of any type.

**(2)** Water Supply Property, meaning the following types of property supplying water to the "premises":

   **(a)** Pumping stations; and

   **(b)** Water mains.

**(3)** Wastewater Removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Coverage Extension does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

**(4)** Communication Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular or satellite network; telephone, radio, microwave or television services to the "premises", such as:

   **(a)** Communication transmission, distribution, service or similar lines, including fiber optic lines, excluding all such overhead lines of any type;

   **(b)** Coaxial cables; and

   **(c)** Microwave radio relays, excluding satellites.

This Coverage Extension does not apply to "loss" to "electronic data", including destruction or corruption of "electronic data".

The most we will pay for all direct "loss" and loss of "Business Income" and Extra Expense in any one occurrence is $25,000.

**r.** **Valuable Papers and Records**

**SECTION C. DEDUCTIBLE** does not apply to this Coverage Extension.

**(1)** Subject to Paragraph **r.(3)** of this Coverage Extension, we will pay necessary costs you incur to research, replace or restore lost or damaged information on "valuable papers and records" that are your property or the property of others in your care, custody or control; resulting from direct "loss" caused by a Covered Cause of Loss.

**(2)** Coverage does not apply to:

   **(a)** Property that cannot be replaced with other property of like kind and quality;

   **(b)** Property held as samples or for delivery after sale;

   **(c)** Property in storage away from the "premises", except as provided in Paragraph **r.(4)(b)** of this Coverage Extension;

   **(d)** Contraband, or property in the course of illegal transportation or trade;

   **(e)** "Valuable papers and records" in the form of "electronic data", including the materials on which the "electronic data" is recorded.

**(3)** The most we will pay for "loss" is the least of the following amounts:

   **(a)** The cost of reasonably restoring the damaged property to its condition immediately before the "loss";

   **(b)** The cost of replacing the damaged property with substantially identical property; or

   **(c)** The actual cash value of the damaged property at the time of "loss".

However, we will not pay for "loss" unless or until the damaged property is actually replaced or restored; and then only if such replacement or restoration occurs within 36 months from the date of direct "loss".

**(4)** We will extend coverage to include:

   **(a)** **Removal**

      If you give us written notice within 30 days of removal of your "valuable papers and records"

because of imminent danger of direct "loss" from a Covered Cause of Loss, we will pay for direct "loss" while they are:

1) At a safe place away from your "premises"; or

2) Being taken to and returned from that place.

This Removal coverage is included within the Limits of Insurance applicable to this Coverage Extension.

**(b) Away From Your Premises**

We will pay up to $5,000 in any one occurrence, regardless of the number of locations, for direct "loss" caused by a Covered Cause of Loss to "valuable papers and records" while they are away from your "premises".

This Away From Premises limit is in addition to the Limit of Insurance applicable to this Coverage Extension.

**(5) SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension except as follows:

**(a) Exclusion (1)(c) Governmental Action;**

**(b) Exclusion (1)(d) Nuclear Hazard; and**

**(c) Exclusion (1)(f) War and Military Action.**

**(6)** In addition to Paragraph **r.(5)** of this Coverage Extension, we will not pay for direct "loss" resulting from any of the following:

**(a)** Dishonest or criminal acts by:

1) You, your partners, employees, directors, trustees or authorized representatives;

2) A manager or a member if you are a limited liability company;

3) Anyone else with an interest in the records of accounts receivable, or their employees or authorized representatives; or

4) Anyone else entrusted with the records of accounts receivable for any purpose.

This Paragraph **r.(6)(a)** applies whether or not such persons are acting alone or in collusion with other persons or such act occurs during the hours of employment.

However, this Paragraph **r.(6)(a)** does not apply to dishonest acts of a carrier for hire or to acts of destruction by your employees. However, theft by employees is still not covered.

**(b)** Errors or omissions in processing or copying. However, we will pay for that portion of direct "loss" caused by resulting fire or explosion if these causes of loss would be covered by this Coverage Part.

**(c)** Electrical or magnetic injury, disturbance or erasure of electronic recordings. But we will pay for direct "loss" caused by lightning.

**(d)** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

The most we will pay for "loss" in any one occurrence is $25,000.

**s.** <u>**Water Damage, Other Liquids, Powder or Molten Material Damage**</u>

If a covered direct "loss" to which this insurance applies was caused by or resulted from water or other liquid, powder or molten material damage, we will also pay the cost to tear out and replace any otherwise undamaged part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

**SECTION B. LIMITS OF INSURANCE**

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations, except as amended in **SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations, 4. Additional Coverages,** and **5. Coverage Extensions.**

**SECTION C. DEDUCTIBLE**

Except as otherwise provided; in any one occurrence of direct "loss" we will first reduce the amount of "loss" if required by **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** or **SECTION F. OPTIONAL COVERAGES, 1. Agreed Value.** If the adjusted amount of direct "loss" is less than or equal to the Deductible, we will not pay for that direct "loss". If the adjusted amount of direct "loss" exceeds the Deductible, we will then

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

subtract the Deductible from the adjusted amount of direct "loss", and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves direct "loss" to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

1. **Deductible Examples**

   **Example No. 1:**

   (This example assumes there is no coinsurance penalty as outlined in **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**).

   | | |
   |---|---|
   | Deductible: | $250 |
   | Limit of Insurance - Bldg. 1: | $60,000 |
   | Limit of Insurance - Bldg. 2: | $80,000 |
   | "Loss" to Bldg. 1: | $60,100 |
   | "Loss" to Bldg. 2: | $90,000 |

   The amount of "loss" to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

   The Deductible will be subtracted from the amount of "loss" in calculating the "loss" payable for Bldg. 1:

   $60,100 - $250 = $59,850 "Loss" Payable - Bldg. 1

   The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of "loss" payable for Bldg. 2. "Loss" payable for Bldg. 2 is the Limit of Insurance of $80,000.

   Total amount of "loss" payable: $59,850 + 80,000 = $139,850.

   **Example No. 2:**

   (This example also assumes there is no coinsurance penalty).

   The Deductible and Limits of Insurance are the same as those in Example No. 1:

   "Loss" to Bldg. 1: $70,000 (Exceeds Limit of Insurance plus Deductible)

   "Loss" to Bldg. 2: $90,000 (Exceeds Limit of Insurance plus Deductible)

   "Loss" Payable - Bldg. 1: $60,000 (Limit of Insurance)

   "Loss" Payable - Bldg. 2: $80,000 (Limit of Insurance)

   Total amount of "loss" payable: $140,000.

2. **Glass Deductible**

   When direct "loss" to the building you occupy only involves building glass, the Deductible for that "loss" will be the lesser of:

   **a.** $500; or

   **b.** The Deductible shown in the Declarations for that Covered Property.

## SECTION D. LOSS CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we still retain our right to deny the claim.

3. **Duties in the Event of Loss or Damage**

   **a.** In the event of "loss" to Covered Property, you must see that the following are done in order for coverage to apply:

      **(1)** Notify the police if a law may have been broken.

      **(2)** Give us prompt notice of the "loss". Include a description of the property involved.

      **(3)** As soon as possible, give us a description of how, when and where the "loss" occurred.

      **(4)** Take all reasonable steps to protect the Covered Property from further damage. If feasible, set the damaged property aside and in the best possible order for examination. Keep a

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

record of your expenses necessary to protect the Covered Property for consideration in the settlement of the claim. This will not increase your limit of insurance. However, in no event will we pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of "loss" claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.

**(7)** Submit a signed sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**(9)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

### 4. Loss Payment

**a.** In the event of "loss" insured by this Coverage Part, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of **SECTION D. LOSS CONDITIONS, 7. Valuation** or any applicable provision that amends or supercedes this valuation condition.

**b.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property, except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust "losses" with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** Our payment for "loss" to personal property of others and personal effects will only be for the account of the owner of the property.

**g.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**h.** We will pay for insured "loss" within 30 days after we receive the sworn proof of loss if you have complied with all of the terms of this Coverage Part; and

**(1)** We have reached agreement with you on the amount of "loss"; or

**(2)** An appraisal award has been made.

**i.** **Loss Payment - Ordinance or Law.**

With respect to **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law:**

**(1)** **Loss of Use of Undamaged Parts of Building**

When there is a loss in value of an undamaged portion of a building or structure to which this coverage applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**(a)** If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is repaired or replaced, on the same "premises" or another "premises"; we will not pay more than the lesser of:

**1)** The amount you actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same "premises" and to the same height, floor area, style and comparable quality of the original property insured; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

**(b)** If **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION F. OPTIONAL COVERAGES, 3. Replacement Cost** applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the lesser of:

**1)** The "actual cash value" of the building at the time of "loss"; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Loss of Use of Undamaged Parts of Building** for the building that has suffered "loss".

**(2) Demolition Costs**

Loss payment for Demolition Costs will be determined as follows:

We will not pay more than the lesser of the following:

**(a)** The amount you actually spend to demolish and clear the site of the "premises"; or

**(b)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Demolition Costs** for the building that has suffered "loss".

**(3) Increased Costs of Construction**

Loss payment for **Increased Costs of Construction** will be determined as follows:

**(a)** We will not pay for the increased cost of construction until the property is actually repaired or replaced, at the same "premises" or another location and unless the repairs or replacement are made as soon as reasonably possible after the direct "loss", not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same "premises", or if you elect to rebuild at another "premises", the most we will pay for the **Increased cost of construction** is the lesser of:

**1)** The increased cost of construction at the same "premises"; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

**(c)** If the ordinance or law requires relocation to another location the most we will pay for the increased cost of construction is the lesser of:

**1)** The increased cost of construction at the new location; or

**2)** The limit of insurance indicated in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law** for **Increased Costs of Construction** for the building that has suffered "loss".

**(4) Proportional Payments**

If the building or structure sustains both direct "loss" that is covered un-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

der this Coverage Part and direct "loss" that is not covered under this Coverage Part; and as a result of the direct "loss" in its entirety you are required to comply with the ordinance or law, we will not pay the full amount of direct "loss" otherwise payable under the terms of **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law**. Instead, we will pay a proportion of such direct "loss"; meaning the proportion that the covered direct "loss" bears to the total direct "loss".

**j.  Loss Determination - Business Income and Extra Expense**

With respect to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense,**

**(1)**  The amount of "Business Income" and "Rental Value" "loss" will be determined based on:

**(a)**  The Net Income of the business before the direct "loss" occurred;

**(b)**  The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(c)**  The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

**(d)**  Other relevant sources of information, including;

**1)**  Your financial records and accounting procedures;

**2)**  Bills, invoices and other vouchers; and

**3)**  Deeds, liens or contracts.

**(2)**  The amount of Extra Expense will be determined based on:

**(a)**  All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct "loss"

had occurred. We will deduct from the total of such expenses:

**1)**  The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

**2)**  Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(b)**  Necessary expenses that reduce the "Business Income" and "Rental Value" "loss" that otherwise would have been incurred.

**(3)  Resumption of Operations**

We will reduce the amount of your:

**(a)**  "Business Income" and "Rental Value" "loss", other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or "stock") at the "premises" or elsewhere.

**(b)**  Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**(4)**  If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**k.  Party Walls**

A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the "loss" to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the "loss" to the party wall, subject to all applicable policy provisions all other provisions of this **SECTION D. LOSS CONDITIONS, 4. Loss Payment** including:

**(1)** Limit of Insurance shown in the Declarations;

**(2)** **SECTION D. LOSS CONDITIONS, 7. Valuation**; and

**(3)** **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**.

Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of **COMMERCIAL PROPERTY CONDITIONS, I. Transfer Of Rights Of Recovery Against Others To Us** in this Coverage Part.

**5.** <u>Recovered Property</u>

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6.** <u>Vacancy</u>

**a.** <u>Description of Terms</u>

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this Coverage Part is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this Coverage Part is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**1)** Rented to a lessee or sublessee and used by them to conduct their customary operations; or

**2)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b.** <u>Vacancy Provisions</u>

If the building where direct "loss" occurs has been vacant for more than 60 consecutive days before that "loss", we will:

**(1)** Not pay for any "loss" caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** Reduce the amount we would otherwise pay for the "loss" by 15% with respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** of this Loss Condition.

**7.** <u>Valuation</u>

We will determine the value of Covered Property in the event of direct "loss" as follows:

**a.** At "Actual Cash Value" as of the time of direct "loss", except as provided in **b.**, **c.**, **d.**, and **e.** below.

**b.** If the Limit of Insurance for Building satisfies **SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance**, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** Replacement Cost of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the "loss" or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**(4)** For the purposes of valuation, tenants' improvements and betterments are not considered to be the personal property of others.

## SECTION E. ADDITIONAL CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1.** **Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any "loss" if the value of Covered Property at the time of direct "loss" times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of direct "loss" by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in step **(1)**;

**(3)** Multiply to the total amount of "loss", before the application of any deductible, by the figure determined in step **(2)**; and

**(4)** Subtract the deductible from the figure determined in step **(3).**

We will pay the amount determined in step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the "loss" yourself.

### Example No. 1 (Underinsurance):

The value of the property is:  $250,000
The coinsurance percentage is:  80%
The Limit of Insurance is:  $100,000
The Deductible is:  $250
The amount of "loss" is:  $40,000

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$100,000 divided by $200,000 = .50

Step (3):

$40,000 X .50 = $20,000

Step (4):

$20,000 - $250 = $19,750.

We will pay no more than $19,750. The remaining $20,250 is not covered.

### Example No. 2 (Adequate Insurance):

The value of the property is:  $250,000
The coinsurance percentage is:  80%
The Limit of Insurance is:  $200,000
The Deductible is:  $250
The amount of "loss" is:  $40,000

Step (1):

$250,000 X 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):

$200,000 : $200,000 = 1.00

Step (3):

$40,000 X 1.00 = $40,000

Step (4):

$40,000 - $250 = $39,750.

We will pay no more than $39,750 "loss" in excess of the Deductible. No penalty applies.

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

The values of the property are:

| | |
|---|---|
| Bldg. at Location No. 1: | $75,000 |
| Bldg. at Location No. 2: | $100,000 |
| Personal Property at Location No. 2: | $75,000 |
| | 250,000 |

The coinsurance percentage is: 90%
The Limit of Insurance for Buildings and Personal

| | |
|---|---|
| Property at Location Nos. 1 and 2 is: | $180,000 |
| The Deductible is: | $1,000 |

The amount of "loss" is:

| | |
|---|---|
| Bldg. at Location No. 2: | $30,000 |
| Personal Property at Location No. 2: | $20,000 |
| | $50,000 |

Step (1):

$250,000 X 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):

$180,000 : $225,000 = .80

Step (3):

$50,000 X .80 = $40,000

Step (4):

$40,000 - $1,000 = $39,000.

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgage Holders**

**a.** The term "mortgage holder" includes trustee.

**b.** We will pay for covered "loss" to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgage holder has the right to receive loss payment even if the mortgage holder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply

with the terms of this Coverage Part, the mortgage holder will still have the right to receive loss payment if the mortgage holder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgage holder.

All of the terms of this Coverage Part will then apply directly to the mortgage holder.

**e.** If we pay the mortgage holder for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgage holder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgage holder's right to recover the full amount of the mortgage holder's claim will not be impaired.

At our option, we may pay to the mortgage holder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgage holder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgage holder at least ten days before the expiration date of this policy.

**SECTION F. OPTIONAL COVERAGES**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**1.** **Agreed Value**

  **a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for direct "loss" to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Limit of Insurance indicated in the most current Statement of Values that applies to this Coverage Part.

  **b.** If the Agreed Value Optional Coverage is deleted from the policy, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage does not apply.

  **c.** The terms of this Optional Coverage apply only to "loss" that occurs:

    **(1)** On or after the effective date of this Optional Coverage; and

    **(2)** Before the policy expiration date.

  **d.** This Agreed Value Optional Coverage does not apply to **SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense.**

**2.** **Inflation Guard**

  **a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

  **b.** The amount of increase will be:

    **(1)** The Limit of Insurance that applied on the beginning of the current "coverage term" or any other Coverage Part change amending the Limit of Insurance, multiplied by

    **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), multiplied by

    **(3)** The number of days since the beginning of the current "coverage term" or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365. In the event of "loss", this number of days ends at the original date of "loss".

    Example:

    If: The applicable Limit of Insurance is: $100,000

    The Annual percentage increase is: 8%

    The number of days since the beginning of the policy year (or last policy change) is: 146

    The amount of increase is $100,000 X .08 X (146/365) = $3,200

**3.** **Replacement Cost**

  **a.** Replacement Cost (without deduction for depreciation) replaces "Actual Cash Value" in **SECTION D. LOSS CONDITIONS, 7. Valuation** of this **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

  **b.** This Optional Coverage does not apply to:

    **(1)** Personal Property of others, except leased personal property as described in **SECTION A. COVERAGE, 1. Covered Property, d.(7).** The valuation of such leased personal property will be based on the amount for which you are liable under the lease, but not to exceed the replacement cost of the leased item.

    **(2)** Personal effects;

    **(3)** Contents of a residence;

    **(4)** Manuscripts;

    **(5)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac;

    **(6)** "Stock" unless the Replacement Cost including "Stock" option is shown in the Declarations; or

    **(7)** Property, that at the time of "loss":

      **(a)** Is outdated, or obsolete and is stored or not being used; or

      **(b)** Has no practical value to you.

  **c.** You may make a claim for "loss" covered by this insurance on an "Actual Cash Value" basis instead of on a replacement cost basis. In the event you elect to have "loss" settled on an "Actual Cash Value" basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the "loss".

  **d.** We will not pay on a replacement cost basis for any "loss":

    **(1)** Until the lost or damaged property is actually repaired or replaced with other property of generally the same construction and used for the same

purpose as the lost or damaged property; and

**(2)** Unless the repairs or replacement have been completed or are at least underway within 2 years following the date of "loss".

**e.** We will not pay more for "loss" on a replacement cost basis than the least of:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace, on the same "premises", the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount you actually spend that is necessary to repair or replace the lost or damaged property.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use, or repair of any building or structure except as provided in **SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law.**

## SECTION G. DEFINITIONS

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

**2.** "Business Income" means the:

**a.** Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses sustained, including payroll.

**3.** "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**4.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if

any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

**6.** "Finished stock" means stock you have manufactured, except "stock" you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

**7.** "Fungi" means any type or form of fungus, and includes, but is not limited to, any form or type of mold, mushroom or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

**8.** "Loss" means accidental physical loss or accidental physical damage.

**9.** "Money" means:

**a.** Currency, coins and bank notes whether or not in current use; and

**b.** Travelers checks, registered checks and money orders held for sale to the public.

**10.** "Operations" means:

**a.** Your business activities occurring at the "premises"; and

**b.** The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

**11.** "Period of restoration" means the period of time that:

**a.** Begins at the time of direct "loss".

**b.** Ends on the earlier of:

**(1)** The date when the property is the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

**c.** "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

**d.** The expiration date of the policy will not cut short the "period of restoration".

**12.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

**13.** "Premises" means the Locations and Buildings described in the Declarations.

**14.** "Rental Value" means "Business Income" that consists of :

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that "premises", including:

**(1)** Payroll; and

**(2)** The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

**15.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

**a.** Tokens, tickets, revenue and other stamps whether or not in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which are not of your own issue; but does not include "money". Lottery tickets held for sale are not "securities" or evidences of debt.

**16.** "Sinkhole collapse" means the sudden settlement or collapse of earth supporting the Covered Property into subterranean voids created by the action of water on a limestone or similar rock formation. This does not include:

**a.** The cost of filling sinkholes;

**b.** Sinking or collapse of land into man-made subterranean cavities; or

**c.** The value of the land.

**17.** "Specified causes of loss" means fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects; weight of snow, ice or sleet; and water damage.

**a.** Falling objects does not include "loss" to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**b.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the "premises" and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

But water damage does not include "loss" otherwise excluded under the terms of **BUILDING AND BUSINESS PERSONAL PROPERTY, SECTION A. COVERAGE, 3. Covered Causes of Loss, (g) Water**. Therefore, for example, there is no coverage under this Coverage Part in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Exclusion **(g) Water**, there is no coverage for "loss" caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **18.b.(1)** or **18.b.(2)** of this definition of "Specified causes of loss", such water is not subject to the provisions of Exclusion **(g) Water.**

**18.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

**19.** "Suspension" means:

   **a.** The slowdown or cessation of your business activities; and

   **b.** That a part or all of the "premises" is rendered untenantable.

**20.** "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information.

   But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# CinciPlus®
# CinciPak™
# PROPERTY XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT
## SUMMARY OF COVERAGE LIMITS

This is a summary of the Coverages and the Limits of Insurance provided by the CinciPlus® CinciPak™ Property XC+® (Expanded Coverage Plus) Endorsement, **FCP 204**, in combination with the Commercial Property Coverage Form, **FM 101**, which are included in this policy. **No coverage is provided by this summary**. Refer to endorsement **FCP 204** and the Commercial Property Coverage Form, **FM 101** to determine the scope of your insurance protection.

| Blanket Coverages: | Blanket Coverage Limit: | Page No. FCP204 |
|---|---|---|
| | **$150,000** in total for all loss arising from all Blanket Coverages arising from a single occurrence, except as noted otherwise in the form. | |
| Accounts Receivable | | 1 |
| Debris Removal | | 6 |
| Electronic Data Processing Property (EDP): | | 2 |
|   Duplicate and Backup Electronic Data | | 2 |
|   Newly Purchased EDP | | 2 |
|   In Transit or Away From Premises | | 3 |
|   Worldwide Laptop Coverage | | 3 |
| Ordinance or Law (Increased Construction Costs and Demolition) | | 4 |
| Peak Season | | 6 |
| Personal Property of Others | | 6 |
| Tenant Move Back Expenses | | 6 |
| Valuable Papers and Records | | 4 |

| Other Coverages (not subject to Blanket Coverage Limit): | Limit of Insurance: | Page No. FCP204 |
|---|---|---|
| Brands and Labels | $25,000 | 9 |
| Business Income and Extra Expense: | | |
|   Interruption of Computer Operations | $25,000 (sub-limit, subject to a 24 hour deductible) | 1 |

**FCP 401 05 16**                                              **Page 1 of 2**

| **Other Coverages**<br>(not subject to Blanket Coverage Limit): | **Limit of Insurance:** | Page No. FCP204 |
|---|---|---|
| Inflation Guard | 4% on all Building Property referenced in the Declarations | 8 |
| Lessor's Leasehold Interest | Actual loss sustained up to $25,000 | 9 |
| Nonowned Building Damage: | | 8 |
| Loss caused by theft, burglary or robbery | Up to the Business Personal Property (BPP) Limit of Insurance | 8 |
| Loss by any other Covered Cause of Loss | $25,000 or the BPP Limit of Insurance (whichever is less) | 8 |
| Ordinance or Law (other than Increased Construction Costs and Demolition) | Subject to the Building Limit of Insurance | 4 |
| Ordinance or Law - Increased Period of Restoration | $50,000 | 10 |
| Outdoor Property | $25,000 ($1,000 for any one tree, shrub or plant) | 5 |
| Temperature Change | $5,000 | 6 |
| Unauthorized Business Card Use | $5,000 | 9 |
| Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems | $10,000 | 5 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# COMMERCIAL PROPERTY AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART

**I.** **SECTION A. COVERAGE**, Paragraph **2. Property Not Covered** is amended as follows:

Subparagraphs **f.**, **g.**, **i.**, **j.**, **k.**, **m.** and **n.** are deleted in their entirety.

**II.** **SECTION A. COVERAGE**, Paragraph **3. Covered Causes of Loss**, **b. Exclusions**, **(4) Special Exclusions** is amended as follows:

Special Exclusions **(a)** and **(b)** are deleted in their entirety.

**III.** **SECTION A. COVERAGE**, Paragraph **3. Covered Causes of Loss**, **c. Limitations** is amended as follows:

**A.** Subparagraph **(1) Limitations - Various Types of Property** is amended as follows:

**1.** Limitation **(c) Building Interiors** is deleted in its entirety and replaced by the following:

**(c) Building Interiors**

The interior of any building or structure caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

**1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

**2)** The "loss" is caused by or results from thawing of snow, sleet or ice on the building or structure.

**2.** Limitation **(d) Theft of Building Materials** is deleted in its entirety.

**B.** Subparagraph **(3) Limitation - Personal Property Theft**, item **(d)** is deleted in its entirety.

**IV.** **SECTION A. COVERAGE**, Paragraph **4. Additional Coverages** is amended as follows:

**A.** The following **Additional Coverages** are amended as follows:

**1.** The Limit of Insurance referenced in Subparagraph **(4)** of **b. Debris Removal** is amended to $25,000.

**2.** The Limit of Insurance referenced in **c. Fire Department Service Charge** is amended to $25,000.

**3.** **Fire Protection Equipment Recharge - Actual Expenses Incurred**

For this endorsement only, the last paragraph in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, d. Fire Protection Equipment Recharge** is deleted in its entirety and replaced by the following:

The most we will pay in any one occurrence under this Additional Coverage is the reasonable and necessary expenses you incur to recharge your automatic fire suppression system or portable fire extinguishers. This coverage is in addition to the Limits of Insurance shown in the Declarations.

**4.** **g. Ordinance or Law** is amended as follows:

**a.** The Limit of Insurance referenced in the last paragraph is amended to $25,000; and

**b.** Paragraph **(1)** is amended to include the following:

**(d) Cost to Repair, Rebuild or Reconstruct Tenants Improvements and Betterments**

The increased cost to repair, rebuild or reconstruct tenant's improvements and betterments, as described in **SECTION A. COVERAGE; 1. Covered Property, d.**

**Business Personal Property,** Subparagraph **(6)**, caused by enforcement of building, zoning or land use ordinance or law.

5. The Limit of Insurance referenced in **h. Pollutant Clean Up and Removal** is amended to $25,000.

6. The number of days referenced in Subparagraph **(2)** of **i. Preservation of Property** is amended to 90.

B. The following **Additional Coverages** are added:

1. **Peak Season Limit Increase**

   a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

   b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

      (1) The 12 months immediately preceding the date the "loss" occurs; or

      (2) The period of time you have been in business as of the date the "loss" occurs.

2. **Leasehold Improvements**

   If your lease is cancelled in accordance with a valid lease provision as the direct result of a Covered Cause of Loss to property at the location in which you are a tenant, and you cannot legally remove Tenant Improvements and Betterments, as described in **SECTION A. COVERAGE; 1. Covered Property, d. Business Personal Property,** Subparagraph **(6)**, we will extend Business Personal Property coverage to apply to the unamortized value of Tenant Improvement and Betterment that remain and that you were forced to abandon.

   The most we will pay for "loss" in any one occurrence under this Additional Coverage is $25,000.

3. **Lease Assessment**

   Your Business Personal Property is extended to apply to your share of any assessment charged to all tenants by the building owner as a result

of direct physical damage caused by or resulting from a Covered Cause of Loss to building property you occupy as agreed to in your written lease agreement.

The most we will pay for "loss" in any one occurrence under this Additional Coverage is $2,500.

4. **Temporary Relocation of Property**

   (1) If Covered Property is removed from the "premises" and stored temporarily at a location you own, lease or operate while the "premises" is being renovated or remodeled, we will pay for direct "loss" of that stored property:

      (a) Caused by or resulting from a Covered Cause of Loss;

      (b) Up to $50,000 at each temporary location in any one occurrence; and

      (c) During the storage period of up to 90 consecutive days but not beyond the expiration of this policy.

   (2) This Additional Coverage does not apply if the stored property is more specifically insured.

V. **SECTION A. COVERAGE**, Paragraph **5. Coverage Extensions** is amended as follows:

A. The following **Coverage Extensions** are amended as follows:

1. Coverage Extension **a. Accounts Receivable** is amended as follows:

   a. The Limit of Insurance referenced in Subparagraph **(3)(b) Away From Your Premises** is amended to $25,000; and

   b. The last Paragraph is deleted in its entirety and replaced by the following:

      The most we will pay for "loss" in any one occurrence under this Coverage Extension is $50,000.

2. Coverage Extension **b. Business Income and Extra Expense** is amended to include the following:

   (9) Business Income From Dependent Properties

      (a) We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your

"operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to "dependent property" caused by or resulting from any Covered Cause of Loss.

However, this Coverage Extension does not apply when the only "loss" to "dependent property" is "loss" to "electronic data", including destruction or corruption of "electronic data". If the "dependent property" sustains "loss" to "electronic data" and other property, coverage under this Coverage Extension will not continue once the other property is repaired, rebuilt or replaced.

The most we will pay for "loss" in any one occurrence for each "dependent property" location is $10,000. This $10,000 of coverage for Business Income From Dependent Properties does not increase the Limit of Insurance provided in this Coverage Extension.

**(b)** We will reduce the amount of your "Business Income" loss, other than Extra Expense, to the extent you can resume "operations", in whole or in part, by using any other available:

**1)** Source of materials; or

**2)** Outlet for your products.

**(c)** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**(d) BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following definition:

"Dependent property" means property operated by others whom you depend on to:

**1)** Deliver materials or services to you, or to others for your account (Contributing Locations). But, any property which delivers the following services is not a Contributing Location with respect to such services:

**a)** Water supply services;

**b)** Power supply services;

**c)** Communication supply services, including services relating to internet access or access to any electronic network;

**2)** Accept your products or services;

**3)** Manufacture products for delivery to your customers under contract for sale; or

**4)** Attract customers to your business.

The "dependent property" must be located in the coverage territory of this Coverage Part.

**(e)** In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS**, the "Period of restoration" Definition, with respect to "dependent property", is replaced by the following:

"Period of restoration" means the period of time that:

**1)** Begins twenty-four (24) hours after the time of direct "loss" caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

**2)** Ends on the date when the property at the premises of the "dependent property" should be repaired, re-

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

built or replaced with reasonable speed and similar quality.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

1) Regulates the construction, use or repair, or requires the tearing down of any property; or

2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this Coverage Part will not cut short the "period of restoration".

3. The Limit of Insurance referenced in **f. Fences** is amended to $10,000.

4. The Limit of Insurance referenced in **h. Glass** Subparagraph **(2)** is amended to $25,000

5. In Coverage Extension, **i. Newly Purchased, Leased, or Constructed Property**, Paragraphs **(3)(b)**, **(3)(c)** and **(3)(d)** the number 90 is deleted and replaced by the number 180.

6. The last paragraph of **j. Nonowned Building Damage** is deleted in its entirety and replaced by the following:

The most we will pay for "loss" in any one occurrence under this Coverage Extension is your Business Personal Property Limit of Insurance for the "premises" where the "loss" occurs.

7. Coverage Extension **k. Outdoor Property** is deleted in its entirety and replaced by the following:

**k. Outdoor Property**

We will pay for direct "loss" caused by a Covered Cause of Loss to the following types of your Covered Property:

**(1)** Radio antennas, television antennas or satellite dishes (including their lead-in wiring, masts and towers); and

**(2)** Trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or part of a vegetative roof), including debris removal;

but only if caused by or resulting from any of the following causes of loss if they are included as Covered Causes of Loss under this Coverage Part:

**(a)** Fire;

**(b)** Lightning;

**(c)** Explosion;

**(d)** Riot or Civil Commotion;

**(e)** Aircraft;

**(f)** Falling objects;

**(g)** Theft; or

**(h)** Vehicle; and

**(3)** Awnings that are attached to a building that you occupy as a tenant.

We will pay for the debris removal expenses of the above type property that are not your Covered Property if such debris is on your "premises" due to the Covered Causes of Loss described in this Coverage Extension. If you are a tenant, we do not pay debris removal expenses for trees, plants, or shrubs owned by the landlord or owner of the building you occupy.

No other coverage for debris removal expenses provided in this Coverage Part applies to this Outdoor Property Coverage Extension.

The most we will pay for "loss" in any one occurrence under the Coverage Extension is $10,000, but not more than $1,000 for any one tree, shrub or plant.

8. **SECTION A, COVERAGE 5. Coverage Extensions l. Personal Effects** is deleted in its entirety and replaced by the following:

**l. Personal Effects**

If business personal property is Covered Property in this Cover-

age Part, we will pay for direct "loss" caused by a Covered Cause of Loss to personal effects owned by:

(1) You, your officers, or your partners, or if you are a limited liability company, your members or your managers; or

(2) Your employees (including temporary and leased employees), including tools owned by your employees that are used in your business.

This Coverage Extension does not apply to "money" or "securities".

The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

9. The Limit of Insurance referenced in **n, Signs** is amended to $10,000.

10. The Limit of Insurance referenced in **r. Valuable Papers and Records** Subparagraph **(4)(b) Away From Your Premises** is amended to $25,000.

B. The following **Coverage Extensions** are added:

1. **Appurtenant Buildings and Structures**

   a. When a Limit of Insurance is shown in the Declarations for Building at the "premises", you may extend that insurance to apply to direct "loss" of incidental appurtenant buildings or structures, within 1,000 feet of that "premises", caused by or resulting from a Covered Cause of Loss.

   b. When a Limit of Insurance is shown in the Declarations for Business Personal Property at the "premises", you may extend that insurance to apply to direct "loss" of Business Personal Property within incidental appurtenant buildings or structures within 1,000 feet of that "premises", caused by or resulting from a Covered Cause of Loss.

   c. Incidental appurtenant buildings or structures include:

      (1) Storage buildings;

      (2) Carports;

      (3) Garages;

      (4) Pump houses; or

      (5) Above ground tanks;

   which have not been specifically described in the Declarations.

   d. The most we will pay for "loss" in any one occurrence under this Coverage Extension for any combination of "loss" to Building and Business Personal Property is $50,000, regardless of the number of "premises" involved.

2. **Fine Arts**

   For the purposes of this endorsement only:

   a. You may extend the insurance provided by this Coverage Part to apply to paintings, etchings, pictures, tapestries, art glass windows, and other bona fide works of art of rarity, historical value, or artistic merit. The direct "loss" must be caused by or result from a Covered Cause of Loss.

   b. **SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

   We will determine the value of Covered Property in the event of "loss" at the market value at the time of direct "loss".

   c. The most we will pay for "loss" in any one occurrence under this Coverage Extension is $25,000.

3. **Ordinance or Law - Increased Period of Restoration**

   a. When:

      (1) A Covered Cause of Loss occurs to property at the "premises"; and

      (2) The Declarations show that you have coverage for Business Income and Extra Expense;

   you may extend that insurance to apply to the amount of actual loss of "Business Income" you sustain and reasonable Extra Expense you incur during the increased period of "suspension"

of "operations" caused by or resulting from the enforcement of any ordinance or law that:

**(1)** Regulates the construction, repair or replacement of any property;

**(2)** Requires the tearing down or replacement of any parts of property not damaged by a Covered Cause of Loss; and

**(3)** Is in force at the time of "loss".

**b.** This Coverage Extension applies only to the period that would be required, with reasonable speed, to reconstruct, repair or replace the property to comply with the minimum requirements of the ordinance or law.

**c.** This Coverage Extension does not apply to:

**(1)** Loss due to an ordinance or law that:

**(a)** You were required to comply with before the "loss", even if the property was undamaged; and

**(b)** You failed to comply with; or

**(2)** Costs associated with the enforcement of any ordinance or law that requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**d.** The most we will pay for "loss" under this Coverage Extension in any one occurrence is $25,000 at each "premises".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# BUSINESS INCOME (AND EXTRA EXPENSE) AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE PART**

**I.** For the purpose of this endorsement only, **SECTION A. COVERAGE**, Paragraph **5. Additional Coverages** of the Business Income (and Extra Expense) Coverage Part is amended to include the following:

**f. Utility Services**

We will pay for loss of "Business Income", "Rental Value" and Extra Expense you incur caused by or resulting from the partial or complete failure of utility services to the "premises". The partial or complete failure of the utility services listed below must be caused by direct "loss" caused by a Covered Cause of Loss to the following property:

**(1)** Communications Supply Property, meaning property supplying communication services, including service relating to Internet access or access to any electronic, cellular, or satellite network; telephone, radio, microwave, or television services to the "premises", such as:

**(a)** Communication transmission, distribution, service, or similar lines, including fiber optic lines, excluding all such overhead lines of any type;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays, excluding satellites.

**(2)** Power Supply Property, meaning the following types of property supplying electricity, steam or natural gas to the "premises":

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and

**(e)** Transmission, distribution, service or similar lines, excluding all such overhead lines of any type.

**(3)** Water Supply Property, meaning the following types of property supplying water to the "premises":

**(a)** Pumping Stations; and

**(b)** Water mains.

**(4)** Wastewater removal Property, meaning a utility system for removing wastewater and sewage from the "premises", other than a system designed primarily for draining storm water. The utility property includes sewer mains, pumping stations and similar equipment for moving the effluent to a holding, treatment or disposal facility, and includes such facilities. Coverage under this Additional Coverage does not apply to interruption in service caused by or resulting from a discharge of water or sewage due to heavy rainfall or flooding.

This Additional Coverage does not apply to "loss" to "electronic data" including destruction or corruption of "electronic data".

**II. SECTION F. DEFINITIONS** of the Business Income (and Extra Expense) Coverage Part is amended as follows:

With respect to a "suspension" of "operations" insured under **SECTION A. COVERAGE**, Paragraph **5. Additional Coverages, f. Utility Services** of the Business Income (and Extra Expense) Coverage Part, Paragraph **a.** of Definition **9.** "Period of restoration" is deleted and replaced by the following:

**a.** Begins 24 hours after the time of direct "loss".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# ACTUAL LOSS SUSTAINED BUSINESS INCOME ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART

**A.** This endorsement applies to the following Coverage Forms:

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**

**BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM**

**B.** For the purposes of this endorsement only, **SECTION A. COVERAGE, 5. Additional Coverages, c. Extended Business Income, (1), (b), (ii)** is deleted in its entirety and replaced by the following, and **(iii)** is added:

    **(ii)** 90 consecutive days after the date determined in **c.(1)(a)** above; or

    **(iii)** 12 consecutive months after the date of direct "loss".

**C.** For the purposes of this endorsement only, **SECTION A. COVERAGE, 5. Additional Coverages, c. Extended Business Income, (2), (b), (ii)** is deleted in its entirety and replaced by the following, and **(iii)** is added:

    **(ii)** 90 consecutive days after the date determined in **c.(2)(a)** above; or

    **(iii)** 12 consecutive months after the date of direct "loss".

**D.** For the purposes of this endorsement only, **SECTION F. DEFINITIONS, 9., b.** is deleted in its entirety and replaced by the following:

    **b.** Ends on the earlier of:

        **(1)** The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality;

        **(2)** The date when business is resumed at a new permanent location; or

        **(3)** 12 consecutive months after the date of direct "loss".

**E.** When 12 months ALS (an acronym of Actual Loss Sustained) is shown in the Declarations as the Limit of Insurance for Business Income for a specific item, **SECTION B. LIMITS OF INSURANCE** is deleted in its entirety for that item.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPlus®
# CinciPak™
# PROPERTY XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**

**The insurance coverage and Limits of Insurance provided by this endorsement are excess of, and apply in addition to, any similar or identical coverage provided by any other endorsement attached to the above referenced Coverage Parts, or by any other Coverage Part forming a part of the policy of insurance of which the above referenced Coverage Parts form a component.**

**SCHEDULE**

| Blanket Coverage Limit | The Limit of Insurance stated in the Summary of Coverage Limits |
|---|---|
| Applicable only to those coverages subject to the Blanket Coverage Limit, as indicated in this endorsement | |

**A. Accounts Receivable**

For the purposes of this endorsement only:

1. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, the second paragraph in **(3)(b) Away From Your Premises** is deleted in its entirety and replaced by the following:

   This limit of insurance for Away From Your Premises coverage is not included within the Blanket Coverage Limit and is separate and in addition to the Blanket Coverage Limit.

2. In **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, a. Accounts Receivable**, the last paragraph is deleted in its entirety and replaced by the following:

   The most we will pay for "loss" in any one occurrence under this Account Receivable Coverage Extension is the Blanket Coverage Limit as provided in Section **S.** of this endorsement.

**B. Business Income and Extra Expense**

**Interruption of Computer Operations**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, b. Business Income and Extra Expense**, is modified as follows:

1. For **Interruption of Computer Operations** only, all references to $2,500 in **b. Business Income and Extra Expense**, Paragraph **(7)(c)** are deleted and replaced with the Limit of Insurance indicated in the **PROPERTY XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS** for Interruption of Computer Operations.

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended as follows:

   With respect to a "suspension" of "operations" caused only by an interruption in computer operations due to the destruction or corruption of "electronic data" as described in **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data**, Paragraph **a.** of Defini-

Includes copyrighted material of ISO
Properties, Inc., with its permission.

tion **12.** "Period of restoration" is deleted and replaced by the following:

**a.** Begins 24 hours after the time of direct "loss".

## C. Electronic Data Processing Property

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

### Electronic Data Processing Property

**(1) Covered Property**

You may extend the Coverage provided by this Coverage Part to apply to direct "loss" to Covered Property consisting of your:

**(a)** Data processing equipment;

**(b)** Air conditioning and other electrical equipment, used exclusively with your data processing equipment;

**(c)** Programming documentation and instruction manuals;

**(d)** "Electronic data", but only as excess over what is valid and collectible under **SECTION A. COVERAGE, 5. Coverage Extensions, d. Electronic Data**;

**(e)** Media, meaning materials on which "electronic data" is recorded, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs used in processing units; and

**(f)** Property of others in your care, custody or control that is similar to property described in **(1)(a)** through **(e)** above.

**(2) Property Not Covered**

This Coverage Extension does not apply to:

**(a)** Accounts, records, documents and other "valuable papers and records" unless they are programming documentation or instruction manuals.

However, we will cover these items once they are converted to "electronic data" form.

**(b)** "Electronic data" or media that cannot be replaced with similar property of equal quality.

**(c)** Your property that you have rented or leased to someone else and that property is not at your "premises".

**(d)** Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

**(e)** "Production equipment".

**(3) Exclusions**

**(a) BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply except as follows:

**1)** Exclusion **(1)(c) Governmental Action;**

**2)** Exclusion **(1)(d) Nuclear Hazard;**

**3)** Exclusion **(1)(f) War and Military Action;**

**4)** Exclusion **(2)(b) Delay or Loss of Use;**

**5)** Exclusion **(2)(d) Miscellaneous Causes of Loss, 1)** Wear and tear;

**6)** Exclusion **(2)(h) Dishonest or Criminal Acts;**

**7)** Exclusion **(3)(b) Acts or Decisions**; and

**8)** Exclusion **(3)(c) Defects, Errors and Omissions.**

**(b)** In addition to Paragraph **(3)(a)** of this Coverage Extension, we will not pay for the following:

Hidden or latent defect, gradual deterioration, and depreciation. However, if direct "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

**(4) Duplicate and Backup "Electronic Data"**

We will pay for direct "loss" resulting from any of the Covered Causes of Loss to duplicate and backup "electronic data" that you store at a premises not described in the Declarations providing such "electronic data" is not covered by another policy.

**(5) Newly Purchased Electronic Data Processing Property**

**BUILDING AND PERSONAL PROPER-TY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, i. Newly Purchased, Leased, or Constructed Property** is deleted in its entirety and replaced by the following:

**(a)** We will pay for direct "loss" from a Covered Cause of Loss to newly purchased or leased Covered Property described in Paragraph **(1)** of this Coverage Extension while at:

**1)** Locations that are newly purchased or leased;

**2)** Your newly constructed buildings or additions at a "premises"; or

**3)** Any "premises" described in the Declarations.

**(b)** Insurance under this Coverage Extension for such newly acquired property, or Covered Property already insured by this Coverage Extension which is moved to a newly acquired location, will end when any of the following first occurs:

**1)** This Coverage Part expires;

**2)** 90 days pass from the date you acquire your new property or move Covered Property to a newly acquired location; or

**3)** You report values to us.

**(6) In Transit or Away From Premises**

**SECTION A. COVERAGE, 5. Coverage Extensions, e. Exhibitions, Fairs or Trade Shows, m. Property Off Premises** and **p. Transportation** are deleted in their entirety and replaced by the following:

**(a)** You may extend the insurance provided by this Coverage Extension to apply to Covered Property as described in Paragraph **(1):**

**1)** While in or on a vehicle, including loading and unloading; or

**2)** While at a location that is not your "premises".

**(b)** This **In Transit or Away From Premises** coverage does not apply per location.

**(7) Worldwide Laptop Coverage**

**(a)** You may extend the insurance provided by this Coverage Extension to apply to your laptops, notebooks and similar highly portable personal computers, including their peripherals and accessories, while such specific Covered Property is:

**1)** In your or your employee's care, custody and control;

**2)** Not located at a premises you own or lease; and

**3)** Not located in the coverage territory stated in Paragraph **2.** of the Commercial Property Condition **H. Policy Period, Coverage Territory**, provided that location is not under a United States Department of State trade or travel restriction at the time of "loss".

**(b)** This **Worldwide Laptop Coverage** does not apply per location.

**(8) Electronic Data Processing Property Deductible**

**SECTION C. DEDUCTIBLE** is amended to include the following:

We will not pay for direct "loss" in any one occurrence unless the amount of "loss" exceeds the Deductible shown in the Declarations. We will then pay the amount of "loss" in excess of the Deductible, up to the Limit of Insurance provided by this Coverage Extension.

However, direct "loss" caused by or resulting from any of the following Causes of Loss will have the greater of the Deductible shown in the Declarations or $1,000 as the applicable deductible:

**a.** "Loss" caused by faulty construction, error in design or processing, or service or work upon the data processing system;

**b.** "Loss" resulting in mechanical breakdown, short circuiting, blowout, or other electrical damage, unless caused by lightning; or

**c.** "Loss" caused by or resulting from interruption of power supply, power surge, blackout or brownout.

**(9) Electronic Data Processing Property Valuation**

**SECTION D. LOSS CONDITIONS, 7. Valuation** is deleted in its entirety and replaced by the following:

Includes copyrighted material of ISO Properties, Inc., with its permission.

**7. Valuation of Electronic Data Processing Property**

In the event of direct "loss", we will determine the value of Covered Property as described in Paragraph **(1)** of this Coverage Extension as follows:

**a.** Except for "electronic data"

**(1)** If you repair or replace this Electronic Data Processing property within a reasonable time following the "loss", the property will be valued at the full cost of repair or replacement.

However, the most we will pay is the least of the following:

**(a)** The actual cost to repair or restore the property with materials of like kind and quality;

**(b)** The cost of replacing that property with property of similar quality and function;

**(c)** The amount you actually and necessarily spend to repair or replace the property; or

**(d)** The Limit of Insurance applicable to the property.

**(2)** If you do not repair or replace this property within a reasonable time following a "loss", the most we will pay will be the least of the following:

**(a)** "Actual cash value" of the property;

**(b)** "Actual cash value" of repairs with material of like kind and quality; or

**(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in money.

In the event of "loss", the value of property will be

determined at the time of "loss".

**b.** For "electronic data"

We will not pay more than the actual reproduction costs of your "electronic data". If you do not replace or reproduce your "electronic data" following the "loss", the most we will pay is the cost of blank media as described in Paragraph **C.(1)(e)** of this Coverage Extension.

**(10) Electronic Data Processing Property Additional Definition**

The following definition is added to **SECTION G. DEFINITIONS** of the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM:**

**"Production equipment"** means any machinery and related components, including any integrated or dedicated computer system, which is used, or can be used, to produce or process other tangible property.

The most we will pay for "loss" in any one occurrence under this Electronic Data Processing Property Coverage Extension is the Blanket Coverage Limit as provided in Section **S.** of this endorsement.

**D. Ordinance or Law**

For the purpose of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, g. Ordinance or Law,** the last paragraph is deleted in its entirety and replaced by the following:

The most we will pay for "loss" in any one occurrence under Paragraph **(a) Loss of Use of Undamaged Parts of the Building** is the Limit of Insurance shown in the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** as applicable to the covered building or structure incurring "loss". This Coverage is included within, and not in addition to, that applicable Limit of Insurance.

The most we will pay for all "loss" in any one occurrence under Paragraph **(b) Demolition Costs** and Paragraph **(c) Increased Costs of Construction** is the Blanket Coverage Limit as provided in Section **S.** of this endorsement per building or structure suffering "loss". This is an additional Limit of Insurance applicable to the building or structure suffering "loss".

**E. Valuable Papers and Records**

For the purposes of this endorsement only:

1. In the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SEC-TION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records**, the second paragraph in **(4)(b) Away From Your Premises** is deleted in its entirety and replaced by the following:

   The limit of insurance for **Away From Your Premises** is not included within the Blanket Coverage Limit and is separate and in addition to the Blanket Coverage Limit.

2. In the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SEC-TION A. COVERAGE, 5. Coverage Extensions, r. Valuable Papers and Records**, the last paragraph is deleted in its entirety and replaced by the following:

   The most we will pay for "loss" in any one occurrence under this Valuable Papers and Records Coverage Extension is the Blanket Coverage Limit as provided in Section **S.** of this endorsement.

F. **Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems**

   **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended by adding the following:

   **Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems**

   For purposes of this endorsement only,

   1. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusion 1(g) Water**, Paragraph **3)** is deleted in its entirety and replaced by the following:

      3) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems**, water that has entered and then backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment; or

   2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusion 1(g) Water**, Paragraph **5)** is deleted in its entirety and replaced by the following:

      5) Except as provided in **SECTION A. COVERAGE, 5. Coverage Extensions, Water Backup Discharged**

from Sewers, Drains, Septic or Sump Pump Systems**, waterborne material carried or otherwise moved by any of the water referred to in Paragraph **1)**, **3)** or **4)**, or material carried or otherwise moved by mudslide or mudflow as described in Paragraph **(g)2)**.

3. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions**, is amended to include the following:

   **<u>Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems</u>**

   We will pay for "loss" caused by or resulting from water or waterborne material that has entered and then backs up through and is discharged from a sewer, drain (including roof drains and related fixtures), septic system, sump pump system or related equipment.

4. **SECTION C. DEDUCTIBLE** is amended by adding the following:

   **Water Backup Deductible**

   We will not pay for "loss" in any one occurrence caused by or resulting from water or waterborne material which backs up through and is discharged from a sewer, drain, septic system, sump pump system or related equipment, until the amount of "loss" exceeds the Deductible shown in the Declarations, or $1,000, whichever is greater. We will then pay the amount of "loss" in excess of that deductible, up to the applicable limit indicated in Paragraph **5.** of this Coverage Extension.

5. The most we will pay for "loss" in any one occurrence, including any applicable "Business Income", "Rental Value" and Extra Expense, under this Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems Coverage Extension is the Limit of Insurance shown in the **PROPERTY XC+**® **(EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS** for Water Backup Discharged from Sewers, Drains, Septic or Sump Pump Systems.

G. **Outdoor Property**

   For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, k. Outdoor Property**, the last paragraph is deleted in its entirety and replaced by the following:

Includes copyrighted material of ISO
Properties, Inc., with its permission.

The most we will pay for "loss" in any one occurrence under this Outdoor Property Coverage Extension is the Limit of Insurance stated in the **PROPERTY XC+**® **(EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS** for Outdoor Property, but not more than the Limit of Insurance stated in the **PROPERTY XC+**® **(EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS** for any one tree, shrub, or plant.

**H. Tenant Move Back Expenses**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Tenant Move Back Expenses

1. We will reimburse you for expenses you pay for Covered Move Back Expenses of your tenants who temporarily vacate a portion of the building at a "premises". The vacancy must have occurred while the portion of the building rented by your tenant could not be occupied due to direct "loss" to your Covered Property caused by or resulting from a Covered Cause of Loss during the "coverage term". The move back must be completed within 60 calendar days after the portion of the building rented by your tenant has been repaired or rebuilt and is ready for occupancy.

2. Covered Move Back Expenses means only documented, reasonable and necessary expenses of:

   a. Packing, insuring and transporting business personal property;

   b. Re-establishing electric utility and communication services, less refunds from discontinued services;

   c. Assembling and setting up fixtures and equipment; or

   d. Unpacking and re-shelving stock and supplies.

3. If your tenants have valid and collectible insurance for Covered Move Back Expenses, we will pay only for the amount of Covered Move Back Expenses in excess of the amount payable from such other insurance.

4. The most we will pay for "loss" in any one occurrence under this Tenant Move Back Expenses Coverage Extension is the Blanket Coverage Limit as provided in Section **S.** of this endorsement.

**I. Peak Season**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Peak Season

1. In the event that the limit of insurance stated in the Declarations for Business Personal Property is insufficient to fully insure a covered "loss" due to a Peak Season Demand for your inventory, we will pay up to the Blanket Coverage Limit as provided in Section **S.** of this endorsement to that "loss".

2. Peak Season Demand means a temporary (90 consecutive days or less) increase in your inventory to meet a seasonal demand as verified by:

   a. Your previous inventory records for that historical period of time; and

   b. Custom and practice in your industry.

**J. Personal Property of Others**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Personal Property of Others

In the event that the limit of insurance stated in the **COMMERCIAL PROPERTY COVERAGE DECLARATIONS** for Business Personal Property is insufficient to fully insure a covered "loss" to both your Covered Personal Property and property described in Paragraph **(8)** of **SECTION A. COVERAGE, 1. Covered Property, d. Business Personal Property,** we will pay up to the Blanket Coverage Limit as provided in Section **S.** of this endorsement in any one occurrence for such property.

**K. Debris Removal**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

In the event that the limits of insurance stated in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages, b. Debris Removal** are insufficient to fully cover a "loss" insured thereunder, we will pay up to the Blanket Coverage Limit in any one occur-

Includes copyrighted material of ISO Properties, Inc., with its permission.

rence as provided in Section **S.** of this endorsement.

**L.  Temperature Change**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

### Temperature Change

**1.  Coverage**

**a.**  **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property** is deleted in its entirety and replaced by the following:

Covered Property means "perishable stock" located in a building at a "premises".

**b.**  **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is deleted in its entirety and replaced by the following:

Covered Property does not include:

**"Perishable Stock" Not in Buildings**

"Perishable stock" located on buildings, in or on vehicles, or otherwise in the open.

**2.  Covered Causes of Loss**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Covered Causes of Loss** is deleted in its entirety and replaced by the following:

**a.  Covered Causes of Loss**

Covered Causes of Loss means direct "loss" from "temperature change" to Covered Property unless "loss" is excluded or limited in this Coverage Part.

**3.  Excluded Causes of Loss**

**a.**  **BUILDING AND PERSONAL PROPERTY COVERAGE FORM SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this Coverage Extension, except as follows:

**(1)**  Exclusion **(1)(b) Earth Movement**;

**(2)**  Exclusion **(1)(c) Governmental Action;**

**(3)**  Exclusion **(1)(d) Nuclear Hazard;**

**(4)**  Exclusion **(1)(f) War and Military Action;**

**(5)**  Exclusion **(1)(g) Water**; or

**(6)**  Exclusion **(1)(h) "Fungi", Wet Rot, Dry Rot, and Bacteria.**

**b.**  In addition to Paragraph **3.a.** of this Coverage Extension, we will not pay for direct "loss" caused by or resulting from any of the following:

**(1)**  The disconnecting of any heating, refrigerating, cooling or humidity control system from the source of its power;

**(2)**  The deactivation of electrical power caused by the manipulation of any switch or other device (on "premises") used to control the flow of electrical power or current;

**(3)**  The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

**(a)**  Lack of fuel, or

**(b)**  Governmental order;

**(4)**  The inability of a power source at the "premises" to provide sufficient power due to the lack of generating capacity to meet demand; or

**(5)**  Breaking of any glass that is a permanent part of any heating, refrigeration, cooling or humidity control unit.

**4.  Limits of Insurance**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

**SECTION B. LIMITS OF INSURANCE**

**a.**  The most we will pay for all "loss" in any one occurrence, including any applicable "Business Income", "Rental Value" and Extra Expense loss, under this Temperature Change Coverage Extension, is the Limit of Insurance indicated in the **PROPERTY XC+®️ (EXPANDED COVERAGE PLUS) ENDORSE-**

Includes copyrighted material of ISO Properties, Inc., with its permission.

**MENT SUMMARY OF COVERAGE LIMITS** for Temperature Change.

**b.** The Limit of Insurance for Temperature Change is not an additional amount of insurance and will not increase the Limit of Insurance shown in the Declarations for Business Personal Property or "stock".

**5. Duties in the Event of Loss**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties in the Event of Loss or Damage, a.(2)** is deleted in its entirety and replaced by the following:

**(2)** All claims under this Temperature Change Coverage Extension should be reported immediately upon occurrence. Include a description of the damaged "stock". All damaged "stock" must be available for inspection and verification.

**6. Coinsurance**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to the coverage provided by this endorsement.

**7. Definitions**

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following definitions**:**

**a.** "**Perishable stock**" means personal property:

**(1)** Preserved and maintained under controlled conditions; and

**(2)** Susceptible to "loss" if the controlled conditions change.

**b.** "**Temperature change**" means:

**(1)** The fluctuation or total interruption of electrical power, either on or off "premises", resulting from conditions beyond your control.

**(2)** Mechanical breakdown of any refrigerating or cooling apparatus or equipment (on "premises") including the blowing of any fuse, fuses, or circuit breakers.

**(3)** Contamination by refrigerant.

**(4)** The freezing of "perishable stock" resulting from the faulty operation of any stationary heating plant, when such "perishable stock" is contained within a building at the "premises".

**M. Nonowned Building Damage**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, j. Nonowned Building Damage** is deleted in its entirety and replaced by the following:

If you are a tenant, you may extend the insurance provided by this Coverage Part for Business Personal Property to direct "loss" that occurs to the building at a "premises" you occupy but do not own.

This Coverage Extension applies only if your lease makes you legally responsible for that part of the building sustaining "loss".

**1.** This Coverage Extension does not apply to:

**a.** Glass, including lettering and ornamentation, and also necessary:

**(1)** Repair or replacement of encasing frames or alarm tapes; and

**(2)** Expenses incurred to board up openings or remove or replace obstruction.

**b.** Building materials and equipment removed from the "premises".

**2.** The most we will pay for "loss" in any one occurrence under this Nonowned Building Damage Coverage Extension is:

**a.** The actual "loss" sustained up to the applicable Limit of Insurance for Business Personal Property for direct "loss" caused by theft, burglary or robbery, or the attempt of the foregoing; or

**b.** The applicable Limit of Insurance for Business Personal Property or the Limit of Insurance stated in the **PROPERTY XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS** for Nonowned Building Damage, whichever is less, for "loss" caused by any other Covered Cause of Loss, not referenced in **2.a.** above.

**N. Inflation Guard**

For the purposes of this endorsement only, the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** is amended to show the percentage (%) shown in the **PROPERTY XC+**® **(EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS** for Inflation Guard in the **OPTIONAL COVERAGES** - Inflation Guard column for each scheduled Building Property. If an Inflation Guard percentage is already indicated on the **COMMERCIAL PROPERTY COVERAGE PART DECLARATIONS** for that Building property, this percentage is excess of that Inflation Guard percentage for that Building property.

**O. Brands and Labels**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions** is amended to include the following:

**<u>Brands and Labels</u>**

If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

1. Stamp 'salvage' on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

2. Remove the brands or labels, if doing so will not physically damage the merchandise. You must relabel the merchandise or its containers to comply with the law.

The most we will pay for "loss" in any one occurrence under this Brands and Labels Coverage Extension is the Limit of Insurance stated in the **PROPERTY XC+**® **(EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS** for Brands and Labels.

**P. Lessor's Leasehold Interest**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**<u>Lessor's Leasehold Interest</u>**

1. We will pay for the cost of Covered Leasehold Interest you sustain due to the cancellation of lease contracts by your tenants. The cancellation must result from direct "loss" to your Covered Property at the "premises" caused by or

resulting from a Covered Cause of Loss during the "coverage term".

2. Covered Leasehold Interest:

   **a.** Means the difference between the:

   **(1)** Rent you were collecting at the "premises" prior to the direct "loss"; and

   **(2)** "Rental Value" of the "premises" after the direct "loss" has been repaired or rebuilt; and

   **b.** Does not mean refunds or rebates of:

   **(1)** Prepaid rent;

   **(2)** Security or other deposits made by your tenants; or

   **(3)** Insurance, taxes or other payments made on your behalf by tenants.

3. The most we will pay for "loss" in any one occurrence under this Lessor's Leasehold Interest Additional Coverage is the least of:

   **a.** Your Covered Leasehold Interest for the 12 months immediately following the "period of restoration" plus the 90 days of Extended Business Income but ending with the normal expiration date of each cancelled lease; or

   **b.** The Limit of Insurance stated in the **PROPERTY XC+**® **(EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS** for Lessor's Leasehold Interest for all Covered Leasehold Interest of all your tenants cancelling their leases arising out of an occurrence at a "premises".

**Q. Unauthorized Business Card Use**

1. For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 4. Additional Coverages** is amended to include the following:

**<u>Unauthorized Business Card Use</u>**

We will pay for your loss of "money" or charges and costs you incur that result directly from the unauthorized use of credit, debit or charge cards issued in your business name, including:

   **a.** Fund transfer cards;

   **b.** Charge plates; or

Includes copyrighted material of ISO Properties, Inc., with its permission.

**c.** Telephone cards.

The most we will pay in any one occurrence under this Unauthorized Business Card Use Additional Coverage is the Limit of Insurance stated in the **PROPERTY XC+®️ (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS** for Unauthorized Business Card Use.

**2. BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is amended by deleting Paragraph **a.** in its entirety and replacing it with the following:

Covered Property does not include:

**a. Accounts, Deeds, Money or Securities**

Except as provided in **SECTION A. COVERAGE:**

**(1) 4. Additional Coverages, Unauthorized Business Card Use**; and

**(2) 5. Coverage Extensions, a. Accounts Receivable,**

Accounts, bills, currency, deeds, food stamps or other evidences of debt, "money", notes or "securities";

**R. Ordinance or Law - Increased Period of Restoration**

For the purposes of this endorsement only, in **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 5. Coverage Extensions, Ordinance or Law - Increased Period of Restoration**, Paragraph **d.** is deleted in its entirety and replaced by the following:

**d.** The most we will pay for loss of "Business Income", "Rental Value" and Extra Expense in any one occurrence under this Ordinance or Law - Increased Period of Restoration Coverage Extension is the Limit of Insurance stated in the **PROPERTY XC+®️ (EXPANDED COVERAGE PLUS) ENDORSEMENT SUMMARY OF COVERAGE LIMITS** for Ordinance or Law - Increased Period of Restoration at each "premises".

**S. Blanket Coverage Limit**

We will pay up to the Limit of Insurance stated in the Schedule of this endorsement in total in any one occurrence for the sum of all "loss" insured under coverages provided in this endorsement which are subject to the Blanket Coverage Limit. You may apportion this Limit among these coverages as you choose.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™
# EATING ESTABLISHMENT
# FOOD CONTAMINATION BUSINESS INTERRUPTION
# ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**

For the purposes of this endorsement only, **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, SECTION A. COVERAGE, 5. Additional Coverages** is amended to include the following:

**Food Contamination Business Interruption**

**a.** We will pay for the actual loss of "Business Income" you sustain and Extra Expense you incur due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused directly by "food contamination" as a result of a declaration by the Board of Health or other governmental body at a "premises".

**b.** You may use up to $10,000 of the Limit of Insurance applicable to **Food Contamination Business Interruption** after a declaration of "food contamination" at a "premises" by the Board of Health or other governmental body to pay for:

   **(1)** Your cost to clean your equipment at the "premises" according to local Board of Health requirements;

   **(2)** Your costs to replace consumable goods declared contaminated by the local Board of Health;

   **(3)** Necessary medical tests and vaccines for affected employees as required by the Board of Health or other governmental body. This coverage is primary to any other insurance coverage; and

   **(4)** Reimbursement of infected patrons for medical care, hospitalization and necessary blood testing.

**c.** With respect only to the **Food Contamination Business Interruption Additional Coverage**, the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions**, Paragraph **(1)** is amended to include the following:

Fines or penalties of any kind.

**d.** With respect only to the **Food Contamination Business Interruption** Additional Coverage, **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM, SECTION C. LOSS CONDITIONS**, Condition **2. Duties in the Event of Loss** is deleted in its entirety and replaced by the following:

   **2. Duties in the Event of Loss**

   You must see that the following are done in the event of "food contamination" declared by the Board of Health or other governmental body at a "premises":

   **a.** Give us prompt notice of the declaration of the Board of Health or other governmental body, identifying the "premises" involved;

   **b.** Notify any public authority that may have jurisdiction over the incident;

   **c.** As soon as possible, give us a description of how, when and where the "food contamination" was first discovered;

   **d.** Resume all of your "operations" as quickly as possible, we will pay based on the time it would have taken to resume "operations" as quickly as possible;

   **e.** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request;

   **f.** Cooperate with us in the investigation or settlement of the claim; and

   **g.** Do, or have done on your behalf, all things reasonably practical to avoid or diminish the loss.

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**e. BUSINESS INCOME (AND EXTRA EX-PENSE) COVERAGE FORM, SECTION F. DEFINITIONS** is amended as follows:

**(1)** The following definitions are added, but only with respect to the **Food Contamination Business Interruption** Additional Coverage:

**(a)** "Communicable disease" means a bacterial microorganism transmitted to customers through human contact with food.

**(b)** "Food contamination" means the actual or alleged occurrence of food poisoning or suspected food poisoning of one or more of your customers. The food contamination must have resulted from tainted food purchased by you or "communicable disease" transmitted by one or more of your employees.

**(2)** The definition of "Period of restoration" is amended as follows, but only with respect to the **Food Contamination Business Interruption** Additional Coverage:

Paragraphs **a.** and **b.** are deleted in their entirety and replaced by the following:

**a.** Begins 24 hours after the declaration of "food contamination" at a "premis-es" by the Board of Health or other governmental body.

**b.** Ends the earlier of:

**(1)** The date when the "premises" is cleared to reopen for business, or should have been but for the lack of your due diligence, by the Board of Health or other governmental body; or

**(2)** The date when business is resumed at a new permanent location.

**f. BUSINESS INCOME (AND EXTRA EX-PENSE) COVERAGE FORM, SECTION A. COVERAGE, 5. Additional Coverages. Food Contamination Business Interruption** is amended to include the following:

**Limit of Insurance for Food Contamination Business Interruption**

The most we will pay in one occurrence under **Food Contamination Business Interruption** is $50,000. This Limit of Insurance is included within, and is not in addition to, the Limit of Insurance for the "Business Income" and Extra Expense.

---

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TENTATIVE RATE

The rates used in the development of the premium for the Commercial Property Coverage Part are tentative. We will adjust the premium effective from the inception date of this Coverage Part once the rates are promulgated.  If this is a renewal of a policy previously issued by us, we will adjust the premium effective from the renewal date of this Coverage Part once the rates are promulgated.

```
3      2845 SHORT VINE ST
       CINCINNATI, OH 45219-2020
```

**CP 99 93 10 90**        Copyright, ISO Commercial Risk Services, Inc., 1983, 1989

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - COMMERCIAL PROPERTY

This endorsement modifies insurance provided under the following:

### COMMERCIAL PROPERTY COVERAGE PART

**A.** Paragraphs **c.** and **h.** of the **Loss Payment** Condition are replaced by the following, except as provided in Paragraph **B.**:

  **c.** We will give you notice, within 21 days after we receive a properly executed proof of loss, that we:

    **(1)** Accept your claim;

    **(2)** Deny your claim; or

    **(3)** Need more time to investigate your claim.

    If we need more time to investigate your claim, we will provide an explanation for our need for more time. We will continue to notify you again in writing, at least every 45 days, of the status of the investigation and of the continued time needed for the investigation.

  **h.** Provided you have complied with all the terms of this Coverage Part, we will pay for covered "loss" or damage within:

    **(1)** 10 days after we accept your claim if such acceptance occurs within the first 21 days after we receive a properly executed proof of loss, unless the claim involves an action by a probate court or other extraordinary circumstances as documented in the claim file; or

    **(2)** Five days after we accept your claim if such acceptance occurs more than 21 days after we receive a properly executed proof of loss, and

      **(a)** An appraisal award has been made; or

      **(b)** We have reached an agreement with you on the amount of "loss" that was in dispute.

**B.** Paragraph **A.** does not apply to the **Loss Payment** Loss Condition in the following forms:

  **1.** Business Income (And Extra Expense) Coverage Form;

  **2.** Business Income (Without Extra Expense) Coverage Form;

  **3.** Extra Expense Coverage Form; and

  **4.** Leasehold Interest Coverage Form; and

  **5.** Mortgage Interest Coverage Form.

In the forms listed above, the **Loss Payment** Loss Condition is replaced by the following:

### LOSS PAYMENT

  **a.** We will give you notice, within 21 days after we receive a properly executed proof of loss, that we:

    **(1)** Accept your claim;

    **(2)** Deny your claim; or

    **(3)** Need more time to investigate your claim.

    If we need more time to investigate your claim, we will provide an explanation for our need for more time. We will continue to notify you again in writing, at least every 45 days, of the status of the investigation and of the continued time needed for the investigation.

  **b.** Provided you have complied with all the terms of this Coverage Part, we will pay for covered "loss" or damage within:

    **(1)** 10 days after we accept your claim if such acceptance occurs within the first 21 days after we receive a properly executed proof of loss, unless the claim involves an action by a probate court or other extraordinary circumstances as documented in the claim file; or

    **(2)** Five days after we accept your claim if such acceptance occurs more than 21 days after we receive a properly executed proof of loss, and

      **(a)** An appraisal award has been made; or

      **(b)** We have reached an agreement with you on the amount of "loss" that was in dispute.

Includes copyrighted material of ISO Properties, Inc., with its permission.

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**B. Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of direct "loss", the breach of condition does not exist.

**C. Insurance Under Two or More Coverages**

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

**D. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

**1.** There has been full compliance with all of the terms of this Coverage Part; and

**2.** The action is brought within 2 years after the date on which the direct "loss" occurred.

**E. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**F. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. Other Insurance**

**1.** You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered "loss". Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**2.** If there is other insurance covering the same "loss", other than that described in **1.** above, we will pay only for the amount of covered "loss" in excess of the amount due from that other insurance, whether you can collect on it or not. **However, we will not reimburse any deductible or difference between Actual Cash Value and Replacement Cost valuations.** We will not pay more than the applicable Limit of Insurance.

**H. Policy Period, Coverage Territory**

Under this Coverage Part:

**1.** We cover "loss" commencing:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

**2.** The coverage territory:

**a.** The United States of America (including its territories and possessions);

**b.** Puerto Rico; and

**c.** Canada.

**I. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after direct "loss" to impair them. But you may waive your rights against another party in writing:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. Prior to a direct "loss" to your Covered Property or Covered Income.

2. After a direct "loss" to your Covered Property or Covered Income only if, at time of direct "loss", that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

This will not restrict your insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SCHEDULE**

| Loc | Bldg | Loss Payee Name and Address: | Applicable Clause (Enter B, C, D or E): |
|-----|------|------------------------------|------------------------------------------|
| 5   | 1    |                              | C                                        |

M2 LEASE FUNDS LLC
175 N PATRICK BLVD
STE 140
BROOKFIELD, WI 53045-5889

**A.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

For the purposes of this endorsement only, the following are added to **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 4. Loss Payment**, as indicated in the Schedule of this endorsement.

**B. Loss Payable**

For Covered Property in which both you and a Loss Payee shown in the Schedule of this endorsement have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**C. Lender's Loss Payable**

**1.** The Loss Payee shown in the Schedule of this endorsement is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

   **a.** Warehouse receipts;

   **b.** A contract for deed;

   **c.** Bills of lading;

   **d.** Financing statements; or

   **e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

   **a.** We will pay for covered "loss" to each Loss Payee in their order of precedence, as interests may appear.

   **b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

   **c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

     **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

     **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any "loss" and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

**D. Contract of Sale**

**1.** The Loss Payee shown in the Schedule of this endorsement is a person or organization you have entered a contract with for the sale of Covered Property.

**2.** For Covered Property in which both you and the Loss Payee have an insurable interest we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for "loss" jointly to you and the Loss Payee, as interests may appear.

**3.** For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**E. Building Owner Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule of this endorsement is the owner of the building in which you are a tenant.

**2.** We will adjust losses to the building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

**3.** We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EQUIPMENT BREAKDOWN COVERAGE

## (Excluding Production Machinery)

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE FORM**

**A. COVERAGE**

1. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE** is amended by adding the following:

    We will pay for direct damage to Covered Property caused by or resulting from an "accident" at the "premises".

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** is amended by:

    a. Adding the following to **(1)(e) Utility Services, (1)(g) Water 1), (2)(a) Electrical Current, (2)(d) Miscellaneous Causes of Loss, (2)(j) Exposure to Weather, (3)(a) Weather Conditions, (3)(b) Acts or Decisions,** and **(3)(c) Defects, Errors, and Omissions:**

        However, this exclusion does not apply if these causes of loss are caused by, or result from, an "accident" to Covered Property at the "premises".

    b. Deleting in its entirety **(2)(e) Explosion of Steam Apparatus.**

3. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, c. Limitations** is amended:

    a. By deleting in its entirety:

        (1) **(1)(a)** Steam Apparatus; and

        (2) **(1)(b)** Hot Water Boilers,

    b. And by adding the following:

        The following limitations apply only to "loss" covered by this endorsement. The sublimits provided in Paragraphs **(1), (2)** and **(3)** below are included within, and are not in addition to, the Limit of Insurance shown in the Declarations as applicable to the Covered Property. These limits, or the applicable Limit of Insurance shown in the Declarations as applicable to the Covered Property, whichever is less,

apply. These limits apply to direct damage only.

**(1) Ammonia Contamination Limitation**

If Covered Property is contaminated by ammonia as a result of an "accident" to Covered Property at the "premises", the most we will pay for this kind of damage, including salvage expense, is $50,000 per location.

**(2) Data, Media and Software Restoration**

If "electronic data" is destroyed or corrupted as a result of an "accident" to covered equipment, the most we will pay for the expenses incurred by you for the restoration of that "electronic data" is $50,000 for all loss sustained in the "coverage term", regardless of the number of "accidents" or the number of "premises" involved.

**(3) "Hazardous Substance" Limitation**

The following applies despite the operation of the Ordinance or Law Exclusion.

If Covered Property is damaged, contaminated or polluted by a "hazardous substance" as a result of an "accident" to Covered Property at the "premises", the most we will pay for any additional expenses incurred by you for clean up, repair, replacement or disposal of that property is $50,000. As used here, additional expenses mean expenses incurred beyond those for which we would be liable if no "hazardous substance" had been involved.

**B. Additional Coverages**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION**

**A. COVERAGE, 4. Additional Coverages** is amended as follows:

**1.** The first paragraph is deleted in its entirety and replaced with the following:

All other terms and conditions of this Coverage Part, including Limits of Insurance and deductibles, apply to these Additional Coverages.

**2.** The following is added:

    **a.** <u>Drying Out</u>

If electrical equipment included in Covered Property requires "drying out" as a result of a "flood", the reasonable expense incurred for the "drying out" will be covered. This Additional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the Covered Property.

    **b.** <u>Expediting Expenses</u>

With respect to "loss" covered by this endorsement, and with respect to your damaged Covered Property, we will pay the reasonable extra cost to:

    **(1)** Make temporary repairs;

    **(2)** Expedite permanent repairs; and

    **(3)** Expedite permanent replacement.

    **c.** <u>Non-Owned Utility Service Equipment</u>

We will pay for indirect loss resulting from an "accident" to non-owned utility equipment described in **E. Definitions, 1.a.(6)** but we will not pay for any expense to repair or replace direct damage to non-owned utility equipment that:

    **(1)** You do not own, lease or rent, or

    **(2)** That is not in your care custody and control.

This Additional Coverage is included within the Limit of Insurance shown in the Declarations as applicable to the Covered Property.

**C. Deductible**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is amended by adding the following:

The deductible applicable to "loss" covered by this endorsement is $500, or the deductible indicated in the Declarations as being applicable to the lost or damaged Covered Property, whichever is greater.

**D. Conditions**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS** is amended by adding the following:

**1.** <u>Suspension</u>

Whenever any covered equipment is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against "loss" from an "accident" to that covered equipment. This can be done by delivering or mailing a written notice of suspension to:

    **a.** Your last known address; or

    **b.** The address where the covered equipment is located.

Once suspended in this way, your insurance can be reinstated only by written notice from us.

If we suspend your insurance, you will get a pro rata refund of premium for that covered equipment. However, the suspension will be effective even if we have not yet made or offered a refund.

**2.** <u>Inspection</u>

If any Covered Property requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf.

**E. Definitions**

For the purposes of the coverages in this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended by adding the following:

**1. a.** "Accident" means a sudden and accidental breakdown of the following covered equipment:

    **(1)** Any boiler;

    **(2)** Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents;

    **(3)** Any piping and its accessory equipment;

    **(4)** Any refrigeration or air conditioning system; or

**(5)** Any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

**(6)** Equipment of a type described in definition **a.(1)** through **(5)** above which you do not own, lease or rent and is not in your care, custody or control that is on or within one mile of a covered "location", and is supplying you with electricity, gas, water, steam, heat, refrigeration, air conditioning or communication services.

At the time the breakdown occurs, it must become apparent by physical damage that requires repair or replacement of the covered equipment or part thereof.

**b.** None of the following is an "accident":

**(1)** Depletion, deterioration, corrosion or erosion, wear and tear;

**(2)** Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

**(3)** The functioning of any safety or protective device; or

**(4)** The breakdown of any structure or foundation.

**c.** None of the following are covered equipment:

**(1)** Any sewer piping, underground gas piping, or piping forming a part of a sprinkler system;

**(2)** Water piping other than boiler feed water piping, boiler condensate return piping or water piping forming a part of a refrigeration or air conditioning system;

**(3)** Insulating or refractory material;

**(4)** Vehicle, elevator, escalator, conveyor, hoist or crane;

**(5)** Felt, wire, screen, die, extrusion plate, swing hammer, grinding disc, cutting blade, non-electrical cable, chain, belt, rope, clutch plate, brake pad, nonmetallic part, or any part or tool subject to periodic replacement; or

**(6)** "Production Machinery".

**d.** If a strike, riot, civil commotion, act of sabotage or vandalism results in an "accident", this insurance applies. However, the War and Military Action Exclusion and the conditions of this Coverage Part still apply.

**2.** **"Drying out"** means restoration of electrical equipment to service following a "flood" by removal of excess moisture from that equipment including:

**a.** Application of heat or controlled electrical current, circulation of air, or use of dehumidification equipment, after rinsing the electrical equipment with clean fresh water if necessary to flush away "flood" debris;

**b.** "Drying out" can be done in place or equipment can be disconnected and removed to a repair facility for drying if necessary.

**c.** "Drying out" does not include or apply to:

**(1)** Replacement or repair of any electrical equipment or parts thereof; or

**(2)** Any expense related to deconstruction, demolition, or reconstruction of any building component, structure or part thereof to gain access to electrical equipment.

**3.** **"Flood"** means a general and temporary condition of partial or complete inundation of normally dry land areas due to:

**a.** The overflow of inland or tidal waters;

**b.** The unusual or rapid accumulation or runoff of surface waters from any source; or

**c.** Mudslides or mudflows, which are caused by flooding as defined above in Paragraph **3.b.** For the purpose of this Covered Cause of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

All flooding in a continuous or protracted event will constitute a single "flood".

**4.** **"Hazardous Substance"** means a substance declared to be hazardous to health by a governmental agency.

**5.** **"Production Machinery"** means:

**a.** Production or process machine or apparatus that processes, forms, cuts, shapes grinds or conveys raw material, material in process or finished products, and the computers and their peripherals that control or operate such a machine or apparatus.

**b.** Machine or apparatus used for research, medical, diagnostic, surgical, dental or pathological purposes, and computers and their peripherals that control or operate such a machine or apparatus.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEMPERATURE CHANGE LOSS FORM

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

**SCHEDULE**

| Loc | Bldg | Description of Perishable Stock | Limit of Insurance | Deductible |
|-----|------|-------------------------------|-------------------|------------|
| 1   | 1    | RESTAURANT                    | 150,000           | 2,500      |

**Per Occurrence Deductible**

$500 unless indicated otherwise as follows:

☐  $1,000    ☐  $2,500    ☒  $ _SEE ABOVE_

**A. Coverage**

For the purposes of this endorsement only:

1. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 1. Covered Property** is deleted in its entirety and replaced by the following:

    Covered Property means "perishable stock" for which a Limit of Insurance is shown in the Schedule of this endorsement.

2. **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 2. Property Not Covered** is deleted in its entirety and replaced by the following:

    Covered Property does not include:

    **"Perishable Stock" Not in Buildings**

    "Perishable stock" located on buildings, in or on vehicles, or otherwise in the open.

**B. Covered Causes of Loss**

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, a. Cov-** ered Causes of Loss is deleted in its entirety and replaced by the following:

a. **Covered Causes of Loss**

    Covered Causes of Loss means direct "loss" from "temperature change" to Covered Property unless "loss" is excluded or limited in this Coverage Part.

**C. Excluded Causes of Loss**

1. For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss, b. Exclusions** does not apply to this endorsement, except as follows:

    a. **Exclusion (1)(b) Earth Movement;**

    b. **Exclusion (1)(c) Governmental Action;**

    c. **Exclusion (1)(d) Nuclear Hazard;**

    d. **Exclusion (1)(f) War and Military Action;**

    e. **Exclusion (1)(g) Water; or**

    f. **Exclusion (1)(h) "Fungi", Wet Rot, Dry Rot, and Bacteria.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**2.** In addition to Paragraph **C.1.** of this endorsement, we will not pay for direct "loss" caused by or resulting from any of the following:

    **a.** The disconnecting of any heating, refrigerating, cooling or humidity control system from the source of its power;

    **b.** The deactivation of electrical power caused by the manipulation of any switch or other device (on "premises") used to control the flow of electrical power or current;

    **c.** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

        **(1)** Lack of fuel; or

        **(2)** Governmental order;

    **d.** The inability of a power source at the "premises" to provide sufficient power due to the lack of generating capacity to meet demand; or

    **e.** Breaking of any glass that is a permanent part of any heating, refrigeration, cooling or humidity control unit.

## D. Limits of Insurance

For the purposes of this endorsement, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION B. LIMITS OF INSURANCE** is deleted in its entirety and replaced by the following:

### SECTION B. LIMITS OF INSURANCE

**1.** The most we will pay for direct "loss" caused by "temperature change" in any one occurrence is the applicable Limit of Insurance shown in the Schedule of this endorsement.

**2.** The Limit of Insurance is not an additional amount of insurance and will not increase the Limit of Insurance shown in the Declarations for Business Personal Property or "stock". The Limit of Insurance shown in the Schedule is the most we will pay for "loss" caused by "temperature change".

## E. Deductible

For the purposes of this endorsement, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION C. DEDUCTIBLE** is deleted in its entirety and replaced with the following:

### SECTION C. DEDUCTIBLE

**1.** We will not pay for direct "loss" in any one occurrence unless the direct "loss" exceeds the Deductible shown in the Schedule of this endorsement. We will then pay the amount of direct "loss" in excess of that Deductible, up to the Limit of Insurance shown in that Schedule.

**2.** No other deductible in this Coverage Part applies to the Coverages provided by this endorsement.

## F. Duties in the Event of Loss

For the purpose of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION D. LOSS CONDITIONS, 3. Duties in the Event of Loss or Damage, a.(2)** is deleted in its entirety and replaced by the following:

    **(2)** All claims under this **TEMPERATURE CHANGE LOSS FORM** should be reported immediately upon occurrence. Include a description of the damaged "perishable stock". All damaged "perishable stock" must be available for inspection and verification.

## G. Coinsurance

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION E. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to the coverage provided by this endorsement.

## H. Definitions

For the purposes of this endorsement only, **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION G. DEFINITIONS** is amended to include the following:

**1.** "Perishable stock" means personal property:

    **a.** Preserved and maintained under controlled conditions; and

    **b.** Susceptible to "loss" if the controlled conditions change.

**2.** "Temperature change" means:

    **a.** The fluctuation or total interruption of electrical power, either on or off "premises", resulting from conditions beyond your control.

    **b.** Mechanical breakdown or mechanical failure of any refrigerating or cooling apparatus or equipment (on "premises") including the blowing of any fuse, fuses, or circuit breakers, only while such equipment is at the "premises".

    **c.** Contamination by refrigerant.

    **d.** Damage due to the freezing of "perishable stock" that is not meant to be frozen resulting from the faulty operation of any stationary heating plant, when such "perishable stock" is contained within the building described in the Declarations.

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION F. DEFINITIONS.**

## SECTION A. COVERAGE

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**a.** "Business Income" including "Rental Value".

**b.** "Business Income" other than "Rental Value".

**c.** "Rental Value".

If option **a.** above is selected, the term "Business Income" will include "Rental Value". If option **c.** above is selected, the term "Business Income" will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

**1. Business Income**

**a.** We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown in the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss. With respect to "loss" to personal property in the open (or personal property in a vehicle or portable storage unit), the "premises" include the area within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

**b.** With respect to the requirements set forth in the preceding paragraph, if you are a tenant and occupy only part of the site at which the "premises" are located, for the purposes of this Coverage Part only, your "premises" is the portion of the building which you rent, lease or occupy, including:

**(1)** Any area within the building or on the site at which the "premises" are located if that area services or is used to gain access to the described "premises".

**(2)** Your personal property in the open (or in a vehicle or portable storage unit) within 1,000 feet of the building or 1,000 feet of the "premises", whichever distance is greater.

**2. Extra Expense**

**a.** Extra Expense coverage is provided at the "premises" described in the Declarations only if the Declarations show that "Business Income" coverage applies at that "premises".

**b.** Extra Expense means necessary expenses you sustain (as described in Paragraphs **2.c., d.** and **e.**) during the "period of restoration" that you would not have sustained if there had been no direct "loss" to property caused by or resulting from a Covered Cause of Loss.

**c.** If these expenses reduce the otherwise payable "Business Income" "loss", we will pay expenses (other than the expense to repair or replace property as described in Paragraph **2.d.**) to:

**(1)** Avoid or minimize the "suspension" of business and to continue "operations" either:

**(a)** At the "premises"; or

**(b)** At replacement "premises" or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location; or

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

**d.** We will also pay expenses to:

**(1)** Repair or replace property; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Research, replace or restore the lost information on damaged "valuable papers and records";

but only to the extent this payment reduces the otherwise payable "Business Income" "loss". If any property obtained for temporary use during the "period of restoration" remains after the resumption of normal "operations", the amount we will pay under this Coverage Form will be reduced by the salvage value of that property.

**e.** Extra Expense as described in Paragraphs **2.a.** thru **2.d.** does not apply to "loss" to Covered Property as described in the **BUILDING AND PERSONAL PROPERTY COVERAGE FORM**.

**3. Covered Causes of Loss**

See **BUILDING AND PERSONAL PROPERTY COVERAGE FORM, SECTION A. COVERAGE, 3. Covered Causes of Loss.**

**4. Limitation for Electronic Data**

**a.** Coverage for "Business Income" does not apply when a "suspension" of "operations" is caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations**.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of "electronic data", or any "loss" to "electronic data", except as provided under **SECTION A. COVERAGE, 5. Additional Coverages, d. Interruption of Computer Operations**.

**c.** This Limitation does not apply when "loss" to "electronic data" involves only "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

The Additional Coverages in Paragraphs **5.a.** through **5.e.** are included within and not additional "Business Income" and Extra Expense Limits of Insurance.

**a. Alterations and New Buildings**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain due to direct "loss" at the "premises" caused by or re-

sulting from any Covered Cause of Loss to:

**(1)** New buildings or structures, whether complete or under construction;

**(2)** Alterations or additions to existing buildings or structures; and

**(3)** Machinery, equipment, supplies or building materials located on or within 1,000 feet of the "premises" and:

**(a)** Used in the construction, alterations or additions; or

**(b)** Incidental to the occupancy of new buildings.

If such direct "loss" delays the start of "operations", the "period of restoration" for "Business Income" coverage will begin on the date "operations" would have begun if the direct "loss" had not occurred.

**b. Civil Authority**

When a Covered Cause of Loss causes direct damage to property other than Covered Property at the "premises", we will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises", provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority coverage for "Business Income" will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will apply for a period of up to 30 consecutive days from the date on which such coverage began.

Civil Authority coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the "premises" and will end 30 consecutive days after the date of that action; or when your Civil Authority coverage for "Business income" coverage ends, whichever is later.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c. Extended Business Income**

**(1)** "Business Income" Other Than "Rental Value"

If the necessary "suspension" of your "operations" produces a "Business Income" "loss" payable under this Coverage Part, we will pay for the actual loss of "Business Income" you sustain during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the "Business Income" amount that would have existed if no direct "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **c.(1)(a)** above.

However, Extended Business Income does not apply to loss of "Business Income" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Business Income" must be caused by direct "loss" at the "premises" caused by or resulting from any Covered Cause of Loss.

**(2)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this Coverage Part, we will pay for the actual loss of "Rental Value" you sustain during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct "loss" had occurred; or

**(ii)** 60 consecutive days after the date determined in **c.(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" sustained as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the "premises" are located.

Loss of "Rental Value" must be caused by direct "loss" at the described "premises" caused by or resulting from any Covered Cause of Loss.

**d. Interruption of Computer Operations**

**(1)** Subject to all provisions of this Additional Coverage - **Interruption of Computer Operations**, you may extend the insurance that applies to "Business Income" and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of "electronic data" due to a Covered Cause of Loss. This Additional Coverage - **Interruption of Computer Operations** does not apply when "loss" to "electronic data" only involves "loss" to "electronic data" which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including "electronic data") by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(3)** The most we will pay under this Additional Coverage - **Interruption of Computer Operations** is $2,500 for all "loss" sustained and expense sustained in any "coverage term", regardless of the number of interruptions or the number of "premises", locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this

amount, then the balance is available for "loss" or expense sustained as a result of subsequent interruptions in that "coverage term". A balance remaining at the end of a "coverage term" does not increase the amount of insurance in the next "coverage term". With respect to any interruption which begins in one "coverage term" and continues or results in additional "loss" or expense in that subsequent "coverage term", all "loss" and expense is deemed to be sustained in the "coverage term" in which the interruption began.

**(4)** This Additional Coverage - **Interruption in Computer Operations** does not apply to "loss" sustained or expense sustained after the end of the "period of restoration", even if the amount of insurance stated in Paragraph **d.(3)** of this Additional Coverage has not been exhausted.

**e. Ingress and Egress**

We will pay for the actual loss of "Business Income" you sustain and necessary Extra Expense you sustain caused by the prevention of existing ingress or egress at a "premises" shown in the Declarations due to direct "loss" by a Covered Cause of Loss at a location contiguous to such "premises". However, coverage does not apply if ingress or egress from the "premises" is prohibited by civil authority.

Ingress and egress coverage for "Business Income" will begin immediately after the time of the direct "loss" and will continue for a period up to 30 consecutive days.

Ingress and egress coverage for Extra Expense will begin at time of the direct "loss" and will continue for 30 consecutive days or whenever your Ingress and Egress "business income" coverage ends, whichever occurs first.

**6. Coverage Extension**

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance. **SECTION D. ADDITIONAL CONDITION, 1. Coinsurance** does not apply to this Coverage Extension.

**Newly Purchased or Leased Locations**

**a.** You may extend your "Business Income" and Extra Expense coverages to apply to property located at:

**(1)** New buildings or additions while being built on a "premises";

**(2)** Buildings you newly purchase or become required to insure by written contract; or

**(3)** Leased buildings or space therein that you are not required to insure. Such lease must be for a period of 12 consecutive months or longer.

This does not apply to property situated at trade shows, fairs or exhibitions.

**b.** The most we will pay in total for "Business Income" and Extra Expense "loss" under this Coverage Extension is $100,000 at each location described in Paragraph **6.a.**

**c.** Insurance under this Coverage Extension will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 90 days pass from the date you begin construction on that part of the building that would qualify as Covered Property;

**(3)** 90 days pass from the date you purchase, lease, or become contractually required to insure property described in Paragraphs **6.a.(2)** and **(3)**; or

**(4)** You report values to us when you acquire your new building or business personal property.

We will charge you additional premium for values reported from the date you purchase or lease the property or begin construction on that part of the building that would qualify as Covered Property.

## SECTION B. LIMITS OF INSURANCE

The most we will pay for "loss" in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

## SECTION C. LOSS CONDITIONS

The following conditions apply in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

**1. Appraisal**

If we and you disagree on the amount of "Business Income" or Extra Expense "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separate-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ly the amount of "Business Income" or Extra Expense "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2.** <u>Duties in the Event of Loss</u>

**a.** You must see that the following are done in the event you have a "Business Income" or Extra Expense "loss":

   **(1)** Notify the police if a law may have been broken.

   **(2)** Give us prompt notice of the direct "loss". Include a description of the property involved.

   **(3)** As soon as possible, give us a description of how, when, and where the direct "loss" occurred.

   **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

   **(5)** As often as may be reasonably required, permit us to inspect the property proving the "loss" and examine your books and records.

   Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

   **(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

   **(7)** Cooperate with us in the investigation or settlement of the claim.

   **(8)** If you intend to continue your business, you must resume all or part of

your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3.** <u>Loss Determination</u>

**a.** The amount of "Business Income" "loss" will be determined based on:

   **(1)** The Net Income of the business before the direct "loss" occurred;

   **(2)** The likely Net Income of the business if no direct "loss" had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

   **(3)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct "loss"; and

   **(4)** Other relevant sources of information, including:

     **(a)** Your financial records and accounting procedures;

     **(b)** Bills, invoices and other vouchers; and

     **(c)** Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

   **(1)** All expenses that exceed the normal operating expenses that would have been sustained by "operations" during the "period of restoration" if no direct "loss" had occurred. We will deduct from the total of such expenses:

     **(a)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

     **(b)** Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Necessary expenses that reduce the "Business Income" "loss" that otherwise would have been incurred.

**c. <u>Resumption of Operations</u>**

We will reduce the amount of your:

**(1)** "Business Income" "loss", other than Extra Expense to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the "premises" or elsewhere.

**(2)** Extra Expense "loss" to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. <u>Loss Payment</u>**

We will pay for insured "loss" within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**a.** We have reached agreement with you on the amount of "loss"; or

**b.** An appraisal award has been made.

**SECTION D. ADDITIONAL CONDITION**

**1. <u>Coinsurance</u>**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the **COMMON POLICY CONDITIONS** and the **COMMERCIAL PROPERTY CONDITIONS.**

We will not pay the full amount of any "Business Income" "loss" if the Limit of Insurance for "Business Income" is less than:

**a.** The Coinsurance percentage shown for "Business Income" in the Declarations; times

**b.** The sum of:

**(1)** The Net Income (Net Profit or Loss before income taxes), and

**(2)** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no direct "loss" occurred) by your "operations" at the "premises" for the 12 months following the inception, or last previous anniversary date, of this Coverage Part (whichever is later).

Instead, we will determine the most we will pay using the following steps:

**1.** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this Coverage Part by the Coinsurance percentage;

**2.** Divide the Limit of Insurance for the described "premises" by the figure determined in Step **1.**; and

**3.** Multiply the total amount of "loss" by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**1.** Prepaid freight - outgoing;

**2.** Returns and allowances;

**3.** Discounts;

**4.** Bad debts;

**5.** Collection expenses;

**6.** Cost of raw stock and factory supplies consumed (including transportation charges);

**7.** Cost of merchandise sold (including transportation charges);

**8.** Cost of other supplies consumed (including transportation charges);

**9.** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**10.** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**11.** All payroll expenses or the amount of payroll expense excluded (if Form **FA 465** is attached); and

**12.** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

When: The Net Income and operating expenses for the 12 months follow-

ing the inception, or last previous anniversary date of this Coverage Part at "premises" would have been $400,000.

The Coinsurance percentage is          50%

The Limit of Insurance Is          $150,000

"Business Income" "loss" is          $80,000

Step 1: $400,000 X 50% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step 2: $150,000 ÷ $200,000 = .75

Step 3: $ 80,000 X .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

### Example No. 2 (Adequate Insurance):

When: The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date of this Coverage Part at the "premises" would have been $400,000.

The Coinsurance percentage is          50%

The Limit of Insurance Is          $200,000

"Business Income" "loss" is          $80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of "loss").

This condition does not apply to Extra Expense.

## SECTION E. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period of Indemnity**

    a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

    b. The most we will pay in total for "Business Income" and Extra Expense "loss" is the lesser of:

       (1) The amount of "Business Income" and Extra Expense "loss" sustained during the 120 days immediately following the beginning of the "period of restoration"; or

       (2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit of Indemnity**

    a. **SECTION D. ADDITIONAL CONDITIONS, 1. Coinsurance** does not apply to this Coverage Part at the "premises" to which this Optional Coverage applies.

    b. The most we will pay for "Business Income" "loss" in each period of 30 consecutive days after the beginning of the "period of restoration" is:

       (1) The Limit of Insurance; multiplied by

       (2) The fraction shown in the Declarations for this Optional Coverage.

    **Example:**

    When: The "Business Income" Limit of Insurance is $120,000

    The fraction shown in the Declarations for this Optional Coverage is 1/4

    The most we will pay for "loss" in each period of 30 consecutive days is: $120,000 X 1/4 = $30,000.

    If, in this example, the actual amount of "Business Income" "loss" is:

    | Days | | |
    |------|------|------|
    | Days | 1-30 | $40,000 |
    | Days | 31-60 | 20,000 |
    | Days | 61-90 | 30,000 |
    | | | $90,000 |

    We will pay:

    | Days | | |
    |------|------|------|
    | Days | 1-30 | $30,000 |
    | Days | 31-60 | 20,000 |
    | Days | 61-90 | 30,000 |
    | | | $80,000 |

    The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

    a. To activate this Optional Coverage:

       (1) A Business Income Report/Work Sheet must be on file with the Company and must show financial data for your "operations":

           (a) During the 12 months prior to the date of the Work Sheet; and

           (b) Estimated for the 12 months immediately following the inception of this Optional Coverage.

       (2) The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies. The "Business Income" Limit of Insurance indicated on the Declarations should

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

be at least equal to the Agreed Value, which is determined by:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and Operating Expenses for the following 12 months you report on the Work Sheet.

**b.** Except as noted in **c.** below, the **ADDITIONAL CONDITION Coinsurance** is suspended until the expiration date of this Coverage Part.

**c.** We will reinstate the **ADDITIONAL CONDITION Coinsurance** automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** When you request a change in your "Business Income" Limit of Insurance; or

**(2)** When you request the coinsurance percentage be changed on the Work Sheet.

**d.** If the "Business Income" Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The "Business Income" Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example:**

When: The Limit of Insurance is $100,000

The Agreed Value is $200,000

"Business Income" "loss" is $80,000

Step (a): $100,000 ÷ $200,000 = .50

Step (b): .50 X $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4.** **Extended Period of Indemnity**

In **SECTION A. COVERAGE, 5. Additional Coverages, c. Extended Business Income**, the number "60" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## SECTION F. DEFINITIONS

**1.** "Business Income" means the:

**a.** Net income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses sustained, including payroll.

**2.** "Computer programs" means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**3.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 A.M. standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 A.M. standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**4.** "Electronic data" means information, facts or "computer programs" stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment.

**5.** "Finished stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a coinsurance percentage shown for "Business Income" in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the "premises" of any retail outlet insured under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

6   "Loss" means accidental physical loss or accidental physical damage.

7.   "Operations" means:

   a.   Your business activities occurring at the "premises"; and

   b.   The tenantability of the "premises", if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

8.   "Period of restoration" means the period of time that:

   a.   Begins at the time of direct "loss".

   b.   Ends on the earlier of:

      (1)   The date when the property at the "premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2)   The date when business is resumed at a new permanent location.

   c.   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1)   Regulates the construction, use or repair, or requires the tearing down of any property; or

      (2)   Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

   d.   The expiration date of the Coverage Part will not cut short the "period of restoration".

9.   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

   a.   You are regularly or otherwise engaged in activities which taint or degrade the environment; or

   b.   You use, generate or produce the "pollutant".

10.   "Premises" means the Locations and Buildings described in the Declarations.

11.   "Rental Value" means "Business Income" that consists of:

   a.   Net income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the "premises" described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the "premises" which is occupied by you; and

   b.   Continuing normal operating expenses incurred in connection with that "premises", including:

      (1)   Payroll; and

      (2)   The amount of charges, which are the legal obligation of the tenant(s) but would otherwise be your obligations.

12.   "Suspension" means:

   a.   The slowdown or cessation of your business activities; and

   b.   That a part or all of the "premises" is rendered untenantable if coverage for "Business Income" including "Rental Value" or "Rental Value" applies.

13.   "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, card index systems, deeds, drawings, films, maps, mortgages, or proprietary information. But "valuable papers and records" does not mean "money" or "securities" or "electronic data", including the materials on which the "electronic data" is recorded.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# THE CINCINNATI INSURANCE COMPANY

**A Stock Insurance Company**

## COMMERCIAL GENERAL LIABILITY COVERAGE
## PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **ECP 055 77 79**

Named Insured is the same as it appears in the Common Policy Declarations

### LIMITS OF INSURANCE

| | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $1,000,000 | |
| GENERAL AGGREGATE LIMIT | $2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $2,000,000 | |
| PERSONAL & ADVERTISING INJURY LIMIT | $1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | | ANY ONE |
| $100,000 limit unless otherwise indicated herein: | $1,000,000 | PREMISES |
| MEDICAL EXPENSE LIMIT | | |
| $5,000 limit unless otherwise indicated herein: | $ SEE GCP203 | ANY ONE PERSON |

| CLASSIFICATION | CODE NO. | PREMIUM BASE A - Area B - Payroll C - Gross Sales D - Units E - Other | RATE Products / Completed Operations | RATE All Other | ADVANCE PREMIUM Products / Completed Operations | ADVANCE PREMIUM All Other |
|---|---|---|---|---|---|---|
| **LOC. 1 - OH** FAMILY-STYLE RESTAURANTS | 03013 | C 300,000 | .122 | 1.058 | 37 | 317 |
| **LOC. 2 - OH** BISTROS, BRASSERIES AND CAFES | 03004 | C 2,130,000 | .080 | .744 | 170 | 1,585 |
| **LOC. 3 - OH** BISTROS, BRASSERIES AND CAFES | 03004 | C 1,416,000 | .080 | .744 | 113 | 1,054 |
| **LOC. 4 - OH** BISTROS, BRASSERIES AND CAFES | 03004 | C 3,406,000 | .080 | .744 | 272 | 2,534 |
| **LOC. 5 - OH** BISTROS, BRASSERIES AND CAFES | 03004 | C 2,590,000 | .080 | .744 | 207 | 1,927 |
| **LOC. 6 - OH** BISTROS, BRASSERIES AND CAFES | 03004 | C 636,000 | .080 | .744 | 51 | 473 |
| **LOC. 7 - OH** BAKERIES | 03078 | C 50,000 | .094 | .145 | 5 | 7 |
| **LOC. 8 - OH** BAKERIES | 03078 | C 20,000 | .094 | .288 | 2 | 6 |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | A - Area<br>B - Payroll<br>C - Gross Sales<br>D - Units<br>E - Other | Products / Completed Operations | All Other | Products / Completed Operations | All Other |
| BROADENED COVERAGE | 20291 | | | 2.5% | | 219 |
| BI EXCEPTIONS TO POLLUTANT EXCLUSION | 20410 | | | 2% | | 158 |

The General Liability Coverage Part is subject to an annual minimum premium.

TOTAL ANNUAL PREMIUM  $ 9,137

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA101 | 12/04 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| GCP203 | 09/17 | CINCIPAK™ COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT |
| CG2407 | 01/96 | PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED |
| GA216OH | 03/10 | OHIO LIABILITY COVERAGE ENHANCEMENT |
| GA3024 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| GA478 | 12/04 | BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION |
| GCP201 | 05/11 | CINCIPAK™ COMMERCIAL GENERAL LIABILITY AMENDATORY ENDORSEMENT |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

      No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under

**SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph **1.d.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part.

   c. "Bodily injury" or "property damage" which:

      (1) Occurs during the "coverage term"; and

      (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

      includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

   d. You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

      (3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

      (4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

      (5) Becomes aware, or reasonably should have become aware, of a

condition from which "bodily injury" or "property damage" is substantially certain to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. When a claim for such "bodily injury" or "property damage" is made, we will defend that claim provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured sustained in the "workplace";

(2) An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

(3) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs (1) or (2) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollutant**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, Paragraph (a) does not apply to:

1) "Bodily injury" to any person injured while on any premises, site or location owned or occupied by, or rented or loaned to, you provided:

**a)** The injury is caused by the inadequate ventilation of vapors;

**b)** The person injured is first exposed to such vapors during the policy period; and

**c)** Within 30 days of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

This exception **1)** shall apply only to Named Insureds; we shall have no duty to defend or pay damages for any person or organization that is not a Named Insured. However, this paragraph does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

For the purpose of the exception granted in Paragraph **1)** only, vapors means any gaseous or airborne irritant or airborne contaminant, including smoke, fumes, vapor or soot, but excluding asbestos, which is discharged, dispersed, emitted, released or escapes from materials, machinery or equipment used in the service or maintenance of the premises. Vapors does not mean any gaseous or

airborne irritants or contaminants used in a manufacturing process or which is the product or by-product of any manufacturing process;

**2)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to this Coverage Part as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**1)** Any insured; or

**2)** Any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, Paragraph **(d)** does not apply to:

**1)** "Bodily injury" or "property damage" arising out of the discharge, dispersal, seepage, migration, release, es-

cape or emission of fuels, lubricants or other operating fluids, or exhaust gases, which are needed to perform, or are the result of, the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids, or exhaust gases, escape, seep or migrate, or are discharged, dispersed, released or emitted with the intent to cause "bodily injury" or "property damage" or with the knowledge that "bodily injury" or "property damage" is substantially certain to occur, or if such fuels, lubricants or other operating fluids, or exhaust gases, are brought on or to the premises, site or location with such intent to escape, seep or migrate, or be discharged, dispersed, released or emitted as part of the operations being performed by such insured, contractor or subcontractor;

**2)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**3)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the op-

erations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, Paragraphs **(2)(a)** and **(b)** do not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 51 feet long; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

**(a)** The operation of machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

**(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h.** **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned by or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i.** **War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by

governmental authority in hindering or defending against any of these.

**j.** **Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire or explosion) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**l.   Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.  Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.   Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o.   Personal and Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p.   Asbestos**

"Bodily injury" or "property damage" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.   Employment-Related Practices**

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**r.   Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, prior to the "coverage term" in which such "bodily injury" or "property damage" occurs or begins to occur.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that "bodily injury" or "property damage" has occurred or has begun to occur at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage";

**(3)** First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

**s. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**t. Distribution of Material in Violation of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **q.** do not apply to "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS**.

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**.

**b.** This insurance applies to "personal and advertising injury" only if:

**(1)** The "personal and advertising injury" is caused by an offense arising out of your business; and

**(2)** The "personal and advertising injury" offense was committed in the "coverage territory" during the policy period; and

**(3)** Prior to the "coverage term" in which the "personal and advertising injury" offense is committed, you did not know, per Paragraph **1.d.** below, that the offense had been committed or had begun to be committed, in whole or in part.

**c.** "Personal and advertising injury" caused by an offense which:

**(1)** Was committed during the "coverage term"; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(2)** Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have been committed;

includes any continuation, change or resumption of that offense after the end of the "coverage term" in which it first became known by you.

**d.** You will be deemed to know that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means, other than as described in **(3)** above, that the offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior to Coverage Term**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "personal and advertising injury" is caused by or arises out of an offense committed subsequent to the execution of the contract or agreement. When a claim for such "personal and advertising injury" is made, we will defend that claim, provided the insured has assumed the obligation to defend such claim in the "insured contract". Such defense payments will not reduce the limits of insurance.

**f. Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality or Performance of Goods - Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, pat-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j.    Insureds in Media and Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **17. a., b.** and **c.** of "personal and advertising injury" under **SECTION V - DEFINITIONS**.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k.    Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board any insured hosts, owns, or over which any insured exercises control.

**l.    Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m.    Employment Related Practices**

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation

or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**n.    Pollutant**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**o.    Pollutant-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**p.    Asbestos**

"Personal and advertising injury" arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**q.    Additional Insured Prior Knowledge**

An additional insured added by attachment of an endorsement to this Coverage Part that is seeking coverage for a claim or "suit", if that additional insured knew, per the following paragraph, that a "personal and advertising injury" offense had been committed or had begun to be committed, in whole or in part, prior to the "coverage term" in which such offense

was committed or began to be committed.

An additional insured added by attachment of an endorsement to this Coverage Part will be deemed to have known that a "personal and advertising injury" offense has been committed or has begun to be committed at the earliest time when that additional insured, or any one of its owners, members, partners, managers, executive officers, "employees" assigned to manage that additional insured's insurance program, or "employees" assigned to give or receive notice of an "occurrence", "personal and advertising injury" offense, claim or "suit":

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury";

**(3)** First observes, or reasonably should have first observed, the offense that caused the "personal and advertising injury";

**(4)** Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that the "personal and advertising injury" offense had been committed or had begun to be committed; or

**(5)** Becomes aware, or reasonably should have become aware, of a condition from which "personal and advertising injury" is substantially certain to occur.

**r.** **War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**s.** **Distribution of Material in Violation of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

## COVERAGE C. MEDICAL PAYMENTS

**1.** **Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within three years of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2.** **Exclusions**

We will not pay expenses for "bodily injury":

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury on Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers' Compensation and Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletic Activities**

To any person injured while officiating, coaching, practicing for, instructing or participating in any physical exercises or games, sports, or athletic contests or exhibitions of an athletic or sports nature.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable limit of insurance. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by; or

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** **a.** The General Aggregate Limit is the most we will pay for the sum of:

**(1)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

**(2)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(3)** Damages under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY.**

This General Aggregate Limit will not apply if either the Location General Aggre-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

gate Limit of Insurance, Paragraph **2.b.**, or the Construction Project General Aggregate Limit of Insurance, Paragraph **2.c.** applies.

**b.** A separate Location General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each location owned by, or rented or leased to you and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS,**

which can be attributed to operations at only a single location owned by, or rented or leased to you.

**c.** A separate Construction Project General Aggregate Limit of Insurance, equal to the amount of the General Aggregate Limit shown in the Declarations, shall apply to each construction project and is the most we will pay for the sum of:

**(1)** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**(2)** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS;**

which can be attributed only to ongoing operations and only at a single construction project.

**d.** Only for the purpose of determining which General Aggregate Limit of Insurance, **2.a., 2.b.,** or **2.c.**, applies:

**(1)** Location means premises involving the same or connecting lots, or premises, whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

**(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on

your behalf at the same location for the same persons or organizations, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to **2.a.** above, the Personal and Advertising Injury Limit is the most we will pay under **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to **2. or 3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**; and

**b.** Medical expenses under **COVERAGE C. MEDICAL PAYMENTS**;

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire or explosion, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under **COVERAGE C. MEDICAL PAYMENTS** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Occurrence, Offense, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or

a "personal and advertising injury" offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar insurance for "your work";

**(b)** That is Fire or Explosion insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to

premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g. Aircraft, Auto or Watercraft**.

**(2)** Any other primary insurance available to the insured covering liability for damages arising out of the premises or operations, or the products and completed operations, for which the insured has been added as an additional insured by attachment of an endorsement.

**(3)** Any other insurance:

**(a)** Whether primary, excess, contingent or on any other basis, except when such insurance is written specifically to be excess over this insurance; and

**(b)** That is a consolidated (wrap-up) insurance program which has been provided by the prime contractor/project manager or owner of the consolidated project in which you are involved.

When this insurance is excess, we will have no duty under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance

shown in the Declarations of this Coverage Part.

**c.  Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**6.  Premium Audit**

**a.**  We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.**  Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If:

**(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

**(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

**c.**  The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7.  Representations**

By accepting this Coverage Part, you agree:

**a.**  The statements in the Declarations are accurate and complete;

**b.**  Those statements are based upon representations you made to us; and

**c.**  We have issued this Coverage Part in reliance upon your representations.

**8.  Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "occurrence" or "personal and advertising injury" offense, the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast, telecast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. "Advertisement" includes a publicity article. For purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

**2.** "Authorized representative" means:

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are "authorized representatives".

**(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

**(3)** A limited liability company, your members and your managers are "authorized representatives".

**(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

**(5)** A trust, your trustees are "authorized representatives".

**b.** Your "employees":

**(1)** Assigned to manage your insurance program; or

**(2)** Responsible for giving or receiving notice of an "occurrence", "personal and advertising injury" offense, claim or "suit";

are also "authorized representatives".

**3.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**4.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**5.** "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

**(1)** The day the policy period shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**6.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication,

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**7.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**8.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any rail-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

road property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search

engines; marketing analysis; and providing access to the Internet or other similar networks; or

    **(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to

permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**18.** "Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed; or

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site; or

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a schedule, states that products-completed operations are included.

**20.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**23.** "Volunteer worker" means a person who is not your "employee", and who donates his or

her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**24.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

**25.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**26.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

# NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an insured under this Coverage Part is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the insured is, or had this Coverage Part not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured, or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an insured; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this exclusion:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**A.** Any "nuclear reactor";

**B.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**C.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**D.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak<sup>TM</sup>
# COMMERCIAL GENERAL LIABILITY BROADENED ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A. Endorsement - Table of Contents:**

**Coverage:**          **Begins on Page:**

1. Employee Benefit Liability Coverage.................................................................2
2. Unintentional Failure To Disclose Hazards .......................................................8
3. Supplementary Payments...................................................................................8
4. Medical Payments...............................................................................................8
5. 180 Day Coverage For Newly Formed Or Acquired Organizations ..................8
6. Waiver Of Subrogation .......................................................................................8
7. Automatic Additional Insured - Specified Relationships: ..................................8
   - Managers Or Lessors Of Premises;
   - Lessor Of Leased Equipment;
   - Vendors;
   - State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises; and
   - Mortgagee, Assignee Or Receiver
8. Property Damage To Borrowed Equipment .................................................... 11
9. Employees As Insureds - Specified Health Care Services And Good Samaritan Services ........................................................................................................... 12
10. Broadened Notice Of Occurrence ................................................................... 12
11. Nonowned Aircraft........................................................................................... 12
12. Bodily Injury Redefined ................................................................................... 13
13. Expected Or Intended Injury Redefined .......................................................... 13
14. Former Employees As Insureds....................................................................... 13

**B. Limits Of Insurance:**

The Commercial General Liability Limits of Insurance apply to the insurance provided by this endorsement, except as provided below:

    **1. Employee Benefit Liability Coverage**

        Each Employee Limit: $1,000,000
        Aggregate Limit:      $3,000,000
        Deductible Amount:   $     1,000

    **3. Supplementary Payments**

        Bail Bonds:         $2,500

    **4. Medical Payments**

        Medical Expense Limit: $ 10,000

    **8. Property Damage To Borrowed Equipment**

        Each Occurrence Limit: $10,000
        Deductible Amount:   $    250

**C. Coverages**

**1. Employee Benefit Liability Coverage**

**a.** The following is added to **Section I - Coverages:**

**Employee Benefit Liability Coverage**

**(1) Insuring Agreement**

**(a)** We will pay those sums that the insured becomes legally obligated to pay as damages caused by any act, error or omission of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any claim or "suit" that may result. But:

**1)** The amount we will pay for damages is limited as described in **Section III - Limits Of Insurance**; and

**2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments**.

**(b)** This insurance applies to damages only if the act, error or omission, is negligently committed in the "administration" of your "employee benefit program"; and

**1)** Occurs during the policy period; or

**2)** Occurred prior to the "first effective date" of

this endorsement provided:

**a)** You did not have knowledge of a claim or "suit" on or before the "first effective date" of this endorsement.

You will be deemed to have knowledge of a claim or "suit" when any "authorized representative";

**i)** Reports all, or any part, of the act, error or omission to us or any other insurer;

**ii)** Receives a written or verbal demand or claim for damages because of the act, error or omission; and

**b)** There is no other applicable insurance.

**(2) Exclusions**

This insurance does not apply to:

**(a) Bodily Injury, Property Damage Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**(b) Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**(c) Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(d) Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**(e) Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any claim based upon:

**1)** Failure of any investment to perform;

**2)** Errors in providing information on past performance of investment vehicles; or

**3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**(f) Workers' Compensation And Similar Laws**

Any claim arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**(g) ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**(h) Available Benefits**

Any claim for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**(i) Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**(j) Employment-Related Practices**

Any liability arising out of any:

**(1)** Refusal to employ;

**(2)** Termination of employment;

**(3)** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment - related practices, acts or omissions; or

**(4)** Consequential liability as a result of **(1)**, **(2)** or **(3)** above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity or to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(3) Supplementary Payments**

Section I - Coverages, Supplementary Payments - Coverages **A** and **B** also apply to this Coverage.

**b. Who Is An Insured**

As respects **Employee Benefit Liability Coverage**, **Section II - Who Is An Insured** is replaced by the following:

**(1)** If you are designated in the Declarations as:

**(a)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(b)** A partnership or joint venture, you are an insured. Your members, your part-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ners, and their spouses are also insureds but only with respect to the conduct of your business.

**(c)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(d)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(e)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**(2)** Each of the following is also an insured:

**(a)** Each of your "employees" who is or was authorized to administer your "employee benefit program";

**(b)** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed; or

**(c)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**(3)** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organi-

zation. However, coverage under this provision:

**(a)** Is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**(b)** Does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**c. Limits Of Insurance**

As respects **Employee Benefit Liability Coverage**, **Section III - Limits Of Insurance** is replaced by the following:

**(1)** The Limits of Insurance shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** and the rules below fix the most we will pay regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought;

**(c)** Persons or organizations making claims or bringing "suits";

**(d)** Acts, errors or omissions; or

**(e)** Benefits included in your "employee benefit program".

**(2)** The Aggregate Limit shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**(3)** Subject to the limit described in **(2)** above, the Each Employee Limit shown in Section **B. Limits Of Insurance**, **1. Employee Benefit Liability Coverage** of this endorsement is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(a)** An act, error or omission; or

**(b)** A series of related acts, errors or omissions, regardless of the amount of time that lapses between such acts, errors or omissions;

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program."

**(4) Deductible Amount**

**(a)** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the Deductible Amount stated in the Declarations as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**(b)** The Deductible Amount stated in the Declarations applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**(c)** The terms of this insurance, including those with respect to:

**1)** Our right and duty to defend the insured against any "suits" seeking those damages; and

**2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or claim;

apply irrespective of the application of the Deductible Amount.

**(d)** We may pay any part or all of the Deductible Amount to effect settlement of any claim or "suit" and, upon no-

tification of the action taken, you shall promptly reimburse us for such part of the Deductible Amount as we have paid.

**d. Additional Conditions**

As respects **Employee Benefit Liability Coverage, Section IV - Commercial General Liability Conditions** is amended as follows:

**(1)** Item **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ceived in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**(2)** Item **5. Other Insurance** is replaced by the following:

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **c.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribu-

tion by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**c. No Coverage**

This insurance shall not cover any loss for which the insured is entitled to recovery under any other insurance in force previous to the effective date of this Coverage Part.

**e. Additional Definitions**

As respects **Employee Benefit Liability Coverage, Section V - Definitions** is amended as follows:

**(1)** The following definitions are added:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Interpreting the "employee benefit programs";

**c.** Handling records in connection with the "employee benefit programs"; or

**d.** Effecting, continuing or terminating any "employee's" participation in

GCP 203 09 17

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 6 of 13

any benefit included in the "employee benefit program".

However, "administration" does not include:

**a.** Handling payroll deductions; or

**b.** The failure to effect or maintain any insurance or adequate limits of coverage of insurance, including but not limited to unemployment insurance, social security benefits, workers' compensation and disability benefits.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow "employees" to elect to pay for certain benefits with pre-tax dollars.

**3.** "Employee benefit programs" means a program providing some of all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance; group accident or health insurance; dental, vision and hearing plans; and flexible spending accounts; provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits; and

**d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies.

**4.** "First effective date" means the date upon which coverage was first effected in a series of uninterrupted renewals of insurance coverage.

**(2)** The following definitions are deleted in their entirety and replaced by the following:

**8.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**21.** "Suit" means a civil proceeding in which money damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

2. **Unintentional Failure To Disclose Hazards**

   **Section IV - Commercial General Liability Conditions, 7. Representations** is amended by the addition of the following:

   Based on our dependence upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we will not reject coverage under this Coverage Part based solely on such failure.

3. **Supplementary Payments**

   Under **Section I - Supplementary Payments - Coverages A** and **B:**

   Paragraph **2.** is replaced by the following:

   Up to the limit shown in Section **B. Limits Of Insurance, 3.** Bail Bonds of this endorsement for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   This amendment of the Supplementary Payments – Bail Bonds limit replaces, and is not in addition to, the amendment of the Supplementary Payments - Bail Bonds limit (**II.A.2.**) in the CinciPak™ Commercial General Liability Amendatory Endorsement.

4. **Medical Payments**

   The Medical Expense Limit of Any One Person as stated in the Declarations is amended to the limit shown in Section **B. Limits Of Insurance, 4. Medical Payments** of this endorsement.

5. **180 Day Coverage For Newly Formed Or Acquired Organizations**

   **Section II - Who Is An Insured** is amended as follows:

   Subparagraph **a.** of Paragraph **3.** is replaced by the following:

   a. Insurance under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

6. **Waiver Of Subrogation**

   **Section IV - Commercial General Liability Conditions, 9. Transfer Of Rights Of Recovery Against Others To Us** is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization against whom you have agreed to waive such right of recovery in a written contract or agreement because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a written contract or agreement with that person or organization and included in the "products-completed operations hazard". However, our rights may only be waived prior to the "occurrence" giving rise to the injury or damage for which we make payment under this Coverage Part. The insured must do nothing after a loss to impair our rights. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce those rights.

7. **Automatic Additional Insured - Specified Relationships**

   a. The following is added to **Section II - Who Is An Insured:**

      (1) Any person(s) or organization(s) described in Paragraph **7.a.(2)** of this endorsement (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of a written contract, written agreement, written permit or written authorization.

      (2) Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

         (a) **Managers Or Lessors Of Premises**

            The manager or lessor of a premises leased to you with whom you have agreed per Paragraph **7.a.(1)** of this endorsement to provide insurance, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you, subject to the following additional exclusions:

            This insurance does not apply to:

            (i) Any "occurrence" which takes place after you

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

cease to be a tenant in that premises;

**(ii)** Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

**(b) Lessor Of Leased Equipment**

Any person or organization from whom you lease equipment when you and such person(s) or organization(s) have agreed per Paragraph **7.a.(1)** of this endorsement to provide insurance. Such person(s) or organization(s) are insureds only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s). A person's or organization's status as an additional insured under this endorsement ends when their contract or agreement with you for such leased equipment ends. However, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**(c) Vendors**

Any person or organization (referred to below as vendor) with whom you have agreed per Paragraph **7.a.(1)** of this endorsement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

**(i)** The insurance afforded the vendor does not apply to:

**1)** "Bodily injury" or "property damage"

for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

**2)** Any express warranty unauthorized by you;

**3)** Any physical or chemical change in the product made intentionally by the vendor;

**4)** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**5)** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

**6)** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

**7)** Products which, after distribution or

sale by you, have been labeled or re-labeled or used as a container, part or ingredient of any other thing or sub-stance by or for the vendor; or

8) "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omis-sions or those of its employees or anyone else acting on its behalf. How-ever, this exclusion does not apply to:

a) The excep-tions contained in Paragraphs **(c)(i)4)** or **6)** of this endorse-ment; or

b) Such inspec-tions, adjust-ments, tests or servicing as the vendor has agreed to make or nor-mally under-takes to make in the usual course of business, in connection with the distri-bution or sale of the prod-ucts.

**(ii)** This insurance does not apply to any insured person or organization:

1) From whom you have acquired such products, or any ingredient, part or container, enter-ing into, accompa-nying or containing such products; or

2) When liability in-cluded within the "products-completed opera-tions hazard" has

been excluded un-der this Coverage Part with respect to such products.

**(d) State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations Relating To Premises**

Any state or governmental agency or subdivision or po-litical subdivision with which you have agreed per Para-graph **7.a.(1)** of this en-dorsement to provide insur-ance, subject to the follow-ing additional provision:

This insurance applies only with respect to the following hazards for which the state or governmental agency or subdivision or political sub-division has issued a permit or authorization in connec-tion with premises you own, rent or control and to which this insurance applies:

**(i)** The existence, mainte-nance, repair, construc-tion, erection or removal of advertising signs, awnings, canopies, cel-lar entrances, coal holes, driveways, man-holes, marquees, hoist away openings, side-walk vaults, street ban-ners or decorations and similar exposures; or

**(ii)** The construction, erec-tion or removal of eleva-tors; or

**(iii)** The ownership, mainte-nance or use of any el-evators covered by this insurance.

**(e) Mortgagee, Assignee Or Receiver**

Any person or organization with whom you have agreed per Paragraph **7.a.(1)** of this endorsement to provide in-surance, but only with re-spect to their liability as mortgagee, assignee, or re-ceiver and arising out of the ownership, maintenance, or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

use of the premises by you. However, this insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**(3)** The insurance afforded to additional insureds described in Paragraph **7.a.(1)** of this endorsement:

    **(a)** Only applies to the extent permitted by law; and

    **(b)** Will not be broader than that which you are required by the written contract, written agreement, written permit or written authorization to provide for such additional insured; and

    **(c)** Does not apply to any person, organization, vendor, state, governmental agency or subdivision or political subdivision, specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part, provided such other provision or endorsement covers the injury or damage for which this insurance applies.

**b.** With respect to the insurance afforded to the additional insureds described in Paragraph **7.a.(1)** of this endorsement, the following is added to **Section III - Limits Of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance:

**(1)** Required by the written contract, written agreement, written permit or written authorization described in Paragraph **7.a.(1)** of this endorsement; or

**(2)** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**c.** **Section IV - Commercial General Liability Conditions** is amended to add the following:

**Automatic Additional Insured Provision**

This insurance applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

**(1)** During the policy period; and

**(2)** Subsequent to your execution of the written contract or written agreement, or the issuance of a written permit or written authorization, described in Paragraph **7.a.(1)**.

**d.** **Section IV - Commercial General Liability Conditions** is amended as follows:

Condition **5. Other Insurance** is amended to include:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured per Paragraph **7.a.(1)** of this endorsement provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract, agreement, permit or authorization described in **7.a.(2)** of this endorsement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**8.** **Property Damage To Borrowed Equipment**

**a.** The following is added to **Exclusion 2.j. Damage To Property** under **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

Paragraphs **(3)** and **(4)** of this exclusion do not apply to tools or equipment loaned to you, provided they are not being used to perform operations at the time of loss.

**b.** With respect to the insurance provided by this section of the endorse-

ment, the following additional provisions apply:

**(1)** The Limits of Insurance shown in the Declarations are replaced by the limits designated in Section **B. Limits Of Insurance**, **8. Property Damage To Borrowed Equipment** of this endorsement with respect to coverage provided by this endorsement. These limits are inclusive of and not in addition to the limits being replaced. The Limits of Insurance shown in Section **B. Limits Of Insurance**, **8. Property Damage To Borrowed Equipment** of this endorsement fix the most we will pay in any one "occurrence" regardless of the number of:

**(a)** Insureds;

**(b)** Claims made or "suits" brought; or

**(c)** Persons or organizations making claims or bringing "suits".

**(2) Deductible Clause**

**(a)** Our obligation to pay damages on your behalf applies only to the amount of damages for each "occurrence" which are in excess of the Deductible Amount stated in Section **B. Limits Of Insurance**, **8. Property Damage To Borrowed Equipment** of this endorsement. The limits of insurance will not be reduced by the application of such deductible amount.

**(b)** Section IV - Commercial **General Liability Conditions, 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit,** applies to each claim or "suit" irrespective of the amount.

**(c)** We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**9. Employees As Insureds - Specified Health Care Services And Good Samaritan Services**

Paragraph **2.a.(1)(d)** under **Section II - Who Is An Insured** does not apply to:

**a.** Your "employees" who provide professional health care services on your behalf as a duly licensed nurse, emergency medical technician or paramedic in the jurisdiction where an "occurrence" or offense to which this insurance applies takes place; or

**b.** Your "employees" or "volunteer workers", other than an employed or volunteer doctor, providing first aid or good samaritan services during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

**10. Broadened Notice Of Occurrence**

Paragraph **a.** of Condition **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** under **Section IV - Commercial General Liability Conditions** is replaced by the following:

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

This requirement applies only when the "occurrence" or offense is known to an "authorized representative".

**11. Nonowned Aircraft**

The following is added to **Exclusion 2.g. Aircraft, Auto Or Watercraft** under **Section I - Coverage A - Bodily Injury And Property Damage Liability**:

This exclusion does not apply to an aircraft you do not own, provided that:

**a.** The pilot in command holds a current effective certificate, issued by a duly constituted authority of the United

States of America or Canada, designating that person as a commercial or airline transport pilot;

**b.** The aircraft is rented with a trained, paid crew; and

**c.** The aircraft does not transport persons or cargo for a charge.

**12. Bodily Injury Redefined**

**Section V - Definitions, 4.** "Bodily injury" is replaced by the following:

**4.** "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

**13. Expected Or Intended Injury Redefined**

The last sentence of **Exclusion 2.a. Expected Or Intended Injury** under **Section I - Coverage A - Bodily Injury And**

**Property Damage Liability** is replaced by the following:

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

**14. Former Employees As Insureds**

The following is added to Paragraph **2.** under **Section II - Who Is An Insured:**

**2.** Each of the following is also an insured:

Any of your former "employees", directors, managers, members, partners or "executive officers", including but not limited to retired, disabled or those on leave of absence, but only for acts within the scope of their employment by you or for duties related to the conduct of your business.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

**SCHEDULE**

**Description of Premises and Operations:**

FOOD SERVICES

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products  - completed operations hazard"   in  the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO LIABILITY COVERAGE ENHANCEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

The provisions of this endorsement apply only as respects Ohio Liability Coverage afforded hereunder.

**A.** For the purposes of this endorsement only, **SECTION I - COVERAGES** is amended to include the following:

**COVERAGE D. OHIO LIABILITY COVERAGE**

**1. Insuring Agreement**

**a.** We will pay those sums to which this insurance applies that the insured becomes legally obligated to pay as damages because of "bodily injury" sustained by any "employee" of the insured arising out of or in the course of his or her employment by the insured, provided the "employee", at the time of the injury, was covered under a workers compensation policy and subject to a "workers compensation law". We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this coverage**.**

No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS.**

**b.** This insurance applies to "bodily injury" only if:

**(1)** The "bodily injury" is caused by an "occurrence" that takes place in the "coverage territory".

**(2)** Except when **(3)** below applies, the "bodily injury" occurs during the policy period.

**(3)** Provided the "bodily injury" is a disease, the "bodily injury" is caused by or aggravated by conditions of employment by you and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury" occurs during the policy period.

**c.** The damages we will pay, where recovery is permitted by law, include damages:

**(1)** For:

**(a)** Which you are liable to a third party by reason of a claim or "suit" against you by that third party to recover the damages claimed against such third party as a result of injury to your "employee";

**(b)** Care and loss of services; and

**(c)** Consequential "bodily injury" to a spouse, child, parent, brother or sister of the injured "employee";

provided that these damages are the direct consequence of "bodily injury" that arises out of and in the course of the injured "employee's" employment by you; and

**(2)** Because of "bodily injury" to your "employee" that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

**2. Exclusions**

This insurance does not apply to:

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**a. Contractual Liability**

Liability assumed by you under any contract or agreement;

**b. Punitive Damages**

Multiple, exemplary or punitive damages, including but not limited to any award of attorney fees, costs or interest awarded as a result of an award for multiple, exemplary or punitive damages;

**c. Violation of Laws**

"Bodily injury" suffered or caused by any "employee" while employed in violation of law with your actual knowledge or the actual knowledge of an insured;

**d. Statutory Obligations**

Any obligation of the insured under a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

**e. Crew Members**

"Bodily injury" to a master or member of the crew of any vessel or any member of the flying crew of any aircraft;

**f. Termination, Coercion or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any "employee", or arising out of other employment or personnel decisions concerning the insured, whether or not accompanied by a "bodily injury";

**g. Intentional Injury**

"Bodily injury" caused by acts committed by or at the direction of an insured with the deliberate intent to injure or with the belief that the injury was substantially certain to occur. As used in this endorsement, substantially certain means that an insured acts with deliberate intent to cause an "employee" to suffer "bodily injury".

**h. War**

"Bodily injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

**i. Failure to Comply with Worker's Compensation Law**

Any claim or "bodily injury" with respect to which the insured is:

**(1)** Deprived of common law defenses; or

**(2)** Otherwise subject to penalty;

because of your failure to secure your obligations or other failure to comply with any "workers compensation law";

**j. Asbestos**

Damages arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner.

**k. Federal Laws**

Any premium, assessment, penalty, fine, benefit, liability or other obligation imposed by or granted pursuant to:

**(1)** The Federal Employer's Liability Act (45 USC Section 51-60);

**(2)** The Non-appropriated Fund Instrumentalities Act (5 USC Sections 8171-8173);

**(3)** The Longshore and Harbor Workers' Compensation Act (33 USC Sections 910-950);

**(4)** The Outer Continental Shelf Lands Act (43 USC Section 1331-1356);

**(5)** The Defense Base Act (42 USC Sections 1651-1654);

**(6)** The Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942);

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(7)** The Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872);

**(8)** Any other workers compensation, unemployment compensation or disability laws or any similar law; or

**(9)** Any subsequent amendments to the laws listed above;

**I.** **Violation of Age Laws or Employment of Minors**

"Bodily injury" suffered or caused by any person:

**(1)** Knowingly employed by you in violation of any law as to age; or

**(2)** Under the age of 14 years, regardless of any such law.

**3.** **Supplementary Payments**

The **SUPPLEMENTARY PAYMENTS - COVERAGES A** and **B** also apply to this insurance.

**B.** **WHO IS AN INSURED**

For the purposes of this endorsement only, **SECTION II - WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only

with respect to their duties as trustees.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**C.** **LIMITS OF INSURANCE**

For the purposes of this endorsement only, **SECTION III - LIMITS OF INSURANCE** is amended as follows:

Item **5.** is deleted in its entirety and replaced by the following:

**5.** The Each Occurrence Limit is the most we will pay for damages under Coverage **D.** because of all "bodily injury" arising out of any one "occurrence".

**D.** **CONDITIONS**

For the purposes of this endorsement only, **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, Items **2.** and **5.** are deleted in their entirety and replaced by the following:

**2.** **Duties in the Event of Occurrence, Injury, Claim or Suit**

**a.** You must see to it that we or our agent are notified as soon as practicable of an "occurrence" or "bodily injury" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or "bodily injury" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers re-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ceived in connection with the injury, claim, proceeding or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us and assist us, as we may request, in the investigation or settlement of the claim or "suit";

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply; and

**(5)** Do nothing after an injury occurs that would interfere with our right to recover from others.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5. Other Insurance**

**a.** Excess - This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis.

We will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but will be entitled to the insured's right against all those other insurers.

We will pay the amount of the loss that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Condition and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations.

**b.** Method of Sharing - If all other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

**E. DEFINITIONS**

For the purposes of this endorsement only, **SECTION V - DEFINITIONS** is amended as follows:

**1.** Definition **16.** is deleted in its entirety and replaced by the following:

**16.** "Occurrence" means a happening or event or continuous or repeated exposure to conditions which occur during the policy period which result in "bodily injury". All such exposure to substantially the same general conditions shall be deemed one "occurrence".

**2.** The following definition is added:

"Workers compensation law" means the workers compensation law and any occupational disease law of:

**a.** The State of Ohio.

**b.** Another state if the "employee" is injured as a result of operations which are necessary or incidental to the insured's Ohio operations.

This does not include provisions of any law providing non-occupational disability benefits.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**A.** Exclusion **2.s.** of **Section I - Coverage A - Bodily Injury and Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**s. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

**B.** The following is added to Paragraph **2. Exclusions** of **Section I - Coverage B - Personal and Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access or Disclosure of Confidential or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# BODILY INJURY EXCEPTIONS TO POLLUTANT EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

For purposes of insurance provided by this endorsement:

1. **Sudden and Accidental Exception**

   Exclusion **f. Pollutant, (1)(a)** and **(1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** do not apply to "bodily injury" provided:

   a. The "release" of "pollutants" from which the "bodily injury" arises is "sudden" and "accidental"; and

   b. The injured person's first exposure to such "pollutants" occurred during the policy period; and

   c. The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by exposure to such "pollutants" within one year of such first exposure.

2. **Amendment to On Premises Exception**

   The on premises exception to the Pollutant Exclusion, **f.(1)(a)1) c)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, is deleted in its entirety and replaced by the following:

   c) Within one year of such first exposure, the person injured is clinically diagnosed or treated by a physician for the medical condition caused by the exposure to such vapors. However, Paragraph **c)** does not apply if the "bodily injury" is caused by vapors produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests.

3. **Off Premises Exception**

   Exclusion **f. Pollutant (1)(d)** of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** does not apply to "bodily injury" that is caused by "gaseous or airborne pollutants" provided:

   a. The injured person's first exposure to "gaseous or airborne pollutants" occurred during the policy period; and

   b. The injured person is clinically diagnosed or treated by a physician for the "bodily injury" caused by the exposure to "gaseous or airborne pollutants" within one year of such first exposure.

4. **Amended Who Is An Insured**

   As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, the **Sudden and Accidental Exception** and the **Off Premises Exception, SECTION II - WHO IS AN INSURED** is deleted in its entirety and replaced by the following:

   The coverage afforded shall apply only to Named Insureds.  We shall have no duty to defend or pay damages for any person or organization that is not a Named Insured.

5. **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS 5.  Other Insurance b. Excess Insurance** is amended to include the following:

   The insurance provided by Paragraphs **1. Sudden and Accidental Exception** and **3. Off Premises Exception**, of this endorsement is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis, except insurance written specifically to cover as excess over the limits of insurance that apply in this endorsement.

6. As respects the insurance provided by Paragraphs **1.** and **3.** of this endorsement, **SECTION V - DEFINITIONS** is amended to add the following:

   1. "Accidental" means unintended and unexpected.

   2. "Gaseous or airborne pollutants" means "pollutants" which:

      (a) Are a gas, smoke, fume, vapor or other similar airborne substance; and

      (b) Are the result of the "release" of such "pollutants" from materials, machinery or equipment brought on or to the "work site" by any Named Insured or any "employees", contractors or subcontractors working di-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

rectly or indirectly on any Named Insured's behalf.

"Gaseous or airborne pollutants" does not include asbestos or lead.

3. "Release" means actual discharge, dispersal, seepage, migration, release, escape or emission.

4. "Sudden" means abrupt, immediate and brief as well as unexpected and without prior notice. "Sudden" has a temporal element which requires that the "release" of "pollutants" begins and ends within a brief period of time. A "release" of a "pollutant" which results from a series of ongoing events which constitute a course of conduct or course of business is not "sudden".

5. "Work site" means any premises, site or location while a Named Insured or a Named Insured's "employees", contractors or subcontractors are performing operations directly or indirectly on the Named Insured's behalf, provided the premises, site or location is not owned or occupied by or rented or loaned to a Named Insured.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# COMMERCIAL GENERAL LIABILITY AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**I.** **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** Paragraph **2. Exclusions** is amended as follows:

**A.** Exclusion **j. Damage to Property** is deleted in its entirety and replaced by the following:

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of an insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire, explosion, lightning, smoke, soot or water) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days, for which the amount we will pay is limited to the Damage To Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**B.** The last Paragraph of **2. Exclusions** is deleted in its entirety and replaced by the following:

Exclusions **c.** through **q.** do not apply to "property damage" by fire, explosion, lightning, smoke, soot or water to premises while rented to you or temporarily occupied by you with permission of the owner, for which the amount we will pay is limited to the Damage to Premises Rented To You Limit as described in **SECTION III - LIMITS OF INSURANCE**.

**II.** **SECTION I - COVERAGES, SUPPLEMENTARY PAYMENTS - COVERAGES A AND B**, is amended as follows:

**A.** Paragraph **2.** is deleted in its entirety and replaced by the following:

**2.** Up to $1,000 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**B.** Paragraph **4.** is deleted in its entirety and replaced by the following:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

**III. SECTION III - LIMITS OF INSURANCE**, Paragraph **6.** is deleted in its entirety and replaced by the following:

6. Subject to **5.** above, the Damage to Premises Rented to You Limit is the most we will pay under **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, explosion, lightning, smoke, soot or water, while rented to you or temporarily occupied by you with permission of the owner.

**IV. SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, Condition **5. Other Insurance** Paragraph **b.(1)(b)** is deleted in its entirety and replaced by the following:

**(b)** That is Fire, Explosion, lightning, smoke, soot or Water Damage insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**V. SECTION V. - DEFINITIONS**, Definition **12.** "Insured contract" Paragraph **a.** is deleted in its entirety and replaced by the following:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire, explosion, lightning, smoke, soot or water to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# THE CINCINNATI INSURANCE COMPANY

**A Stock Insurance Company**

# OHIO EMPLOYERS LIABILITY DEFENSE EXPENSES COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: **ECP 055 77 79**

Named Insured is the same as it appears in the Common Policy Declarations

**Limits of Insurance**

| | |
|---|---|
| $ 1,000,000 | Bodily Injury - Each Employee |
| $ 1,000,000 | Aggregate |

| Class Code Number | ESTIMATED TOTAL ANNUAL PAYROLL | RATE | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|
| 20320 | 6,240,000 | 0.021 | 1,310 |

| | | MINIMUM PREMIUM | ADVANCE PREMIUM |
|---|---|---|---|
| | | 98 | 1,310 |

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO EMPLOYERS LIABILITY COVERAGE PART:**
GA106OH   03/10 OHIO EMPLOYERS LIABILITY DEFENSE EXPENSES COVERAGE FORM

# OHIO EMPLOYERS LIABILITY DEFENSE EXPENSES COVERAGE FORM - TABLE OF CONTENTS

**Preamble**

**SECTION I - COVERAGES** .................................................................................................................2

**1.** Insuring Agreement ..................................................................................................................2
**2.** Exclusions .................................................................................................................................2

    **a.** Contractual Liability .............................................................................................................2
    **b.** Violation of Laws ..................................................................................................................3
    **c.** Statutory Obligations ...........................................................................................................3
    **d.** Crew Members and Federal Laws .......................................................................................3
    **e.** Other than Intentional Acts .................................................................................................3
    **f.** Termination, Coercion or Discrimination .............................................................................3
    **g.** War .......................................................................................................................................3
    **h.** Failure to Comply with Worker's Compensation Law ..........................................................3
    **i.** Asbestos ..............................................................................................................................3
    **j.** Judgments, Settlements or Punitive Damages ....................................................................3

**SECTION II - WHO IS AN INSURED** .................................................................................................3

**SECTION III - LIMITS OF INSURANCE** ............................................................................................3

**SECTION IV - CONDITIONS** .............................................................................................................4

**1.** Bankruptcy ................................................................................................................................4
**2.** Duties in the Event of Intentional Act, Claim or Suit ...............................................................4
**3.** Concealment or Fraud ...............................................................................................................4
**4.** Legal Action Against Us ............................................................................................................4
**5.** Other Insurance ........................................................................................................................4
**6.** Representations .........................................................................................................................4
**7.** Review of Your Occupational Injuries and Illnesses Records .................................................4
**8.** Separation of Insureds ..............................................................................................................4
**9.** Transfer of Rights of Recovery Against Others to Us .............................................................5
**10.** When We Do Not Renew ...........................................................................................................5

**SECTION V - DEFINITIONS** ..............................................................................................................5

**1.** "Bodily Injury" ............................................................................................................................5
**2.** "Coverage term" ........................................................................................................................5
**3.** "Defense expenses" ..................................................................................................................5
**4.** "Employee" ................................................................................................................................5
**5.** "Executive officer" .....................................................................................................................5
**6.** "Intentional act" .........................................................................................................................5
**7.** "Leased worker" ........................................................................................................................5
**8.** "Occurrence" .............................................................................................................................5
**9.** "Suit" .........................................................................................................................................5
**10.** "Temporary worker" ...................................................................................................................5
**11.** "Workplace" ...............................................................................................................................5
**12.** "Workers compensation law" .....................................................................................................5

**NUCLEAR ENERGY LIABILITY EXCLUSION (Broad Form)** ...........................................................6

**Notice: This Coverage Part provides "defense expenses" coverage only. The coverage specified in this Coverage Part is only for "defense expenses" as defined in SECTION V - DEFINITIONS. Please read and review the Coverage Part carefully and discuss the coverage with your agent.**

# OHIO EMPLOYERS LIABILITY DEFENSE EXPENSES COVERAGE FORM

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

## SECTION I - COVERAGES

**1. Insuring Agreement**

    **a.** To the fullest extent permitted by Ohio Law, we will pay on an insured's behalf those "defense expenses" that an insured incurs because of a claim or "suit" for "bodily injury" sustained by your "employee" in the "workplace" and caused by an alleged "intentional act" to which this insurance applies. It shall be your right, not our duty, to defend any claim or "suit", provided you shall only retain counsel as mutually agreed upon with us. We shall at all times have the right, but not the duty, to associate with the insureds in the investigation or defense of any claim or "suit" to which this insurance applies.

    But:

    **(1)** The amount we will pay for "defense expenses" is limited as described in **SECTION III - LIMITS OF INSURANCE**; and

    **(2)** Our duty to pay "defense expenses" ends at the earliest of the following times:

        **(a)** When the applicable limit of insurance is used up;

        **(b)** When an insured is convicted of a criminal offense arising from an "intentional act";

        **(c)** When an insured pleads guilty to a criminal offense arising from an "intentional act";

        **(d)** When a court of competent jurisdiction has determined that an insured committed an "intentional act"; or

        **(e)** When an insured admits to having committed an "intentional act".

    No other obligation or liability to pay sums or perform acts or services is covered.

    **b.** This insurance applies to "bodily injury" only if:

    **(1)** The "bodily injury" is caused by an "occurrence", provided the "employee", at the time of the injury, was covered under a workers compensation policy and was subject to a "workers compensation law" of Ohio.

    **(2)** Except when **(3)** below applies, the "bodily injury" occurs during the policy period.

    **(3)** Provided the "bodily injury" is a disease, the "bodily injury" is caused by or aggravated by conditions of employment by you and the injured "employee's" last day of last exposure to the conditions causing or aggravating such "bodily injury" occurs during the policy period.

    **c.** If you are sued, the original "suit" and any related legal actions for damages for "bodily injury" must be brought in the United States of America, its territories or possessions or Canada.

**2. Exclusions**

This insurance does not cover:

    **a. Contractual Liability**

    Liability assumed by you under any contract or agreement;

**b. Violation of Laws**

"Bodily injury" suffered or caused by any "employee" while employed in violation of law with your actual knowledge or the actual knowledge of an insured;

**c. Statutory Obligations**

Your obligation under a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

**d. Crew Members and Federal Laws**

"Bodily injury":

**(1)** To any member of the flying crew of any aircraft;

**(2)** To any master or member of the crew of any vessel;

**(3)** To any "employee" subject to the Longshore and Harbor Workers' Compensation Act, the Federal Employer's Liability Act or the Federal Coal Mine Health and Safety Act, or any subsequent amendments to these laws;

**e. Other than Intentional Acts**

"Bodily injury" to any "employee" as the result of negligent, grossly negligent, wanton, reckless or willful misconduct;

**f. Termination, Coercion or Discrimination**

Damages arising out of coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation, discrimination or termination whether or not accompanied by a "bodily injury";

**g. War**

"Bodily injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these;

**h. Failure to Comply with Worker's Compensation Law**

Any claim or "bodily injury" with respect to which you are deprived of any defense or defenses or are otherwise subject to penalty because of default in premium payment under, or any other failure to comply with the provisions of any "workers compensation law";

**i. Asbestos**

Damages arising out of, attributable to, or any way related to asbestos in any form or transmitted in any manner;

**j. Judgments, Settlements or Punitive Damages**

Any judgments, awards, settlements, punitive damages, exemplary damages, statutory damages, restitution, or fines of any type, including but not limited to, any award of attorney fees, costs, or interest against the insured.

## SECTION II - WHO IS AN INSURED

If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in Limits of Insurance of the Ohio Employers Liability Defense Expense Coverage Part Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The Bodily Injury - Each "Employee" limit is the most we will pay for all "defense expenses" covered by this Coverage Part due to or arising out of "bodily injury" sustained by a single "employee" regardless of the number of insureds alleged to have committed an "intentional act" resulting in such "bodily injury".

3. The Aggregate limit is the most we will pay for all "defense expenses" covered by this Coverage Part due to or arising out of "bodily injury" regardless of the number of "employees" sustaining such "bodily injury".

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

## SECTION IV - CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event of Intentional Act, Claim or Suit**

   a. You must see to it that we are notified promptly of any claim or "suit" to which this insurance applies. To the extent possible, notice should include:

      (1) How, when and where the alleged "intentional act" took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damages arising out of the alleged "intentional act".

   b. You and any other involved insured must:

      (1) Immediately send us copies of any demand notices, summonses or legal papers received in connection with the claim or "suit"; and

      (2) Provide us with all information, assistance and cooperation which we reasonably request and agree that in the event of a claim or "suit" no insured will do anything that may prejudice our position or our potential or actual rights of recovery.

   c. No insured will, except at that insured's own cost, voluntarily make a "defense expenses" payment, assume any "defense expenses" obligation, or incur any "defense expenses" without our consent.

3. **Concealment or Fraud**

   This Coverage Part shall be void if, whether before or after a claim is made, an insured has:

   a. Intentionally concealed or misrepresented any material fact or circumstance; or

   b. Made false statements or engaged in fraudulent conduct;

   relating to this Coverage Part.

4. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for "defense expenses" from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   We will not be liable for "defense expenses" that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.

5. **Other Insurance**

   **Excess -** This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis.

6. **Representations**

   By accepting this Coverage Part, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this Coverage Part in reliance upon your representations.

7. **Review of Your Occupational Injuries and Illnesses Records**

   We will have the right to review your OSHA or other occupational injuries and illnesses records as they relate to this Coverage Part at any time during the policy period and up to three years afterward.

8. **Separation of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this Coverage Part applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others To Us**

If the insured has rights to recover all or part of any "defense expenses" we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2.  "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

    a.  The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at our mailing address shown in the Declarations, and if a multi-year policy, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

        (1) The day the policy period shown in the Declarations ends; or

        (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

    b.  However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

3.  "Defense expenses" means necessary and reasonable legal fees, costs and expenses incurred by an insured as a result of an investigation, defense and appeal of a claim or "suit". "Defense expenses" shall not include an insured's remuneration or overhead expenses. "Defense expenses" also shall not include costs incurred by an insured as a result of the investigation, defense or appeal of any criminal or administrative claim or proceeding.

4.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

5.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

6.  "Intentional act" means an act committed by you, or any of your "employees", during the course of employment, with the intent to injure another or with the belief that the injury was substantially certain to occur. As used in this Coverage Part, substantially certain means that you, or your "employee(s)", acted with deliberate intent to cause an "employee" to suffer "bodily injury".

    "Intentional act" includes your deliberate removal of an equipment safety guard and your deliberate misrepresentation of a toxic or hazardous substance provided "bodily injury" to your "employee" occurs as a direct result.

7.  "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

8.  "Occurrence" means a happening or event or a continuous or repeated exposure to conditions which occur during the policy period which result in "bodily injury". All such exposure to substantially the same general conditions existing at or emanating from the "workplace" shall be deemed one "occurrence".

9.  "Suit" means a civil proceeding in which "bodily injury" to which this Coverage Part applies are alleged. "Suit" includes:

    a.  An arbitration proceeding in which the insured must submit or does submit with our consent;

    b.  Any other alternative dispute resolution proceeding to which the insured submits with our consent; or

    c.  An appeal of a civil proceeding.

10. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

11. "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by the Named Insured to work on the date of "occurrence".

12. "Workers compensation law" means the workers compensation law and any occupational disease law of the State of Ohio. This does not include provisions of any law providing non-occupational disability benefits.

# NUCLEAR ENERGY LIABILITY EXCLUSION
## (Broad Form)

1. The insurance does not apply:

   a. Under any Liability Coverage, to "bodily injury":

      (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under any Liability Coverage to "bodily injury" resulting from the "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", unless such facility is located within the United States of America, its territories or possessions or Canada.

2. As used in this endorsement:

"Hazardous properties" include radioactive, toxic, or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "by-product material";

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility";

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

# THE CINCINNATI INSURANCE COMPANY

**A Stock Insurance Company**

# LIQUOR LIABILITY COVERAGE PART DECLARATIONS

Attached to and forming part of POLICY NUMBER: ECP 055 77 79

Named Insured is the same as it appears in the Common Policy Declarations

**Legal Entity / Business Description**
LIMITED LIABILITY COMPANY

**LIMITS OF INSURANCE**

| | |
|---|---|
| Each Common Cause Limit | $ 1,000,000 |
| Aggregate Limit | $ 1,000,000 |

| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | ADVANCE PREMIUM |
|---|---|---|---|---|
| RESTAURANTS, TAVERNS, HOTELS, MOTELS | 58162 | 1,466,000 | 1.949 | 2,857 |

**TOTAL PREMIUM $ 2,857**

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO LIQUOR LIABILITY COVERAGE PART:**

| | | |
|---|---|---|
| GA115 | 12/04 | LIQUOR LIABILITY COVERAGE FORM |
| CG0305 | 01/96 | DEDUCTIBLE LIABILITY INSURANCE |

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS.**

**SECTION I - LIQUOR LIABILITY COVERAGE**

1.  **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE; and**

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

        No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS.**

    b.  This insurance applies to "injury" only if:

        (1) The "injury" occurs during the policy period in the "coverage territory"; and

        (2) Prior to the "coverage term" in which "injury" occurs, you did not know, per Paragraph **1.d.** below, that the "in-

jury" had occurred or had begun to occur, in whole or in part.

    c.  "Injury" which:

        (1) Occurs during the "coverage term"; and

        (2) Was not, prior to the "coverage term", known by you, per Paragraph **1.d.** below, to have occurred;

        includes any continuation, change or resumption of that "injury" after the end of the "coverage term" in which it first became known by you.

    d.  You will be deemed to know that "injury" has occurred at the earliest time when any "authorized representative":

        (1) Reports all, or any part, of the "injury" to us or any other insurer;

        (2) Receives a written or verbal demand or claim for damages because of the "injury";

        (3) First observes, or reasonably should have first observed, the "injury";

        (4) Becomes aware, or reasonably should have become aware, by any means other than as described in **(3)** above, that "injury" had occurred or had begun to occur; or

        (5) Becomes aware, or reasonably should have become aware, of a condition from which "injury" is substantially certain to occur.

2.  **Exclusions**

    This insurance does not apply to:

    a.  **Expected or Intended Injury**

        "Injury" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the "injury" is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b.  **Workers' Compensation and Similar Laws**

        Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.** **Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured sustained in the "workplace";

**(2)** An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

**(3)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraphs **(1)** or **(2)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the "injury".

**d.** **Liquor License Not in Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

**e.** **Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**f.** **Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**g.** **War**

"Injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**4.** All costs taxed against the insured in the "suit".

**5.** Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable limit of insurance. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**7.** Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II - WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above; or

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the "injury" described in Paragraphs **(1)(a)** or **(b)** above.

**(2)** "Property damage" to property:

**(a)** Owned or occupied by; or

**(b)** Rented or loaned,

to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

**b.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Insurance under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** This insurance does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

**3.** Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - LIQUOR LIABILITY CONDITIONS**

**1. Bankruptcy**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties in the Event of Injury, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "injury" took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any "injury".

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**5. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**6. Premium Audit**

    **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If:

        **(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

        **(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us.

    **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations**

By accepting this Coverage Part, you agree:

    **a.** The statements in the Declarations are accurate and complete;

    **b.** Those statements are based upon representations you made to us; and

    **c.** We have issued this Coverage Part in reliance upon your representations.

**8. Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    **a.** As if each Named Insured were the only Named Insured; and

    **b.** Separately to each insured against whom claim is made or "suit" is brought.

**9. Transfer of Rights of Recovery Against Others to Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Part and any other Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "injury", the aggregate maximum limit of insurance under all the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable limit of insurance under any one Coverage Form, Coverage Part or policy. This condition does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

**11. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Authorized representative" means:

    **a.** If you are designated in the Declarations as:

        **(1)** An individual, you and your spouse are "authorized representatives".

        **(2)** A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

        **(3)** A limited liability company, your members and your managers are "authorized representatives".

        **(4)** An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives". Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

    **b.** Your "employees":

        **(1)** Assigned to manage your insurance program; or

        **(2)** Responsible for giving or receiving notice of an "injury", claim or "suit";

    are also "authorized representatives".

**2.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**3.** "Coverage term" means the following individual increment, or if a multi-year policy period,

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

increments, of time, which comprise the policy period of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

    **(1)** The day the policy period shown in the Declarations ends; or

    **(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the "injury" arises out of:

    **(1)** Goods or products made or sold by you in the territory described in **a.** above; or

    **(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement to which we agree.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive Officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Injury" means all damages, including damages because of "bodily injury" and "property

damage", and including damages for care, loss of services or loss of support. "Injury" does not include civil or criminal fines or penalties imposed by law.

**8.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**9.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

**10.** "Suit" means a civil proceeding in which money damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**11.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**12.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of "injury".

**13.** "Your product":

**a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)** Others trading under your name; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**GA 115 12 04**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**Page 7 of 7**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

**LIQUOR LIABILITY COVERAGE PART**

**SCHEDULE**

**Location**

| Coverage | Amount and Basis of Deductible |
| --- | --- |
| | PER CLAIM or  PER COMMON CAUSE |
| Liquor Liability | $ 500            $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement.  If no limitation is entered, the deductibles apply to damages for "injury", however caused):

**A.** Our obligation under the Liquor Liability Coverage to pay damages on your behalf applies only to the amount of damages in excess of any deductible amount stated in the Schedule above.

**B.** You may select a deductible amount on either a per claim or a per common cause basis. Your selected deductible applies to the Liquor Liability Coverage and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above.  The deductible amount stated in the Schedule above applies as follows:

    **1. PER CLAIM BASIS.**  If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies under Liquor Liability Coverage, to all "injuries" sustained by any one person or organization.

    **2. PER COMMON CAUSE BASIS.**  If the deductible amount indicated in the Schedule above is on a per common cause basis, that deductible amount applies under Liquor Liability Coverage to all damages because of "injury" as the result of the selling, serving or furnishing of any alcoholic beverage to any one person, regardless of the number of persons or organizations who sustain damages.

**C.** The terms of this insurance, including those with respect to:

    **1.** Our right and duty to defend the insured against any "suit" seeking those damages; and

    **2.** Your duties in the event of an "injury", claim or "suit"

apply irrespective of the application of the deductible amount.

**D.** We may pay any part or all of the deductible amount to effect settlement of any claims or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

     Copyright, Insurance Office, Inc., 1994

# THE CINCINNATI INSURANCE COMPANY
### A Stock Insurance Company

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM DECLARATIONS

**NOTICE: INSURANCE COVERAGE UNDER ANY PARTICULAR COVERAGE INCLUDED WITHIN THIS FORM IS NOT IN FORCE UNLESS THE CORRESPONDING SECTION OF THESE DECLARATIONS HAS BEEN COMPLETED.**

Attached to and forming a part of POLICY NUMBER: ECP 055 77 79

Named Insured is the same as it appears in the Common Policy Declarations

**COVERAGE PROVISIONS** (Only those items marked by an [x], where so indicated, are applicable):

## Limits of Insurance:

**Limit of Insurance:**
☐ Blanket:

[x] **Coverage A - Electronic Data Processing Property:** ................................................. $

[x] See Scheduled Premises Endorsement

[x] **Coverage A - Coverage Extensions:**

**Limit of Insurance - Unless Otherwise Stated:**

| | | | |
|---|---|---|---|
| a. | Debris Removal: ......................................................... | $50,000 - | $ |
| b. | Duplicate and Backup Electronic Media and Records: ......................................................... | $10,000 - | $ 25,000 |
| c. | Off Premises: 20% of the Coverage A Limit of Insurance subject to a maximum of: $50,000 | | $ |
| d. | Pollutant Clean Up and Removal ................................ | $10,000 - | $ |
| e. | Recharge or Refill of a Fire Protection Device: ......................................................... | $50,000 - | $ |
| f. | Third Party Host: ......................................................... | $10,000 - | $ |

**Limit of Insurance:**
☐ Blanket:

[x] **Coverage B - Business Income and Extra Expense:** ................................................. $

[x] See Scheduled Premises Endorsement

[x] **Coverage C - Additional Coverages:**

**Limit of Insurance - Unless Otherwise Stated:**

| | | | |
|---|---|---|---|
| 1. | Denial of Service ......................................................... | $ 10,000 - | $ |
| 2. | Loss Establishment Expenses ................................... | $ 5,000 - | $ |
| 3. | Malicious Code ......................................................... | $ 10,000 - | $ |
| 4. | Unauthorized Use ......................................................... | $ 10,000 - | $ |

**Note:** The maximum aggregate Limit of Insurance for any Additional Coverage in any one "coverage term" is three times the Limit of Insurance stated here.

## Deductibles:

**Deductible:**

**Coverage A:**

| | | |
|---|---|---|
| Basic: ......................................................... | $ | 500 |
| Specified Losses: ......................................................... | $ | 1,000 |

| Coverage B: | (Hours) | 24 |
|---|---|---|

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO ELECTRONIC DATA PROCESSING COVERAGE FORM:**

| | | |
|---|---|---|
| MA123 | 08/07 | ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM (EDP) - TABLE OF CONTENTS |
| MA4050 | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |
| CM0140 | 04/08 | OHIO CHANGES |
| CM9904 | 07/88 | TENTATIVE RATE |
| MA135 | 11/99 | COMMERCIAL INLAND MARINE CONDITIONS |
| MA4015 | 06/07 | SCHEDULED PREMISES ENDORSEMENT |

**LOSS PAYEE (if any)**

**SPECIAL PROVISIONS (if any)**

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM (EDP) - TABLE OF CONTENTS

**Coverage Part Provision:**                                                                 **Begins on Page:**

**Preamble** ...........................................................................................................................3

**Section I - Coverages:** .....................................................................................................3

    **Coverage A - Electronic Data Processing Property:** .................................................3

    **1.** Insuring Agreement..............................................................................................3
    **2.** Covered Property.................................................................................................3
    **3.** Property Not Covered..........................................................................................3
    **4.** Covered Causes of Loss......................................................................................3
    **5.** Coverage Extensions:..........................................................................................3
        **a.** Debris Removal .........................................................................................3
        **b.** Duplicate and Backup Electronic Media and Records ...................................4
        **c.** Off Premises .............................................................................................4
        **d.** Pollutant Clean Up and Removal................................................................4
        **e.** Preservation of Property............................................................................4
        **f.** Recharge or Refill of a Fire Protection Device ...........................................5
        **g.** Third Party Host........................................................................................5
        **h.** Newly Acquired Property............................................................................5

    **Coverage B - Business Income and Extra Expense:** ................................................5

    **1.** Insuring Agreement..............................................................................................5
    **2.** Covered Property.................................................................................................5
    **3.** Property Not Covered..........................................................................................5
    **4.** Covered Causes of Loss......................................................................................5
    **5.** Additional Coverage:...........................................................................................5
        Extended Business Income

    **Coverage C - Additional Coverages:** .....................................................................5

    **1.** Denial of Service ................................................................................................6
    **2.** Loss Establishment Expenses...............................................................................6
    **3.** Malicious Code....................................................................................................6
    **4.** Unauthorized Use................................................................................................6

**Section II - Exclusions** ..................................................................................................6

**Section III - Limits of Insurance and Deductibles:** .........................................................8

**1.** Limits of Insurance: ...............................................................................................8
**2.** Deductibles: ..........................................................................................................8
    **a.** Coverage **A** ..............................................................................................8
    **b.** Coverage **B** ..............................................................................................8
    **c.** Coverage **C** ..............................................................................................8

**Section IV - Additional Conditions:** ...............................................................................8

**1.** Coverage **A** - Electronic Data Processing Property - Conditions:...............................8
    Valuation ...............................................................................................................9
**2.** Coverage **B** - Business Income and Extra Expense - Conditions: ..............................9
    **a.** Appraisal ..................................................................................................9
    **b.** Loss Determination ...................................................................................9
    **c.** Resumption of Operations.........................................................................10
**3.** Common Conditions:.............................................................................................10
    **a.** Duties in the Event of Loss.......................................................................10
    **b.** Blanket Insurance ....................................................................................11
    **c.** Joint Insured............................................................................................11
    **d.** Legal Action Against Us............................................................................11

Includes copyrighted material of ISO Properties, Inc., and
American Association of Insurance Services with their permission.

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM (EDP) - TABLE OF CONTENTS

**e.** Loss Payee ........................................................................................................ 11
**f.** Multi-Year Policies ............................................................................................ 11
**g.** Non-Accumulation of Limits of Insurance ....................................................... 12
**h.** Other Insurance ................................................................................................ 12
**i.** Protective Safeguards ...................................................................................... 12
**j.** Recoveries ........................................................................................................ 12
**k.** Transfer of Your Rights of Recovery Against Others to Us .............................. 12

**Section V - Definitions:** ............................................................................................ 12

**1.** "Actual cash value" .......................................................................................... 12
**2.** "Business income" ........................................................................................... 13
**3.** "Computer system" .......................................................................................... 13
**4.** "Coverage term" ............................................................................................... 13
**5.** "Coverage territory" ......................................................................................... 13
**6.** "Denial of service" ............................................................................................ 13
**7.** "Electronic media and records" ....................................................................... 13
**8.** "Electronic securities" ...................................................................................... 13
**9.** "Evidences of debt" .......................................................................................... 13
**10.** "Extra expense" ............................................................................................... 13
**11.** "Hardware" ....................................................................................................... 13
**12.** "Loss" ............................................................................................................... 13
**13.** "Loss establishment expenses" ...................................................................... 14
**14.** "Malicious code" .............................................................................................. 14
**15.** "Mechanical breakdown" ................................................................................. 14
**16.** "Money" ............................................................................................................ 14
**17.** "Occurrence" .................................................................................................... 14
**18.** "Operations" ..................................................................................................... 14
**19.** "Other property" ............................................................................................... 14
**20.** "Period of restoration" ..................................................................................... 14
**21.** "Pollutants" ...................................................................................................... 14
**22.** "Premises" ........................................................................................................ 14
**23.** "Production equipment" ................................................................................... 14
**24.** "Securities" ....................................................................................................... 14
**25.** "Service agreement" ........................................................................................ 14
**26.** "Specified causes of loss" ............................................................................... 14
**27.** "Sudden and accidental" ................................................................................. 15
**28.** "Suspension" .................................................................................................... 15
**29.** "Telecommunications equipment" ................................................................... 15
**30.** "Temporarily" ................................................................................................... 15
**31.** "Unauthorized use" .......................................................................................... 15
**32.** "Valuable papers and records" ........................................................................ 15

**MA 123 08 07**

Includes copyrighted material of ISO Properties, Inc., and
American Association of Insurance Services with their permission.

**Page 2 of 15**

# ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **Section V - Definitions.**

**Section I - Coverages**

**Coverage A - Electronic Data Processing Property**

1. **Insuring Agreement**

   We will pay for "loss" to Covered Property resulting from a Covered Cause of Loss.

2. **Covered Property**

   Covered Property, as used in Coverage **A** of this Coverage Part, means the following type of property:

   **a.** Your "hardware";

   **b.** Climate control equipment, and other electrical equipment, used exclusively with your "hardware";

   **c.** Your "electronic media and records";

   **d.** Your "telecommunications equipment";

   **e.** Your programming documentation and instruction manuals; and

   **f.** Similar property of others in your care, custody or control,

   While located:

   **a.** On your "premises" or within one thousand (1,000) feet thereof (except as may be provided in the **Section I - Coverages, Coverage A - Electronic Data Processing Property, 5. Coverage Extensions**); and

   **b.** In the "coverage territory" (except as may be provided in the **Section I - Coverages, Coverage A - Electronic Data Processing Property, 5. Coverage Extensions**).

3. **Property Not Covered**

   Covered Property does not include:

   **a.** "Electronic media and records" that cannot be replaced with similar property of like kind and quality.

   **b.** Property that you have rented or leased to another person or organization and is not at your "premises".

   **c.** Contraband or property in the course of illegal transit or trade.

   **d.** "Production equipment".

   **e.** Copyrights, patents, trademarks, trade secrets or other intellectual property.

   **f.** Personally identifiable information of persons or entities other than you or your employees.

   **g.** Property held as samples or for sale.

   **h.** Records of accounts receivable.

   **i.** Any machine or apparatus that is used for research, medical, diagnostic, surgical, dental or pathological purposes.

   **j.** "Electronic securities", "evidences of debt", "money" and "securities".

   **k.** "Valuable papers and records".

4. **Covered Causes of Loss**

   Covered Causes of Loss, with respect to Coverage **A**, means risks of direct "loss" to Covered Property except those causes of "loss" listed in **Section II - Exclusions.**

5. **Coverage Extensions**

   Unless stated otherwise, the Limits of Insurance referenced in the following Coverage Extensions are in addition to, and not included within, **Section III - Limits of Insurance and Deductibles, 1. Limits of Insurance** for Coverage **A**.

   **a. Debris Removal**

   **(1)** We will pay your expense to remove the debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within one hundred-eighty (180) days of the date of direct "loss".

Includes copyrighted material of ISO Properties, Inc., and American Association of Insurance Services with their permission.

MA 123 08 07     Page 3 of 15

**(2)** The most we will pay under this Coverage Extension is twenty-five (25) percent (%) of:

   **(a)** The amount we pay for the direct "loss" to Covered Property; plus

   **(b)** The deductible in this Coverage Part applicable to that "loss".

This Coverage Extension is included within the Limit of Insurance shown in the Declarations for Coverage **A**. However, if:

   **(a)** The sum of direct "loss" and debris removal expense exceeds the Limit of Insurance for Coverage **A**; or

   **(b)** The debris removal expense exceeds the amount payable under the twenty-five (25) percent (%) limitation in this Coverage Extension;

we will pay up to the additional Limit of Insurance for Debris Removal stated in the Declarations for each "premises" in any one "occurrence".

**(3)** This Coverage Extension does not apply to costs to:

   **(a)** Extract "pollutants" from land or water; or

   **(b)** Remove, restore or replace polluted land or water.

**b.  Duplicate and Backup Electronic Media and Records**

We will pay up to the Limit of Insurance for Duplicate and Backup Electronic Media and Records stated in the Declarations in any one "occurrence" for "loss" to "electronic media and records" due to a Covered Cause of Loss while such property is stored away from your "premises" other than "temporarily".

This Coverage Extension does not apply to "loss" insured under the Third Party Host Coverage Extension.

**c.  Off Premises**

We will pay up to the Limit of Insurance for Off Premises stated in the Declarations in any one "occurrence" for "loss" to Covered Property due to a Covered Cause of Loss while such property is away from your "premises":

**(1)** "Temporarily" in transit;

**(2)** "Temporarily" in storage; or

**(3)** In the custody of your employee for the purpose of conducting your business.

This is not an additional Limit of Insurance. It is included within the Coverage **A** Limit of Insurance.

This Coverage Extension applies to Covered Property whether or not it is located within the "coverage territory".

If the Limit of Insurance stated in the Declarations is other than the $50,000 maximum stated, then the Limit of Insurance that applies to all "loss" in any one "occurrence" is the greater of the limit stated or the twenty percent (20%) of the Coverage **A** Limit of Insurance limitation.

**d.  Pollutant Clean Up and Removal**

**(1)** We will pay your expenses to extract "pollutants" from land or water at the "premises" if the discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants":

   **(a)** Is from Covered Property;

   **(b)** Is caused by a Covered Cause of Loss; and

   **(c)** Occurs during the policy period.

The expenses will be paid only if they are reported to us in writing within one hundred eighty (180) days of the date on which the Covered Cause of Loss occurs.

**(2)** This Coverage Extension does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

**(3)** The most we will pay under this Coverage Extension for each "premises" for the sum of all covered expenses arising out of Covered Causes of Loss during each "coverage term" is the Limit of Insurance stated in the Declarations for Pollutant Clean Up and Removal.

**e.  Preservation of Property**

If it is necessary to move Covered Property from the "premises" to preserve it from "loss" by a Covered Cause of Loss, we will pay for any direct "loss" to that property:

Includes copyrighted material of ISO Properties, Inc., and American Association of Insurance Services with their permission.

**(1)** While it is being moved or while "temporarily" stored at a location other than a "premises"; and

**(2)** Only if the "loss" occurs within thirty (30) days after the property is first moved.

This Coverage Extension is included within the Limit of Insurance shown in the Declarations for Coverage **A**.

**f. Recharge or Refill of a Fire Protection Device**

We will pay for your expense to recharge or refill any fire protective devices that are designed specifically to protect Covered Property when these devices have been discharged in a "loss" insured by Coverage **A** of this Coverage Part or have been accidentally discharged. The most we will pay in any one "loss" or "sudden and accidental" discharge is the Limit of Insurance for Recharge or Refill of a Fire Protection Device stated in the Declarations.

**g. Third Party Host**

We will pay up to the Limit of Insurance for Third Party Host stated in the Declarations in any one "occurrence" for "loss" to:

Your "electronic media and records" away from your "premises" due to a Covered Cause of Loss, but only while such "electronic media and records" are hosted in the "hardware" of a third party information technology provider, with whom you have directly contracted for such service.

This is not an additional Limit of Insurance. It is included within the Coverage **A** Limit of Insurance.

This Coverage Extension:

**(1)** Applies to "electronic media and records" whether or not they are located within the "coverage territory"; and

**(2)** Does not apply to "loss" insured under the Duplicate and Backup Electronic Media and Records Coverage Extension.

**h. Newly Acquired Property**

We will provide coverage as follows:

**(1)** On newly acquired Covered Property up to the total limit shown on the Declarations Page for Total Covered Property whether located at a current location or newly acquired location,

but in no event shall we pay more than $250,000 under this Coverage Extension for any one "loss".

You will report such newly acquired property, or Covered Property already insured by this policy which is moved to a newly acquired location, to us within 90 days from the date the Covered Property is acquired or moved, as the case may be, and pay any additional premium due. If you do not report such property or movement of property , coverage will cease automatically after the 90 days has elapsed. However, in no event shall coverage be extended beyond the expiration of this policy.

**Coverage B - Business Income and Extra Expense**

**1. Insuring Agreement**

We will pay your actual loss of "business income" as well as "extra expense" that results from the necessary "suspension" of your "operations" during the "period of restoration" due to "loss" to Covered Property resulting from a Covered Cause of Loss.

**2. Covered Property**

Covered Property, as used in Coverage **B** of this Coverage Part, is the same as that applicable to Coverage **A**.

**3. Property Not Covered**

Covered Property does not include Property Not Covered under Coverage **A**.

**4. Covered Causes of Loss**

Covered Causes of Loss, with respect to Coverage **B**, means risks of direct "loss" to Covered Property except those causes of "loss" listed in **Section II - Exclusions.**

**5. Additional Coverage**

This Additional Coverage does not provide additional Limits of Insurance.

**Extended Business Income**

If the necessary "suspension" of your "operations" produces a "business income" loss payable under this Coverage Part, we will pay for the actual loss of "business income" you incur during the period that:

**a.** Begins on the date Covered Property is actually repaired, rebuilt or replaced and "operations" are resumed; and

**b.** Ends on the earlier of:

**(1)** The date you could restore your "operations", with reasonable speed, to the level which would generate the "business income" that would have existed if no direct "loss" to Covered Property due to a Covered Cause of Loss had occurred; or

**(2)** Sixty (60) consecutive days after the date determined in **5.a.** above.

However, Extended Business Income does not apply to loss of "business income" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where your "premises" are located.

## Coverage C - Additional Coverages

The Limits of Insurance provided in the following Additional Coverages are included within and are not in addition to the Limits of Insurance applicable to Coverages **A** or **B**, unless stated otherwise therein.

**1. Denial of Service**

We will pay up to the Limit of Insurance stated in the Declarations for Denial of Service for loss of "business income" or "extra expense" under Coverage **B** caused by a "denial of service".

**2. Loss Establishment Expenses**

Subsequent to the detection of a potential "loss" insured under Coverage **A** or **B**, we will pay up to the Limit of Insurance stated in the Declarations for "loss establishment expenses" incurred within ninety (90) days of the detection of the "loss" or potential "loss".

This Limit of Insurance is in addition to the Limits of Insurance for Coverages **A** and **B**.

**3. Malicious Code**

We will pay up to the Limit of Insurance stated in the Declarations for Malicious Code for all "loss", loss of "business income" or "extra expense" under Coverages **A** and **B** arising from the introduction of a "malicious code" to your "electronic media and records" or "hardware" by any person or organization other than:

**(1)** You;

**(2)** Your partners;

**(3)** Your directors;

**(4)** Your officers;

**(5)** Your trustees;

**(6)** Your members, if you are a limited liability company; or

**(7)** A person or organization, other than your employees, to whom you have entrusted Covered Property.

**4. Unauthorized Use**

We will pay up to the Limit of Insurance stated in the Declarations for Unauthorized Use for all "loss", loss of "business income" or "extra expense" under Coverages **A** and **B** arising from "unauthorized use" by any person or organization other than:

**(1)** You;

**(2)** Your partners;

**(3)** Your directors;

**(4)** Your officers;

**(5)** Your trustees;

**(6)** Your members, if you are a limited liability company; or

**(7)** A person or organization, other than your employees, to whom you have entrusted Covered Property.

**Section II - Exclusions**

**Coverage A - Electronic Data Processing Property and Coverage B - Business Income and Extra Expense - Exclusions**

The following exclusions apply to Coverages **A** and **B**, unless stated otherwise herein.

**1.** We will not pay for a "loss", loss of "business income" or "extra expense" caused directly or indirectly by any of the following. Such "loss", loss of "business income" or "extra expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss", loss of "business income" or "extra expense":

**a. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Part.

**b. Nuclear Hazard**

**(1)** Any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination from any other cause.

**c. Satellite Communications**

The disruption or failure of any satellite communication system, or any part thereof.

**d. War and Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**e. Utility Interruption**

The intentional suspension of any utility service by you or the utility provider.

**f. Tidal Wave or Tsunami**

Tidal wave or tsunami, even if attributable to an earthquake or volcanic eruption.

**2.** We will not pay for "loss", loss of "business income" or "extra expense" caused by or resulting from any of the following:

**a.** Delay or loss of market, except as may be provided under Coverage **B**.

**b.** Dishonest or criminal acts by you, any of your partners, directors, trustees, officers, members or managers (if you are a limited liability company) or anyone entrusted with the property, except employees, whether or not acting alone or in collusion with others or whether or not occurring during the hours of employment. But this exclusion does not apply to a carrier for hire.

**c.** Discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" unless the discharge, dispersal, seepage, migration, release, escape or emission is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" results in a "specified cause of loss", we will pay for the "loss" caused by that "specified cause of loss".

**d.** Interruption, disruption, or slow down in normal network service or function due to activity on the network or network server.

This exclusion does not apply to "denial of service".

**e.** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**f.** Unauthorized instructions to transfer property to any person or to any place.

**g.** Bookkeeping, accounting or billing errors or omissions.

**h.** Any processing or work upon Covered Property. But if "loss" by fire results, we will pay for that resulting "loss", loss of "business income" or "extra expense".

**i.** "Denial of service", "malicious code" or "unauthorized use".

However, this exclusion shall not apply to the extent that insurance coverage is provided under **Section I - Coverages, Coverage C - Additional Coverages.**

**3.** We will not pay for a "loss", loss of "business income" or "extra expense" caused by or resulting from any of the following. But if "loss", loss of "business income" or "extra expense" caused by a Covered Cause of Loss results, we will pay for that resulting "loss", loss of "business income" or "extra expense":

**a.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**b.** Wear and tear, hidden or latent defect, gradual deterioration, or depreciation.

**c.** The failure of "hardware" or "electronic media and records" to function as designed or anticipated to function by you or any other person or organization providing, designing or recommending said "hardware" or "electronic media and records" to you.

However, this exclusion will not apply if the failure of "hardware" or "electronic media and records" to function is caused by:

**(1)** A Covered Cause of Loss emanating from a source external to the "hardware" or "electronic media and records"; or

**(2)** The "sudden and accidental" "mechanical breakdown" of "hardware".

4. Insurance provided by Coverages **A** and **B** does not apply to:

a. Payment of costs, fees, or other expenses you incur in establishing either the existence or the amount of "loss", loss of "business income" or "extra expense", except as provided for under **Section I - Coverages, Coverage C - Additional Coverages, 2. Loss Establishment Expenses.**

b. "Loss", loss of "business income" or "extra expense", or any part thereof, the proof of which as to its existence or amount is dependent solely upon:

(1) An inventory computation;

(2) A profit and loss computation; or

(3) An audit of records.

5. Insurance provided by Coverage **A** does not apply to loss of "business income" or "extra expense".

**Section III - Limits of Insurance and Deductibles**

1. **Limits of Insurance**

a. The most we will pay for any one "occurrence" is the applicable Limits of Insurance for Coverages **A** and **B** and **Coverage C - Additional Coverages, 2. Loss Establishment Expenses** stated in the Declarations or any endorsement amendatory thereof.

b. With respect to **Section I - Coverages, Coverage C - Additional Coverages:**

(1) Under **Coverage C - Additional Coverages, 2. Loss Establishment Expenses,** we will not pay more than the lesser of:

(a) The Limit of Insurance stated in the Declarations for Loss Establishment Expenses; or

(b) The actual cost of the "loss" insured under Coverages **A** or **B** in "Loss establishment expenses".

(2) In the event that a single "occurrence" involves one or more of the following:

(a) "Denial of service";

(b) "Malicious code"; or

(c) "Unauthorized use",

the most we will pay in total is the single highest Limit of Insurance ap-

plicable to the Additional Coverages applicable to the "loss".

(3) The most we will pay for all "loss" in any "coverage term" for each Additional Coverage is three times the Limit of Insurance stated for each in the Declarations.

2. **Deductibles**

a. **Coverage A**

We will not pay for "loss" in any one "occurrence" until the amount of the adjusted "loss" before applying the applicable Limits of Insurance exceeds the Deductible shown in the Deductible section of the Declarations for Coverage **A**. We will then pay the amount of the adjusted "loss" in excess of the Deductible, up to the applicable Limit of Insurance.

(1) The Basic Deductible shown on the Declarations applies to "loss" from all Covered Causes of Loss except those referenced in **(2)** below.

(2) The Specified Losses Deductible shown on the Declarations applies to "loss" caused by "sudden and accidental" "mechanical breakdown" or artificially generated electrical disturbance.

b. **Coverage B**

We will not pay your actual loss of "business income" or "extra expense" arising from any one "loss" until and unless the necessary "suspension" of your "operations" has exceeded the Deductible in hours stated in the Declarations for Coverage **B**. We will then pay the amount of your actual loss of "business income" or "extra expense" in excess of the Deductible, up to the Limit of Insurance.

c. **Coverage C**

We will not pay for "loss", loss of "business income", "extra expenses" or "loss establishment expenses" under **Section I - Coverages, Coverage C - Additional Coverages** unless and until an insured "loss", loss of "business income" or "extra expenses" under Coverage **A** or **B** exceeds their deductible.

**Section IV - Additional Conditions**

The following Conditions apply in addition to the Commercial Inland Marine Conditions and the Common Policy Conditions:

1. **Coverage A - Electronic Data Processing Property - Conditions**

The following Condition applies to Coverage **A** only:

**Valuation**

In the **COMMERCIAL INLAND MARINE CONDITIONS, GENERAL CONDITIONS, F. Valuation** is replaced by the following with respect to Covered Property under Coverage **A**:

**a.** Valuation of Covered Property under Coverage **A**, other than that described in Paragraph **b.** below:

If you repair or replace this property with due diligence following "loss", the property will be valued at the full cost of repair or replacement. However, the most we will pay is the least of the following:

**(1)** The cost of replacing that property with property of similar or greater quality and function, provided the cost is no greater than the original purchase price of the property plus twenty (20) percent (%);

**(2)** The amount you actually and necessarily spend to repair or replace the property; or

**(3)** The Limit of Insurance applicable to the property.

If you do not repair or replace this property with due diligence following "loss", the most we will pay will be the least of the following:

**(a)** The "actual cash value" of the property;

**(b)** The "actual cash value" of repairs with material of like kind and quality; or

**(c)** The Limit of Insurance applicable to the property.

We reserve the right to repair or replace the property or to pay for the property in "money".

In the event of "loss", the value of property will be determined as of the date of "loss".

**b.** Valuation of "electronic media and records":

**(1)** We will not pay for more than the actual reproduction costs of covered "electronic media and records".

**(2)** But we will not pay the cost to duplicate research or operations that were developed away from your "premises" that led to the develop-

ment of your "electronic media and records" or that led to the development of any proprietary or confidential information or intellectual property.

**(3)** If you do not replace or reproduce the "electronic media and records", the most we will pay is the cost of blank "electronic media and records".

The most we will pay is the Limit of Insurance shown on the Declarations.

**2.** **Coverage B - Business Income and Extra Expense - Conditions**

The following Conditions apply to Coverage **B** only:

**a.** **Appraisal**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, B. Appraisal** is replaced by the following:

If you and we disagree on the amount of Net Income and operating expense or the amount of loss, either may make a written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that a judge of a court having jurisdiction make selection. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each will:

**(1)** Pay its chosen appraiser; and

**(2)** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**b.** **Loss Determination**

**(1)** The amount of "business income" loss will be determined based on:

**(a)** The Net Income of the business before the Covered Cause of Loss occurred;

**(b)** The likely Net Income of the business if no Covered Cause of Loss had occurred, but not including any Net Income that likely would have resulted from an increase in the volume of

business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

**(c)** The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the Covered Cause of Loss; and

**(d)** Other relevant sources of information, including:

    **1)** Your financial records and accounting procedures;

    **2)** Bills, invoices and other vouchers; and

    **3)** Deeds, liens or contracts.

**(2)** The amount of "extra expense" will be determined based on:

**(a)** All necessary and reasonable expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no Covered Cause of Loss had occurred. We will deduct from the total of such expenses:

    **1)** The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

    **2)** Any "extra expense" that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

**(b)** All necessary and reasonable expenses that reduce the "business income" loss that otherwise would have been incurred.

**c.** **Resumption of Operations**

**(1)** We will reduce the amount of your:

**(a)** "Business income" loss other than "extra expense", to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise

or stock) at the "premises" or elsewhere.

**(b)** "Extra expense" loss to the extent you can return "operations" to normal and discontinue such "extra expense".

**(2)** If you do not resume "operations" or do not resume "operations" as quickly as possible, we will pay based on the length of time it should have taken with due diligence to resume operations as quickly as possible.

**3.** **Common Conditions**

The following Conditions apply to all Coverages provided under this Coverage Part:

**a.** **Duties in the Event of Loss**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, C. Duties in the Event of Loss** is replaced by the following:

**(1)** In the event of:

**(a)** "Loss" to Covered Property; or

**(b)** Loss of, or loss from damage to Covered Property, or a situation that may result in loss of, or loss from damage to Covered Property,

You must see that the following are done:

    **1)** Notify the police if a law may have been broken.

    **2)** Notify us as soon as possible. Include a description of any property involved.

    **3)** As soon as possible, give us a description of how, when and where the loss occurred.

    **4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside in the best possible order for examination.

Includes copyrighted material of ISO Properties, Inc., and American Association of Insurance Services with their permission.

5) As often as may be reasonably required, permit us to:

   a) Inspect the property proving the loss;

   b) Examine your books, records, "electronic media and records" and "hardware";

   c) Take samples of damaged and undamaged property for inspection, testing and analysis; and

   d) Make copies from your books, records, "electronic media and records" and "hardware".

6) Send us signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

7) Cooperate with us in the investigation or settlement of the claim.

8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

9) Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

10) Promptly send us any legal papers or notices received concerning the loss.

(2) We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**b. Blanket Insurance**

If blanket insurance is indicated ( ☒ ) in the Declarations, the Limit of Insurance for that Coverage applies to all "premises" within the "coverage territory".

**c. Joint Insured**

(1) If more than one Insured is named in the Declarations, the first Named In-

sured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered under this policy, then the next Named Insured will become the first Named Insured.

(2) If any Insured or partner, officer, or member or manager (applicable to limited liability companies) of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

(3) An employee of any Insured is considered to be an employee of every Insured.

(4) If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

(5) We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

**d. Legal Action Against Us**

In the **COMMERCIAL INLAND MARINE CONDITIONS, GENERAL CONDITIONS, B. Legal Action Against Us** is replaced by the following:

No one may bring legal action against us under this Coverage Part unless:

(1) There has been full compliance with all the terms of this Coverage Part;

(2) At least ninety (90) days has passed since you filed proof of loss with us; and

(3) Brought within two (2) years from the date you discover the loss in question.

**e. Loss Payee**

For Covered Property in which both you and a Loss Payee listed in the Declarations have an insurable interest, we will:

(1) Adjust "losses" with you; and

(2) Pay any claim for insured "loss" jointly to you and the Loss Payee, as interests may appear.

**f. Multi-Year Policies**

If this Coverage Part is issued for more than one annual policy period, the premium may be adjusted at the inception of each following "coverage term" based on our rates in effect at that time.

**g.  Non-Accumulation of Limits of Insurance**

Regardless of the number of "coverage terms" this insurance remains in force or the number of premiums paid, no Limit of Insurance accumulates from year to year or period to period.

**h.  Other Insurance**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, F. Other Insurance** is replaced by the following:

**(1)** If you have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

**(2)** If there is other insurance covering the same loss or damage, other than that described in **(1)** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**(3)** Irrespective of Paragraphs **h.(1)** or **(2)** above, this Coverage Part is always excess of a "service agreement". We will pay only the amount of insured "loss" that is not covered by the "service agreement" in the form of repairs or other compensation. But we will not pay more than the applicable Limit of Insurance.

**i.  Protective Safeguards**

You must maintain the protective safeguards stated by you to be in effect at a "premises" when this coverage began.

If you fail to keep the protective safeguards:

**1)** In working condition at a "premises"; and

**2)** In operation when you are closed to business;

Coverage for which the protective safeguards apply is automatically suspended at that "premises" if you fail to notify us immediately. This suspension will last until the equipment or services are back in operation.

**j.  Recoveries**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, I. Recoveries** is replaced by the following:

**(1)** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

**(a)** To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance plus the Deductible Amount, if any;

**(b)** Then to us, until we are reimbursed for the settlement made;

**(c)** Then to you, until you are reimbursed for that part of loss equal to the Deductible Amount, if any.

**(2)** You will pay us the amount of all recoveries you receive for a "loss" paid by us. But any recoveries in excess of the amount we have paid belong to you.

**(3)** Recoveries do not include any recovery from insurance, suretyship, reinsurance, security or indemnity taken for our benefit.

**k.  Transfer of Your Rights of Recovery Against Others to Us**

In the **COMMERCIAL INLAND MARINE CONDITIONS, LOSS CONDITIONS, K. Transfer of Rights of Recovery Against Others to Us** is replaced by the following:

You must transfer to us all of your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**Section V - Definitions**

The following terms, when appearing in quotation marks, have the following meanings wherever used in this Coverage Part:

**1.** "Actual cash value" means replacement cost less a deduction that reflects depreciation, age, condition and obsolescence.

Includes copyrighted material of ISO Properties, Inc., and
American Association of Insurance Services with their permission.

2. "Business income" means the:

   a. Net Income (net profit or loss before income taxes) that would have been earned or incurred; and

   b. Continuing normal operating expenses incurred, including payroll.

3. "Computer system" means a configuration of "hardware" and "electronic media and records", including "telecommunications equipment" which may be integrated into or connected to such "hardware", purposely designed to perform a particular function or functions.

4. "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

   a. The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

      (1) The day the policy period shown in the Declarations ends; or

      (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

   b. However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

5. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

6. "Denial of service" means the malicious and intentional inundating of your "computer system" with messages, instructions, queries or requests that deplete resources enough to restrict, limit or prevent access for the purposes of nuisance, sabotage or malicious tampering which has the effect of:

   a. Depleting system resources available through the Internet to authorized external users of your "computer system"; and

   b. Impeding Internet access of authorized external users to your "computer system".

7. "Electronic media and records" means information, facts, instructions, concepts and programs converted and stored in a form usable in "hardware". It also includes the materials, such as magnetic tapes, disc packs, paper tapes and cards, floppy discs and compact discs, upon which such information, facts, instructions, concepts and programs are recorded and stored.

8. "Electronic securities" means any share, participation, or other interest in property of, or an enterprise of, the issuer or an obligation of the issuer which:

   a. Is a type commonly dealt in upon securities exchanges or markets;

   b. Is either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations; and

      (1) Is not represented by an instrument;

      (2) Is part of a master or global certificate; or

      (3) Represents a paper certificate that has been surrendered by a financial institution and which paper certificate has been combined into a master depository note and the paper certificates are immobilized and such security is shown as an electronic entry on the account of the transferor, pledgor, or pledgee on the books of a Central Depository.

9. "Evidences of debt" means instruments executed by your customer and held by you which in the regular course of business are treated as evidencing the customer's debt to you, including records of charges and accounts receivable.

10. "Extra expense" means the necessary and reasonable expenses you incur during the "period of restoration" that you would not have incurred if there had been no "loss" due to a Covered Cause of Loss to Covered Property.

11. "Hardware" means an assemblage of electronic machine components capable of accepting and processing "electronic media and records" for the purpose of producing desired results.

    However, "hardware" does not include "telecommunications equipment".

12. "Loss" means:

**a.** "Sudden and accidental" physical loss or physical damage; and

**b.** With respect only to "denial of service", "malicious code" or "unauthorized use", also includes "sudden and accidental" damage, loss of use, loss of access or loss of functionality.

**13.** "Loss establishment expenses" means actual and necessary expenses incurred at our request to assist you in establishing either the existence or the amount of loss insured under this Coverage Part.

**14.** "Malicious code" means a computer code created for the purpose of destroying, corrupting or otherwise adversely affecting a "computer system".

**15.** "Mechanical breakdown" means the malfunction or failure of moving or electronic parts, component failure, faulty installation or blowout.

**16.** "Money" means:

**a.** Currency, coins, and bank notes in current use and having a face value;

**b.** Travelers checks, registered checks, and money orders held for sale to the public; and

**c.** Electronic cash equivalents.

**17.** "Occurrence" means an act or event or a series of related acts or events that result in a Covered Cause of Loss.

**18.** "Operations" means your business activities occurring at the "premises".

**19.** "Other property" means any tangible property of value other than "money", "securities", "electronic securities", or "electronic media and records".

However, "other property" does not include copyrights, patents, trademarks, trade secrets or other intellectual property.

**20.** "Period of restoration" means that period of time that:

**a.** Begins with the end of the time deductible for Coverage **B** referenced in the Declarations. Such deductible commences on the date and time of direct "loss" to Covered Property due to a Covered Cause of Loss; and

**b.** Ends on the earlier of:

**(1)** The date you could restore your "operations", with reasonable speed, to the condition that would have existed if no direct "loss" to Covered Prop-

erty due to a Covered Cause of Loss had occurred; or

**(2)** As long as it would reasonably take to repair, rebuild or replace the damaged Covered Property.

**21.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** You use, generate or produce the "pollutant".

**22.** "Premises" means any building you lease, rent or own and while you occupy it in conducting your business.

**23.** "Production equipment" means any machinery and related components, including any integrated or dedicated "computer system", which is used, or can be used, to produce or process other tangible property.

**24.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or "other property" and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** "Evidences of debt" issued in connection with credit or charge cards not issued by you.

**25.** "Service agreement" means a service plan or warranty, or other similar service or warranty agreement, even if it is characterized as insurance.

**26.** "Specified causes of loss" means: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the "sudden and accidental" sinking or collapse of

land into underground empty spaces created by the action of water on limestone or dolomite. This cause of "loss" does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into manmade underground cavities.

**b.** Falling objects does not include "loss" to:

**(1)** Covered Property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means "sudden and accidental" discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

**27.** "Sudden and accidental" means abrupt, immediate and brief as well as unintended and unexpected and without prior notice.

**28.** "Suspension" means the complete or partial cessation of your business activities.

**29.** "Telecommunications equipment" means telephones, including any related switching systems or similar equipment, fax machines and other similar equipment used to transmit voice or "electronic media and records" communications over telephone lines, data lines or air waves.

However, "telecommunications equipment" does not include "hardware".

**30.** "Temporarily" means:

**a.** Not permanently; and

**b.** For a period of 30 consecutive days or less.

**31.** "Unauthorized use" means:

**a.** Illegal or malicious entry into your "computer system" by a person not authorized to do so by you which results in the distortion or corruption of such "computer system"; or

**b.** Entry into or use of your "computer system" by a party:

**(1)** Not authorized by you to do so; or

**(2)** Authorized by you to do so, but who does so to use it in an unauthorized manner,

Which results in the distortion or corruption of your "computer system".

**32.** "Valuable papers and records" means inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE PART**

**Section IV - Additional Conditions, 3. Common Conditions** is amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**MA 4050 04 10**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES

This endorsement modifies insurance provided under the following:

**COMMERCIAL INLAND MARINE COVERAGE PART**

Loss Condition **E. Loss Payment** in the Commercial Inland Marine Conditions is replaced by the following:

**E.  Loss Payment**

1.  We will give you notice, within 21 days after we receive a properly executed proof of loss, that we:

    a.  Accept your claim;

    b.  Deny your claim; or

    c.  Need more time to investigate your claim.

    If we need more time to investigate your claim, we will provide an explanation for our need for more time. We will continue to notify you again in writing, at least every 45 days, of the status of the investigation and of the continued time needed for the investigation.

2.  We will not pay you more than your financial interest in the Covered Property.

3.  We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claim against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

4.  We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

5.  Provided you have complied with all the terms of this policy, we will pay for covered loss or damage within:

    a.  10 days after we accept your claim if such acceptance occurs within the first 21 days after we receive a properly executed proof of loss, unless the claim involves an action by a probate court or other extraordinary circumstances as documented in the claim file; or

    b.  Five days after we accept your claim if such acceptance occurs more than 21 days after we receive a properly executed proof of loss, and

        (1) An appraisal award has been made; or

        (2) We have reached an agreement with you on the amount of loss that was in dispute.

6.  We will not be liable for any part of a loss that has been paid or made good by others.

                    ©ISO Properties, Inc., 2007

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TENTATIVE RATE

The rates used in the development of the premium for the Commercial Inland Marine Coverage Part are tentative.  We will adjust the premium effective from the inception date of the applicable coverage once the rates are promulgated.

```
3     2845 SHORT VINE ST
      CINCINNATI, OH 45219-2020
```

           Copyright, Insurance Services Office, Inc., 1987

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. Abandonment

There can be no abandonment of any property to us.

### B. Appraisal

If we and you disagree on the value of the property or the amount of "loss", either may make written demand for an appraisal of the "loss".  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of "loss".  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.  Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. Duties in the Event of Loss

You must see that the following are done in the event of "loss" to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the "loss".  Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the "loss" occurred.

4. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.  This will not increase the Limit of Insurance.  However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss.  Also if feasible, set the damaged property aside and in the best possible order for examination.

5. Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent.

6. Permit us to inspect the property and records proving "loss".

7. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records.  In such event, your answers must be signed.

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

9. Promptly send us any legal papers or notices received concerning the "loss".

10. Cooperate with us in the investigation or settlement of the claim.

### D. Insurance Under Two or More Coverages

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

### E. Loss Payment

We will pay or make good any "loss" covered under this Coverage Part within 30 days after:

1. We reach agreement with you;

2. The entry of final judgment; or

3. The filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.

### F. Other Insurance

If you have other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the excess over what you should have received from the other insurance.  We will pay the excess whether you can collect on the other insurance or not.

### G. Pair, Sets or Parts

1. Pair or Set

In case of "loss" to any part of a pair or set we may:

    a. Repair or replace any part to restore the pair or set to its value before the "loss"; or

    b. Pay the difference between the value of the pair or set before and after the "loss".

2. Parts

In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**H. Privilege to Adjust with Owner**

In the event of "loss" involving property of others in your care, custody or control, we have the right to:

1. Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

2. Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

**I. Recoveries**

Any recovery or salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been made up.

**J. Reinstatement of Limit After Loss**

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item, in which event we will refund the unearned premium on that item.

**K. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

**GENERAL CONDITIONS**

**A. Concealment, Misrepresentation or Fraud**

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1. This Coverage Part;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this Coverage Part.

**B. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all the terms of this Coverage Part; and

2. The action is brought within 2 years after you first have knowledge of the "loss".

**C. Liberalization**

If, within 45 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**D. No Benefit to Bailee**

No person or organization, other than you, having custody of Covered Property, will benefit from this insurance.

**E. Policy Period**

We cover "loss" commencing during the policy period shown in the Declarations.

**F. Valuation**

The value of property will be the least of the following amounts:

1. The actual cash value of that property;

2. The cost of reasonably restoring that property to its condition immediately before "loss"; or

3. The cost of replacing that property with substantially identical property.

In the event of "loss", the value of property will be determined as of the time of "loss".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SCHEDULED PREMISES ENDORSEMENT

This endorsement modifies insurance provided under the following:

**ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE PART**

**I.** **Schedule:**

| Location Number | Coverage A<br>Limit of Insurance | Coverage B<br>Limit of Insurance |
|:---:|:---:|:---:|
| 1-1 | 25,000 | 10,000 |
| 2-1 | 25,000 | 10,000 |
| 3-1 | 25,000 | 10,000 |
| 4-1 | 25,000 | 10,000 |
| 5-1 | 25,000 | 10,000 |
| 6-1 | 25,000 | 10,000 |
| 7-1 | 25,000 | 10,000 |
| 8-1 | 25,000 | 10,000 |

**Blanket Insurance:**

| Location Number | Coverage A<br>Limit of Insurance | Coverage B<br>Limit of Insurance |
|:---:|:---:|:---:|
|  |  |  |

**Newly Acquired Property**

Limit of Insurance: $250,000 - Unless Otherwise Stated

**II.** **Section I - Coverages** is amended as follows:

> **Section I - Coverages, Coverage A - Electronic Data Processing Property**, **Paragraph 5. Coverage Extensions** is amended to include the following:
>
> **NEWLY ACQUIRED PROPERTY**
>
> **(1)** We will pay up to the Limit of Insurance for Newly Acquired Property stated in the Schedule of this endorsement in any one "occurrence" for "loss" to "newly acquired" Covered Property due to a Covered Cause of Loss:
>
>> **(a)** In excess of the Limit of Insurance for Coverage **A** applicable to the "premises" stated in the Schedule of this endorsement; or
>>
>> **(b)** At a location you lease, rent or own in the "coverage territory" and while you occupy it in conducting your business, but which has not yet been reported to us as a "premises".
>
> **(2)** You will report such "newly acquired" Covered Property to us within ninety (90) days of its acquisition and pay any additional premium due. Insurance coverage under this Coverage Extension ceases at the earlier of:
>
>> **(a)** Ninety (90) days elapsing from the date of acquisition; or
>>
>> **(b)** The expiration of the policy period.

**III.** **Section IV - Additional Conditions** is amended as follows:

> **3.** **Common Conditions, b. Blanket Insurance** is hereby deleted and replaced by the following:

    **b.** **Blanket Insurance**

        If blanket insurance is indicated by (☒) in the Schedule of the Scheduled Premises Endorsement, the Limit of Insurance for each Coverage applies to all "premises" listed in the endorsement.

**IV.** **Section V - Definitions** is amended as follows:

  **A.** Definition **22.** "Premises" is hereby deleted and replaced by the following:

    **22.** "Premises" means any building located at an address referenced in the Schedule of the Scheduled Premises Endorsement you lease, rent or own and while you occupy it in conducting your business.

  **B.** The following definition is added:

    "Newly acquired" means:

    **a.** First acquired; or

    **b.** First moved to a new location within the "coverage territory" not yet reported to us as a "premises",

    since the inception of the current "coverage term".

# THE CINCINNATI INSURANCE COMPANY

**A Stock Insurance Company**

# CRIME AND FIDELITY COVERAGE PART DECLARATIONS (COMMERCIAL ENTITIES)

Attached to and forming part of POLICY NUMBER:     ECP 055 77 79

Named Insured is the same as it appears in the Common Policy Declarations

Item    Location (address)
   REFER TO CA911

Employee Benefit Plan(s) Included as Insureds:
RETIRE LIKE A BELGIUM 401K PLAN

**Coverage is Written:**
☒ Primary          ☐ Excess          ☐ Coindemnity          ☐ Concurrent

Coverage is provided only for the Crime Coverage for which a Limit of Insurance is shown below:

| Insuring Agreements Forming Part of This Coverage Part | Limit of Insurance Per Occurrence | Deductible Amount Per Occurrence |
|---|---|---|
| 1.  Employee Theft | $ 200,000 | $ 500 |
| 2.  Forgery or Alteration | $ 25,000 | $ 500 |
| 3.  Inside the Premises - Theft of Money and Securities | $ 15,000 | $ 500 |
| 4.  Inside the Premises - Robbery or Safe Burglary of Other Property | $ | $ |
| 5.  Outside the Premises | $ 5,000 | $ 500 |
| 6.  Computer Fraud | $ | $ |
| 7.  Funds Transfer Fraud | $ | $ |
| 8.  Money Orders and Counterfeit Money | $ 10,000 | $ 500 |
|  | $ | $ |

 Forms and endorsements applicable to this Coverage Part at policy inception.

| CR0020 | 05/06 | COMMERCIAL CRIME COVERAGE FORM (DISCOVERY FORM) |
| CCP401 | 02/14 | CINCIPAK™ COMMERCIAL CRIME AMENDATORY ENDORSEMENT |
| CA440 | 08/07 | COMMERCIAL CRIME COVERAGE FORM AMENDATORY ENDORSEMENT |
| CA481OH | 10/12 | OHIO CHANGES - LEGAL ACTION AGAINST US |
| CA911 | 08/07 | CRIME AND FIDELITY SCHEDULE OF LOCATIONS |

The Crime and Fidelity Coverage Part (Commercial Entities) consist of this Declaration Form and the Commercial Crime Coverage Form.

# COMMERCIAL CRIME COVERAGE FORM
# (DISCOVERY FORM)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

**A. Insuring Agreements**

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place at any time which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period to Discover Loss Condition **E.1.g.:**

**1. Employee Theft**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

**2. Forgery or Alteration**

**a.** We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

**(1)** Made or drawn by or drawn upon you; or

**(2)** Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

**b.** If you are sued for refusing to pay any instrument covered in Paragraph **2.a.,** on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the Limit of Insurance applicable to this Insuring Agreement.

**3. Inside The Premises - Theft of Money and Securities**

**a.** We will pay for loss of "money" and "securities" inside the "premises" or "banking premises":

**(1)** Resulting directly from "theft" committed by a person present inside such "premises" or "banking premises"; or

**(2)** Resulting directly from disappearance or destruction.

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

**c.** We will pay for loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of or unlawful entry into those containers.

**4. Inside the Premises - Robbery or Safe Burglary of Other Property**

**a.** We will pay for loss of or damage to "other property":

**(1)** Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

**(2)** Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

**b.** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

    **c.** We will pay for loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside the Premises**

    **a.** We will pay for loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

    **b.** We will pay for loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer Fraud**

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises":

    **a.** To a person (other than a "messenger") outside those "premises"; or

    **b.** To a place outside those "premises".

**7. Funds Transfer Fraud**

We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**8. Money Orders and Counterfeit Money**

We will pay for loss resulting directly from your having accepted in good faith, in exchange for merchandise, "money" or services:

    **a.** Money orders issued by any post office, express company or bank that are not paid upon presentation; or

    **b.** "Counterfeit money" that is acquired during the regular course of business.

**B. Limit of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any

one of those Insuring Agreements or Coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

**1.** This insurance does not cover:

    **a. Acts Committed by You, Your Partners or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

      **(1)** You; or

      **(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

    **b. Acts of Employees Learned of by You Prior to the Policy Period**

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

    **c. Acts Of Employees, Managers, Directors, Trustees or Representatives**

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

      **(1)** Whether acting alone or in collusion with other persons; or

      **(2)** While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

    **d. Confidential Information**

Loss resulting from:

      **(1)** The unauthorized disclosure of your confidential information including, but not limited to, pat-

ents, trade secrets, processing methods or customer lists; or

**(2)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information, credit card information or similar non-public information.

**e. Governmental Action**

Loss resulting from seizure or destruction of property by order of governmental authority.

**f. Indirect Loss**

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

**(1)** Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

**(2)** Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

**(3)** Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

**g. Legal Fees, Costs and Expenses**

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

**h. Nuclear Hazard**

Loss or damage resulting from nuclear reaction or radiation or radioactive contamination, however caused.

**i. Pollution**

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**j. War and Military Action**

Loss or damage resulting from:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** Insuring Agreement **A.1.** does not cover:

**a. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3.**, **A.4.** and **A.5.** do not cover:

**a. Accounting or Arithmetical Errors or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c.** **Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

**d.** **Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e.** **Motor Vehicles or Equipment and Accessories**

Loss of or damage to motor vehicles, trailers or semi-trailers or equipment and accessories attached to them.

**f.** **Transfer or Surrender of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

**(a)** On the basis of unauthorized instructions;

**(b)** As a result of a threat to do bodily harm to any person;

**(c)** As a result of a threat to do damage to any property;

**(d)** As a result of a threat to introduce a denial of service attack into your computer system;

**(e)** As a result of a threat to introduce a virus or other malicious instruction into your computer system which is designed to damage, destroy or corrupt data or computer programs stored within your computer system;

**(f)** As a result of a threat to contaminate, pollute or render substandard your products or goods; or

**(g)** As a result of a threat to disseminate, divulge or utilize:

**(i)** Your confidential information; or

**(ii)** Weaknesses in the source code within your computer system.

**(2)** But, this Exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g.** **Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h.** **Voluntary Parting of Title to or Possession of Property**

Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.6.** does not cover:

**a.** **Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**b.** **Funds Transfer Fraud**

Loss resulting from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account".

**c.** **Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

 © ISO Properties, Inc., 2005

5. Insuring Agreement **A.7.** does not cover:

   **COMPUTER FRAUD**

   Loss resulting from the use of a computer to fraudulently cause a transfer of "money", "securities" or "other property".

**E. Conditions**

The following Conditions apply in addition to the Common Policy Conditions:

1. **Conditions Applicable to all Insuring Agreements**

   a. **Additional Premises or Employees**

      If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" need not be given and no additional premium need be paid for the remainder of the Policy Period shown in the Declarations.

   b. **Concealment, Misrepresentation or Fraud**

      This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning:

      (1) This insurance;

      (2) The property covered under this insurance;

      (3) Your interest in the property covered under this insurance; or

      (4) A claim under this insurance.

   c. **Consolidation - Merger or Acquisition**

      If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

      (1) You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

      (2) For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

   d. **Cooperation**

      You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

   e. **Duties in the Event of Loss**

      After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property" you must:

      (1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities.

      (2) Submit to examination under oath at our request and give us a signed statement of your answers.

      (3) Produce for our examination all pertinent records.

      (4) Give us a detailed, sworn proof of loss within 120 days.

      (5) Cooperate with us in the investigation and settlement of any claim.

   f. **Employee Benefit Plans**

      (1) The "employee benefit plans" shown in the Declarations (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

      (2) If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator must select a Limit of Insurance for Insuring Agree-

ment **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required if each Plan were separately insured.

**(3)** With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "funds" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

**(4)** If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

**(5)** If two or more Plans are insured under this insurance, any payment we make for loss:

**(a)** Sustained by two or more Plans; or

**(b)** Of commingled "funds" or "other property" of two or more Plans;

resulting directly from an "occurrence" will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total Limit of Insurance of all Plans sustaining loss.

**(6)** The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

**g. Extended Period to Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insur-

ance provides coverage for loss sustained prior to its effective date.

**(2)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**h. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member" or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this insurance or any of its coverages is cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than 60 days from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

 © ISO Properties, Inc., 2005

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, other than an "employee benefit plan", shall fully release us on account of such loss.

**i.** **Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within 2 years from the date you "discovered" the loss.

If any limitation in this Condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j.** **Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**k.** **Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1)** **Primary Insurance**

When this insurance is written as primary insurance, and:

**(a)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

**(b)** You have other insurance covering the same loss other than that described in Paragraph **(1)(a)**, we will only pay for the amount of loss that exceeds:

**(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

**(ii)** The Deductible Amount shown in the Declarations;

whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2)** **Excess Insurance**

**(a)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

**(b)** However, if loss covered under this insurance is subject to a Deductible, we will reduce the Deductible Amount shown in the Declarations, by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**l.** **Ownership of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease; or

**(2)** That you hold for others whether or not you are legally liable for the loss of such property.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**m.** **Policy Bridge - Discovery Replacing Loss Sustained**

**(1)** If this insurance replaces insurance that provided you with an extended period of time after cancellation in which to discover loss and which did not terminate

at the time this insurance became effective:

**(a)** We will not pay for any loss that occurred during the Policy Period of that prior insurance which is "discovered" by you during the extended period to "discover" loss, unless the amount of loss exceeds the Limit of Insurance and Deductible Amount of that prior insurance. In that case, we will pay for the excess loss subject to the terms and conditions of this policy.

**(b)** However, any payment we make for the excess loss will not be greater than the difference between the Limit of Insurance and Deductible Amount of that prior insurance and the Limit of Insurance shown in the Declarations. We will not apply the Deductible Amount shown in the Declarations to this excess loss.

**(2)** The Other Insurance Condition **E.1.k.** does not apply to this Condition.

**n. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

**o. Recoveries**

**(1)** Any recoveries, whether effected before or after any payment under this insurance, whether made by us or you, shall be applied net of the expense of such recovery:

**(a)** First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

**(b)** Second, to us in satisfaction of amounts paid in settlement of your claim;

**(c)** Third, to you in satisfaction of any Deductible Amount; and

**(d)** Fourth, to you in satisfaction of any loss not covered under this insurance.

**(2)** Recoveries do not include any recovery:

**(a)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

**(b)** Of original "securities" after duplicates of them have been issued.

**p. Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**q. Transfer of Your Rights of Recovery Against Others to Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**r. Valuation - Settlement**

**(1)** The value of any loss for purposes of coverage under this policy shall be determined as follows:

**(a)** Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

**(i)** At face value in the "money" issued by that country; or

**(ii)** In the United States of America dollar equivalent determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(b)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

**(i)** Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(ii)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of:

**i.** Market value of the "securities" at the close of business on the day the loss was "discovered"; or

**ii.** The Limit of Insurance applicable to the "securities".

**(c)** Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(i)** The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose;

**(ii)** The amount you actually spend that is necessary to repair or replace the lost or damaged property; or

**(iii)** The Limit of Insurance applicable to the lost or damaged property.

With regard to Paragraphs **r.(1)(c)(i)** through **r.(1)(c)(iii),** we will not pay on a replacement cost basis for any loss or damage:

**i.** Until the lost or damaged property is actually repaired or replaced; and

**ii.** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(2)** We will, at your option, settle loss or damage to property other than "money":

**(a)** In the "money" of the country in which the loss or damage occurred; or

**(b)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage occurred determined by the rate of exchange published in *The Wall Street Journal* on the day the loss was "discovered".

**(3)** Any property that we pay for or replace becomes our property.

**2. Conditions Applicable to Insuring Agreement A.1.**

**a. Termination as to Any Employee**

This Insuring Agreement as to any "employee":

**(1)** As soon as:

**(a)** You; or

**(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you.

**(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If

notice is mailed, proof of mailing will be sufficient proof of notice.

**b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory Condition **E.1.p.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable to Insuring Agreement A.2.**

**a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

**b. Electronic and Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

**c. Proof of Loss**

You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

**d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.p.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable to Insuring Agreements A.4. and A.5.**

**a. Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.,** we will only pay for the amount of loss you cannot recover:

**(1)** Under your contract with the armored motor vehicle company; and

**(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**b. Special Limit of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

**(1)** Precious metals, precious or semi-precious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5. Conditions Applicable to Insuring Agreement A.6.**

**a. Special Limit of Insurance for Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.p.** does not apply to Insuring Agreement **A.6.**

**F. Definitions**

**1.** "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

**2.** "Counterfeit money" means an imitation of "money" that is intended to deceive and to be taken as genuine.

**3.** "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

**4.** "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party

under circumstances which, if true, would constitute a loss under this insurance.

5. "Employee":

   a. "Employee" means:

     (1) Any natural person:

       (a) While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any other dishonest act committed by the "employee";

       (b) Who you compensate directly by salary, wages or commissions; and

       (c) Who you have the right to direct and control while performing services for you;

     (2) Any natural person who is furnished temporarily to you:

       (a) To substitute for a permanent "employee" as defined in Paragraph **a.(1)**, who is on leave; or

       (b) To meet seasonal or short-term work load conditions;

      while that person is subject to your direction and control and performing services for you, excluding, however, any such person while having care and custody of property outside the "premises";

     (3) Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **a.(2)**;

     (4) Any natural person who is:

       (a) A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; and

       (b) A director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

     (5) Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained as a consultant while performing services for you;

     (6) Any natural person who is a guest student or intern pursuing studies or duties, excluding, however, any such person having care and custody of property outside the "premises";

     (7) Any "employee" of an entity merged or consolidated with you prior to the effective date of this insurance; or

     (8) Any of your "managers", directors or trustees while:

       (a) Performing acts within the scope of the usual duties of an "employee"; or

       (b) Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

   b. "Employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **5.a.**

6. "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

7. "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

8. "Fraudulent instruction" means:

   a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

   b. A written instruction (other than those described in Insuring Agree-

ment **A.2.)** issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

**c.** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

**9.** "Funds" means "money" and "securities".

**10.** "Manager" means a person serving in a directorial capacity for a limited liability company.

**11.** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**12.** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

**13.** "Money" means:

**a.** Currency, coins and bank notes in current use and having a face value; and

**b.** Travelers checks, register checks and money orders held for sale to the public.

**14.** "Occurrence" means:

**a.** Under Insuring Agreement **A.1.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, before such Policy Period or both.

**b.** Under Insuring Agreement **A.2.:**

**(1)** An individual act;

**(2)** The combined total of all separate acts whether or not related; or

**(3)** A series of acts whether or not related;

committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, before such Policy Period or both.

**c.** Under All Other Insuring Agreements:

**(1)** An individual act or event;

**(2)** The combined total of all separate acts or events whether or not related; or

**(3)** A series of acts or events whether or not related;

committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, before such Policy Period or both.

**15.** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

**16.** "Premises" means the interior of that portion of any building you occupy in conducting your business.

**17.** "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

**a.** Caused or threatened to cause that person bodily harm; or

**b.** Committed an obviously unlawful act witnessed by that person.

**18.** "Safe burglary" means the unlawful taking of:

**a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

**b.** A safe or vault from inside the "premises".

**19.** "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or property and includes:

**a.** Tokens, tickets, revenue and other stamps (whether represented by

actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**20.** "Theft" means the unlawful taking of property to the deprivation of the Insured.

**21.** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

**a.** By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

**b.** By means of written instructions (other than those described in Insuring Agreement **A.2.)** establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

**22.** "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

 © ISO Properties, Inc., 2005

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPak™

# COMMERCIAL CRIME AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE PART**

**I.** Section **E. Conditions, 1. Conditions Applicable to All Insuring Agreements, f. Employee Benefit Plans, (1)** is deleted in its entirety and replaced by the following:

   **(1)** "Employee benefit plans" (hereafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**

**II.** Section **F. Definitions** is amended by deleting definition **6.** "Employee benefit plan" in its entirety and replacing it with the following:

   **6.** "Employee benefit plan" means any welfare or pension benefit plan that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**CCP 401 02 14**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL CRIME COVERAGE FORM
# AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE FORM**

**A.** It is agreed that **E. Conditions, 1. Conditions Applicable to all Insuring Agreements, j. Liberalization** is deleted in its entirety and replaced by the following:

**j.  Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.**  The date we implemented the change in your state; or

**b.**  The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**B.** It is agreed that **D. Exclusions, 1. i. Pollution** is deleted in its entirety and replaced by the following:

**i.  Pollutants**

Loss or damage caused by or resulting from pollutants. Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property, or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.**  You are regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.**  You use, generate or produce the pollutant.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE FORM**
**GOVERNMENT CRIME COVERAGE FORM**
**CRIME EXPANDED COVERAGE (XC®) COVERAGE FORM (DISCOVERY FORM)**
**HOTEL CRIME EXPANDED COVERAGE COVERAGE FORM (DISCOVERY FORM)**

The **Legal Action Against U**s Condition is replaced by the following:

**Legal Action Against Us**

You may not bring any legal action against us involving loss unless:

**A.**   You have complied with all the terms of this insurance; and

**B.**   The action is brought within two years from the date it accrues.

---

**CA 481 OH 10 12**            Includes copyrighted material of Insurance
                               Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CRIME AND FIDELITY SCHEDULE OF LOCATIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL CRIME COVERAGE FORM**
**COMMERCIAL CRIME POLICY**
**EMPLOYEE THEFT AND FORGERY POLICY**
**GOVERNMENT CRIME COVERAGE FORM**
**GOVERNMENT CRIME POLICY**

| LOC. | STREET ADDRESS | CITY | STATE | ZIP CODE |
|------|----------------|------|-------|----------|
| 1 | 911 E MCMILLAN ST CINCINNATI, OH 45206-2007 | | | |
| 2 | 1133 VINE ST CINCINNATI, OH 45202-7226 | | | |
| 3 | 2845 SHORT VINE ST CINCINNATI, OH 45219-2020 | | | |
| 4 | 3825 EDWARDS RD CINCINNATI, OH 45209-1287 | | | |
| 5 | 16 W FREEDOM WAY CINCINNATI, OH 45202-3513 | | | |
| 6 | 1801 RACE ST CINCINNATI, OH 45202-5932 | | | |
| 7 | 59 SPRUCE ST COLUMBUS, OH 43215-1622 | | | |
| 8 | 2700 O'VARSITY WAY CINCINNATI, OH 45206 | | | |

CA 911 08 07

# THE CINCINNATI INSURANCE COMPANY
## CINCINNATI, OHIO

### BUSINESS AUTO COVERAGE PART DECLARATIONS

**ITEM ONE**

Attached to and forming part of POLICY NUMBER:  **EBA 055 77 79**

Named Insured is the same as it appears in the Common Policy Declarations.

**ITEM TWO**        **SCHEDULE OF COVERAGES AND COVERED AUTOS**

This coverage part provides only those coverages where a premium or "incl" is shown in the premium column below. The limit of Insurance for each coverage listed is subject to all applicable policy provisions. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form shows which autos are covered autos) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 7, 8, 9 | $ 1,000,000 | INCL |
| PERSONAL INJURY PROTECTION (or equivalent No-fault coverage) | | Separately stated in each P.I.P. endorsement minus $           Ded. | |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault coverage) | | Separately stated in each added P.I.P. endorsement | |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | Separately stated in each P. P.I. endorsement minus $           Ded for each accident | |
| AUTO. MEDICAL PAYMENTS | 7 | $ 5,000 | INCL |
| UNINSURED MOTORISTS | 7 | $ 1,000,000 | INCL |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | | $ | |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 7, 8 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded. For each covered auto. But no Deductible applies to loss caused by Fire or lightning. See Item Three for hired or borrowed "autos" | INCL |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | Actual cash value or cost of repair, Whichever is less minus $           Ded. For Each covered auto. For loss caused by mischief or vandalism. See Item Three for hired or borrowed "autos" | |
| PHYSICAL DAMAGE COLLISION COVERAGE | 7, 8 | Actual cash value or cost of repair, Whichever is less minus $ SEE AA4183 Ded for each covered auto. See Item Three for hired or borrowed "autos". | INCL |
| PHYSICAL DAMAGE INSURANCE TOWING AND LABOR | | $           for each disablement of a private passenger auto | |
| PREMIUM FOR ENDORSEMENTS | | | |
| | | *ESTIMATED TOTAL PREMIUM | INCL |

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

```
AA4183    02/06  AUTOMOBILE SCHEDULE
AA101     03/06  BUSINESS AUTO COVERAGE FORM
AA2009    01/17  CHANGES - TOWING AND LABOR
AA296     07/12  CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE
```

FORMS AND ENDORSEMENTS CONTAINED IN THIS COVERAGE PART AT ITS INCEPTION:

| | | |
|---|---|---|
| AA4065OH | 08/18 | OHIO UNINSURED MOTORISTS COVERAGE - BODILY INJURY |
| AA4070OH | 09/16 | NOTICE TO POLICYHOLDERS UNINSURED MOTORIST PROPERTY DAMAGE |
| AA4231 | 08/08 | SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO--ITEMS FOUR, FIVE, AND SIX |
| AA4263 | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |
| AP401OH | 09/16 | IMPORTANT NOTICE TO POLICYHOLDERS REGARDING OHIO UNINSURED AND UNDERINSURED MOTORIST COVERAGE |
| AA261 | 07/14 | AUTO MEDICAL PAYMENTS COVERAGE |
| AA288 | 01/16 | CINCIPLUS® BUSINESS AUTO XC+® (EXPANDED COVERAGE PLUS) ENDORSEMENT |

* This policy may be subject to final audit

# QUICK REFERENCE
# COMMERCIAL AUTO COVERAGE PART
# BUSINESS AUTO COVERAGE FORM
### READ YOUR POLICY CAREFULLY

## DECLARATIONS PAGES

Named Insured and Mailing Address
Policy Period
Description of Business
Coverages and Limits of Insurance

## SECTION I - COVERED AUTOS                                    Beginning on Page

Description of Covered Auto Designation Symbols.............................................................1
Owned Autos You Acquire After the Policy Begins .........................................................1
Certain Trailers, Mobile Equipment and
Temporary Substitute Autos....................................................................................... 2

## SECTION II - LIABILITY COVERAGE

Coverage ............................................................................................................... 2
Who is an Insured .................................................................................................. 2
Coverage Extensions
    Supplementary Payments.................................................................................. 2
    Out of State.................................................................................................... 3
Exclusions ............................................................................................................ 3
Limit of Insurance.................................................................................................. 5

## SECTION III - PHYSICAL DAMAGE COVERAGE

Coverage ............................................................................................................... 7
Exclusions ............................................................................................................ 7
Limit of Insurance.................................................................................................. 8
Deductible............................................................................................................. 8

## SECTION IV - BUSINESS AUTO CONDITIONS

Loss Conditions
    Appraisal for Physical Damage Loss ................................................................... 9
    Duties in the Event of Accident, Claim, Suit or Loss.............................................. 9
    Legal Action Against Us.................................................................................... 9
    Loss Payment - Physical Damage Coverages........................................................ 9
    Transfer of Rights of Recovery Against Others to Us.............................................. 10
General Conditions
    Bankruptcy ..................................................................................................... 10
    Concealment, Misrepresentation or Fraud............................................................. 10
    Liberalization .................................................................................................. 10
    No Benefit to Bailee - Physical Damage Coverages............................................... 10
    Other Insurance .............................................................................................. 10
    Premium Audit................................................................................................. 10
    Policy Period, Coverage Territory ....................................................................... 10
    Two or More Coverage Forms or Policies Issued by Us.......................................... 11

## SECTION V - DEFINITIONS ..................................................................... 11

## COMMON POLICY CONDITIONS

Cancellation
Changes
Examination of Your Books and Records
Inspections and Surveys
Premiums
Transfer of Your Rights and Duties under this Policy

## ENDORSEMENTS (If Any)

# AUTOMOBILE SCHEDULE

## ITEM   THREE

Attached to and forming a part of Policy Number  **EBA 055 77 79**  , effective  **11-04-2019**

The insurance afforded for any automobile is only with respects to such and so many of the coverages as are indicated by specific premium charge or charges indicated.

### POLICY LIMITS
#### State: OH

| | | |
|---|---|---|
| Bodily Injury: | 1,000,000 CSL | Property Damage:   INCLUDED |
| UM/UIM: | 1,000,000 | |
| Med Pay | 5,000 | |

---

**Veh. No.    Vehicle Information**

**1**   2017 FORD TRANSIT CONNECT S/N NM0LS7E78H1318375        Class: 01199   Territory 102
OTC-COMP DED: 1,000                          Coll Ded: 1,000
                                             COST NEW: 24,010    ZIP CODE: 45206

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 955 | INCL | 71 | 80 | 347 | 64 | 1,517 |

**2**   2012 MINI MINI COOPER S/N WMWZG3C5XCTY37849        Class: 7391   Territory 102
OTC-COMP DED: 1,000                          Coll Ded: 1,000
                                             COST NEW: 24,900    ZIP CODE: 45206

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 678 | INCL | 29 | 61 | 264 | 98 | 1,130 |

**3**   2016 FORD TRANSIT S/N 1FTYR1ZM9GKA70423        Class: 01199   Territory 102
OTC-COMP DED: 1,000                          Coll Ded: 1,000
                                             COST NEW: 31,910    ZIP CODE: 45206

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 1,096 | INCL | 71 | 93 | 424 | 64 | 1,748 |

BUSINESS AUTO EXPANDED PLUS ENDORSEMENT        Class:        Territory
OTC-COMP DED: N/A                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| | | | 200 | | | 200 |

HIRED AND NON-OWNED        Class:        Territory
OTC-COMP DED: N/A                          Coll Ded: N/A

| BI | PD | MP | OTC | COLL | UM | TOTAL |
|---|---|---|---|---|---|---|
| 1,236 | INCL | N/A | | | | 1,236 |

---

# AUTOMOBILE SCHEDULE

## ITEM THREE (CONTINUED)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| HIRED AUTO PHYSICAL DAMAGE | | | LIMIT: 50,000 | | | Class: | Territory |
| OTC-COMP DED: 1,000 | | | | | Coll Ded: 1,000 | | |

| BI | PD | MP | OTC | COLL | UM | | TOTAL |
|---|---|---|---|---|---|---|---|
| | | | 105 | 157 | | | 262 |

SYMBOLS:

| | | | | |
|---|---|---|---|---|
| BI | -- Bodily Injury | | SPEC | -- Specified Perils |
| PD | -- Property Damage | | COLL | -- Collision |
| MP | -- Medical Payments | | UM | -- Uninsured Motorists |
| OTC | -- Other Than Collision (ACV Coverage applies | | UIM | -- Underinsured Motorists |
| | unless Stated Amount Value is indicated) | | PIP | -- Personal Injury Protection |
| CAC | -- Combined Additional Coverage | | T&L | -- Towing and Labor Costs |
| FT&S | -- Fire, Theft, and Supplemental | | RR | -- Rental Reimbursement |

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer **to SECTION V - DEFINITIONS**.

## SECTION I - COVERED AUTOS

ITEM TWO of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description of Covered Auto Designation Symbols**

**SYMBOL          DESCRIPTION**

**1 =** ANY "AUTO".

**2 =** OWNED "AUTOS" ONLY. Only those "autos" you own (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins.

**3 =** OWNED PRIVATE PASSENGER "AUTOS" ONLY. Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins.

**4 =** OWNED "AUTOS" OTHER THAN PRIVATE PASSENGER "AUTOS" ONLY. Only those "autos" you own that are not of the private passenger type (and for Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins.

**5 =** OWNED "AUTOS" SUBJECT TO NO-FAULT. Only those "autos" you own that are required to have No-Fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have No-Fault benefits in the state where they are licensed or principally garaged.

**6 =** OWNED "AUTOS" SUBJECT TO A COMPULSORY UNINSURED MOTORISTS LAW. Only those "autos" you own that because of the law in the state where

they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement.

**7 =** SPECIFICALLY DESCRIBED "AUTOS". Only those "autos" described in ITEM THREE of the Declarations for which a premium charge is shown (and for Liability Coverage any "trailers" you don't own while attached to a power unit described in ITEM THREE).

**8 =** HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees" or partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**9 =** NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs.

**B. Owned Autos You Acquire After the Policy Begins**

**1.** If Symbols 1, 2, 3, 4, 5, or 6 are entered next to a coverage in ITEM TWO of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

**2.** But, if Symbol 7 is entered next to a coverage in ITEM TWO of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

**a.** We already cover all "autos" that you own for that coverage or it replaces

an "auto" you previously owned that had that coverage; and

**b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment and Temporary Substitute Autos**

If Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Liability Coverage:

**1.** "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

**2.** "Mobile equipment" while being carried or towed by a covered "auto".

**3.** Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** "Loss"; or

**e.** Destruction.

# SECTION II - LIABILITY COVERAGE

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who is an Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

**(1)** The owner or anyone else from whom you hire or borrow a cov-

ered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for the cost of bail bonds (including bonds for related traffic law violations) re-

AA 101 03 06

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Page 2 of 14

quired because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All costs taxed against the "insured" in any "suit" against the "insured" we defend.

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-State Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

**(1)** Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the "insured" or which is in fact expected or intended by the "insured", even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification and Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" sustained in the "workplace";

**b.** An "employee" of the "insured" arising out of the performance of duties related to the conduct of the "insured's" business; or

**c.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** or **b.** above.

This Exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract" other than a contract or agreement with a labor leasing firm. For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**6. Care, Custody or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement of Property by Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraphs **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

**(1)** When all of the work called for in your contract has been completed.

**(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollutant**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from, the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** of this exclusion does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

However, this exception to Paragraph **a.** does not apply if the fuels, lubricants, fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed or released.

Paragraphs **b.** and **c.** of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(1)** If the "pollutants" are brought on or to the premises, site or location in connection with such operations by such "insured", contractor or subcontractor; or

**(2)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

Subparagraph **d.(1)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such "insured", contractor or subcontractor.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This

insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

**D. Mobile Equipment Subject to Motor Vehicle Insurance Laws**

As respects **SECTION II - LIABILITY COVERAGE** any land vehicle, which would qualify as "mobile equipment", except that it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged, is considered a covered "auto" under **SECTION II - LIABILITY COVERAGE,** irrespective of the Auto Designation Symbols shown for **SECTION II - LIABILITY COVERAGE** in the Declarations.

# SECTION III - PHYSICAL DAMAGE COVERAGE

**A. Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

   **b. Specified Causes of Loss Coverage**

   Caused by:

   **(1)** Fire, lightning or explosion;

   **(2)** Theft;

   **(3)** Windstorm, hail or earthquake;

   **(4)** Flood;

   **(5)** Mischief or vandalism; or

   **(6)** The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   **(1)** The covered "auto's" collision with another object; or

   **(2)** The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting a Bird or Animal - Falling Objects or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will also pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered

"auto" is returned to use or we pay for its "loss".

**b. Loss of Use Expenses**

For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

**(1)** Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

**(2)** Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

**(3)** Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

**(1)** The explosion of any weapon employing atomic fission or fusion; or

**(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War or Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority

in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this insurance:

**a.** Wear and tear, freezing, mechanical or electrical breakdown; or

**b.** Blowouts, punctures or other road damage to tires.

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed measuring equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that receives or transmits audio, visual or data signals and that is not designed solely for the reproduction of sound.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

Exclusions **4.c.** and **4.d.** do not apply to:

**a.** Equipment designed solely for the reproduction of sound and accessories used with such equipment, provided such equipment is permanently installed in the covered "auto" at the time of the "loss" or such equipment is removable from a housing unit which is permanently installed in the covered "auto" at the time of the "loss", and such equipment is designed to be solely operated by use of the power from the "auto's" electrical system, in or upon the covered "auto"; or

**b.** Any other electronic equipment that is:

**(1)** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system; or

**(2)** An integral part of the same unit housing any sound reproducing equipment described in Paragraph **a.** above and permanently installed in the opening of the dash or console of the covered "auto" normally used by the manufacturer for installation of a radio.

**5.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit of Insurance**

**1.** The most we will pay for "loss" in any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal for Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties in the Event of Accident, Claim, Suit or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer of Rights of Recovery Against Others to Us**

If any person or organization to or for whom we make payment under this Cov-

erage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part as of the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**4. No Benefit to Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**5. Other Insurance**

    **a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Liability Coverage this Coverage Form provides for the "trailer" is:

        **(1)** Excess while it is connected to a motor vehicle you do not own.

        **(2)** Primary while it is connected to a covered "auto" you own.

    **b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

    **c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary for any liability assumed under an "insured contract".

    **d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

    **a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

    **b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

    **a.** During the Policy Period shown in the Declarations; and

    **b.** Within the coverage territory.

The coverage territory is:

    **a.** The United States of America;

    **b.** The territories and possessions of the United States of America;

    **c.** Puerto Rico;

    **d.** Canada; and

    **e.** Anywhere in the world if:

        **(1)** A covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

        **(2)** The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two or More Coverage Forms or Policies Issued by Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V - DEFINITIONS

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semi-trailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**2.** Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured";

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto"; or

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place

where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(1)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(2)** The discharge, dispersal, seepage, migration, release, escape or emission of the "pollutants" is caused directly by such upset, overturn or damage.

**E.** "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**G.** "Insured" means any person or organization qualifying as an insured in the Who is an Insured provision of the applicable coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

**H.** "Insured contract":

    **1.** Means:

        **a.** A lease of premises;

        **b.** A sidetrack agreement;

        **c.** An easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

        **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

        **e.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

        **f.** That part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

    **2.** Does not include that part of any contract or agreement:

        **a.** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing; or

        **b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

        **c.** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

**I.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**J.** "Loss" means direct and accidental loss or damage.

**K.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **2.** Vehicles maintained for use solely on or next to premises you own or rent;

    **3.** Vehicles that travel on crawler treads;

    **4.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **a.** Power cranes, shovels, loaders, diggers or drills; or

        **b.** Road construction or resurfacing equipment such as graders, scrapers or rollers.

    **5.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **a.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **b.** Cherry pickers and similar devices used to raise or lower workers.

    **6.** Vehicles not described in Paragraphs **1.**, **2.**, **3.**, or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        **a.** Equipment designed primarily for:

**(1)** Snow removal;

**(2)** Road maintenance, but not construction or resurfacing; or

**(3)** Street cleaning;

**b.** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**c.** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**L.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and their by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether injury or damage is caused directly or indirectly by the "pollutants" and whether:

**1.** The "insured" is regularly or otherwise engaged in activities which taint or degrade the environment; or

**2.** The "insured" uses, generates or produces the "pollutant".

**M.** "Property damage" means damage to or loss of use of tangible property.

**N.** "Suit" means a civil proceeding in which:

**1.** Damages because of "bodily injury" or "property damage"; or

**2.** A "covered pollution cost or expense",

to which this insurance applies, are alleged.

"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Workplace" means that place and during such hours to which the "employee" sustaining "bodily injury" was assigned by you, or any other person or entity acting on your behalf, to work on the date of the "accident".

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazard-

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

ous properties" of "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this Exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material", "special nuclear material" or "byproduct material";

"Source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

"Waste" means any waste material **(a)** containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations:

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - TOWING AND LABOR

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 2. Towing** is deleted in its entirety and replaced with:

   2. **Towing**

      We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" is disabled. However, the labor must be performed at the place of disablement.

**AA 2009 01 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CHANGES - AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 4.** is deleted in its entirety and replaced with:

   4. We will not pay for "loss" to any of the following:

      a. Tapes, records, discs or similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

      b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

      c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

      d. Any accessories used with the electronic equipment described in Paragraph **c.** above.

   Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

      a. Permanently installed in or upon the covered "auto";

      b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

      c. An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

      d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

2. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limits of Insurance, 1.** is deleted in its entirety and replaced with:

   1. The most we will pay for:

      a. "Loss" to any covered "auto" is the lesser of;

         (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

         (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind or quality.

      b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss", is up to $1,000, if, at the time of "loss", such electronic equipment is:

         (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

         (2) Removable from a permanently installed housing unit as described in Paragraph **b.1.** above; or

         (3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

3. **AUDIO, VISUAL AND DATA ELECTRONIC EQUIPMENT COVERAGE ADDED LIMITS**

   The sub-limit in Paragraph **1.b.** above is in addition to the Limit of Insurance shown in the Schedule of the Audio, Visual and Data Equipment Coverage endorsement, if purchased.

AA 296 07 12

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO UNINSURED MOTORIST COVERAGE - BODILY INJURY

Throughout this endorsement "you" and "your" refer to the organization(s) and a natural person(s) shown as a Named Insured on this endorsement. "You" and "your" do not refer to any other person(s) or organization(s), including, but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as a Named Insured on this endorsement.

For a covered "auto" licensed or principally garaged in, or "garage operations" conducted in Ohio, this endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement changes the Coverage Form effective on the effective date of the Coverage Form unless another date is indicated below:

| Endorsement Effective: | Policy Number: |
|---|---|
| 11-04-2019 | EBA 055 77 79 |
| Named Insured: | |
| TASTE OF BELGIUM LLC | |

## SCHEDULE

**Limit of Insurance**

$ SEE AA4183                    Each "Accident"

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or operator of:

   **a.** An "uninsured motor vehicle" as defined in Paragraph **F.4.a., b.** and **c.** because of "bodily injury":

      **(1)** Sustained by the "insured"; and

      **(2)** Caused by an "accident".

   **b.** An "uninsured motor vehicle" as defined in Paragraph **F.4.d.** because of "bodily injury" sustained by an "insured".

   The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle". The "insured" shall be required to prove all elements of the "insureds" claim that are necessary to recover from the owner or operator of the "uninsured motor vehicle".

2. We will pay under this endorsement only if **a.** or **b.** below applies:

   **a.** The limits of insurance under all applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   **b.** A tentative settlement has been made between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer of an uninsured motor vehicle as defined in Paragraph **F.4.b.** or legal representative of such person(s) or organization(s) and we:

      **(1)** Have been given prompt written notice of such settlement; and

      **(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**3.** Any judgment for damages arising out of a "suit" brought without our written consent to both the "suit" and the judgment is not binding on us.

## B. Who is an Insured

The following are "insureds":

**1.** If any natural persons are specifically listed as a Named Insured on this endorsement, the following persons are "insureds":

    **a.** Natural persons specifically listed as a Named Insured on this endorsement;

    **b.** "Family members" of natural persons specifically listed as a Named Insured on this endorsement;

    **c.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction; and

    **d.** Any natural person, but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraphs **B.1.a.**, **b.** or **c.**

**2.** If an entity other than a natural person is listed as a Named Insured on this endorsement, and no natural persons are listed as a Named Insured in the endorsement, the following persons are "insureds":

    **a.** Any natural person, but only for injuries that occur while "occupying" an "auto" for which coverage is provided in the Coverage Form or a temporary substitute for such covered "auto". In such case, the covered "auto" must be out of service because of its break down, repair, servicing, "loss" or destruction.

    **b.** Any natural person is an "insured", but only for damages he or she is entitled to recover because of "bodily injury" sustained by an "insured" described in Paragraph **B.2.a.**

## C. Exclusions

This insurance does not apply to:

**1.** Any claim settled without our consent, if settlement prejudices our right to recover payment. However, this **Exclusion (C.1.)** does not apply to a settlement made with the person(s) or organization(s) legally responsible for the "accident" or the insurer of an "uninsured motor vehicle" as defined in Para-

graph **F.4.b.** or legal representative of such person(s) or organization(s) in accordance with the procedures described in Paragraph **A.2.b.**

**2.** The direct or indirect benefit of any insurer or self-insurer under any personal injury protection benefits, disability benefits, pension statutes or similar laws.

**3.** "Bodily injury" suffered by any person while operating or "occupying" a "motor vehicle" without a reasonable belief that he or she is entitled to do so. Under no circumstances will a person whose license has been suspended, revoked, or never issued be held to have a reasonable belief that he or she is entitled to operate a "motor vehicle".

**4.** Punitive or exemplary damages.

**5.** "Bodily injury" sustained by an "insured" while the "insured" is operating or "occupying" a "motor vehicle" owned by, furnished to, or available for the regular use of a Named Insured or, if the Named Insured is a natural person, a spouse or a resident relative of such Named Insured, if the "motor vehicle" is not specifically identified in the policy or is not a newly acquired or replacement "motor vehicle" covered under the terms of the Coverage Form.

## D. Limit of Insurance

**1.** Regardless of the number of policies, covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages, including damages claimed by any person or organization for care, loss of services, or death due to and arising out of any one "accident" is the limit of **Uninsured Motorist Coverage** shown in the Schedule or the Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this endorsement and any Liability Coverage Form or any Medical Payments Coverage Form attached to this Coverage Form.

We will not make a duplicate payment under this endorsement for any element of "loss" for which payment has been made by or for anyone who is legally liable.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, personal injury protection benefits, disability benefits, pension statutes, or similar laws, including medical payments made under any statute.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**3.** With respect to coverage provided for damages resulting from an "accident" with an "uninsured motor vehicle" as defined in Paragraph **F.4.b.**, the limit of insurance provided in this endorsement shall be reduced by all sums available for payment to the "insured" for "bodily injury" under all liability bonds or policies covering persons or organizations legally responsible for the "accident".

**E. Changes in Conditions**

The **Conditions** for **Ohio Uninsured Motorist Coverage** are changed as follows:

**1.** With respect to an "uninsured motor vehicle", the **Other Insurance Condition** in the Business Auto and Garage Coverage Forms are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

**a.** The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one "motor vehicle" under any coverage form or policy providing coverage on either a primary or excess basis.

**b.** Any insurance we provide with respect to a "motor vehicle" you do not own shall be excess over any other collectible uninsured motorist insurance. We will pay only the amount by which the limit of insurance for this coverage exceeds the limits of such other insurance.

**c.** If the coverage under this endorsement is provided:

**(1)** On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on a primary basis.

**(2)** On an excess basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on an excess basis.

**2. Duties in the Event of Accident, Claim, Suit or Loss** is changed by adding the following:

**a.** You or any other involved "insured" must promptly notify the police if a hit-and-run driver is involved;

**b.** You or any other involved "insured" must promptly send us copies of the legal papers if a "suit" is brought;

**c.** You and any other involved "insured" must cooperate with us in the investigation, settlement or defense of the claim or "suit". Cooperation includes, but is not limited to, identifying all parties who may be responsible for the "accident" and all insurers who may be obligated to provide coverage; and

**d.** A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer of an "uninsured motor vehicle" as defined in Paragraph **F.4.b.** or legal representative of such person(s) or organization(s), and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the person(s) or organization(s) who may be legally responsible for the "accident", or the insurer of an "uninsured motor vehicle" as defined in Paragraph **F.4.b.** or legal representative of such person(s) or organization(s). However, this Paragraph **(E.2.d.)** does not apply if failure to notify us does not prejudice or rights against the insurer, owner or operator of such "uninsured motor vehicle" as defined in Paragraph **F.4.b.**

**3. Transfer of Rights of Recovery Against Others to Us** is amended by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with respect to Uninsured Motorist Coverage if we:

**a.** Have been given prompt written notice of a tentative settlement between an "insured" and a person(s) or organization(s) who may be legally responsible for the "accident", or the insurer of an "uninsured motor vehicle" as defined in Paragraph **F.4.b.** or legal representative of such person(s) or organization(s); and

**b.** Fail to advance payment to the "insured" in an amount equal to the tenta-

tive settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

**a.** That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

**b.** We also have a right to recover the advanced payment.

**4. Legal Action Against Us**

No lawsuit or action whatsoever or any proceeding in arbitration shall be brought against us for the recovery of any claim under the provisions of the Uninsured Motorist Coverage of this Coverage Form unless the "insured" has satisfied all of the things that "insured" is required to do under the terms and conditions of this endorsement. Any claim or "suit" for Uninsured Motorist Coverage must be brought within three (3) years of the date of the "accident" causing the "bodily injury" or one (1) year after the date the liability insurer of the "uninsured motor vehicle" becomes insolvent, whichever is later. Our subrogation rights also must not be prejudiced.

**5.** The following Condition is added:

**Arbitration**

**a.** If we and an "insured" do not agree:

**(1)** Whether that person is legally entitled to recover damages from a party responsible for the "accident"; or

**(2)** As to the amount of damages, that may be recovered;

the matter may be settled by arbitration. However, disputes concerning coverage under this endorsement may not be arbitrated.

The "insured" and we must mutually agree to arbitrate the disagreements. If the "insured" and we do not agree to arbitrate, then the disagreement will be resolved in a court having competent jurisdiction.

If arbitration is used, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days as to the third arbitrator, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

**(1)** Pay the expenses it incurs; and

**(2)** Bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

**(1)** Whether the "insured" is legally entitled to recover damages from a party responsible for the "accident"; and

**(2)** The amount of damages.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a natural person who is related to, and is a resident of the same household as a natural person shown as a Named Insured on this endorsement. Such relation may be by blood, marriage or adoption and may include a ward or foster child.

**2.** "Motor vehicle" means a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle, and bus. "Motor vehicle" also includes a motor home, provided the motor home is not stationary and is not being used as a temporary or permanent residence or office. "Motor vehicle" does not include a trolley, streetcar, "trailer", railroad engine, railroad car, motorized bicycle, golf cart, off-road recreational vehicle, snowmobile, fork lift, aircraft, watercraft, construction equipment, farm tractor or other vehicle designed and principally used for agricultural purposes, mobile home, vehicle traveling on treads or rails, or any similar vehicle.

**3.** "Occupying" means in, upon, getting in, on, out or off.

**4.** "Uninsured motor vehicle" means a land "motor vehicle" or "trailer":

**a.** For which no liability bond or policy applies at the time of an "accident" to the "motor vehicle" or "trailer" or the owner or operator of the "motor vehicle" or "trailer".

**b.** Which is an underinsured motor vehicle. An underinsured motor vehicle means a "motor vehicle" or "trailer" for which the sum of the limits of coverage available for payment to the "insured" under all liability bonds or policies covering person(s) or organization(s) liable

to the "insured" at the time of the "accident" are either:

**(1)** Less than the Limit of Insurance available for payment to the "insured" under this endorsement; or

**(2)** Reduced by payments to others injured in the "accident" to an amount which is less than the Limit of Insurance for this endorsement.

**c.** For which an insuring or bonding company denies coverage or is or becomes insolvent.

**d.** That is a hit-and-run vehicle and neither the operator nor owner can be identified. The vehicle must either:

**(1)** Hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying"; or

**(2)** Cause "bodily injury" to an "insured" without hitting an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

The facts of the accident or intentional act must be proved. We will only accept independent corroborative evidence, other than the testimony of an "insured" making a claim under this coverage unless such testimony is supported by additional evidence that is not derived from information, records or statements provided by the "insured."

However, "uninsured motor vehicle" does not include any "motor vehicle":

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

**b.** Designed for use mainly off public roads while not on public roads.

**c.** Owned by or furnished or available for your regular use or that of any "family member" or any other "insured".

**d.** Owned by any governmental unit or agency, unless the owner or operator of the "uninsured motor vehicle" has:

**(1)** An immunity under the Ohio Political Subdivision Tort Liability Law; or

**(2)** A diplomatic immunity.

**e.** For which liability coverage is afforded under this Coverage Form.

**The Cincinnati Insurance Company**
**The Cincinnati Casualty Company**
**The Cincinnati Indemnity Company**

# NOTICE TO POLICYHOLDERS
# UNINSURED MOTORIST PROPERTY DAMAGE

**TO OUR POLICYHOLDERS**

Are you aware that you may purchase Uninsured Motorists Property Damage coverage for any of your automobiles on which you have also purchased Uninsured Motorists Bodily Injury coverage?

Uninsured Motorists Property Damage coverage pays to repair damages to your car occurring as a result of your involvement in a collision with an Uninsured Motorist when that party is determined to be at-fault.

You may purchase this coverage in the amounts of $7,500, $10,000 or $25,000. There is a $250 deductible applicable.

If you are interested in adding this protection to your Cincinnati Companies auto policy, please contact your agency.

**AA 4070 OH 09 16**

## SUPPLEMENTARY SCHEDULE FOR BUSINESS AUTO - ITEMS FOUR, FIVE, AND SIX

Attached to and forming a part of:
Form AA 505 (Business Auto Coverage Part)

**E B A  0 5 5  7 7  7 9**

# NUMBER

**ITEM FOUR SCHEDULE OF HIRED OR**

**BORROWED COVERED AUTO COVERAGE AND PREMIUMS.**

**LIABILITY COVERAGE--RATING BASIS, COST OF HIRE**

| STATE | ESTIMATED COST OF HIRE FOR EACH STATE | RATE PER EACH $100 COST OF HIRE | PREMIUM |
|---|---|---|---|
| | | | |
| | | TOTAL PREMIUM | |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

## PHYSICAL DAMAGE COVERAGE

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED ANNUAL COST OF HIRE | RATE PER EACH $100 ANNUAL COST OF HIRE | MINIMUM PREMIUM | PREMIUM |
|---|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIRS OR $ 5 0 , 0 0 0          WHICHEVER IS LESS MINUS $ 1 , 0 0 0         DED. FOR EACH COVERED AUTO, FOR ALL LOSS EXCEPT FIRE OR LIGHTNING | | | | I N C L |
| SPECIFIED CAUSES OF LOSS | ACTUAL CASH VALUE, COST OF REPAIRS OR $           WHICHEVER IS LESS MINUS $25 DED. FOR EACH COVERED AUTO, FOR LOSS CAUSED BY MISCHIEF OR VANDALISM | | | | |
| COLLISION | ACTUAL CASH VALUE, COST OF REPAIRS OR $ 5 0 , 0 0 0       WHICHEVER IS LESS MINUS $ 1 , 0 0 0         DED. FOR EACH COVERED AUTO | | | | I N C L |
| | | | TOTAL PREMIUM | | I N C L |

## ITEM FIVE SCHEDULE FOR NONOWNERSHIP LIABILITY

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than a Social Service Agency | Number of Employees | | |
| | Number of Partners | | |
| Social Service Agency | Number of Employees | | |
| | Number of Volunteers | | |
| | | TOTAL PREMIUM | |

Contains copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, 1985

**AA 4231 08 08**                                                                 **Page 1 of 2**

**ITEM SIX SCHEDULE FOR GROSS RECEIPTS OR MILEAGE BASIS–LIABILITY COVERAGE–PUBLIC AUTO OR LEASING RENTAL CONCERNS**

| Estimated Yearly | RATES | | PREMIUMS | |
|---|---|---|---|---|
| | ☐ Per $100 of Gross Receipts | | | |
| | ☐ Per Mile | | | |
| ☐ Gross Receipts | LIABILITY | AUTO MEDICAL COVERAGE | LIABILITY PAYMENTS | AUTO MEDICAL COVERAGE PAYMENTS |
| ☐ Mileage | | | | |
| | | | | |
| | TOTAL PREMIUMS | | | |
| | MINIMUM PREMIUMS | | | |

When used as a premium basis:

FOR PUBLIC AUTOS

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation. Gross Receipts does not include:

**A.**  Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

**B.**  Advertising Revenue.

**C.**  Taxes which you collect as a separate item and remit directly to a governmental division.

**D.**  C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

FOR RENTAL OR LEASING CONCERNS

Gross receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the autos you leased or rented to others during the policy period.

Contains copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, 1985

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC)
# COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**BUSINESS AUTO COVERAGE FORM**
**GARAGE COVERAGE FORM**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions** of the **BUSINESS AUTO COVERAGE FORM** and **SECTION V - GARAGE CONDITIONS, B. General Conditions** of the **GARAGE COVERAGE FORM** are amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**AA 4263 04 10**

**The Cincinnati Insurance Company
The Cincinnati Casualty Company
The Cincinnati Indemnity Company**

# IMPORTANT NOTICE TO POLICYHOLDERS REGARDING OHIO <u>UN</u>INSURED AND <u>UNDER</u>INSURED MOTORIST COVERAGE

## OFFER OF UNINSURED AND UNDERINSURED MOTORIST COVERAGE LIMIT AND OPTION SELECTION FORM

This form will attach to and form a part of your auto policy and all subsequent renewal, replacement, substitution or amended policies.

### 1. OFFER OF UNINSURED AND UNDERINSURED MOTORIST COVERAGE

This notice is our offer to you of your Uninsured and Underinsured Motorist Coverage options. You may <u>accept</u> this Uninsured and Underinsured Motorist insurance at a limit equal to your Bodily Injury Liability limit, select a <u>lower</u> limit of Uninsured and Underinsured Motorist protection or <u>reject</u> Uninsured and Underinsured Motorist Bodily Injury Coverage entirely.

### 2. EXPLANATION OF COVERAGE

Uninsured and Underinsured Motorist Bodily Injury Coverage provides money damages for bodily injury, sickness, or disease, including death, which you are legally entitled to recover from the owner or operator of:

**A.** A motor vehicle for which no bodily injury liability coverage applies at the time of the accident.

**B.** An underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle for which coverage applies, but the limits of coverage available for payment under all bodily injury liability bonds and insurance policies covering persons liable for the accident are less than the limits of your uninsured and underinsured motorist coverage.

**C.** A motor vehicle which is a hit-and-run vehicle and whose operator or owner cannot be identified. Independent corroborative evidence is required in a hit-and-run situation.

Please be aware that any summaries of coverage contained in this notice are necessarily general in nature and not meant to replace the coverage descriptions provided in the Ohio Uninsured Motorist Coverage policy forms filed and used by The Cincinnati Insurance Company, The Cincinnati Casualty Company or The Cincinnati Indemnity Company in Ohio. These coverage forms contain specific descriptions, definitions, exclusions and conditions as allowed by Ohio law and approved by the Ohio Superintendent of Insurance. Copies of these forms are available upon request.

**Please discuss with your insurance agent any questions you may have about the coverage described in this notice and your coverage options.**

### 3. YOUR SELECTION:

My auto policy's current Bodily Injury Liability limit is $ _____ . Knowing this, I make the following selection:

**A.** _____ **I SELECT AN UNINSURED AND UNDERINSURED MOTORIST BODILY INJURY COVERAGE LIMIT EQUAL TO THE LIMIT OF MY BODILY INJURY LIABILITY COVERAGE.**

**B.** _____ **I REJECT UNINSURED AND UNDERINSURED MOTORIST BODILY INJURY COVERAGE ENTIRELY. NO PREMIUM CHARGE WILL BE MADE FOR UNINSURED AND UNDERINSURED MOTORIST BODILY INJURY COVERAGE.**

**C.** _____ **I SELECT UNINSURED AND UNDERINSURED MOTORIST BODILY INJURY COVERAGE AT THE FOLLOWING LIMIT, WHICH I UNDERSTAND IS <u>LOWER</u> THAN MY BODILY INJURY LIABILITY LIMIT, SHOWN ABOVE.**
**CHOOSE ONLY ONE.**

| COMBINED LIMITS | SPLIT LIMITS |
|---|---|
| _____ $25,000 | _____ $12,500/25,000 |
| _____ $32,500 | _____ $15,000/30,000 |
| _____ $35,000 | _____ $25,000/50,000 |
| _____ $50,000 | _____ $50,000/100,000 |
| _____ $100,000 | _____ $100,000/300,000 |
| _____ $125,000 | _____ $250,000/500,000 |
| _____ $150,000 | _____ $500,000/500,000 |
| _____ $250,000 | _____ $500,000/1,000,000 |
| _____ $300,000 | _____ $1,000,000/1,000,000 |
| _____ $350,000 | _____ $1,000,000/2,000,000 |
| _____ $400,000 | _____ $2,000,000/2,000,000 |
| _____ $500,000 | |
| _____ $600,000 | |
| _____ $750,000 | |
| _____ $1,000,000 | |
| _____ $2,000,000 | |

## 4. YOUR ACKNOWLEDGMENT

By signing below, I acknowledge that:

**A.** I intend that my selection will apply to me and to all other persons or organizations that may be eligible for coverage under this policy.

**B.** I understand that my selection applies to all subsequent renewals, replacements, substitutions or amendments of my policy unless I request otherwise in writing.

**C.** I have read and understand the purpose and content of this form and the consequences of my selection.

**D.** I am legally authorized to make decisions concerning the purchase of Uninsured and Underinsured Motorist Coverage.

POLICY NUMBER:  <u>EBA 055 77 79</u>

AGENT:  <u>DRIEHAUS INSURANCE GROUP LLC 34-395</u>

<u>1</u>  **NAMED INSURED(S):**
<u>TASTE OF BELGIUM LLC</u>

PRINTED NAME OF INDIVIDUAL AUTHORIZED TO SIGN      Title

Signature      Date Signed:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTO MEDICAL PAYMENTS COVERAGE

Throughout this Coverage Form "you" and "your" refer to the organization and any specifically named natural persons shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations. "You" and "Your" do not refer to any other persons or organizations, including but not limited to agents, employees, servants, members, shareholders or independent contractors of any person or organization shown as the Named Insured in the Business Auto or Garage Coverage Part Declarations.

This endorsement modifies insurance provided under the following:

> **BUSINESS AUTO COVERAGE FORM**
> **GARAGE COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Coverage

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred and reported to us, for services rendered within three years from the date of the "accident".

## B. Who is an Insured

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. "Family members" of natural persons shown as Named Insureds in the Business Auto or Garage Coverage Part Declarations while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone for injuries while "occupying" a covered "auto".

4. Anyone for injuries while "occupying" a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

## C. Exclusions

This insurance does not apply to any of the following:

1. "Bodily injury" sustained by an "insured" while "occupying" a vehicle located for use as a premises.

2. "Bodily injury" sustained by you or any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for your regular use.

3. "Bodily injury" sustained by any "family member" while "occupying" or struck by any vehicle (other than a covered "auto") owned by or furnished or available for the regular use of any "family member".

4. "Bodily injury" to your "employee" arising out of and in the course of employment by you. However, we will cover "bodily injury" to your domestic "employees" if not entitled to workers' compensation benefits. For the purposes of this endorsement, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. "Bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. "Bodily injury" to anyone using a vehicle without a reasonable belief that the person is entitled to do so.

8. "Bodily injury" sustained by an "insured" while "occupying" any covered "auto" while used in any professional racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply to any "bodily injury" sustained by an "insured" while the "auto" is being prepared for such a contest or activity.

**D.  Limit of Insurance**   SEE AA4183

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "bodily injury" for each "insured" injured in any one "accident" is the Limit of Insurance for Auto Medical Payments Coverage shown in the Declarations.

No one will be entitled to receive duplicate payments for the same elements of "loss" under this coverage and any Liability Coverage Form, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage Endorsement attached to this Coverage Part.

**E.  Changes in Conditions**

The Conditions are changed for **Auto Medical Payments Coverage** as follows:

1. The **Transfer of Rights of Recovery Against Others to Us** Condition does not apply.

2. The reference in Other Insurance in the Business Auto and Garage Coverage Forms to "other collectible insurance" applies only to other collectible auto medical payments insurance.

**F.  Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CinciPlus®
# BUSINESS AUTO XC+®
# (EXPANDED COVERAGE PLUS)
# ENDORSEMENT

This endorsement modifies insurance provided by the following:

**BUSINESS AUTO COVERAGE FORM**

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**A. Blanket Waiver of Subrogation**

**SECTION IV - BUSINESS AUTO CONDITIONS, A. Loss Conditions, 5. Transfer of Rights of Recovery Against Others to Us** is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization because of payments we make for "bodily injury" or "property damage" arising out of the operation of a covered "auto" when you have assumed liability for such "bodily injury" or "property damage" under an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution or the "insured contract".

**B. Noncontributory Insurance**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions, 5. Other Insurance c.** is replaced by the following:

    **c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Liability Coverage is primary and we will not seek contribution from any other insurance for any liability assumed under an "insured contract" that requires liability to be assumed on a primary noncontributory basis.

**C. Additional Insured by Contract**

**SECTION II - LIABILITY COVERAGE, A. Coverage, I. Who is an Insured** is amended to include as an insured any person or organization with which you have agreed in a valid written contract to provide insurance as is afforded by this policy.

This provision is limited to the scope of the valid written contract.

This provision does not apply unless the valid written contract has been:

    **1.** Executed prior to the accident causing "bodily injury" or "property damage"; and

    **2.** Is still in force at the time of the "accident" causing "bodily injury" or "property damage".

**D. Employee Hired Auto**

    **1. Changes in Liability Coverage**

      The following is added to the **Section II - Liability Coverage, A. Coverage, 1. Who is an Insured**:

      An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in that "employee's" name, with your permission, while performing duties related to the conduct of your business.

    **2. Changes in General Conditions**

      **SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions, 5. Other Insurance** is amended by replacing Paragraph **5.b.** with the following:

      **b.** For Hired Auto Physical Damage Coverage the following are deemed to be covered "autos" you own:

        **(1)** Any covered "auto" you lease, hire, rent or borrow; and

        **(2)** Any covered "auto" hired or rented by your "employee" under a contract in that individual "employee's" name, with your permission, while performing duties related to the conduct of your business.

Includes copyrighted material of ISO Properties, Inc., with its permission.

However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**E. Audio, Visual and Data Electronic Equipment**

**SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limit of Insurance** is amended by adding the following:

**4.** The most we will pay for all "loss" to audio, visual or data electronic equipment and any accessories used with this equipment as a result of any one "accident" is the lesser of:

**a.** The actual cash value of the damaged or stolen property as of the time of the "accident";

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or

**c.** $2,500.

Provided the equipment, at the time of the "loss" is:

**a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

**b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above; or

**c.** An integral part of such equipment.

**F. Who is an Insured - Amended**

**SECTION II - LIABILITY COVERAGE, A. Coverage, 1. Who is an Insured** is amended by adding the following:

The following are "insureds":

**1.** Any subsidiary which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this coverage form.

However, the insurance afforded by this provision does not apply to any subsidiary that is an "insured" under any other automobile liability policy, or would be an "insured" under such policy but for termination of such policy or the exhaustion of such policy's limits of insurance.

**2.** Any organization that is newly acquired or formed by you and over which you maintain majority ownership. The insurance provided by this provision:

**a.** Is effective on the date of acquisition or formation, and is afforded for 180 days after such date;

**b.** Does not apply to "bodily injury" or "property damage" resulting from an "accident" that occurred before you acquired or formed the organization;

**c.** Does not apply to any newly acquired or formed organization that is a joint venture or partnership; and

**d.** Does not apply to an insured under any other automobile liability policy, or would be an insured under such a policy but for the termination of such policy or the exhaustion of such policy's limits of insurance.

**3.** Any of your "employees" while using a covered "auto" in your business or your personal affairs, provided you do not own, hire or borrow that "auto".

**G. Liability Coverage Extensions - Supplementary Payments - Higher Limits**

**SECTION II - LIABILITY COVERAGE, A. Coverage, 2. Coverage Extensions, a. Supplementary Payments** is amended by:

**1.** Replacing the $2,000 Limit of Insurance for bail bonds with $4,000 in **(2)**; and

**2.** Replacing the $250 Limit of Insurance for reasonable expenses with $500 in **(4)**.

**H. Amended Fellow Employee Exclusion**

**SECTION II - LIABILITY COVERAGE, B. Exclusions, 5. Fellow Employee** is modified as follows:

Exclusion **5. Fellow Employee** is deleted.

**I. Hired Auto - Physical Damage**

If hired "autos" are covered "autos" for Liability Coverage, then Comprehensive and Collision Physical Damage Coverages as provided under **SECTION III - PHYSICAL DAMAGE COVERAGE** of this Coverage Part are extended to "autos" you hire, subject to the following:

**1.** The most we will pay for "loss" to any hired "auto" is $50,000 or the actual cash value or cost to repair or replace, whichever is the least, minus a deductible.

**2.** The deductible will be equal to the largest deductible applicable to any owned "auto" for that coverage, or $1,000, whichever is less.

**3.** Hired Auto - Physical Damage coverage is excess over any other collectible insurance.

4. Subject to the above limit, deductible, and excess provisions we will provide coverage equal to the broadest coverage applicable to any covered "auto" you own insured under this policy.

Coverage includes loss of use of that hired auto, provided it results from an "accident" for which you are legally liable and as a result of which a monetary loss is sustained by the leasing or rental concern. The most we will pay for any one "accident" is $3,000.

If a limit for Hired Auto - Physical Damage is shown in the Schedule, then that limit replaces, and is not added to, the $50,000 limit indicated above.

## J. Rental Reimbursement

**SECTION III - PHYSICAL DAMAGE** is amended by adding the following:

1. We will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of a "loss" to a covered "auto". Payment applies in addition to the otherwise applicable amount of each coverage you have on a covered "auto". No deductible applies to this coverage.

2. We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending, regardless of the policy's expiration, with the lesser of the following number of days:

   a. The number of days reasonably required to repair the covered "auto". If "loss" is caused by theft, this number of days is added to the number of days it takes to locate the covered "auto" and return it to you; or

   b. 30 days.

3. Our payment is limited to the lesser of the following amounts:

   a. Necessary and actual expenses incurred; or

   b. $50 per day.

4. This coverage does not apply while there are spare or reserve "autos" available to you for your operations.

5. We will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under **SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions**.

## K. Transportation Expense - Higher Limits

**SECTION III - PHYSICAL DAMAGE COVERAGE, A. Coverage, 4. Coverage Extensions** is amended by replacing $20 per day with $50 per day, and $600 maximum with $1,500 maximum in **Extension a. Transportation Expenses**.

## L. Airbag Coverage

**SECTION III - PHYSICAL DAMAGE COVERAGE, B. Exclusions, 3.a.** is amended by adding the following:

However, the mechanical and electrical breakdown portion of this exclusion does not apply to the accidental discharge of an airbag. This coverage for airbags is excess over any other collectible insurance or warranty.

## M. Loan or Lease Gap Coverage

1. **SECTION III - PHYSICAL DAMAGE COVERAGE, C. Limit of Insurance** is deleted in its entirety and replaced by the following, but only for private passenger type "autos" with an original loan or lease, and only in the event of a "total loss" to such a private passenger type "auto":

   a. The most we will pay for "loss" in any one "accident" is the greater of:

      (1) The amount due under the terms of the lease or loan to which your covered private passenger type "auto" is subject, but will not include:

         (a) Overdue lease or loan payments;

         (b) Financial penalties imposed under the lease due to high mileage, excessive use or abnormal wear and tear;

         (c) Security deposits not refunded by the lessor;

         (d) Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

         (e) Carry-over balances from previous loans or leases, or

      (2) Actual cash value of the stolen or damaged property.

   b. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of "loss".

Includes copyrighted material of ISO Properties, Inc., with its permission.

**2.** **SECTION V - DEFINITIONS** is amended by adding the following, but only for the purposes of this **Loan or Lease Gap Coverage**:

"Total loss" means a "loss" in which the cost of repairs plus the salvage value exceeds the actual cash value.

**N.** **Glass Repair - Waiver of Deductible**

**SECTION III - PHYSICAL DAMAGE COVERAGE, D. Deductible** is amended by adding the following:

No deductible applies to glass damage if the glass is repaired in a manner acceptable to us rather than replaced.

**O.** **Duties in the Event of an Accident, Claim, Suit or Loss - Amended**

**SECTION IV - BUSINESS AUTO CONDITIONS, A. Loss Conditions, 2. Duties in the Event of Accident, Claim, Suit or Loss, a.** is amended by adding the following:

This condition applies only when the "accident" or "loss" is known to:

**1.** You, if you are an individual;

**2.** A partner, if you are a partnership;

**3.** An executive officer or insurance manager, if you are a corporation; or

**4.** A member or manager, if you are a limited liability company.

**P.** **Unintentional Failure to Disclose Hazards**

**SECTION IV - BUSINESS AUTO CONDITIONS, B. General Conditions, 2. Concealment, Misrepresentation or Fraud** is amended by adding the following:

However, if you unintentionally fail to disclose any hazards existing on the effective date of this Coverage Form, we will not deny coverage under this Coverage Form because of such failure.

**Q.** **Mental Anguish Resulting from Bodily Injury**

**SECTION V - DEFINITIONS, C. "Bodily injury"** is deleted in its entirety and replaced by the following:

"Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish and death sustained by the same person that results from such bodily injury, sickness or disease. "Bodily injury" does not include mental anguish or death that does not result from bodily injury, sickness or disease.

**R.** **Coverage for Certain Operations in Connection with Railroads**

With respect to the use of a covered "auto" in operations for or affecting a railroad:

**1.** **Section V - Definitions, H.** "Insured contract", **1.c.** is amended to read:

**c.** An easement or license agreement;

**2.** **Section V - Definitions, H.** "Insured contract", **2.a.** is deleted.

# THE CINCINNATI INSURANCE COMPANY

## COMMERCIAL UMBRELLA LIABILITY COVERAGE
## PART DECLARATIONS

Previous Policy Number

Attached to and forming part of POLICY NUMBER **ECP 055 77 79**          Effective Date: **11-04-2019**

**NAMED INSURED** is the same as it appears in the Common Policy Declarations unless another entry is made here.

---

**LIMITS OF INSURANCE**

$    **4** ,000,000 Each Occurrence Limit          $    **4** ,000,000 Aggregate Limit

**ADVANCE PREMIUM** $      **5,211**

Applicable to Premium, if box is checked:

☐ Subject to Annual Adjustment

☐ Subject to Audit (see Premium Computation Endorsement for Rating Basis)

### SCHEDULE OF UNDERLYING INSURANCE

| Insurer, Policy Number & Period: | Underlying Insurance: | Underlying Limits: |
|---|---|---|
| **(a)** | Employer's Liability | Bodily Injury by Accident:<br>$                Each Accident<br>Bodily Injury by Disease:<br>$                Each Employee<br>Bodily Injury by Disease:<br>$                Policy Limit |
| **(b) CINCINNATI INS. CO.**<br>**ECP 055 77 79**<br>**11-04-2019 TO 11-04-2020** | ☒ Commercial General Liability Including:<br>☒ Products-Completed Operations Coverage<br><br>☐ Cemetery Professional<br>☐ Druggist Professional<br>☐ Funeral Service Provider<br>☐ Pedorthists Professional<br>(X) Ohio Liability Coverage Enhancement<br><br>or<br><br>☐ Business Liability Including:<br>☐ Funeral Service Provider<br>☐ Druggist Professional | Bodily Injury and Property Damage Liability:<br>$    **1,000,000** Each Occurrence Limit<br>$    **2,000,000** General Aggregate Limit<br>$    **2,000,000** Products-Completed Operations Aggregate Limit<br><br>Personal and Advertising Injury Limit:<br>$    **1,000,000** Any One Person or Organization |
| **(c) CINCINNATI INS. CO.**<br>**EBA 055 77 79**<br>**11-04-2019 TO 11-04-2020** | Automobile Liability Including:<br>☒ Owned Autos<br>☒ Non-Owned Autos<br>☒ Hired Autos<br>☐ Any Auto | Bodily Injury Liability Limit:<br>$                Each Person<br>$                Each Occurrence<br>Property Damage Liability Limit:<br>$                Each Occurrence<br>or<br>Bodily Injury Liability and / or Property Damage Liability or Both Combined Limit:<br>$    **1,000,000** Each Occurrence |

| | | |
|---|---|---|
| **(c)** CINCINNATI INS. CO.<br>EBA0557779<br>11-04-2019 TO 11-04-2020 | Automobile Liability<br>Including:<br>☒ Owned Autos<br>☒ Non-Owned Autos<br>☒ Hired Autos<br>☐ Any Auto | Bodily Injury Liability Limit:<br>$        Each Person<br>$        Each Occurrence<br>Property Damage Liability Limit:<br>$        Each Occurrence<br>       or<br>Bodily Injury Liability and / or Property Damage<br>Liability or Both Combined Limit:<br>$    1,000,000   Each Occurrence |
| **(d)** | Professional | $<br>$             Aggregate |
| **(e)** CINCINNATI INS. CO.<br>ECP 055 77 79<br>11-04-2019 TO 11-04-2020 | Employee Benefit Liability | $    1,000,000   Each Employee Limit<br>$    3,000,000   Aggregate Limit |
| **(f)** CINCINNATI INS. CO.<br>ECP 055 77 79<br>11-04-2019 TO 11-04-2020 | Liquor Liability | $    1,000,000   Each Common Cause Limit<br>$    1,000,000   Aggregate Limit |

**Other**

---

**FORMS AND / OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:**

| | | |
|---|---|---|
| US101 | 12/04 | COMMERCIAL UMBRELLA - TABLE OF CONTENTS |
| US4074OH | 10/07 | IMPORTANT NOTICE TO POLICYHOLDERS REGARDING OHIO EXCESS UNINSURED AND UNDERINSURED MOTORIST COVERAGE |
| US302 | 12/04 | POLLUTANT EXCLUSION - OTHER THAN AUTO |
| US3038 | 09/02 | PRODUCTS-COMPLETED OPERATIONS HAZARD REDEFINED |
| US3093 | 05/14 | EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION |
| US336 | 12/04 | UNINSURED / UNDERINSURED MOTORIST EXCLUSION |
| US349 | 12/04 | LIQUOR LIABILITY LIMITATION |
| US4062 | 11/05 | MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION |
| US407 | 12/04 | EMPLOYEE BENEFIT LIABILITY |
| US4098 | 04/10 | OFFICE OF FOREIGN ASSETS CONTROL (OFAC) COMPLIANCE ENDORSEMENT |

---

# COMMERCIAL UMBRELLA - TABLE OF CONTENTS

**Coverage Part Provision:**                                                         **Begins on Page:**

Preamble ........................................................................................................................... 3

**SECTION I - COVERAGE:** ................................................................................................ 3

    **A.**  **Insuring Agreement** ............................................................................................. 3

    **B.**  **Exclusions:** ......................................................................................................... 4

        **1.**  Asbestos ......................................................................................................... 4
        **2.**  Breach of Contract, Failure to Perform, Wrong Description and
            Violation of Another's Rights ........................................................................... 4
        **3.**  Contractual Liability ......................................................................................... 4
        **4.**  Damage to Impaired Property or Property Not Physically Injured.................... 4
        **5.**  Damage to Property ......................................................................................... 4
        **6.**  Damage to Your Product ................................................................................. 4
        **7.**  Damage to Your Work ..................................................................................... 4
        **8.**  Distribution of Material in Violation of Statutes .............................................. 4
        **9.**  Electronic Chatrooms or Bulletin Boards........................................................ 5
        **10.** Electronic Data................................................................................................. 5
        **11.** Employer's Liability Limitation ......................................................................... 5
        **12.** Employment-Related Practices........................................................................ 5
        **13.** Expected or Intended Injury ............................................................................ 5
        **14.** Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses ...................... 5
        **15.** Infringement of Copyright, Patent, Trademark or Trade Secret ..................... 6
        **16.** Pollutant - Auto ............................................................................................... 6
        **17.** Pollutant - Other Than Auto............................................................................. 7
        **18.** Recall of Products, Work or Impaired Property ............................................... 8
        **19.** Unauthorized Use of Another's Name or Product............................................ 9
        **20.** War ................................................................................................................. 9
        **21.** Workers' Compensation .................................................................................. 9

    **C.**  **Defense and Supplementary Payments** ............................................................. 9

**SECTION II - WHO IS AN INSURED** ............................................................................. 10

**SECTION III - LIMITS OF INSURANCE** ........................................................................ 11

**SECTION IV - CONDITIONS:** ......................................................................................... 12

        **1.**  Appeals.......................................................................................................... 12
        **2.**  Audit............................................................................................................... 12
        **3.**  Bankruptcy..................................................................................................... 12
        **4.**  Duties in the Event of Occurrence, Claim or Suit .......................................... 13
        **5.**  First Named Insured....................................................................................... 13
        **6.**  Legal Action Against Us and Loss Payments................................................. 13
        **7.**  Liberalization ................................................................................................. 13
        **8.**  Maintenance of Underlying Insurance ........................................................... 13
        **9.**  Other Insurance ............................................................................................. 14
        **10.** Premium ........................................................................................................ 14
        **11.** Representations ............................................................................................. 14
        **12.** Separation of Insureds .................................................................................. 14
        **13.** Transfer of Rights of Recovery Against Others to Us .................................... 14
        **14.** When We Do Not Renew ............................................................................... 15

**SECTION V - DEFINITIONS:** ......................................................................................... 15

        **1.**  "Advertisement" ............................................................................................. 15
        **2.**  "Authorized representative" ............................................................................ 15
        **3.**  "Auto" ............................................................................................................. 15
        **4.**  "Bodily injury"................................................................................................. 15
        **5.**  "Coverage term" ............................................................................................ 15
        **6.**  "Coverage territory"....................................................................................... 15
        **7.**  "Electronic data"............................................................................................ 15

**Coverage Part Provision:**                                                                **Begins on Page:**

**8.** "Employee" ............................................................................................................15
**9.** "Executive officer" ...................................................................................................15
**10.** "Hostile fire" ............................................................................................................16
**11.** "Impaired property" ..................................................................................................16
**12.** "Insured contract" .....................................................................................................16
**13.** "Leased worker" .......................................................................................................17
**14.** "Loading or unloading" ............................................................................................17
**15.** "Mobile equipment" .................................................................................................17
**16.** "Occurrence" ............................................................................................................18
**17.** "Personal and advertising injury" ............................................................................18
**18.** "Pollutants" ..............................................................................................................18
**19.** "Products-completed operations hazard" ..................................................................18
**20.** "Property damage" ....................................................................................................19
**21.** "Subsidiary" .............................................................................................................19
**22.** "Suit" ........................................................................................................................19
**23.** "Temporary worker" .................................................................................................19
**24.** "Ultimate net loss" ...................................................................................................19
**25.** "Underlying insurance" ............................................................................................19
**26.** "Underlying limit" ....................................................................................................19
**27.** "Workplace" .............................................................................................................19
**28.** "Your product" .........................................................................................................19
**29.** "Your work" .............................................................................................................20

**NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT** ..................................................................21

Includes copyrighted material of ISO
Properties, Inc., with its permission.

# COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

Various provisions in this Coverage Part restrict this insurance. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Coverage Part. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED.**

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS.**

## SECTION I - COVERAGE

### A. Insuring Agreement

1. We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

   a. Which is in excess of the "underlying insurance"; or

   b. Which is either excluded or not insured by "underlying insurance".

2. This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

   a. The "bodily injury", "personal and advertising injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   b. The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

   c. The "personal and advertising injury" results from an "occurrence" that takes place during the policy period shown in the Declarations; and

   d. Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know, per Paragraph **5.** below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or that the "personal and advertising

injury" offense had been committed or had begun to be committed, in whole or in part.

3. "Bodily injury" or "property damage" which:

   a. Occurs during the "coverage term"; and

   b. Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have occurred;

   includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

4. "Personal and advertising injury" caused by an offense which:

   a. Was committed during the "coverage term"; and

   b. Was not, prior to the "coverage term", known by you, per Paragraph **5.** below, to have been committed;

   includes any continuation, change or resumption of that "personal and advertising injury" offense after the end of the "coverage term" in which it first became known by you.

5. You will be deemed to know that "bodily injury" or "property damage" has occurred, or that a "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

   a. Reports all, or any part, of the "bodily injury", "personal and advertising injury" or "property damage" to us or any other insurer;

   b. Receives a written or verbal demand or claim for damages because of the "bodily injury", "personal and advertising injury" or "property damage";

   c. First observes, or reasonably should have first observed, the "bodily injury" or "property damage", or the offense that caused the "personal and advertising injury";

   d. Becomes aware, or reasonably should have become aware, by any means, other than as described in **c.** above, that "bodily injury" or "property damage" had occurred or had begun to occur, or that the "personal

Includes copyrighted material of ISO
Properties, Inc., with its permission.

and advertising injury" offense had been committed or had begun to be committed; or

**e.** Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury", "personal and advertising injury" or "property damage" is substantially certain to occur.

**6.** The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE.**

No other obligation or liability to pay sums or perform acts or services is covered, unless expressly provided for under **SECTION I - COVERAGE, C. Defense and Supplementary Payments.**

**B. Exclusions**

This insurance does not apply to:

**1. Asbestos**

Any liability arising out of, attributable to or any way related to asbestos in any form or transmitted in any manner.

**2. Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights**

"Personal and advertising injury":

**a.** Arising out of breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

**b.** Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

**c.** Arising out of the wrong description of the price of goods, products or services stated in your "advertisement"; or

**d.** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**3. Contractual Liability**

Any liability for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for "bodily injury", "personal and advertising injury" or "property damage":

**a.** That the insured would have in the absence of the contract or agreement; or

**b.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury", "personal and advertising injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

**4. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**a.** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**b.** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**5. Damage to Property**

"Property damage" to property owned by any insured, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

**6. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**7. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**8. Distribution of Material in Violation of Statutes**

Any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

a. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

b. The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c. Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**9. Electronic Chatrooms or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**10. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

**11. Employer's Liability Limitation**

Any liability arising from any injury to:

a. An "employee" of the insured sustained in the "workplace";

b. An "employee" of the insured arising out of the performance of duties related to the conduct of the insured's business; or

c. The spouse, child, parent, brother or sister of that "employee" as a consequence of **a.** or **b.** above.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply when such insurance is provided by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance, or would have been provided by such listed "underlying insurance" except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance", unless otherwise excluded by this Coverage Part.

**12. Employment-Related Practices**

Any liability arising from any injury to:

a. A person arising out of any:

(1) Refusal to employ that person;

(2) Termination of that person's employment; or

(3) Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

b. The spouse, child, parent, brother or sister of that person as a consequence of any injury to that person at whom any of the employment-related practices described in Paragraphs **(1)**, **(2)**, or **(3)** above is directed.

This exclusion applies:

a. Whether the insured may be liable as an employer or in any other capacity; and

b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**13. Expected or Intended Injury**

"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually intended or expected.

However, this exclusion does not apply to:

a. "Bodily injury" resulting from the use of reasonable force to protect persons or property; or

b. "Bodily injury" or "property damage" resulting from the use of reasonable force to prevent or eliminate danger in the operation of "autos" or watercraft.

**14. Falsity, Prior Publication, Criminal Act and Media and Internet Type Businesses**

"Personal and advertising injury":

a. Arising out of oral or written publication of material, if done by or at the

direction of the insured with knowledge of its falsity;

**b.** Arising out of oral or written publication of material whose first publication took place before the later of the following:

**(1)** The inception of this Coverage Part; or

**(2)** The "coverage term" in which insurance coverage is sought;

**c.** Arising out of a criminal act committed by or at the direction of the insured; or

**d.** Committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web-sites for others; or

**(3)** An Internet search, access, content or service provider.

However, Paragraph **d.** does not apply to Paragraphs **17.a., b., c., d.** and **i.** of "personal and advertising injury" under **SECTION V - DEFINITIONS.**

For the purposes of Paragraph **d.**, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**15. Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan.

**16. Pollutant - Auto**

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**(1)** That are, or that are contained in any property that is:

**(a)** Being transported or towed by, handled, or handled for movement into, onto or from, an "auto" that an in-

sured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

**(b)** Otherwise in the course of transit by or on behalf of the insured; or

**(c)** Being stored, disposed of, treated or processed in or upon an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion;

**(2)** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the insured for movement into or onto an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; or

**(3)** After the "pollutants" or any property in which the "pollutants" are contained are moved from an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion to the place where they are finally delivered, disposed of or abandoned by the insured.

Paragraph **(1)** above does not apply to "bodily injury" or "property damage" arising from fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion or its parts, if:

**(a)** The "pollutants" escape, seep, migrate, or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(b)** The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in Paragraphs **f.(2)** and **(3)** of the definition of "mobile equipment".

Includes copyrighted material of ISO Properties, Inc., with its permission.

However, this exception to Paragraph **(1)** does not apply if the fuels, lubricants, or other operating fluids, exhaust gases or other similar "pollutants" are intentionally discharged, dispersed, emitted or released.

Paragraphs **(2)** and **(3)** above do not apply to an "occurrence" that occurs away from premises owned by or rented to an insured with respect to "pollutants" not in or upon an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of an "auto" that an insured owns, hires, borrows, rents, leases, or that is operated on their behalf in any other fashion; and

**(b)** The discharge, dispersal, seepage, migration, release, emission or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**b.** Any liability caused by "pollutants" and arising from the operation, maintenance, use, "loading or unloading" of an "auto", for which insurance coverage is excluded by "underlying insurance".

**17. Pollutant - Other Than Auto**

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

**(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

However, Paragraph **a.(1)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the "underlying limit" specified in the Schedule of Underlying Insurance for the "underlying insurance" listed and subject to all its terms, limitations and conditions:

**(a)** "Bodily injury", if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants or their guests;

**(b)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor, and the owner or lessee of such premises, site or location has been added to your "underlying insurance" as an additional insured with respect to your ongoing operations or "your work" performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(c)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

**(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

Includes copyrighted material of ISO Properties, Inc., with its permission.

However, Paragraph **a.(4)** of this exclusion does not apply to the following if such liability is covered by "underlying insurance" listed in the Schedule of Underlying Insurance, but only to the extent insurance is provided at the "underlying limit" specified in the Schedule of Underlying Insurance for the "underlying insurance" listed and subject to all its terms, limitations and conditions:

**(a)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(b)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(c)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(5)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants" at any time.

**c.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this Paragraph **c.** does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**d.** Any liability caused by "pollutants", for which insurance coverage is excluded by "underlying insurance".

**18. Recall of Products, Work or Impaired Property**

Any liability or damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.** "Your product";

**b.** "Your work"; or

**c.** "Impaired Property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization be-

Includes copyrighted material of ISO Properties, Inc., with its permission.

cause of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### 19. Unauthorized Use of Another's Name or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag or any other similar tactics to mislead another's potential customers.

### 20. War

Any liability, however caused, arising directly or indirectly, out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack by any government, sovereign or authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

### 21. Workers' Compensation

Any liability or obligation of the insured under any workers' compensation, unemployment compensation, disability benefits or similar law. However, this exclusion does not apply to liability of others assumed by you under an "insured contract" in existence at the time of "occurrence".

### C. Defense and Supplementary Payments

**1.** We will have the right and duty to defend the insured against any "suit" seeking damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies. We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result when:

**a.** The applicable limits of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

**b.** Damages are sought for "bodily injury", "personal and advertising in-

jury" or "property damage" which are not covered by "underlying insurance" or other insurance.

**2.** Our right and duty to defend ends when the applicable Limits of Insurance, as stated in the Declarations, has been exhausted by payment of claims.

**3.** We have no duty to investigate, settle or defend any claim or "suit" other than those circumstances described in Paragraph **C.1.** However, we do have the right to participate in the investigation, settlement or defense of any claim or "suit" to which this insurance applies. If we exercise this right, we will do so at our expense.

**4.** If there is no underlying insurer or other insurance obligated to do so, we will pay the following when we provide a defense:

**a.** All expenses we incur.

**b.** The cost of bail bonds up to $3,000. We do not have to furnish these bonds.

**c.** The cost of bonds to appeal a judgment or award in any claim or "suit" we defend and the cost of bonds to release attachments, but only for bond amounts within the applicable Limits of Insurance. We do not have to furnish these bonds.

**d.** Reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including the actual loss of earnings.

**e.** All costs taxed against the insured in the "suit".

**5.** If there is no underlying insurer obligated to do so, we will pay the following for an "occurrence" to which this insurance applies, even if we have no duty to provide a defense:

**a.** Prejudgment interest awarded against the insured on that part of the judgment we become obligated to pay and which falls within the applicable Limit of Insurance. If we make an offer to pay the applicable Limits of Insurance, we will not pay any prejudgment interest based on the period of time after the offer.

**b.** All interest awarded against the insured on the full amount of any judgment that accrues:

**(1)** After entry of the judgment; and

Includes copyrighted material of ISO Properties, Inc., with its permission.

**(2)** Before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

**6.** The payments described in Paragraphs **4.** and **5.** above will not reduce the Limits of Insurance provided by this Coverage Part when defense or supplementary payments provided by the "underlying insurance" do not reduce their Limits of Insurance. However, when defense or supplementary payments provided by the "underlying insurance" reduce their Limits of Insurance then such expense payments paid by us will reduce the Limits of Insurance provided by this Coverage Part.

**7.** If we are prevented by law or otherwise from carrying out any of the provisions of **SECTION I - COVERAGE, C. Defense and Supplementary Payments**, we will pay any expense incurred with our written consent.

## SECTION II - WHO IS AN INSURED

**1.** Except for liability arising out of the ownership, maintenance, occupancy or use of an "auto":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, partners and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders. Each of the following is also a Named Insured:

**(a)** Any "subsidiary" company of such organization, including any "subsidiary" of such "subsidiary":

**1)** Existing at the inception of this Coverage Part; or

**2)** Formed or acquired on or after the inception of this Coverage Part.

**(b)** Any other company controlled and actively managed by such organization or any "subsidiary" thereof:

**1)** At the inception of this Coverage Part; or

**2)** If the control and active management thereof is acquired on or after the inception of this Coverage Part.

**(5)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**b.** Each of the following is also an insured:

**(1)** Any "employee" of yours while acting within the scope of their duties as such.

**(2)** Any person or organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

**(a)** With respect to liability arising out of the maintenance or use of that property; and

**(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such.

**2.** Only with respect to liability arising out of the ownership, maintenance, occupancy or use of an "auto":

**a.** You are an insured.

**b.** Anyone else while using with your permission an "auto" you own, hire or borrow is also an insured except:

**(1)** The owner or any other person or organization (except your "executive officers" or principals) from whom you hire or borrow an "auto", unless such persons or organizations are insureds in your "underlying insur-

Includes copyrighted material of ISO
Properties, Inc., with its permission.

ance" listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is provided by such "underlying insurance". This exception does not apply if the "auto" is a trailer or semi-trailer connected to an "auto" you own.

    **(2)** Your "employee", if the "auto" is owned by that "employee" or a member of his or her household, unless:

        **(a)** Such "employee" is an insured with respect to that "auto" in the "underlying insurance" listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is provided by such "underlying insurance"; or

        **(b)** The "bodily injury" or "property damage" is sustained by a co-"employee" of such "employee".

    **(3)** Someone using an "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos", unless that business is yours.

    **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from an "auto".

**c.** Anyone liable for the conduct of an insured described in Paragraphs **2.a.** and **b.** above is also an insured, but only if they are provided insurance coverage for such liability by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance and then only for such hazards for which coverage is provided by such "underlying insurance".

**3.** At your option and subject to the terms of this insurance, any additional insureds not addressed by Paragraphs **1.** and **2.** above covered in the "underlying insurance" listed in the Schedule of Underlying Insurance are also insureds, but only to the extent that insurance is provided for such additional insureds thereunder.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III - LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    **a.** Insureds;

    **b.** Claims made or "suits" brought; or

    **c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all damages:

    **a.** Included in the "products-completed operations hazard";

    **b.** Because of "bodily injury" by disease sustained by your "employees" arising out of and in the course of their employment by you; or

    **c.** Because of "bodily injury", "personal and advertising injury" or "property damage" not included within **a.** or **b.** above. However, this Aggregate Limit will not apply to damages which are not subject to an Aggregate Limit in the "underlying insurance".

The Aggregate Limit applies separately to **a.**, **b.** and **c.** The Aggregate Limit described in **c.** will apply only to damages not subject to **a.** or **b.** above.

**3.** Subject to the Limit of Insurance described in **2.c.** above:

    **a.** Only in the event that "underlying insurance" specifically listed in the Schedule of Underlying Insurance provides an annual Aggregate Limit of Insurance for damages that would not be subject to **2.a.** or **b.** above that is applicable separately to each:

        **(1)** Location owned by, or rented or leased to you solely with respect to damages which are the result of a claim or "suit" for "bodily injury" or "property damage" which can be attributed to operations at only a single location, then the Aggregate Limit described in **2.c.** above applies separately to each location owned by, or rented or leased to you.

        **(2)** Of your construction projects solely with respect to damages which are the result of a claim or "suit" for "bodily injury" or "property damage" which can be attributed only to ongoing operations and only at a single construction project, then the Aggregate Limit described in **2.c.** above

applies separately to each of your construction projects.

**b.** Only with respect to the application of Limits of Insurance described in **3.a.** above, the following terms location and construction project will have the following meanings:

    **(1)** Location means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

    **(2)** Construction project means a location you do not own, rent or lease where ongoing improvements, alterations, installation, demolition or maintenance work is performed by you or on your behalf. All connected ongoing improvements, alterations, installation, demolition or maintenance work performed by you or on your behalf at the same location for the same persons or entities, no matter how often or under how many different contracts, will be deemed to be a single construction project.

**4.** Subject to the limits described in **2.** and **3.** above, the Each Occurrence Limit is the most we will pay for the "ultimate net loss":

**a.** In excess of the applicable limits of "underlying insurance"; or

**b.** If an "occurrence" is not covered by "underlying insurance", but covered by the terms and conditions of this Coverage Part,

Because of all "bodily injury", "personal and advertising injury" and "property damage" arising out of any one "occurrence".

We will not pay more than the Limit of Insurance shown in this Coverage Part's Declarations for each "occurrence" because any Personal Umbrella Liability Policy(ies) is / are attached to this policy.

**5.** Subject to the limits described in **2., 3.** and **4.** above and to the terms and conditions of the "underlying insurance":

**a.** If the limits of "underlying insurance" have been reduced by payment of claims, this Coverage Part will continue in force as excess of the reduced "underlying insurance"; or

**b.** If the limits of "underlying insurance" have been exhausted by payment of claims, this Coverage Part will continue in force as "underlying insurance".

**6.** The Limits of Insurance of this Coverage Part apply separately to each "coverage term".

**SECTION IV - CONDITIONS**

**1. Appeals**

If the insured or any insurer who provides the applicable "underlying insurance" elects not to appeal a judgment which exceeds the "underlying limit", we may elect to do so at our own expense. We shall be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall this provision increase our liability beyond:

**a.** Our applicable Limits of Insurance for all "ultimate net loss";

**b.** Our applicable Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments**; and

**c.** The expense of such appeal.

**2. Audit**

If this Coverage Part is subject to Audit, as indicated in the Declarations, then the following Condition applies:

**a.** The premium shown in the Premium Computation Endorsement as Advance Premium is a deposit premium. At the close of each audit period, we will compute the earned premium for that period. If:

    **(1)** The earned premium is less than the deposit premium, we will return the excess to the first Named Insured; or

    **(2)** The earned premium is greater than the deposit premium, the difference will be due and payable to us by the first Named Insured upon notice from us. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

However, in no event will the earned premium be less than the Minimum Premium stated in the Premium Computation Endorsement.

**b.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**3. Bankruptcy**

Bankruptcy or insolvency of the insured or the insured's estate shall not relieve us of any obligations under this Coverage Part.

Includes copyrighted material of ISO Properties, Inc., with its permission.

**4. Duties in the Event of Occurrence, Claim or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim or "suit". To the extent possible, notice should include:

(1) How, when and where the "occurrence" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence".

This requirement applies only when the "occurrence" is known to an "authorized representative".

**b.** If a claim is made or "suit" is brought against any insured that is likely to involve this Coverage Part, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

This requirement will not be considered breached unless the breach occurs after such claim or "suit" is known to an "authorized representative".

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**5. First Named Insured**

The person or organization first named in the Declarations will act on behalf of all other insureds where indicated in this Coverage Part.

**6. Legal Action Against Us and Loss Payments**

**a.** No legal action may be brought against us unless there has been full compliance with all the terms of this Coverage Part nor until the amount of the insured's obligation to pay has been finally determined as provided below. No person or organization has any right under this Coverage Part to bring us into any action to determine the liability of the insured.

**b.** We shall be liable for payment of the "ultimate net loss" for any "occurrence" to which this Coverage Part applies:

(1) For "occurrences" not covered by "underlying insurance"; or

(2) In excess of the "underlying limit" applicable to the "occurrence" only after the insurers who provide the applicable "underlying insurance" have paid or become obligated to pay the amount of the "underlying limit" applicable to the "occurrence".

Our payment will be made following final determination of the amount of the insured's obligation to pay either by final judgment against the insured or by written agreement with the insured, the claimant, the underlying insurers and us.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the policy period, we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

Will be considered as included until the end of the current policy period. We will make no additional premium charge for this additional coverage during the interim.

**8. Maintenance of Underlying Insurance**

**a.** While this Coverage Part is in effect, the insured shall maintain in force the "underlying insurance" listed in the Schedule of Underlying Insurance as collectible insurance. The terms, conditions and endorsements of "underlying insurance" will not materially change and renewals or replacements of "underlying insurance" will not be more restrictive in coverage.

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**b.** Limits of "underlying insurance" will not be reduced, except for any reduction or exhaustion in the aggregate limits of insurance due to payment of claims which are in accordance with **SECTION I - COVERAGE**, **A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

**c.** In the event you fail or neglect to maintain "underlying insurance" as required, this Coverage Part will apply as though such "underlying insurance" was in force and collectible at the time a claim is presented to us which is in accordance with **SECTION I - COVERAGE**, **A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

**d.** The limits of "underlying insurance" shall be deemed applicable, regardless of any defense which the insurer who provides the "underlying insurance" may assert because of the insured's failure to comply with any Condition of the policy or the inability of the insurer to pay by reason of bankruptcy or insolvency.

**9.   Other Insurance**

This insurance is excess over, and shall not contribute with any other insurance, whether primary, excess, contingent or on any other basis.  This condition will not apply to insurance specifically written as excess over this Coverage Part.

**10.  Premium**

The premium for this Coverage Part shall be as stated in the Declarations.  The advance and anniversary premiums are not subject to adjustment, except as stated in the Declarations, or as stated in an endorsement issued by us to form a part of this Coverage Part.

You shall maintain records of such information as is necessary for premium computation, and shall, if requested by us, send copies of such records to us at the end of the "coverage term" and at such times during the policy period as we may direct.

**11.  Representations**

**a.** By acceptance of this Coverage Part, you agree that the statements in the Declarations are your agreements and representations, that this Coverage Part is issued in reliance upon the truth of such representations and that this Coverage Part embodies all agreements existing between you and us or any of our agents relating to this insurance.

**b.** However, to the extent that the following applies in the "underlying insurance" listed specifically in the Schedule of Un-

derlying Insurance, it will also apply to this Coverage Part:

Based on our reliance upon your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of this Coverage Part, we will not reject coverage under this Coverage Part based solely on such failure.

**12.  Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**13.  Transfer of Rights of Recovery Against Others to Us**

**a.** If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**b.** Any recoveries shall be applied as follows:

**(1)** First, we will reimburse anyone, including the insured, the amounts actually paid by them that were in excess of our payments;

**(2)** Next, we will be reimbursed to the extent of our actual payment; and

**(3)** Lastly, any amounts left after meeting the obligations outlined in **(1)** and **(2)** above will be distributed to anyone else known to us at the time a recovery is made and who is legally entitled to such recovery.

Expenses incurred in the recovery shall be apportioned among all interests in the ratio of their respective recoveries as finally settled.  If there is no recovery as a result of our attempts, we shall bear all of the recovery expenses.

**c.** If prior to an "occurrence" to which this Coverage Part would apply, you and the issuer of your applicable "underlying insurance" listed specifically in the Schedule of Underlying Insurance waive any right of recovery against a person or organization for injury or damage, we will

Includes copyrighted material of ISO
Properties, Inc., with its permission.

also waive any rights we may have against such person or organization.

**14. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.  "Advertisement" includes a publicity article.  For the purposes of this definition:

    a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b.  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an "advertisement".

2.  "Authorized representative" means:

    a.  If you are:

        (1) An individual, you and your spouse are "authorized representatives".

        (2) A partnership or joint venture, your members, your partners, and their spouses are "authorized representatives".

        (3) A limited liability company, your members and your managers are "authorized representatives".

        (4) An organization other than a partnership, joint venture or limited liability company, your "executive officers" and directors are "authorized representatives".  Provided you are not a publicly traded organization, your stockholders are also "authorized representatives".

        (5) A trust, your trustees are "authorized representatives".

    b.  Your "employees" assigned to manage your insurance program, or assigned to give or receive notice of an "occurrence", claim or "suit" are also "authorized representatives".

3.  "Auto" means:

    a.  Any land motor vehicle, trailer or semi-trailer designed for travel on public roads; or

    b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

    "Auto" does not include "mobile equipment".

4.  "Bodily injury" means bodily harm or injury, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury, including care, loss of services or death resulting from any of these at any time.

5.  "Coverage term" means the following individual increment, or if a multi-year policy period, increments, of time, which comprise the policy period of this Coverage Part:

    a.  The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year policy period, each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms".  The last "coverage term" ends at 12:00 AM standard time at your mailing address shown in the Declarations on the earlier of:

        (1) The day the policy period shown in the Declarations ends; or

        (2) The day the policy to which this Coverage Part is attached is terminated or cancelled.

    b.  However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

6.  "Coverage territory" means anywhere.

7.  "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

8.  "Employee" includes a "leased worker".  "Employee" does not include a "temporary worker".

9.  "Executive officer" means a person holding any of the officer positions created by your

Includes copyrighted material of ISO Properties, Inc., with its permission.

charter, constitution, by-laws or any similar governing document.

**10.** "Hostile fire" means one that becomes uncontrollable or breaks out from where it was intended to be.

**11.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement,

if such property can be restored to use by:

    **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.** Your fulfilling the terms of the contract or agreement.

**12.** "Insured contract" means:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" by fire or explosion to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.** A sidetrack agreement;

    **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

    **e.** An elevator maintenance agreement;

    **f.** That part of any other contract or agreement pertaining to your business, other than a contract or agreement pertaining to the rental or lease of any "auto", (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal and advertising injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

    **g.** That part of any contract or agreement entered into, as part of your business,

pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

Paragraphs **f.** and **g.** do not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury", "property damage" or "personal and advertising injury" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing. However, if such liability is insured by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, this Paragraph **(1)** shall not apply for such hazards for which insurance coverage is afforded by such "underlying insurance";

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in Paragraph **(2)** above and supervisory, inspection, architectural or engineering activities;

**(4)** That indemnifies an advertising, public relations or media consulting firm for "personal and advertising injury" arising out of the planning, execution or failure to execute marketing communications programs. Marketing communications programs include but are not limited to comprehensive marketing campaigns; consumer, trade and corporate advertising for

Includes copyrighted material of ISO
Properties, Inc., with its permission.

all media; media planning, buying, monitoring and analysis; direct mail; promotion; sales materials; design; presentations; point-of-sale materials; market research; public relations and new product development;

**(5)** Under which the insured, if an advertising, public relations or media consulting firm, assumes liability for "personal and advertising injury" arising out of the insured's rendering or failure to render professional services, including those services listed in Paragraph **(4)**, above;

**(6)** That indemnifies a web-site designer or content provider, or Internet search, access, content or service provider for injury or damage arising out of the planning, execution or failure to execute Internet services. Internet Services include but are not limited to design, production, distribution, maintenance and administration of web-sites and web-banners; hosting web-sites; registering domain names; registering with search engines; marketing analysis; and providing access to the Internet or other similar networks;

**(7)** Under which the insured, if a web-site designer or content provider, or Internet search, access, content or service provider, assumes liability for injury or damage arising out of the insured's rendering or failure to render Internet services, including those listed in Paragraph **(6)**, above;

**(8)** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

**(9)** That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of an "auto" over a route or territory that person or organization is authorized to serve by public authority.

**13.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" includes supervisors furnished to you by the labor leasing firm. "Leased worker" does not include a "temporary worker".

**14.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**15.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

Includes copyrighted material of ISO Properties, Inc., with its permission.

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**16.** "Occurrence" means:

**a.** An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or

**b.** An offense that results in "personal and advertising injury".

All damages arising from the same accident, continuous or repeated exposure to substantially the same general harmful conditions, act or offense shall be deemed to arise from one "occurrence" regardless of:

**(1)** The frequency of repetition;

**(2)** The number or kind of media used; or

**(3)** The number of claimants.

**17.** "Personal and advertising injury" means injury, including "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** Abuse of process;

**d.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**e.** Defamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's

or organization's goods, products or services;

**f.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**g.** The use of another's advertising idea in your "advertisement";

**h.** Infringing upon another's copyright, trade dress or slogan in your "advertisement"; or

**i.** Discrimination, unless insurance coverage therefor is prohibited by law or statute.

**18.** "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include, but are not limited to, substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:

**a.** The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or

**b.** The insured uses, generates or produces the "pollutant".

**19.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the site has been completed, if your contract calls for work at more than one site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another

Includes copyrighted material of ISO Properties, Inc., with its permission.

contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**20.** "Property damage" means:

**a.** Physical injury to or destruction of tangible property including all resulting loss of use. All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21.** "Subsidiary" means any organization in which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly, in any combination, by one or more of the Named Insureds.

**22.** "Suit" means a civil proceeding in which money damages because of "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such money damages are claimed and to which the insured must submit or does submit with our consent;

**b.** Any other alternative dispute resolution proceeding in which such money damages are claimed and to which the insured submits with our consent; or

**c.** An appeal of a civil proceeding.

**23.** "Temporary worker" means a person who is furnished to you to:

**a.** Substitute for a permanent "employee" on leave; or

**b.** Meet seasonal or short-term workload conditions.

**24.** "Ultimate net loss" means the sum actually paid or payable in the settlement or satisfaction of the insured's legal obligation for damages, covered by this insurance, either by adjudication or compromise. "Ultimate net loss" does not include Defense and Supplementary Payments as described in **SECTION I - COVERAGE, C. Defense and Supplementary Payments** of this Coverage Part.

**25.** "Underlying insurance" means the insurance listed in the Schedule of Underlying Insurance and the insurance available to the insured under all other insurance policies applicable to the "occurrence". "Underlying insurance" also includes any type of self-insurance or alternative method by which the insured arranges for funding of legal liabilities that affords coverage that this Coverage Part covers.

**26.** "Underlying limit" means the total of the applicable limits of all "underlying insurance" less the amount, if any, by which the applicable limit of the applicable policy listed in the Schedule of Underlying Insurance has been reduced solely by payment of loss resulting from claims which are in accordance with **SECTION I - COVERAGE**, **A. Insuring Agreement**, Paragraph **2.** of this Coverage Part.

**27.** "Workplace" means that place and during such hours to which the "employee" sustaining injury was assigned by you, or any other person or entity acting on your behalf, to work on the date of "occurrence".

**28.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

Includes copyrighted material of ISO Properties, Inc., with its permission.

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**29.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

Includes copyrighted material of ISO Properties, Inc., with its permission.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**

**A.** **SECTION I - COVERAGE, B. Exclusions** is modified to add the following:

This insurance does not apply to:

**1.** Any liability:

   **a.** With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **b.** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(1)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(2)** the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**2.** Any liability resulting from the "hazardous properties" of "nuclear material", if

   **a.** The "nuclear material" **(1)** is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or **(2)** has been discharged or dispersed therefrom,

   **b.** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

   **c.** The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territo-ries or possessions or Canada, this Exclusion **c.** applies only to "property damage" to such "nuclear facility" and any property thereat.

**B.** **SECTION V - DEFINITIONS** is hereby modified to add the following definitions:

**1.** "Hazardous properties" include radioactive, toxic or explosive properties;

**2.** "Nuclear material" means "source material", "special nuclear material" or "by-product material";

**3.** "Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**4.** "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

**5.** "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

**6.** "Nuclear facility" means:

   **a.** Any "nuclear reactor";

   **b.** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", **(3)** or handling, processing or packaging "waste";

   **c.** Any equipment or device used for the processing, fabricating or alloying of "special nuclear materials", if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

Includes copyrighted material of ISO Properties, Inc., with its permission.

**d.** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**7.** "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**8.** "Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of ISO Properties, Inc., with its permission.

# IMPORTANT NOTICE TO POLICYHOLDERS REGARDING OHIO EXCESS <u>UN</u>INSURED AND <u>UNDER</u>INSURED MOTORIST COVERAGE

**A.  PURPOSE**

The purpose of this notice is to explain that you can choose to purchase Excess Uninsured and Underinsured Motorist Bodily Injury insurance:

- at a limit that is equal to the umbrella or excess policy limit of insurance;
- at a limit that is lower than the umbrella or excess policy limit of insurance; or
- reject Excess Uninsured and Underinsured Motorist Bodily Injury insurance entirely.

**B.  WHAT IS EXCESS UNINSURED AND UNDERINSURED MOTORIST BODILY INJURY INSURANCE?**

Excess Uninsured and Underinsured Motorist Bodily Injury Coverage provides money damages for bodily injury, sickness, or disease, including death, that you are legally entitled to recover from the owner or operator of:

1. A motor vehicle for which no bodily injury liability coverage applies at the time of the accident.

2. An underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle for which coverage applies, but the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable for the accident are less than the limits of your uninsured and underinsured motorist coverage.

3. A motor vehicle which is a hit-and-run vehicle and whose operator or owner cannot be identified. Independent corroborative evidence is required in a hit-and-run situation.

The coverage provided under Excess Uninsured and Underinsured Motorist Coverage is excess over any primary Uninsured and Underinsured Motorist Coverage you have purchased.

Please be aware that any summaries of coverage contained in this notice are necessarily general in nature and not meant to replace the coverage description provided in the Ohio Excess Uninsured Motorist Coverage forms filed and used by The Cincinnati Insurance Company, The Cincinnati Casualty Company and The Cincinnati Indemnity Company in Ohio. These coverage forms contain specific descriptions, definitions, exclusions and conditions as allowed by Ohio law and approved by the Ohio Superintendent of Insurance. Copies of these forms are available upon request.

**Please discuss with your insurance agent any questions you may have about the coverage described in this notice and your coverage options.**

US 4074 OH 10 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLLUTANT EXCLUSION - OTHER THAN AUTO

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified as follows:

Exclusion **17. Pollutant - Other Than Auto** (Exclusion **1.q.** in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made) is hereby deleted and replaced by the following:

**Pollutant - Other Than Auto**

This insurance does not apply to:

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, emission or escape of "pollutants":

  **(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

  **(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  **(3)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

  **(4)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

Subparagraphs **a.(1)** and **a.(4)** do not apply:

  **(a)** To "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

  **(b)** If insurance is provided to the insured by "underlying insurance" specifically listed in the Schedule of Underlying Insurance at the "underlying limit" scheduled, but only to the extent "bodily injury" or "property damage" coverage is provided by that "underlying insurance" specifically listed in the Schedule of Underlying Insurance and subject to all its terms and conditions.

  **(5)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, "pollutants".

**b.** "Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape emission of "pollutants" at any time.

**c.** Any loss, cost or expense arising out of any:

  **(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

  **(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

  **d.** Any liability caused by "pollutants" excluded by "underlying insurance".

Includes copyrighted material of ISO Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRODUCTS-COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SCHEDULE**

**Description of Premises and Operations:**

FOOD SERVICES

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

**1.** On, from or in connection with the use of any premises described in the Schedule, or

**2.** In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in **SECTION V - DEFINITIONS** is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY - WITH LIMITED BODILY INJURY EXCEPTION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to delete Exclusion **10. Electronic Data** in its entirety and replace it with the following:

This insurance does not apply to:

**10. Access or Disclosure of Confidential or Personal Information and Data-Related Liability**

Any liability arising out of:

**a.** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**b.** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **a.** or **b.** above.

However, this exclusion does not apply:

**(1)** To damages because of "bodily injury", unless Paragraph **a.** above applies; and

**(2)** When such insurance is provided by valid and collectible "underlying insurance" listed in the Schedule of Underlying Insurance, or would have been provided by such listed "underlying insurance" except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such "underlying insurance", unless otherwise excluded by this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNINSURED / UNDERINSURED MOTORIST EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

Any liability or obligation to any insured or anyone else under any uninsured motorist, underinsured motorist, automobile no-fault or first party personal injury law.

US 336 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIQUOR LIABILITY LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:  Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

Any liability for which any insured may be held liable by reason of:

**a.**   Causing or contributing to the intoxication of any person;

**b.**   The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**c.**   Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

If such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, this exclusion shall not apply for such hazards for which coverage is afforded by such "underlying insurance".

Includes copyrighted material of ISO
Properties, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS - LIMITATION

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only: Subparagraph **1.**) is modified to add the following:

This insurance does not apply to:

Any liability arising out of the ownership, maintenance, occupancy, operation, use, "loading or unloading" of any land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law, unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance", unless otherwise excluded by this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFIT LIABILITY

This endorsement modifies insurance provided under the following:

> **COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
> **PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

This policy is modified to add the following:

**I.**   **SECTION I - COVERAGE, A. Insuring Agreement(s)** is modified to add the following:

**EMPLOYEE BENEFIT LIABILITY:**

We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages because of any negligent act, error or omission of the insured or any other person for whose acts the insured is legally liable arising out of the administration of the insured's employee benefit programs.

This insurance applies only to negligent acts, errors or omissions:

**a.**   Whose damages are in excess of the "underlying insurance" provided by an Employee Benefit Liability policy listed in the Schedule of Underlying Insurance; and

**b.**   Which occur during the policy period.

**II.**   **SECTION I - COVERAGE, B. Exclusions** (and in the Professional Umbrella Liability Coverage Part and the Professional Umbrella Liability Coverage Part - Claims-Made only:   Subparagraph **1.**) is modified to add the following exclusion:

This insurance does not apply to:

Any liability arising out of employee benefit programs unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance".

**US 407 12 04**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OFFICE OF FOREIGN ASSETS CONTROL (OFAC)
# COMPLIANCE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART**
**PROFESSIONAL UMBRELLA LIABILITY COVERAGE PART - CLAIMS-MADE**

**SECTION - IV CONDITIONS** is amended to include the following:

**Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**US 4098 04 10**

# THE CINCINNATI INSURANCE COMPANY
A Stock Insurance Company

# CINCINNATI DATA DEFENDER™ COVERAGE PART DECLARATIONS

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Attached to and forming part of POLICY NUMBER: ECP 055 77 79     Effective Date 11-04-2019

Named Insured is the same as it appears in the Common Policy Declarations unless another entry is made here.

**Retroactive Date:  11-04-2019**

## Limits of Insurance and Deductible

| | Insuring Agreement | Annual Aggregate | Sublimit | | Deductible |
|---|---|---|---|---|---|
| A | Response Expenses | $50,000 | | | $1,000 |
| | | | Forensic IT Review | $25,000 | |
| | | | Legal Review | $25,000 | |
| | | | PR Services | $25,000 | |
| B | Defense and Liability | $50,000 | | | $1,000 |
| | | | Regulatory Fines and Penalties | $25,000 | |
| | | | PCI Fines and Penalties | $25,000 | |
| C | Identity Recovery | $25,000 | | | $250 |
| | | | Lost Wages and Child and Elder Care | $5,000 | |
| | | | Mental Health Counseling | $1,000 | |
| | | | Miscellaneous Unnamed Costs | $1,000 | |

| TOTAL ANNUAL PREMIUM | $143 |
|---|---|

| Optional Supplemental Extended Reporting Period - Term: | Optional Supplemental Extended Reporting Period - Premium: |
|---|---|
| 1 YEAR | 28 |
| 2 YEAR | 56 |
| 3 YEAR | 74 |
| 4 YEAR | 93 |
| 5 YEAR | 102 |
| 6 YEAR | 111 |

FORMS AND/OR ENDORSEMENTS APPLICABLE TO THIS COVERAGE PART:

HC102    01/18 CINCINNATI DATA DEFENDER™ COVERAGE FORM

HC427OH  01/16 OHIO CHANGES - LOSS INFORMATION

HC 502 01 18

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

### TABLE OF CONTENTS

**Coverage Part Provision:**           **Begins on Page:**

Preamble ........................................................................................................................3

**SECTION I - COVERAGES** .........................................................................................3

**A. Insuring Agreements** ............................................................................................3

     1. Insuring Agreement A - Response Expenses ........................................3
     2. Insuring Agreement B - Defense and Liability .......................................5
     3. Insuring Agreement C - Identity Recovery ............................................5

**B. Exclusions** ..............................................................................................................5

     1. Applicable to Insuring Agreements **A** and **B** ..........................................5

         a. Contractual Liability .......................................................................5
         b. Criminal Investigations or Proceedings ......................................5
         c. Deficiency Correction ....................................................................5
         d. Extortion .........................................................................................6
         e. Fraudulent, Dishonest or Criminal Acts .....................................6
         f. Non-monetary Relief .....................................................................6
         g. Previously Reported Data Compromises .....................................6
         h. Prior Data Compromises ...............................................................6
         i. Prior or Pending Litigation ...........................................................6
         j. Reckless Disregard ........................................................................6
         k. Uninsurable ....................................................................................6
         l. Willful Complicity ...........................................................................6

     2. Applicable to Insuring Agreement **C** .......................................................6

         a. Fraudulent, Dishonest or Criminal Acts .....................................6
         b. Professional or Business Identity ................................................6
         c. Unreported Identity Theft ..............................................................6

     3. Applicable to Insuring Agreements **A**, **B** and **C** .....................................6

         a. Nuclear ............................................................................................6
         b. War ...................................................................................................6

**SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE** .....................................7

**SECTION III - DEFENSE AND SETTLEMENT** ...........................................................8

**SECTION IV - CONDITIONS** ......................................................................................8

     1. Bankruptcy .............................................................................................8
     2. Due Diligence .........................................................................................8
     3. Duties in the Event of a Claim, Regulatory Proceeding or Loss .........9
     4. Help Line ...............................................................................................10
     5. Legal Action Against Us .....................................................................10
     6. Legal Advice .........................................................................................10
     7. Liberalization .......................................................................................10
     8. Office of Foreign Assets Control (OFAC) Compliance ......................11
     9. Other Insurance ...................................................................................11
     10. Pre-Notification Consultation .............................................................11
     11. Representations ...................................................................................11
     12. Separation of Insureds ........................................................................11
     13. Service Providers .................................................................................11
     14. Services ................................................................................................11
     15. Subrogation ..........................................................................................12
     16. Valuation - Settlement .........................................................................12
     17. When We Do Not Renew ......................................................................12

## TABLE OF CONTENTS (CONT'D)

**Coverage Part Provision:**                                                                        **Begins on Page:**

**SECTION V - EXTENDED REPORTING PERIODS**................................................................12

**SECTION VI - DEFINITIONS**................................................................13

    **1.** "Affected individual"................................................................13
    **2.** "Authorized representative"................................................................13
    **3.** "Claim"................................................................13
    **4.** "Coverage term"................................................................13
    **5.** "Coverage territory"................................................................14
    **6.** "Data compromise liability"................................................................14
    **7.** "Defense costs"................................................................14
    **8.** "Employee"................................................................14
    **9.** "Executive"................................................................15
    **10.** "Identity recovery case manager"................................................................15
    **11.** "Identity recovery expenses"................................................................15
    **12.** "Identity recovery insured"................................................................16
    **13.** "Identity theft"................................................................16
    **14.** "Insured"................................................................16
    **15.** "Loss"................................................................16
    **16.** "Named insured"................................................................16
    **17.** "Personal data compromise"................................................................16
    **18.** "Personally identifying information"................................................................17
    **19.** "Personally sensitive information"................................................................17
    **20.** "Policy period"................................................................17
    **21.** "Regulatory proceeding"................................................................17

# CINCINNATI DATA DEFENDER™ COVERAGE FORM

**THIS COVERAGE PART PROVIDES CLAIMS-MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD" OR ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF INSURANCE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE. IN NO EVENT WILL WE BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF INSURANCE. READ THE ENTIRE POLICY CAREFULLY.**

Various provisions in this Coverage Part restrict coverage. Read the entire Coverage Part carefully to determine rights, duties and what is and is not covered.

Throughout this Coverage Part the words "you" and "your" refer to the "named insured" shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VI** - **Definitions**.

## SECTION I - COVERAGES

### A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which an Aggregate Limit of Insurance is shown in the Declarations:

**1. Insuring Agreement A - Response Expenses**

**a.** Coverage under Insuring Agreement **A** - Response Expenses applies only if all of the following conditions are met:

**(1)** There has been a "personal data compromise"; and

**(2)** Such "personal data compromise" is first discovered by you during the "coverage term"; and

**(3)** Such "personal data compromise" took place in the "coverage territory"; and

**(4)** Such "personal data compromise" is reported to us within 60 days after the date it is first discovered by you.

**b.** If the conditions listed in **a.** above have been met, then we will provide coverage for the following expenses when they arise directly from the "personal data compromise" described in **a.** above and are necessary and reasonable. Coverages **(4)** and **(5)** apply only if there has been a notification of the "personal data compromise" to "affected individuals" as covered under coverage **(3)**.

**(1) Forensic IT Review**

Professional information technologies review if needed to determine, within the constraints of what is possible and reasonable, the nature and extent of the "personal data compromise" and the number and identities of the "affected individuals".

This does not include costs to analyze, research or determine any of the following:

**(a)** Vulnerabilities in systems, procedures or physical security;

**(b)** Compliance with PCI or other industry security standards; or

**(c)** The nature or extent of loss or damage to data that is not "personally identifying information" or "personally sensitive information".

If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under Forensic IT Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(2) Legal Review**

Professional legal counsel review of the "personal data compromise" and how you should best respond to it. If there is reasonable cause to suspect that a covered "personal data compromise" may have occurred, we will pay for costs covered under

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Legal Review, even if it is eventually determined that there was no covered "personal data compromise". However, once it is determined that there was no covered "personal data compromise", we will not pay for any further costs.

**(3) Notification to Affected Individuals**

We will pay your necessary and reasonable costs to provide notification of the "personal data compromise" to "affected individuals".

**(4) Services to Affected Individuals**

We will pay your necessary and reasonable costs to provide the following services to "affected individuals":

**(a)** The following services apply to any "personal data compromise".

**1)** Informational Materials

A packet of loss prevention and customer support information.

**2)** Help Line

A toll-free telephone line for "affected individuals" with questions about the "personal data compromise". Where applicable, the line can also be used to request additional services as listed in **(b)1)** and **2)** below.

Note, calls by "affected individuals" or their representatives to the Help Line do not constitute the making of a "claim" under Insuring Agreement **B** - Defense and Liability.

**(b)** The following additional services apply to "personal data compromise" events involving "personally identifying information".

**1)** Credit Report and Monitoring

A credit report and an electronic service automatically monitoring for activities affecting an individual's credit records. This service is subject to the "affected individual" enrolling for this service with the designated service provider.

**2)** Identity Restoration Case Management

As respects any "affected individual" who is or appears to be a victim of "identity theft" that may reasonably have arisen from the "personal data compromise", the services of an identity restoration professional who will assist that "affected individual" through the process of correcting credit and other records and, within the constraints of what is possible and reasonable, restoring control over his or her personal identity.

**(5) PR Services**

We will pay the necessary and reasonable fees and expenses you incur, with our prior written consent, for a professional public relations firm review of and response to the potential impact of the "personal data compromise" on your business relationships. We will only pay for such fees and expenses when such a public relations firm review and response is reasonably necessary to avert or mitigate material damage to your business relationships from the "personal data compromise".

Such fees and expenses include costs to implement public relations recommendations of such public relations firm. However, when such recommendations include advertising and special promotions designed to retain your relationship with "affected individuals", we will not pay for promotions:

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(a)** Provided to any of your "executives" or "employees"; or

**(b)** Costing more than $25 per "affected individual".

**2. Insuring Agreement B - Defense and Liability**

**a.** Coverage under Insuring Agreement **B** - Defense and Liability applies only if all of the following conditions are met:

**(1)** During the "coverage term" or any applicable Extended Reporting Period, you first receive notice of a "claim" or "regulatory proceeding" which arises from a "personal data compromise" that:

**(a)** Took place on or after the Retroactive Date shown in the Declarations and before the end of the "policy period";

**(b)** Took place in the "coverage territory"; and

**(c)** Was submitted to us and covered under Insuring Agreement **A** - Response Expenses; and

**(2)** Such "claim" or "regulatory proceeding" is reported to us as soon as practicable, but in no event more than 60 days after the date it is first received by you.

**b.** If the conditions listed in **a.** above have been met, then we will pay on behalf of the "insured" "defense costs" and "data compromise liability" directly arising from the "claim" or "regulatory proceeding".

**c.** All "claims" or "regulatory proceedings" caused by a single "personal data compromise" will be deemed to have been made at the time that notice of the first of those "claims" or "regulatory proceedings" is received by you.

**3. Insuring Agreement C - Identity Recovery**

**a.** Coverage under Insuring Agreement **C** - Identity Recovery applies only if all of the following conditions are met:

**(1)** There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this Coverage Part; and

**(2)** Such "identity theft" is first discovered by the "identity recovery insured" during the "coverage term"; and

**(3)** Such "identity theft" took place in the "coverage territory"; and

**(4)** Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured".

**b.** If the conditions listed in **a.** above have been met, then we will provide the following to the "identity recovery insured":

**(1)** Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

**(2)** Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft".

**B. Exclusions**

**1.** Applicable to Insuring Agreements **A** and **B** only:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

**a. Contractual Liability**

An "insured's" assumption of liability by contract or agreement, whether oral or written. However, this exclusion shall not apply to:

**(1)** Any liability that an "insured" would have incurred in the absence of such contract or agreement; or

**(2)** Any PCI fines or penalties explicitly covered under Insuring Agreement **B** – Defense and Liability.

**b. Criminal Investigations or Proceedings**

Any criminal investigations or proceedings.

**c. Deficiency Correction**

Costs to research or correct any deficiency. This includes, but is not limited to, any deficiency in your sys-

tems, procedures or physical security that may have contributed to a "personal data compromise".

### d. Extortion

Any extortion or blackmail. This includes, but is not limited to, ransom payments and private security assistance.

### e. Fraudulent, Dishonest or Criminal Acts

Any criminal, fraudulent or dishonest act, error or omission, or any intentional or knowing violation of the law by the "insured".

### f. Non-monetary Relief

That part of any "claim" seeking any non-monetary relief.

### g. Previously Reported Data Compromises

The same facts alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any insurance policy of which this Coverage Part is a renewal or replacement.

### h. Prior Data Compromises

Any "personal data compromise" first occurring before the Retroactive Date shown in the Declarations, or any "claim" arising from a "personal data compromise" that first occurred prior to the Retroactive Date shown in the Declarations.

### i. Prior or Pending Litigation

Any "claim" or other proceeding against an "insured" which was pending or existed prior to the "coverage term", or arising out of the same or substantially the same facts, circumstances or allegations which are the subject of, or the basis for, such "claim" or other proceeding.

### j. Reckless Disregard

Your reckless disregard for the security of "personally identifying information" or "personally sensitive information" in your care, custody or control.

### k. Uninsurable

Any amount not insurable under applicable law.

### l. Willful Complicity

The "insured's" intentional or willful complicity in a "personal data compromise".

2. Applicable to Insuring Agreement **C** only:

This insurance does not apply to:

### a. Fraudulent, Dishonest or Criminal Acts

Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any "authorized representative" of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

### b. Professional or Business Identity

The theft of a professional or business identity.

### c. Unreported Identity Theft

An "identity theft" that is not reported in writing to the police.

3. Applicable to Insuring Agreements **A, B** and **C**:

This insurance does not apply to "loss" or "claims" based upon, attributable to or arising out of:

### a. Nuclear

Nuclear reaction or radiation or radioactive contamination, however caused.

### b. War

(1) War, including undeclared or civil war or civil unrest;

(2) Warlike action by military force, including action hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by government authority in hindering or defending against any of these.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

## SECTION II - LIMITS OF INSURANCE AND DEDUCTIBLE

**A.** Insuring Agreement **A** - Response Expenses:

**1.** The most we will pay under Insuring Agreement **A** - Response Expenses is the Response Expenses Limit of Insurance stated in the Declarations.

**2.** The Response Expenses Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for the total of all "loss" covered under Insuring Agreement **A** - Response Expenses arising out of all "personal data compromise" events which are first discovered by you during the "coverage term". This limit applies regardless of the number of "personal data compromise" events discovered by you during that period.

**3.** A "personal data compromise" may be first discovered by you in one "coverage term" but cause covered "loss" in one or more subsequent "coverage terms". If so, all covered "loss" arising from such "personal data compromise" will be subject to the Response Expenses Limit of Insurance applicable to the "coverage term" when the "personal data compromise" was first discovered by you.

**4.** The most we will pay under Insuring Agreement **A** - Response Expenses for Forensic IT Review, Legal Review and PR Services coverages for "loss" arising from any one "personal data compromise" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.** PR Services coverage is also subject to a limit per "affected individual" as described in Section **I., A.1.b.(5)** PR Services.

**5.** Coverage for Services to "affected individuals" is limited to costs to provide such services for a period of up to one year from the date of the notification to the "affected individuals" or the period required by law, whichever is longer. Notwithstanding the foregoing, coverage for Identity Restoration Case Management services initiated within such period may continue for a period of up to one year from the date such Identity Restoration Case Management services are initiated.

**6.** Response Expenses coverage is subject to the Response Expenses Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "personal data compromise" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount in order to respond effectively to a "personal data compromise" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**B.** Insuring Agreement **B** - Defense and Liability:

**1.** The most we will pay under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) is the Limit of Insurance stated in the Declarations.

**2.** The Insuring Agreement **B** - Defense and Liability Limit of Insurance is an annual aggregate limit. This amount is the most we will pay for all "loss" covered under Insuring Agreement **B** - Defense and Liability (other than post-judgment interest) arising out of all "claims".

**3.** The most we will pay under Insuring Agreement **B** – Defense and Liability for "data compromise liability" and "defense costs" related to Regulatory Fines and Penalties and PCI Fines and Penalties coverages arising from any one "claim" or "regulatory proceeding" is the applicable sublimit for each of those coverages stated in the Declarations. These sublimits are part of, and not in addition to, the Aggregate Limit of Insurance referenced in Paragraph **2.**

**4.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods (if applicable) shall be part of, and not in addition to, the Defense and Liability Limit for the immediately preceding "coverage term".

**5.** The Insuring Agreement **B** - Defense and Liability coverage is subject to the Deductible stated in the Declarations. You shall be responsible for such deductible amount as respects each "claim" or "regulatory proceeding" covered under this Coverage Part. We may, at our option, pay any part or all of the deductible amount to defend or effect settlement of any "claim", "loss" or "regulatory proceeding" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

**C.** Insuring Agreement **C** - Identity Recovery:

**1.** Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the Limit of Insurance available for "identity recovery expenses".

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

2. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Annual Aggregate Limit of Insurance stated in the Declarations per "identity recovery insured". Regardless of the number of "identity theft" incidents, this limit is the most we will pay for the total of all "loss" arising out of all "identity thefts" suffered by one "identity recovery insured" which are first discovered by the "identity recovery insured" during the "coverage term". If an "identity theft" is first discovered in one "coverage term" and continues into other "coverage terms", all "loss" arising from such "identity theft" will be subject to the aggregate Limit of Insurance applicable to the "coverage term" when the "identity theft" was first discovered.

3. Legal costs as provided under Item **d.** of the definition of "identity recovery expenses" are part of, and not in addition to, the aggregate limit described in Paragraph **2.**

4. Item **e.** (Lost Wages) and Item **f.** (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

5. Item **g.** (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate limit described in Paragraph **2.** Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

6. Item **h.** (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to the sublimit stated in the Declarations. This sublimit is part of, and not in addition to, the aggregate Limit of Insurance described in Paragraph **2.** Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured".

7. Coverage under Insuring Agreement **C** - Identity Recovery is subject to the Identity Recovery Deductible stated in the Declarations. Each "identity recovery insured" shall be responsible for such deductible amount only once during each "coverage term". This deductible applies only to "identity recovery expenses".

The Limits of Insurance apply separately to each "coverage term".

## SECTION III - DEFENSE AND SETTLEMENT

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

1. We will have the right and duty to select counsel and defend the "insured" against any "claim" or "regulatory proceeding" covered by Insuring Agreement **B** - Defense and Liability, regardless of whether the allegations of such "claim" or "regulatory proceeding" are groundless, false or fraudulent. However, we shall have no duty to defend the "insured" against any "claim" or "regulatory proceeding" seeking damages or other relief not insured by Insuring Agreement **B** - Defense and Liability.

2. We may, with your written consent, make any settlement of a "claim" or "regulatory proceeding" which we deem reasonable. If you withhold consent to such settlement, our liability for all "loss" resulting from such "claim" will not exceed the amount for which we could have settled such "claim" or "regulatory proceeding" plus "defense costs" incurred as of the date we proposed such settlement in writing to you.

3. We shall not be obligated to pay any "loss", or to defend or continue to defend any "claim" or "regulatory proceeding", after the Insuring Agreement **B** - Defense and Liability Limit of Insurance has been exhausted.

4. We shall pay all interest on that amount of any judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance which accrues:

   a. After entry of judgment; and

   b. Before we pay, offer to pay or deposit in court that part of the judgment within the Insuring Agreement **B** - Defense and Liability Limit of Insurance or, in any case, before we pay or offer to pay the entire Insuring Agreement **B** - Defense and Liability Limit of Insurance.

   These interest payments shall be in addition to and not part of the Defense and Liability Limit.

## SECTION IV – CONDITIONS

1. **Bankruptcy**

   Your bankruptcy, or the bankruptcy of your estate if you are a sole proprietor, will not relieve us of our obligations under this Coverage Part.

2. **Due Diligence**

   You agree to use due diligence to prevent and mitigate "loss" covered under this Coverage Part. This includes, but is not limited to, complying with, and requiring your vendors to

comply with, reasonable and industry-accepted protocols for:

**a.** Providing and maintaining appropriate physical security for your premises, computer systems and hard copy files;

**b.** Providing and maintaining appropriate computer and Internet security;

**c.** Maintaining and updating at appropriate intervals backups of computer data;

**d.** Protecting transactions, such as processing credit card, debit card and check payments; and

**e.** Appropriate disposal of files containing "personally identifying information" or "personally sensitive information", including shredding hard copy files and destroying physical media used to store electronic data.

**3.** **Duties in the Event of a Claim, Regulatory Proceeding or Loss**

**a.** If, during the "coverage term", the "insured" first becomes aware of any circumstance that could reasonably be expected to give rise to a "claim" or "regulatory proceeding", the "insured" may give written notice to us. The notice must be made as soon as practicable, but in no event more than 60 days after the date the circumstance is first discovered by the "insured", must be made during the "coverage term" and must include:

    **(1)** The specific details, including the date, of the circumstance;

    **(2)** The alleged injuries or damage sustained or which may be sustained;

    **(3)** The names of potential claimants; and

    **(4)** The manner in which the "insured" first became aware of the circumstance.

Any subsequent "claim" or "regulatory proceeding" arising out of any circumstance which is the subject of such a written notice will be deemed to have been made at the time written notice in compliance with these requirements was first received by us.

**b.** If a "claim" or "regulatory proceeding" is brought against any "insured", you must:

    **(1)** Immediately record the specifics of the "claim" or "regulatory proceeding" and the date received; and

    **(2)** Provide us with written notice, as soon as practicable, but in no event

more than 60 days after the date the "claim" or "regulatory proceeding" is first received by you.

    **(3)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "regulatory proceeding";

    **(4)** Authorize us to obtain records and other information;

    **(5)** Cooperate with us in the investigation, settlement or defense of the "claim" or "regulatory proceeding";

    **(6)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to you because of "loss" or "defense costs" to which this insurance may also apply; and

    **(7)** Not take any action, or fail to take any required action, that prejudices your rights or our rights with respect to such "claim" or "regulatory proceeding".

**c.** In the event of a "personal data compromise" covered under Insuring Agreement **A** - Response Expenses, you must see that the following are done:

    **(1)** Notify the police if a law may have been broken.

    **(2)** Notify us as soon as practicable, but in no event more than 60 days after the "personal data compromise". Include a description of any property involved.

    **(3)** As soon as possible, give us a description of how, when and where the "personal data compromise" occurred.

    **(4)** As often as may be reasonably required, permit us to:

        **(a)** Inspect the property proving the "personal data compromise";

        **(b)** Examine your books, records, electronic media and records and hardware;

        **(c)** Take samples of damaged and undamaged property for inspection, testing and analysis; and

        **(d)** Make copies from your books, records, electronic media and records and hardware.

    **(5)** Send us signed, sworn proof of loss containing the information we request

to investigate the "personal data compromise". You must do this within 60 days after our request. We will supply you with the necessary forms.

**(6)** Cooperate with us in the investigation of the "personal data compromise" or settlement of the "loss".

**(7)** If you intend to continue your business, you must resume all or part of your operations as quickly as possible.

**(8)** Make no statement that will assume any obligation or admit any liability, for any loss for which we may be liable, without our prior written consent.

**(9)** Promptly send us any legal papers or notices received concerning the "personal data compromise" or "loss".

**d.** We may examine any "insured" under oath, while not in the presence of any other "insured" and at such times as may be reasonably required, about any matter relating to this insurance or the "claim" or "loss", including an "insured's" books and records. In the event of an examination, an "insured's" answers must be signed.

**e.** No "insured" may, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior written consent.

**4. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-866-219-9831**. The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

**a.** Information and advice for how to respond to a possible "identity theft"; and

**b.** Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records

that support his or her claim for "identity recovery expenses".

**5. Legal Action Against Us**

**a.** No person or organization has a right:

**(1)** To join us as a party or otherwise bring us into a suit asking for damages from an "insured"; or

**(2)** To sue us under this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an "insured"; but we will not be liable for damages that are not payable under this Coverage Part, or that are in excess of the applicable Aggregate Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the first "named insured" and the claimant or the claimant's legal representative.

**b.** You may not bring any legal action against us involving "loss":

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of "loss" with us; and

**(3)** Unless brought within 2 years from the date you reported the "claim" or "loss" to us.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**6. Legal Advice**

We are not your legal advisor. Our determination of what is or is not covered under this Coverage Part does not represent advice or counsel from us about what you should or should not do.

**7. Liberalization**

If, within 60 days prior to the beginning of this Coverage Part or during the "policy period", we make any changes to any forms or endorsements of this Coverage Part for which there is currently no separate premium charge, and that change provides more coverage than this Coverage Part, the change will automatically apply to this Coverage Part at the latter of:

**a.** The date we implemented the change in your state; or

**b.** The date this Coverage Part became effective; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

will be considered as included until the end of the current "policy period". We will make no additional premium charge for this additional coverage during the interim.

**8. Office of Foreign Assets Control (OFAC) Compliance**

Whenever insurance coverage provided by this policy would be in violation of any United States economic or trade sanctions, such insurance coverage shall be null and void.

**9. Other Insurance**

**a.** If any covered "loss" is covered by any other valid policy, then this Coverage Part shall apply only in excess of the amount of any deductible, retention and limit of insurance under such other policy whether such other policy is stated to be primary, contributory, excess, contingent or otherwise, unless such other policy is written specifically excess of this Coverage Part by reference in such other policy to this policy's policy number.

**b.** When this insurance is excess, we will have no duty to defend the "insured" against any "claim" if any other insurer has a duty to defend the "insured" against that "claim". But we will have the right to associate in the defense and control of any "claim" that we reasonably believe is likely to involve the insurance provided under this Coverage Part. If no other insurer defends, we will undertake to do so, but we will be entitled to the "insured's" rights against all those other insurers.

**10. Pre-Notification Consultation**

You agree to consult with us prior to the issuance of notification to "affected individuals". We assume no responsibility under this Coverage Part for any services promised to "affected individuals" without our prior agreement. If possible, this pre-notification consultation will also include the designated service provider(s) as agreed to under Condition **12.** Service Providers. You must provide the following at our pre-notification consultation with you:

**a.** The exact list of "affected individuals" to be notified, including contact information.

**b.** Information about the "personal data compromise" that may appropriately be communicated with "affected individuals".

**c.** The scope of services that you desire for the "affected individuals". For example, coverage may be structured to provide fewer services in order to make those services available to more "affected individuals" without exceeding the available Response Expenses Limit.

**11. Representations**

You represent that all information and statements contained in any application or questionnaire submitted in connection with this Coverage Part are true, accurate and complete. All such information and statements are the basis for our issuing this Coverage Part and shall be considered as incorporated into and shall constitute a part of this Coverage Part. Misrepresentation or omission of any material fact may be grounds for the rescission of this Coverage Part.

**12. Separation of Insureds**

Except with respect to the applicable Limit of Insurance, and any rights or duties specifically assigned in this Coverage Part or the policy to which it is attached, to the first "named insured", this insurance applies separately to each "insured" against whom a "claim" is made.

**13. Service Providers**

**a.** We will only pay under this Coverage Part for services that are provided by service providers approved by us. You must obtain our prior approval for any service provider whose expenses you want covered under this Coverage Part. We will not unreasonably withhold such approval.

**b.** Prior to the Pre-Notification Consultation described in the Pre-Notification Consultation Condition above, you must come to agreement with us regarding the service provider(s) to be used for the Notification to Affected Individuals and Services to Affected Individuals. We will suggest a service provider. If you prefer to use an alternate service provider, our coverage is subject to the following limitations:

**(1)** Such alternate service provider must be approved by us;

**(2)** Such alternate service provider must provide services that are reasonably equivalent or superior in both kind and quality to the services that would have been provided by the service provider we had suggested; and

**(3)** Our payment for services provided by any alternate service provider will not exceed the amount that we would have paid using the service provider we had suggested.

**14. Services**

The following conditions apply as respects any services provided to you or any "affected indi-

vidual" or "identity recovery insured" by us, our designees or any service firm paid for in whole or in part under this Coverage Part:

**a.** The effectiveness of such services depends on the cooperation and assistance of you, "affected individuals" and "identity recovery insureds".

**b.** All services may not be available or applicable to all individuals. For example, "affected individuals" and "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

**c.** We do not warrant or guarantee that the services will end or eliminate all problems associated with the covered events.

**d.** Except for the services of an "identity recovery case manager" under Insuring Agreement **C** - Identity Recovery, which we will provide directly, you will have a direct relationship with the professional service firms paid for in whole or in part under this Coverage Part. Those firms work for you.

## 15. Subrogation

With respect to any payment under this Coverage Part on behalf of any "insured", we shall be subrogated to the "insured's" rights of recovery to the extent of such payment. The "insured" shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable us to bring suit in the "insured's" name. Any recoveries, less the cost of obtaining them, shall be distributed as follows:

**a.** To you, until you are reimbursed for any "loss" you sustain that exceeds the sum of the applicable Aggregate Limit of Insurance and the Deductible Amount, if any;

**b.** Then to us, until we are reimbursed for the payment under this Coverage Part;

**c.** Then to you, until you are reimbursed for that part of the payment equal to the Deductible Amount, if any.

## 16. Valuation - Settlement

All premiums, Limits of Insurance, Deductible Amounts, "loss" and any other monetary amounts under this Coverage Part are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is agreed to or another component of "loss" under this Coverage Part is expressed in any currency other than United States of America dollars, payment under this Coverage Part shall be made in United States dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is entered, settlement amount is agreed upon, or the other component of "loss" is due, respectively.

## 17. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first "named insured" shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - EXTENDED REPORTING PERIODS

The provisions contained within this Section apply only to Insuring Agreement **B** - Defense and Liability.

**1.** You shall have the right to the Extended Reporting Periods described in this section, in the event that:

**a.** You or we cancel this Coverage Part;

**b.** You or we refuse to renew this Coverage Part; or

**c.** We renew this Coverage Part on other than a claims-made basis or with a retroactive date later than the Retroactive Date shown in the Declarations.

**2.** If an event as specified in Paragraph **1.** has occurred, you shall have the right to the following:

**a.** An Automatic Extended Reporting Period of 90 days after the effective date of cancellation or nonrenewal at no additional premium in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Automatic Extended Reporting Period for any "personal data compromise" occurring on or after the Retroactive Date shown on the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part; and

**b.** Upon payment of the additional premium stated in the Declarations, a Supplemental Extended Reporting Period for the term stated in the Supplemental Extended Reporting Period Endorsement will be provided immediately following the effective date of cancellation or nonrenewal in which to give to us written notice of a "claim" or "regulatory proceeding" of which you first receive notice during said Supplemental Extended Reporting Period

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

for any "personal data compromise" occurring on or after the Retroactive Date shown in the Declarations and before the end of the "policy period" and which is otherwise covered by this Coverage Part.

To obtain the Supplemental Extended Reporting Period, you must request it in writing and pay the additional premium due, within 60 days of the effective date of cancellation or nonrenewal. The additional premium for the Supplemental Extended Reporting Period shall be fully earned at the inception of the Supplemental Extended Reporting Period. If we do not receive the written request as required, you may not exercise this right at a later date.

**c.** The Defense and Liability Limit of Insurance for the Extended Reporting Periods shall be part of, and not in addition to, the Defense and Liability Limit of Insurance for the immediately preceding "coverage term".

## SECTION VI - DEFINITIONS

**1.** "Affected individual" means any person whose "personally identifying information" or "personally sensitive information" is lost, stolen, accidentally released or accidentally published by a "personal data compromise" covered under this Coverage Part. This definition is subject to the following provisions:

**a.** "Affected individual" does not include any business or organization. Only an individual person may be an "affected individual".

**b.** An "affected individual" may reside anywhere in the world.

**2.** "Authorized representative" means a person or entity authorized by law or contract to act on behalf of an "identity recovery insured".

**3.** "Claim":

**a.** Means:

**(1)** A civil proceeding in which it is alleged that the claimant suffered damages arising from:

**(a)** A "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses section of this Coverage Part and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses; or

**(b)** The violation of a governmental statute or regulation arising from a "personal data compromise" that was covered under Insuring Agreement **A** - Response Expenses and in connection with which you submitted a claim to us and provided notifications and services to "affected individuals" in consultation with us pursuant to Insuring Agreement **A** - Response Expenses.

**(2)** "Claim" includes:

**(a)** An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent;

**(b)** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

**(c)** A written demand for money, when such demand could reasonably result in a civil proceeding as described in this definition.

**b.** Does not include any demand or action brought by or on behalf of someone who is:

**(1)** Your "executive";

**(2)** Your owner or part-owner; or

**(3)** A holder of your securities;

in their capacity as such, whether directly, derivatively, or by class action. "Claim" will include proceedings brought by such individuals in their capacity as "affected individuals", but only to the extent that the damages claimed are the same as would apply to any other "affected individual".

**4.** "Coverage term" means the following individual increment, or if a multi-year "policy period", increments, of time, which comprise the "policy period" of this Coverage Part:

**a.** The year commencing on the Effective Date of this Coverage Part at 12:01 AM standard time at your mailing address shown in the Declarations, and if a multi-year "policy period", each consecutive annual period thereafter, or portion thereof if any period is for a period of less than 12 months, constitute individual "coverage terms". The last "coverage term" ends at 12:00 AM standard time at your mailing

**HC 102 01 18**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**Page 13 of 17**

address shown in the Declarations on the earlier of:

**(1)** The day the "policy period" shown in the Declarations ends; or

**(2)** The day the policy to which this Coverage Part is attached is terminated or cancelled.

**b.** However, if after the issuance of this Coverage Part, any "coverage term" is extended for an additional period of less than 12 months, that additional period of time will be deemed to be part of the last preceding "coverage term".

**5.** "Coverage territory" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses, anywhere in the world.

**b.** With respect to Insuring Agreement **B** - Defense and Liability, anywhere in the world, however, "claims" must be brought in the United States (including its territories and possessions), Puerto Rico or Canada.

**c.** With respect to Insuring Agreement **C** - Identity Recovery, anywhere in the world

**6.** "Data compromise liability":

**a.** Means the following, when they arise from a "claim" or "regulatory proceeding":

**(1)** Damages (including punitive and exemplary damages and the multiple portion of any multiplied damage award), judgments or settlements;

**(2)** Attorney's fees and other litigation costs added to that part of any judgment paid by us, when such fees and costs are awarded by law or court order; and

**(3)** Pre-judgment interest on that part of any judgment paid by us.

**b.** Also includes any Payment Card Industry (PCI) fine or penalty imposed under a contract to which you are a party when such fine or penalty arises from a "claim". PCI Fines and Penalties do not include any increased transaction costs.

**c.** Also includes any fine or penalty imposed by law, to the extent such fine or penalty is legally insurable under the law of the applicable jurisdiction when such fine or penalty arises from a "regulatory proceeding".

**d.** Does not include:

**(1)** Civil or criminal fines or penalties imposed by law, except for civil fines and penalties expressly covered under paragraphs **b.** and **c.** above;

**(2)** Taxes; or

**(3)** Matters which may be deemed uninsurable under the applicable law.

**e.** With respect to fines and penalties and punitive, exemplary and multiplied damages, the law of the jurisdiction most favorable to the insurability of those fines, penalties or damages shall control for the purpose of resolving any dispute between us and any "insured" regarding whether the fines, penalties or damages specified in this definition above are insurable under this Coverage Part, provided that such jurisdiction:

**(1)** Is where those fines, penalties or damages were awarded or imposed;

**(2)** Is where any "personal data compromise" took place for which such fines, penalties or damages were awarded or imposed;

**(3)** Is where you are incorporated or you have your principal place of business; or

**(4)** Is where we are incorporated or have our principal place of business.

**7.** "Defense costs":

**a.** Means reasonable and necessary expenses resulting solely from the investigation, defense and appeal of any "claim" or "regulatory proceeding" against an "insured". Such expenses may be incurred by us. Such expenses may include premiums for any appeal bond, attachment bond or similar bond. However, we have no obligation to apply for or furnish such bond.

**b.** Does not include the salaries or wages of your "employees" or "executives", or your loss of earnings.

**8.** "Employee" means any natural person, other than an "executive", who was, now is or will be:

**a.** Employed on a full- or part-time basis by you;

**b.** Furnished temporarily to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions;

**c.** Leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties relat-

ed to the conduct of your business, but does not mean a temporary employee as defined in Paragraph **8.b.**; or

**d.** Your volunteer worker, which includes unpaid interns.

**9.** "Executive" means any natural person who was, now is or will be:

**a.** The owner of a sole proprietorship that is a "named insured"; or

**b.** A duly elected or appointed:

**(1)** Director;

**(2)** Officer;

**(3)** Managing Partner;

**(4)** General Partner;

**(5)** Member (if a limited liability company);

**(6)** Manager (if a limited liability company); or

**(7)** Trustee,

of a "named insured".

**10.** "Identity recovery case manager" means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured". This includes, with the permission and cooperation of the "identity recovery insured", written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**11.** "Identity recovery expenses" means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft" suffered by an "identity recovery insured":

**a.** Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft".

**b.** Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft".

**c.** Costs for credit reports from established credit bureaus.

**d.** Fees and expenses for an attorney approved by us for the following:

**(1)** The defense of any civil suit brought against an "identity recovery insured".

**(2)** The removal of any civil judgment wrongfully entered against an "identity recovery insured".

**(3)** Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

**(4)** Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

**(5)** The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured".

**e.** Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self-employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

**f.** Actual costs for supervision of children or elderly or infirm relatives or dependents of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**g.** Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured".

**h.** Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft".

**(1)** Such costs include:

**(a)** Costs by the "identity recovery insured" to recover control over his or her personal identity.

**(b)** Deductibles or service fees from financial institutions.

**(2)** Such costs do not include:

**(a)** Costs to avoid, prevent or detect "identity theft" or other loss.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(b)** Money lost or stolen.

**(c)** Costs that are restricted or excluded elsewhere in this Coverage Part or policy.

**12.** "Identity recovery insured" means the following:

**a.** When the entity insured under this Coverage Part is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the "named insured".

**b.** When the "named insured" under this Coverage Part is a partnership, the "identity recovery insureds" are the current partners.

**c.** When the "named insured" under this Coverage Part is a corporation or other form of organization, other than those described in **a.** or **b.** above, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

**(1)** The chief executive of the insured entity; or

**(2)** As respects a religious institution, the senior ministerial employee.

**d.** The legally recognized spouse of any individual described in **a.**, **b.** or **c.** above.

An "identity recovery insured" must always be an individual person. The "named insured" under this Coverage Part is not an "identity recovery insured".

**13.** "Identity theft" means the fraudulent use of "personally identifying information". This includes fraudulently using such information to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

**14.** "Insured" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses any "named insured".

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** Any "named insured"; and

**(2)** Any "employee" or "executive" of a "named insured", but:

**(a)** Only for the conduct of the "named insured's" business within the scope of his or her employment or duties as an "executive"; and

**(b)** Such "employee" or "executive" shall not be an "insured" to the extent his or her actions or omissions are criminal, fraudulent, dishonest or constitute an intentional or knowing violation of the law.

**c.** With respect to Insuring Agreement **C** - Identity Recovery any "named insured".

**15.** "Loss" means:

**a.** With respect to Insuring Agreement **A** - Response Expenses:

Those expenses enumerated in Section **I**, **A.**, Paragraph **1.b.**

**b.** With respect to Insuring Agreement **B** - Defense and Liability:

**(1)** "Defense costs"; and

**(2)** "Data compromise liability".

**c.** With respect to Insuring Agreement **C** - Identity Recovery, "identity recovery expenses".

**16.** "Named insured" means the entity or entities shown in the Declarations as a Named Insured.

**17.** "Personal data compromise" means the loss, theft, accidental release or accidental publication of "personally identifying information" or "personally sensitive information" as respects one or more "affected individuals". If the loss, theft, accidental release or accidental publication involves "personally identifying information", such loss, theft, accidental release or accidental publication must result in or have the reasonable possibility of resulting in the fraudulent use of such information. This definition is subject to the following provisions:

**a.** At the time of the loss, theft, accidental release or accidental publication, the "personally identifying information" or "personally sensitive information" need not be at the insured premises but must be in the direct care, custody or control of:

**(1)** You; or

**(2)** A professional entity with which you have a direct relationship and to which you (or an "affected individual" at your direction) have turned over (directly or via a professional transmission or transportation provider) such information for storage, pro-

cessing, transmission or transportation of such information.

**b.** "Personal data compromise" includes disposal or abandonment of "personally identifying information" or "personally sensitive information" without appropriate safeguards such as shredding or destruction, subject to the following provisions:

**(1)** The failure to use appropriate safeguards must be accidental and not reckless or deliberate; and

**(2)** Such disposal or abandonment must take place during the time period for which this Coverage Part is effective.

**c.** "Personal data compromise" includes situations where there is a reasonable cause to suspect that such "personally identifying information" or "personally sensitive information" has been lost, stolen, accidentally released or accidentally published, even if there is no firm proof.

**d.** All incidents of "personal data compromise" that are discovered at the same time or arise from the same cause will be considered one "personal data compromise".

**18.** "Personally identifying information" means information, including health information, that could be used to commit fraud or other illegal activity involving the credit, access to health care or identity of an "affected individual" or "identity recovery insured". This includes, but is not limited to, Social Security numbers or account numbers.

"Personally identifying information" does not mean or include information that is otherwise available to the public, such as names and addresses.

**19.** "Personally sensitive information" means private information specific to an individual the release of which requires notification of "affected individuals" under any applicable law.

"Personally sensitive information" does not mean or include "personally identifying information".

**20.** "Policy period" means the cumulative total of each individual "coverage term" comprising the period of time from the inception date of this Coverage Part shown in the Declarations to the expiration date shown in the Declarations, or its earlier cancellation or termination date.

**21.** "Regulatory proceeding" means an investigation, demand or proceeding alleging a violation of law or regulation brought by, or on behalf of, the Federal Trade Commission, Federal Communications Commission or other administrative or regulatory agency, or any federal, state, local or foreign governmental entity in such entity's regulatory or official capacity.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES - LOSS INFORMATION

This endorsement modifies insurance provided under the following:

**CINCINNATI CYBER DEFENSE™ COVERAGE PART**
**CINCINNATI DATA DEFENDER™ COVERAGE PART**
**CINCINNATI NETWORK DEFENDER™ COVERAGE PART**

The following is added to **SECTION IV - CONDITIONS** (**SECTION V - CONDITIONS** of the Cincinnati Cyber Defense™ Coverage Part):

**Loss Information**

We shall, on request, provide to the first "named insured" loss information within 45 days of the first "named insured's" request or at the same time as any notice of cancellation or nonrenewal.

Includes copyrighted material of Insurance
Services Office, Inc., with its permission.