# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| TASTE OF BELGIUM LLC, individually and on behalf of all others similarly situated, | Judge Matthew W. McFarland |
| Plaintiff, | Case No. 1:20-cv-00357-MWM |
| v. | |
| THE CINCINNATI INSURANCE COMPANY, et al., | |
| Defendants. | |

## <u>DEFENDANTS' MOTION TO DISMISS</u>

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company and Cincinnati Financial Corporation (collectively, "Cincinnati") hereby move to dismiss plaintiff Taste of Belgium LLC's Class Action Complaint for failure to state a claim upon which relief can be granted. A Memorandum in Support of this Motion follows.

Dated: June 18, 2020

Respectfully submitted by:

**The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company and Cincinnati Financial Corporation**

By its counsel:

<u>s/ Michael K. Farrell</u>
Michael K. Farrell (Ohio Bar No. 0040941)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Phone 216-621-0200

Fax 216-696-0740
mfarrell@bakerlaw.com
Rodger L. Eckelberry (Ohio Bar No. 0071207)
BAKER & HOSTETLER LLP
200 S. Civic Center Dr., Suite 1200
Columbus, OH 43215-4260
Telephone: 614.228.1541
Facsimile: 614.462.2616
reckelberry@bakerlaw.com

Daniel G. Litchfield (*application for admission pending*)
Laurence Tooth (*application for pro hac vice pending*)
303 West Madison Street
Suite 300
Chicago, IL 60606
T: 312.781.6669 | F: 312.781.6630
Litchfield@LitchfieldCavo.com
Tooth@LitchfieldCavo.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically and will be served upon counsel of record through the Court's electronic filing system.  All other parties will be served by regular U.S. mail.

/s/ Michael K. Farrell
*Attorney for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| TASTE OF BELGIUM LLC, individually and on behalf of all others similarly situated, | Judge Matthew W. McFarland |
| Plaintiff, | Case No. 1:20-cv-00357-MWM |
| v. | |
| THE CINCINNATI INSURANCE COMPANY, et al., | |
| Defendants. | |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), The Cincinnati Insurance Company, The Cincinnati Casualty Company, the Cincinnati Indemnity Company and Cincinnati Financial Corporation (collectively, "Cincinnati") move to dismiss this case because the Plaintiff fails to state any claim for which relief may be granted. Based on the allegations of the Class Action Complaint ("Complaint") and the language of Cincinnati's policy ("the Policy"), Plaintiff cannot prove its claims.

The insurance policy at issue supplies property insurance coverage. It is designed to indemnify loss or damage to property, or loss of income related to damage to property, such as in the case of a fire or storm. Plaintiff alleges that the policy's Business Income and Civil Authority insurance coverages apply to income losses due to the pandemic. But, because they are part of a property insurance policy, these coverages protect Plaintiff only for income losses tied to direct physical loss or damage to property, not for economic loss caused by efforts to protect the public from disease. These coverages do not apply in the absence of direct physical loss to property. Yet,

Plaintiff's allegations establish that it has not sustained any direct physical loss. Rather, Plaintiff alleges that it was impacted by measures to limit the spread of Coronavirus among humans, not that there was any direct physical loss to property. Well-established Ohio law shows that Plaintiff does not allege the required direct physical loss. *See Mastellone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 2008-Ohio-311, 884 N.E.2d 1130 (8th Dist) (Stewart, J.).[1]

In addition to the requirement that there be direct physical loss to property, the Civil Authority coverage requires a government order ***prohibiting access*** to Plaintiff's premises. The orders Plaintiff cites do not do this. Rather, those orders are directed to the need to minimize person to person interaction and to keep people apart by keeping them at home.

Plaintiff has not alleged the direct physical loss to property that is required to trigger any coverage under the policy at issue. For this reason, and for the other reasons established below, Plaintiff's Complaint should be dismissed.

## I.  The Facts

### A.  Allegations of the Complaint

The Complaint includes the following allegations:

- Plaintiff owns and operates a chain of local restaurants in Southern and Central Ohio. Plaintiff purchased from Cincinnati Policy No. ECP0557779, effective from November 4, 2019 to November 4, 2020, from Cincinnati (the "Policy"). A copy of the Policy is attached to the Complaint at Exhibit A. (Compl., ECF Doc. # 1, PAGEID # 2, ¶ 2.)

- The Policy contains coverage extensions for Business Income, Extended Business Income, and Extra Expense. (Compl., ECF Doc. # 1, PAGEID # 2, ¶ 3.)

- On March 15, 2020, in direct response to the COVID-19 pandemic, Dr. Amy Acton, the Director of Ohio's Department of Health, issued an Order pursuant to Ohio Revised Code §3701.13 declaring that "Food and beverage sales are restricted to carry-out and delivery only, no on-site consumption is permitted." This Order states that "Multiple areas of the United States are experiencing "community spread" of the virus that causes COVID-19. Community spread, defined as the transmission of an illness for which the

---

[1] *Mastellone* was written by then Judge Melody J. Stewart, now Ohio Supreme Court Justice Melody Stewart.

source is unknown, means that isolation of known areas of infection is no longer enough to control spread." The order alleged is attached to the Complaint at Exhibit B. (Compl., ECF Doc. # 1, PAGEID # 2, ¶ 4.)

- One week later, on March 22, 2010, Gov. Mike DeWine announced that the Ohio Department of Health was issuing a Stay at Home order pursuant to Ohio Rev. Code § 3701.13 in response to the COVID-19 pandemic. The order required all non-essential business and operations to cease in Ohio. The order also prohibited all non-essential travel. The order alleged is attached to the Complaint at Exhibit C. (Compl., ECF Doc. # 1, PAGEID # 2, ¶ 5.)

- Because of these Orders issued by the Ohio Department of Health, Plaintiff was forced to suspend its eat in business at all of its restaurants. Although Plaintiff was able to offer limited carry out and delivery services at certain locations, other locations were, and remain, fully closed. (Compl., ECF Doc. # 1, PAGEID # 3, ¶ 6.)

- Under the Policy's "Building and Personal Property Coverage Form," Form FM 101 05 16, the Policy covers "direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." (Compl., ECF Doc. # 1, PAGEID # 5, ¶ 19.)

- The Policy defines "loss" as "accidental physical loss or accidental physical damage" and "premises" as "the Locations and Buildings described in the Declarations." (Compl., ECF Doc. # 1, PAGEID # 5, ¶ 20.)

- The Policy provides business income coverage in two separate provisions – the "Building and Personal Property Coverage Form," Form FM 101 05 16, and the "Business Income (and Extra Expense) Coverage Form," Form FA 213 05 16 – but both forms contain substantially identical provisions stating that "[w]e will pay for the actual loss of 'Business Income'. . . you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration'" as long as the "loss" is "caused by or result from" a Covered Cause of Loss. (Compl., ECF Doc. # 1, PAGEID # 5, ¶ 21.)

- Plaintiff experienced a "Covered Cause of Loss" by virtue of the March 15th and March 22nd Orders issued by the Director of Ohio's Department of Health, which denied Plaintiff the full access to and use of the premises by suspending Plaintiff's operations during a period of restoration. These Orders effectively prohibited access to Plaintiff's business locations such that employees and customers could not enter and operate the business for its intended purpose. (Compl., ECF Doc. # 1, PAGEID # 5-6, ¶ 24.)

- Plaintiff alleges that the March 15th and March 22nd Orders triggered coverage under the Business Income, Extended Business Income, Extra Expense and Civil Authority provisions of the Policy. (Compl., ECF Doc. # 1, PAGEID # 6, ¶ 26.)

- Plaintiff seeks Class Action certification. (Compl., ECF Doc. # 1, PAGEID # 7-10, ¶¶ 28-41.)

The Complaint contains three counts, all related to the Policy: 1) Declaratory Relief under the Declaratory Judgment Act (28 U.S.C. §2201, *et seq.*), Declaratory Judgment Class; 2) Breach of Contract, Damages Class; 3) Ohio Deceptive Trade Practices Act, Ohio DTPA Sub-Class. (Compl., ECF Doc. # 1, PAGEID # 11-15.)

### B. Plaintiff's Policy

Cincinnati issued Policy No. ECP 055 77 79 to TASTE OF BELGIUM LLC for the policy period November 4, 2019 to November 4, 2020. The pertinent forms in the Policy for purposes of Plaintiff's claim and Complaint, and thus for this Motion, are forms FM 101 05 16 and FA 213 05 16. (Compl., ECF Doc. # 1, PAGEID # 5, ¶ 21.) Form FM 101 05 16 is the main property coverage form. Form FA 213 05 16 extends Business Income coverage in an amount identified on the declarations page. Using the same language, these forms supply Business Income coverage and Civil Authority coverage. (Compl., ECF Doc. # 1, PAGEID # 5, ¶ 21; Doc. # 1-2, PAGEID # 63-64, 119-121.)

The requirement of "direct physical loss" is a core element in property insurance policies like the one here. For example, direct physical loss to the Plaintiff's property is a requirement for Business Income coverage:

> We will pay for the actual loss of "Business Income" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The suspension must be caused by direct "loss" to property at "premises" which are described in the Declarations and for which a "Business Income" Limit of Insurance is shown on the Declarations. The "loss" must be caused by or result from a Covered Cause of Loss.

(Compl., ECF Doc. # 1-2, PAGEID # 63.) The term "loss" is defined to mean ***physical*** loss or damage. (Compl., ECF Doc. # 1-2, PAGEID # 83.) Accordingly, direct physical loss is required for Business Income coverage.

4

The requirement of direct physical loss additionally appears in the threshold requirement that there be a Covered Cause of Loss for *any* coverage to be available:

SECTION A. COVERAGE

We will pay for direct "loss" to Covered Property at the "premises" caused by or resulting from any Covered Cause of Loss.

(Compl., ECF Doc. # 1-2, PAGEID # 48.) Covered Cause of Loss is defined as "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (Compl., ECF Doc. # 1-2, PAGEID # 50.) "Loss" is defined, in relevant part, as physical loss or physical damage. Accordingly, direct physical "Loss" is a necessary element of Covered Cause of Loss. (Compl., ECF Doc. # 1, PAGEID # 5, ¶ 19.) Therefore, because it is an element of Covered Cause of Loss, direct physical loss is an integral part of the Civil Authority coverage. (Compl., ECF Doc. # 1, PAGEID # 5, ¶ 22.)

The definition of Covered Cause of Loss refers to exclusions. But exclusions do not come into play unless there is first direct physical loss. *See Schmidt v. Travelers Indem. Co. of Am.*, 101 F. Supp. 3d 768, 776 (S.D. Ohio 2015) ("A liability insurer's obligation to its insured arises only if the claim falls within the scope of coverage. The party who seeks to recover under an insurance policy generally has the burden of demonstrating coverage under the policy and proving a loss.") (internal citation and quotations omitted). If an insured demonstrates direct physical loss is present, then exclusions may nevertheless apply. *See Murray v. Auto-Owners Ins. Co.*, 2019-Ohio-3816, ¶ 17 (Ohio Ct. App. Sept. 19, 2019) (recognizing that the insured has the burden to prove coverage under the policies and its loss, and then the insurer has the burden to prove an exclusion to coverage applies), *appeal not allowed*, 157 Ohio St. 3d 1538, 2020-Ohio-122, 137 N.E.3d 1195, ¶ 17 (2020). If there is no direct physical loss, the exclusions need not be consulted because there is no coverage

to begin with. *See, e.g.*, *Mastellone,* 175 Ohio App. 3d 23 at ¶¶ 61-69; *Zinser v. Auto-Owners Ins. Co.*, 2017-Ohio-5668, ¶ 33 (Ohio Ct. App. July 3, 2017) (Powell, J., concurring and dissenting in part).

In addition to the direct physical loss requirement that forms part of the covered cause of loss requirement, Civil Authority coverage requires that an insured suffer actual loss of Business Income caused by specific actions of a civil authority. Those civil authority orders must meet the following criteria:

(a) **Access** to the area immediately surrounding the damaged property **is prohibited** by civil authority as a result of the damage; and

(b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the **Covered Cause of Loss** that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Compl., ECF Doc. # 1-2, PAGEID # 64, 120) (emphasis added). Accordingly, Civil Authority coverage requires both direct physical loss to property other than the insured's property **and** prohibition of access to the insured's property as a result of that direct physical loss, among other things.

## Law and Argument

### I. Motion to Dismiss Standard

A motion to dismiss for failure to state a claim should be granted if, after the complaint's allegations are taken as true and all reasonable inferences are made in favor of the nonmoving party, it appears beyond a reasonable doubt that the nonmoving party cannot prove facts supporting his claim. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Parks v. Schelderer*, 2020 WL 2112160, at *2 (S.D. Ohio May 4, 2020); *Greene v. JPMorgan Chase, Nat'l Ass'n*, 2020 WL 2112277, at *1 (S.D. Ohio May 4, 2020); *Helfrich v. City of Pataskala*, 2020 WL 1853229, at *4 (S.D. Ohio Apr. 13, 2020).

Importantly, legal conclusions and other unsupported conclusions stated in the complaint may not be considered in determining a motion to dismiss. "The Court, however, does not have to 'accept unwarranted factual inferences.' A complaint 'must state more than a bare assertion of legal conclusions to survive a motion to dismiss.' Stated differently, '[a] plaintiff's [f]actual allegations must be enough to raise a right to relief above the speculative level." *See, e.g.*, *Centes v. Kirk*, 2020 WL 1140059, at *1 (S.D. Ohio Mar. 9, 2020); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *CBST Acquisition, LLC v. PNC Bank, N.A.,* 2019 WL 2603566, at *18 (S.D. Ohio June 25, 2019) ("Plaintiff has also not identified any facts supporting allegations that defendants breached any purported contract by changing the amount owed. Plaintiff cannot rely on mere legal conclusions or speculation without any supporting factual allegations to withstand a motion to dismiss. For these reasons, plaintiff's breach of contract claim should be dismissed.").

It is proper for the Court to consider the insurance Policy attached to the Complaint. *See, e.g.*, *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Write Start Early Christian Educ. Ctr., LLC v. Nat'l Fire & Marine Ins. Co.*, 2020 WL 1452018, at *4 (S.D. Ohio Mar. 25, 2020). The Policy is part of the Complaint's allegations. Where the Policy terms and the Complaint's allegations are in conflict, the terms of the Policy control. *See, e.g.*, *Thomas v. Equifax Info. Servs., LLC*, 2020 WL 1987949, at *5 (S.D. Ohio Apr. 27, 2020); *Howard Indus., Inc. v. Ace Am. Ins. Co.,* 2014 WL 978445, at *3 (S.D. Ohio Mar. 12, 2014).

## II.  There Is No Direct Physical Loss and Accordingly No Business Income Coverage

As shown, the Policy states that it only provides coverage for direct physical loss. But, the Complaint does not allege facts showing any direct physical loss. Accordingly, Plaintiff cannot

possibly prove its claim. *See Mastellone,* 175 Ohio App. 3d 23, at ¶ 68.

### A. There Is No Direct Physical Loss To Plaintiff's Premises And Thus No Business Income Coverage

*Mastellone* is directly on point. The relevant policy language in *Mastellone* was the same as that in the Cincinnati Policy; it required "direct physical loss." *Mastellone,* at ¶¶ 61–62, 175 Ohio App. 3d at 40–41, 884 N.E.2d at 1143–44. *Mastellone* holds that mold on exterior building siding did not constitute direct physical loss because it did not adversely affect the building's structural integrity. In this context, *Mastellone* rejects an argument that dark staining on the siding was physical injury, because the staining was "only temporary and did not affect the structure of the wood." The mold could be removed via cleaning, and its presence "did not alter or otherwise affect the structural integrity of the siding." *Mastellone*, 175 Ohio App. 3d 23, at ¶¶ 61–69. *Mastellone* relied on a leading insurance law treatise, which states, "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." 10A *Couch on Ins.* § 148:46 (3d Ed.1998). There was no coverage in *Mastellone*.

Similarly here, the alleged presence of the Coronavirus did not cause direct physical loss to property. The loss Plaintiff alleges is caused by the presence of the virus in our world, not by any physical damage or effect on Plaintiff's building or someone else's property. Indeed, premises where the virus has been confirmed to be present, such as hospitals, nursing homes and grocery stores, have remained open or been briefly closed and then reopened after cleaning. This is because those properties are themselves undamaged. Moreover, even if Coronavirus could cause direct physical loss to the premises, which it cannot, Plaintiff does not allege that the Coronavirus was

ever present on any of its premises. Indeed, Plaintiff admits that it continued operations at some of its premises. (Compl., ECF Doc. # 1, PAGEID # 3, ¶ 6.)

Moreover, even if present on Plaintiff's premises, the Coronavirus did not affect the structural integrity of the buildings, and it could be removed by cleaning. The Centers for Disease Control and Prevention (CDC) has instructed that the Coronavirus can be wiped off surfaces by cleaning. "The virus that causes COVID-19 can be killed if you use the right products. EPA has compiled a list of disinfectant products that can be used against COVID-19, including ready-to-use sprays, concentrates, and wipes." (*See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/2020), attached as Exhibit 1; *see also* CDC, *Cleaning and Disinfection for Households*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cleaning-disinfection.html (accessed June 15, 2020)).[2] Thus, as in *Mastellone*, even if there is actual presence of the Coronavirus, there is no direct physical loss because the virus either dies naturally in days, or it can be wiped away.

Plaintiff uses the word "physical" from time to time to insinuate direct physical loss happened. (*See* Compl., ECF Doc. # 1, PAGEID # 13, ¶¶ 55-56.) But, as shown, Plaintiff does not allege that the virus was in fact on surfaces in Plaintiff's restaurants. Instead, Plaintiff recites bare, conclusory allegations that "[t]he orders issued by the Director of Ohio's Department of Health, and those similar to those issued by the Director of Ohio's Department of Health, caused direct

---

[2] Federal courts may take judicial notice of information published on the CDC's website or websites of other government agencies. *See Black v. Columbus Pub. Sch.*, 2007 WL 2713873, at *12 (S.D. Ohio Sept. 17, 2007) (taking judicial notice of information published on CDC's website); *see also Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of CDC website); *Loucka v. Lincoln Nat'l Life Ins. Co.*, 334 F. Supp. 3d 1, 8 (D.D.C. 2018) (taking judicial notice of CDC testing criteria published on website and collecting cases). This judicial notice does not convert a motion to dismiss into one for summary judgment. *Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 794 n.5 (N.D. Ohio 2012).

physical loss and damage to Plaintiff" and that those orders "caused direct physical loss and damage to property other than Plaintiff" without specifically alleging where or how. (Compl., ECF Doc. # 1, PAGEID # 13, ¶¶ 55-56.) In essence, Plaintiff asserts generally that the Coronavirus is a physical thing, present in Ohio, and measures were taken to stop its spread. In this regard, Plaintiff conflates the virus' presence and the orders addressing it with structural, physical damage. (Compl., ECF Doc. # 1, PAGEID # 13, ¶¶ 55-56.) Also, Plaintiff's legal characterizations and arguments are not facts and thus do not stand in the way of dismissal. *Centes*, 2020 WL 1140059, at *1; *Total Benefits Planning Agency*, 552 F.3d at 434; *CBST Acquisition,* 2019 WL 2603566, at *18.

The Coronavirus, like the mold in *Mastellone*, does not physically alter the structure of property. This includes the type of property that would be in Plaintiff's premises, such as drywall or counters. Plaintiff does not allege that the virus physically altered the structure of its property. The virus can readily be cleaned using readily available household cleaners. Accordingly, there was no direct physical loss, and thus no Business Income or Extra Expense coverage.

**B.     American Case Law Is Overwhelmingly Consistent With *Mastellone***

No case, in Ohio or elsewhere, has held that the presence of a virus constitutes direct physical loss. By contrast, numerous court decisions nationwide support *Mastellone*, holding that direct physical loss requires actual, tangible, permanent, physical alteration of property. *See, e.g.*, 10A *Couch on Ins.* § 148:46 ("The requirement that the loss be 'physical,' given the ordinary definition of that term, ***is widely held*** to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.") (emphasis added).

One of the cases reaching the same conclusion as *Mastellone* is *Source Food Technology, Inc. v. U.S. Fidelity & Guarantee Co.,* 465 F.3d 834, 838 (8th Cir. 2006). There, the U.S. government imposed an embargo on the import of Canadian beef following the detection of Mad Cow Disease in Canadian cattle. Despite no evidence that *its* beef was contaminated, Source Food could not import it into the U.S. because of the embargo. It claimed lost business income under its insurance policy. That policy, like Plaintiff's, provided coverage if the suspension of business operations was "caused by ***direct physical loss to Property***." *Id.* at 835. The insured argued "that the closing of the border caused direct physical loss to its beef product because the beef product was treated as though it were physically contaminated by mad cow disease and lost its function." *Id.* at 836. The court rejected this argument: "To characterize Source Food's inability to transport its truckload of beef product across the border and sell the beef product in the United States as direct physical loss to property would render the word 'physical' meaningless." *Id.* at 838.

Similarly, *Philadelphia Parking Authority v. Federal Insurance Co.,* 385 F. Supp. 2d 280, 289 (S.D.N.Y. 2005), holds that there was no direct physical loss to an airport parking facility that had to close on September 11, 2001 due to the terrorist attacks. And, in *Crestview Country Club, Inc. v. St. Paul Guardian Insurance Co*., 321 F. Supp. 2d 260, 264 (D. Mass. 2004), there was no direct physical loss to a golf course. Rather, the modification of how a hole on the course played and was rated due to the loss of a tree did not constitute direct physical loss to the course because, "physical must be given its plain meaning – e.g., 'material.'" *See also Pentair, Inc. v. Am. Guar. & Liab. Ins. Co*., 400 F.3d 613, 616 (8th Cir. 2005); *City of Burlington v. Indem. Ins. Co. of N. Am*., 332 F.3d 38, 44 (2d Cir. 2003); *N.E. Ga. Heart Ctr., P.C. v. Phoenix Ins. Co*., 2014 WL 12480022, at *7 (N.D. Ga. May 23, 2014); *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co*., 187 Cal. App. 4th 766, 780 (2010); 10A *Couch on Ins.* § 148:46 (citing *inter alia*

*Port Auth. of N.Y.& N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226 (3d Cir. 2002); *Shirley v. Allstate Ins. Co.*, 392 F. Supp. 3d 1185 (S.D. Cal. 2019)).

Furthermore, *Social Life Magazine, Inc. v. Sentinel Insurance Co., Ltd.*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at p. 15, addressed the direct physical loss issue in a Coronavirus coverage case. *Social Life* denies a motion for preliminary injunction.[3] The principal basis for that decision is the conclusion that the virus does not cause direct physical loss to property. The virus damages lungs; not printing presses. *Social Life*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at p. 5. *Social Life* holds that "this kind of business interruption needs some damage to the property to prohibit you from going." 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at p. 15.

Additionally, as demonstrated, the CDC has instructed that the Coronavirus can be removed via cleaning. *Mastellone* recognizes that there is no direct physical loss when a substance can be removed via cleaning. In this regard, *Mastellone* is again consistent with U.S. law generally. *See, e.g.*, *Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974, at *9 (S.D. Fla. June 11, 2018) ("[W]ith regards to Plaintiff's initial claim for cleaning, cleaning is not considered direct physical loss."); *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F. Supp. 2d 705, 710 (E.D. Mich. 2010) (a complete cleaning of a ventilation system was not a direct physical loss), *aff'd*, 475 F. App'x. 569 (6th Cir. 2012).

---

[3] No written opinion was issued in *Social Life*, but a copy of the hearing transcript is available through the Federal Court's filing system, PACER. A file-stamped copy of the preliminary injunction hearing transcript reflecting the Court's ruling and rationale is attached as Exhibit 2. Federal courts may take judicial notice of "proceedings in other courts of record." *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 972 n. 5 (6th Cir. 2005) (quoting *Rodic v. Thistledown Racing Club, Inc.*, 615 F.3d 736, 738 (6th Cir. 1980); *see also Landt v. Farley*, 2012 WL 4473209, at *1 n.2 (N.D. Ohio Sept. 26, 2012) (taking notice of filings on PACER in a different lawsuit).

**C. The Lack of a Virus Exclusion Is Irrelevant Because There Is No Direct Physical Loss**

Plaintiff alleges that the Policy does not contain "any exclusion for losses by a virus or governmental orders issued to prevent the spread of a virus." (Compl., ECF Doc. # 1, PAGEID # 5, ¶ 23.) This assertion is a red-herring and irrelevant. An exclusion can become relevant only if it is first determined that there is direct physical loss. *Murray*, 2019-Ohio-3816, at ¶ 17. Thus, if there is no direct physical loss in the first place, the existence or absence of a virus exclusion is irrelevant. For example, in *Ward General Insurance Services., Inc. v. Employers Fire Insurance Co.*, 114 Cal. App. 4th 548, 555 (2003), a computer database crashed. Because there was no direct physical loss, it was "unnecessary to analyze the various exclusions and their application to this case." Similarly, in *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 333 (S.D.N.Y. 2014), a law firm closed because of a power outage. The loss of power was not a direct physical loss. Accordingly, it was unnecessary to decide whether a flood exclusion applied. *See also Zinser*, 2017-Ohio-5668, at ¶ 33; *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 9, 751 N.Y.S.2d 4, 10 (2002).

In sum, there is no coverage here because there is no direct physical loss. For that reason, no exclusion is needed.

**III.    There Is No Civil Authority Coverage**

As established, the Policy's Civil Authority coverage only applies if there is a Covered Cause of Loss, meaning direct physical loss, to property other than the Plaintiff's property. Even then, there is only coverage if the following additional requirements are met: a) access to the area immediately surrounding the damaged property is ***prohibited*** by civil authority as a result of the damage; and b) the action of civil authority is taken in response to dangerous physical conditions resulting from the direct physical loss. (Compl., ECF Doc. # 1-2, PAGEID # 64, 120.) "[L]osses

13

due to curfew and other such restrictions are not generally recoverable. . . . If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable." 11A *Couch on Ins.* § 167:15.

### A.     There Is No Direct Physical Loss To Other Property

Cincinnati has demonstrated that the plain language of the policy states that direct physical loss to property other than the Plaintiff's property is necessary. Courts nationwide agree. *See United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006); *Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,* 2020 WL 886120, at *8 (D.S.C. Feb. 24, 2020); *Not Home Alone, Inc. v. Phila. Indem. Ins. Co.,* 2011 WL 13214381, at *6 (E.D. Tex. Mar. 30, 2011); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.,* 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008). *Mastellone* is the bellwether case regarding direct physical loss. It holds that there must be structural alteration for the coverage to apply.

Just as the Coronavirus is not causing direct physical loss to Plaintiff's premises, it is not causing direct physical loss to other property. The Complaint fails to identify any direct physical loss, anywhere. Rather, it alleges that the State of Ohio ordered non-essential businesses to close and then concludes without support or example that the orders "caused direct physical loss and damage to property other than Plaintiff . . . ." (Compl., ECF Doc. # 1, PAGEID # 2, ¶ 5; # 13, ¶ 56.) This was done to keep people separated and thus to retard the spread of the virus. (*See* Compl. ECF Doc. # 1-3, PAGEID # 324, ¶ 7 ("The overriding goal of this Order is to minimize the in-person interaction which is the primary means of transmission [of the Coronavirus]."); Compl. ECF Doc. # 1-4, PAGEID # 328 (issuing order pursuant to authority "to make special orders…for preventing the spread of contagious or infectious diseases")). No facts are alleged that

14

demonstrate that these things happened because of direct physical loss to anybody's property. Instead, the closings protected the public from human to human transmission of the virus.

After properly disregarding Plaintiff's legal conclusions, there are no alleged facts asserting any direct physical loss. There are no alleged facts showing any change or alteration of anybody's physical property by the Coronavirus. There are, however, facts showing that the Coronavirus can be removed via cleaning. As established, this is the marker of something that is *not* direct physical loss. Accordingly, there is no direct physical loss to any other property as is required for Civil Authority coverage.

## B.     The Requisite Prohibition of Access Is Lacking

The Civil Authority coverage requires that access to Plaintiff's premises be ***prohibited*** by an order of Civil Authority. But, the orders Plaintiff attaches at Exhibits B and C to its Complaint do not prohibit access to Plaintiff's premises. In fact, Plaintiff admits some of its locations remained open. (Compl., ECF Doc. # 1, PAGEID # 3, ¶ 6.) Based on the lack of such a prohibition here, there is no Civil Authority coverage.

This legal mandate is established by the law nationally. There is no Civil Authority coverage when a government order keeps people confined to their homes. *See Syufy Enters. v. Home Ins. Co. of Indiana*, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995); *Brothers, Inc. v. Liberty Mut. Fire Ins. Co.,* 268 A.2d 611, 614 (D.C. 1970). In *Syufy*, there was a curfew to prevent rioting. Still, there was no civil authority coverage because access to the insured premises, a movie theater, was not prohibited. In *Brothers*, a curfew was ordered because of riots. However, although the curfew prevented a restaurant's customers from being out and about, it did not prohibit access to the restaurant's premises.

Furthermore, access to premises must be prohibited, not just limited. *See Schultz Furriers, Inc. v Travelers Cas. Ins. Co. of Am.*, 2015 WL 13547667, at *6 (N.J. Super. L. July 24, 2015); *Ski Shawnee, Inc. v. Commonwealth Ins. Co.,* 2010 WL 2696782, at *4 (M.D. Pa. July 6, 2010). In *Schultz*, there were serious traffic issues in lower Manhattan following Superstorm Sandy. Nevertheless, there was no civil authority coverage because the public could access the insured store. In *Ski Shawnee*, a bridge repair hindered or dissuaded the majority of customers from visiting a ski resort. *Ski Shawnee* holds that did not constitute prohibition of access to the premises. *See also Goldstein v Trumbull Ins. Co.*, 2016 WL 1324197, at *12 (N.Y. Sup. Ct. Apr. 5, 2016); *TMC Stores, Inc. v. Federated Mut. Ins. Co.*, 2005 WL 1331700, at *4 (Minn. Ct. App. June 7, 2005).

Because the Complaint's allegations admit access was not prohibited and that Plaintiff continued carry-out services, the Civil Authority coverage does not apply.

## IV.    There Is No Claim for Deceptive Trade Practices

Plaintiff's claim under Ohio's Unfair and Deceptive Trade Practices Act ("ODTPA"), Ohio Rev. Code § 4165.01 *et seq.*, also must be dismissed. First, Plaintiff does not have standing to pursue it and makes no factual allegations to support it. As a consumer, Plaintiff lacks standing to assert claims under the ODTPA. *See Holbrook v. Louisiana-Pacific Corp.*, 533 F. App'x. 493, 498 (6th Cir. 2013) (holding putative class representative lacked standing as consumer to pursue ODTPA claim); *Adams v. Antonelli College*, 304 F. Supp. 3d 656, 661-64 (S.D. Ohio 2018) (following majority of Ohio state and federal courts to find that individual plaintiff of putative class action lacked standing to pursue ODTPA claim); *Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 687 (S.D. Ohio 2018) (same); *Lester v. Wow Car Co.*, 2014 WL 2567087, at *12 (S.D. Ohio June 6, 2014), *aff'd*, 601 F. App'x 399 (6th Cir. 2015); *CitiMortgage, Inc. v. Crawford,* 934 F. Supp. 2d 942, 950 (S.D. Ohio 2013); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 873

(S.D. Ohio 2012); *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 698 (S.D. Ohio 2012); *see also Albright v. Sherwin-Williams Co.*, 2019 WL 5307068, at *15 (N.D. Ohio Jan. 29, 2019) (collecting cases); *Hamilton v. Ulta Beauty, Inc.*, 2018 WL 3093527, at *2 (N.D. Ohio, 2018) (dismissing consumer's claims for lack of standing and denying motion to certify question of standing to Ohio Supreme Court); *Phillips v. Philip Morris Companies Inc.*, 290 F.R.D. 476, 482 (N.D. Ohio 2013) ("The vast majority of federal courts and all lower state courts to address the issue have concluded that relief under the DTPA is not available to consumers."); *Robins v. Global Fitness Holdings, LLC,* 838 F. Supp. 2d 631, 649–650 (N.D. Ohio 2012) (same); *Michelson v. Volkswagen Aktiengesellschaft*, 99 N.E.3d 475, 479–80 n.2 (Ohio Ct. App. 2018) (affirming that consumers do not have standing to file suit under the ODTPA), *appeal not allowed*, 153 Ohio St. 3d 1486, 108 N.E.3d 84; *Hamilton v. Ball*, 2014-Ohio-1118, 7 N.E.3d 1241, ¶ 33 (Ohio Ct. App. Mar. 19, 2014); *Dawson v. Blockbuster, Inc.*, 2006-Ohio-1240, ¶¶ 21–25 (Ohio Ct. App. Mar. 16, 2006). Plaintiff is a customer of Cincinnati Insurance Company and thus is a consumer. (Compl., ECF Doc. # 1, PAGEID # 2, ¶ 2.) Under Ohio law, Plaintiff lacks standing to assert its ODTPA claim.

Second, even if Plaintiff ***did*** have standing to pursue a claim under the ODTPA, this Court should still dismiss Plaintiff's claim because the Complaint alleges no facts to support the bare assertion that Cincinnati committed some kind of deceptive act under the ODTPA. (Compl., ECF Doc. # 1, PAGEID # 14, ¶ 62.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Enduring Wellness, LLC v. Michael F. Roizen*, 2020-Ohio-3180, ¶¶ 24, 50-54 (Ohio Ct. App. June 4, 2020) (holding that even under notice-pleading standard, a cause of action

must be factually supported and courts need not accept bare assertions of legal conclusions and dismissing ODTPA claim).

Here, Plaintiff incorporates by reference its earlier allegations of insurance coverage and breach of contract. It, merely recites the language of the statute it tries to invoke. (Compl., ECF Doc. # 1, PAGEID # 14-15, ¶¶ 60-66) Plaintiff fails to allege any facts about any allegedly deceptive practice. For example, there are no allegations that Cincinnati "passes off goods or services of those of another" or who the "another" would be. *Cf.* Ohio Rev. Code § 4165.02(A)(1) *with* Compl. ECF No. 1, PAGEID # 14, ¶ 62. Plaintiffs' threadbare allegations are insufficient as a matter of law and must be dismissed.

Moreover, the facts alleged concerning construction of the Policy and breach of contract do not establish ODTPA violations. "The [ODTPA] deals with misrepresentations regarding corporate affiliations and does not pertain to other types of misrepresentation claims." *Bergmoser v. Smart Document Sols., LLC,* 268 F. App'x 392, 396 (6th Cir. 2008) (citing *Leventhal & Assoc., Inc. v. Thomson Cent. Ohio*, 714 N.E. 2d 418, 424-25 (Ohio Ct. App. 1998); *see Adams*, 304 F. Supp. 3d at 663 (finding that ODTPA analysis is same as federal Lanham Act analysis); *Eberhard v. Old Republic Nat'l Title Ins. Co.*, 2014 WL 12758386, at *6 (N.D. Ohio Feb. 19, 2014) (dismissing ODTPA claims because the alleged misrepresentation did not misrepresent corporate affiliations). What Plaintiff alleges simply is not what the ODTPA concerns. *See Mulch Mfg., Inc. v. Advanced Polymer Solutions, LLC*, 947 F. Supp. 2d 841, 865 (S.D. Ohio 2013) ("In considering claims under the ODTPA, the ultimate question is generally whether a defendants actions are likely to confuse customers as to the "origin of the goods offered by the parties."); *Leventhal*, 714 N.E.2d at 423–24 (equating violation of ODTPA section 4165.02(A) as "palming off" or "passing off" which "occurs when a defendant attempts to bring about consumer confusion by causing

18

consumers to purchase its products under the mistaken belief that they are in fact purchasing the

plaintiff's goods"). Any attempt by Plaintiff to amend the ODTPA claim would be futile and

should be denied. *Bergmoser*, 268 F. App'x at 396. Additionally, if this Court dismisses the

declaratory judgment and breach of contract counts, or finds for Cincinnati on those claims, then

the ODTPA claim must also necessarily fail for lack of misrepresentation. *See Dawson v. Giant

Eagle, Inc.*, 2010 WL 973474, at *3 (Ohio Ct. App. Mar. 18, 2010) (affirming summary judgment

where it was undisputed that advertisements were "complete, accurate and not misleading").

Finally, the complaint establishes that there is no misrepresentation regarding the origin or

source of the insurance coverage afforded by the Policy. Although Plaintiff named other, affiliated

companies as defendants, the Policy is attached to the complaint. It shows that the company issuing

the policy is The Cincinnati Insurance Company. (Compl., ECF Doc. # 1-2, PAGEID # 28, 44.)

The Plaintiff does name as defendants companies affiliated with The Cincinnati Insurance

Company. As established below, those non-issuing companies should be dismissed in any event.

## V. The Cincinnati Casualty Company, The Cincinnati Indemnity Company and Cincinnati Financial Corporation Should Be Dismissed

As shown in the Policy, the Policy is a contract between Plaintiff and defendant The

Cincinnati Insurance Company. The other named defendants are not parties to that agreement.

Moreover, because the Policy is part of Plaintiff's complaint, the complaint shows that there is no

misrepresentation regarding the source of the insurance coverage at issue here. "It is axiomatic

that the plaintiff must show that the defendant was a party to the contract before proceeding on a

breach of contract theory." *Ohio Nat'l Life Assur. Corp. v. Crescent Fin. & Ins. Agency, Inc.*, 2016

WL 659153, at *2 (S.D. Ohio Feb. 18, 2016) (granting motion to dismiss breach of contract claim

where defendant was "not a party to the Agreement, so Plaintiffs' breach of contract claim against

him fails as a matter of law"); *see also Rorig v. Thiemann*, 2007 WL 2071909, at *9-11 (S.D. Ohio

July 17, 2007) (dismissing claims for breach of contract and breach of duty of good faith and fair dealing where defendant was not a party to the contract). Accordingly, defendants The Cincinnati Casualty Company, The Cincinnati Indemnity Company and Cincinnati Financial Corporation should be dismissed.

## **CONCLUSION**

There is no possible coverage because the coronavirus does not cause direct physical loss and Plaintiff does not allege otherwise. For this reason, and the others established above, Plaintiff has not alleged any claim on which relief can be granted. Accordingly, Cincinnati's Motion to Dismiss should be granted.

Dated: June 18, 2020

Respectfully submitted by:

**The Cincinnati Insurance Company, The Cincinnati Casualty Company, The Cincinnati Indemnity Company and Cincinnati Financial Corporation**

By its counsel:

*s/ Michael K. Farrell*
Michael K. Farrell (Ohio Bar No. 0040941)
BAKER & HOSTETLER LLP
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Phone 216-621-0200
Fax 216-696-0740
mfarrell@bakerlaw.com
Rodger L. Eckelberry (Ohio Bar No. 0071207)
BAKER & HOSTETLER LLP
200 S. Civic Center Dr., Suite 1200
Columbus, OH 43215-4260
Telephone: 614.228.1541
Facsimile: 614.462.2616
reckelberry@bakerlaw.com

Daniel G. Litchfield (*application for admission pending*)
Laurence Tooth (*application for pro hac vice pending*)
303 West Madison Street
Suite 300
Chicago, IL 60606
T: 312.781.6669 | F: 312.781.6630
Litchfield@LitchfieldCavo.com
Tooth@LitchfieldCavo.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically and will be served upon counsel of record through the Court's electronic filing system.  All other parties will be served by regular U.S. mail.


/s/ Michael K. Farrell
*Attorney for Defendants*